ORIGINAL

1  **EPARAMA MAU[1]**
   **A97-890-332**
2  **San Diego Detention Center (CCA)**
   **P.O. Box 439049**
3  **San Ysidro, CA 92143**

FILED

07 OCT 19 PM 3: 21

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____  DEPUTY

4

5

6

7

8

9              **UNITED STATES DISTRICT COURT**

10            **SOUTHERN DISTRICT OF CALIFORNIA**

11  **EPARAMA MAU,**                    Civil Action No. 07 **CV** 2037 IEG  (LSP)
    **[A97-890-332],**
12
                              Petitioner,
13
         v.                                    **PETITION**
14                                                **FOR**
    **MICHAEL CHERTOFF, SECRETARY**      **WRIT OF HABEAS CORPUS**
15  **OF THE DEPARTMENT OF**
    **HOMELAND SECURITY, PETER**              **[28 U.S.C. § 2241]**
16  **KEISLER, ACTING ATTORNEY**
    **GENERAL, ROBIN BAKER, DIRECTOR**
17  **OF SAN DIEGO FIELD OFFICE, U.S.**
    **IMMIGRATION AND CUSTOMS**
18  **ENFORCEMENT, JOHN GARZON,**
    **OFFICER-IN-CHARGE,**
19
                              Respondents.
20

21

22

23

24  _____

25       [1]The petitioner is filing this petition for a writ of habeas corpus with the assistance of
26  James Fife and the Federal Defenders of San Diego, Inc., who drafted the instant petition. That
    same counsel also assisted the petitioner in preparing and submitting his request for the
27  appointment of counsel. Robin Baker is the director of the San Diego field office of U.S.
    Immigration and Customs Enforcement. He administers federal immigration laws on behalf of
28  the Secretary of Homeland Security in the federal judicial district for the Southern District of
    California. In Mr. Baker's capacity as the director of the local office of U.S. Immigration and
    Customs Enforcement, he has immediate control and custody over the petitioner. John Garzon is
    the ICE officer in charge of the detention facility holding the petitioner.

## I.

## **INTRODUCTION**

The petitioner, Eparama Mau, respectfully petitions this Court for a writ of habeas corpus to remedy his unlawful detention.

Petitioner is in the custody of the Secretary of the Department of Homeland Security and the Attorney General of the United States and their employees (hereinafter "respondents"). He is detained at the respondents' detention facility in San Ysidro, California, under the control of the officer in charge.

## II.

## **JURISDICTION AND VENUE**

This Court has jurisdiction under 28 U.S.C. §§ 1331, 2241(c)(1) and (3), and U.S. Const. art. I., § 9, cl. 2, because the petitioner is being unlawfully detained as a result of U.S. Immigration and Customs Enforcement's misapplication of the detention provisions of 8 U.S.C. §§ 1226 & 1231. Federal district courts have jurisdiction to entertain habeas corpus petitions under 28 U.S.C. § 2241 to address the lawfulness of detentions of non-citizens by ICE. See Zadvydas v. Davis, 533 U.S. 678, 686-90 (2001); Demore v. Kim, 538 U.S. 510, 516-17 (2003); Clark v. Martinez, 543 U.S. 371, 379 (2005); Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006). Moreover, his detention violates the Constitution, the laws, and the treaties of the United States, raising a federal question under 28 U.S.C. § 1331. See Magana-Pizano v. INS, 200 F.3d 603, 610 (9th Cir. 2000); Goncalves v. Reno, 144 F.3d 110, 123 (1st Cir. 1998). Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482-83 (1999), makes clear that the petitioner's habeas petition is not barred by 8 U.S.C. § 1252(g).

Venue is proper in this district because the petitioner is detained here. See 28 U.S.C. § 2241, et. seq., & 28 U.S.C. § 1391(e).

/ / /

2

**III.**

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**Petitioner's Background**

The petitioner is a native and citizen of Fiji. He fled to the United States in March 2001, when he was twenty-one years old, following abuse and torture at the hands of the Fijian police. He was lawfully admitted on a tourist visa, but continued to reside in the United States beyond the termination of his visa.

After his admission to the United States, petitioner was convicted of driving under the influence and was sentenced to the low term of 16 months' imprisonment.

**Removal Proceedings and Initiation of Current Detention by Respondents**

After completion of the term of imprisonment prescribed by law, petitioner was transferred to custody of the respondents on October 5, 2004, which is the beginning of his present period of detention. On December 15, 2004, a removal hearing was held. The government proceeded solely on a charge of overstaying his visa. The immigration judge found petitioner removable and denied petitioner's applications for asylum based on his fear of physical harm and torture from Fijian officials if returned to his country.

**Status of Petitioner's Legal Challenges to Removal**

Petitioner timely appealed the decision of the immigration judge to the Board of Immigration Appeals. Petitioner argued that the immigration judge had erred in denying asylum. Petitioner argued he should have been granted asylum and Convention Against Torture relief. The BIA affirmed on April 28, 2005.

Petitioner then filed a timely petition for review *pro se* with the Ninth Circuit Court of Appeals on May 12, 2005, in Case No. 05-72765. The same day, petitioner moved for a stay of deportation pending appeal; the government filed a notice of non-opposition to the stay on July 8, 2005. Following two extensions of time, petitioner's opening brief was filed late on November 17, 2005, but was accepted by the Court. Respondents were ordered to file their brief by January 26, 2006.

On January 20, 2006, the Government sought a two-week extension of time to file its brief. Petitioner filed an opposition to the extension on February 7, 2006. The response brief was filed on February 9, 2006.

After a 14-day extension, petitioner filed his reply brief on March 9, 2006. No action has since taken place on the case.

**Prior Challenges to Detention**

Because petitioner was not found deportable on account of a criminal conviction, he is not subject to the mandatory detention requirements of 8 U.S.C. § 1226(c). Nonetheless, ICE has denied petitioner release on supervision during custody reviews required by regulations, most recently on December 8, 2006. Nor has petitioner received any bond hearing before an immigration judge. Petitioner has filed no previous request for relief from detention with this or another court.

### IV.

### **LEGAL ARGUMENT**

### **THIS COURT MUST RELEASE THE PETITIONER FROM THE CUSTODY OF THE RESPONDENTS UNDER APPROPRIATE CONDITIONS OF SUPERVISION.**

In the instant action, petitioner seeks release from the custody of respondents on the basis of two recent Ninth Circuit decisions, Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), and Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006). These cases follow the Supreme Court's principles on indefinite detention laid down in Zadvydas v. Davis, 533 U.S. 678, 689 (2001), and apply them to detainees subjected to prolonged detention and whose orders of removal are on review. These cases hold that it is "constitutionally doubtful" that the detention statutes permit lengthy periods of custody pending the outcome of legal challenges. Under the authority of Tijani and Nadarajah, petitioner is entitled to release on order of supervision pending resolution of his appeals.

Two federal statutes authorize civil detention of aliens prior to final removal orders. Aliens may be detained or released at the discretion of the Attorney General under 8 U.S.C. § 1226(a). However, aliens who

4

1  are subject to removal due to certain types of criminal convictions, such as aggravated felonies or crimes of

2  moral turpitude, are detained under so-called mandatory detention provisions in 8 U.S.C. § 1226(c). Once

3  an order of removal is final, however, continued detention is governed by 8 U.S.C. § 1231 and regulations.

4

5  If detainees with final orders are not removed within the 90-day statutory period, the Attorney General

6  can release them under appropriate conditions of supervision, including regular appearances before an

7  immigration officer and travel restrictions, among other requirements. See Ma v. Ashcroft, 257 F.3d 1095,

8  1104 (9th Cir. 2002); see also 8 U.S.C. § 1231(a)(3) (listing the conditions of supervision for deportable or

9

10 removable aliens released from immigration custody at the expiration of the ninety-day removal period). The

11 Attorney General may detain a deportable or inadmissible alien beyond the removal period only when he

12 determines that the individual would "be a risk to the community or unlikely to comply with the order of

13 removal" if released from immigration custody. 8 U.S.C. § 1231(a)(6).

14

15 In Zadvydas, however, the Supreme Court held that due process constraints on this civil detention

16 authority permit only a period of custody that is reasonably necessary to bring about an alien's removal from

17 the United States, and "does not permit indefinite detention." 533 U.S. at 689. Thus, federal officials **must**

18 release a deportable alien from custody under appropriate conditions of supervision when no "significant

19 likelihood of removal [exists] in the reasonably foreseeable future." Id.; see also Martinez, 543 U.S. at 386-87

20

21 (Zadvydas principles applicable equally to class of inadmissible aliens).

22 In Zadvydas, Kim, and Martinez, the Supreme Court repeatedly recognized that unreasonable, indefinite,

23 civil detention raises serious due process problems. It construed the immigration detention statutes

24 consistently with the Fifth Amendment as permitting detention only during a period reasonably necessary to

25 accomplish removal. See Zadvydas, 533 U.S. at 690; Kim, 538 U.S. at 513; Martinez, 543 U.S. at 386; see

26 also Ly v. Hansen, 351 F.3d 263, 268 (6th Cir. 2003) (immigration detention should last only "for a time

27 reasonably required to complete removal proceedings in a timely manner"). In short, a detention which may

28

be reasonably related to a government purpose at the outset may no longer comply with due process requirements once it becomes unreasonably prolonged. See Zadvydas, 533 U.S. at 699 ("Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute. See 1 E. Coke, Institutes *70b ('Cessante ratione legis cessat ipse lex') (the rationale of a legal rule no longer being applicable, that rule itself no longer applies)."); Kim, 538 U.S. at 532 (Kennedy, J., concurring) ("If the Government cannot satisfy this minimal, threshold burden [of removability], then the permissibility of continued detention pending deportation proceedings turns solely upon the alien's ability to satisfy the ordinary bond procedures–namely, whether if released the alien would pose a risk of flight or a danger to the community."); Martinez, 543 U.S. at 385 ("In Zadvydas, it was the statute's text read in light of its purpose, not some implicit statutory command to avoid approaching constitutional limits, which produced the rule that the Secretary may detain aliens only for the period reasonably necessary to bring about their removal.").

The Ninth Circuit in Tijani and Nadarajah has applied the reasoning of these Supreme Court cases to the circumstances of detainees whose orders of removal are still subject to active legal challenges, that is, those detained under 8 U.S.C. § 1226 instead of § 1231. Consistent with the trend seen in Martinez to bring all classes of indefinitely detained aliens under the due process protections recognized in Zadvydas, Tijani and Nadarajah provide relief to detainees in petitioner's circumstances who are exposed to prolonged civil detention while their appeals are processed.

In Tijani, the Court of Appeals reviewed a § 2241 habeas petition by a deportee who had been held in custody for 32 months awaiting the outcome of his appeals. Tijani held it was "constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal." 430 F.3d at 1242. Distinguishing Demore v. Kim, because Tijani did not concede he was deportable, the Court ordered his release, unless he was provided with a bail hearing and found unsuitable for

1  release under the usual factors of risk of flight or danger to the community. See id.; see Kim, 538 U.S. at 522-

2  23. Moreover, Kim was grounded on the Supreme Court's assumption that the period of detention would be

3  "brief," only that "necessary for his removal proceedings," which the Supreme Court estimated as roughly six

4  weeks in duration on average, or five months if further review is sought. See id.; see Kim, 538 U.S. at 522-23,

5  530. As Tijani's detention while awaiting outcome of his appeals far exceeded these estimates of the

6  constitutionally permitted "brief period" of detention, he was entitled to release under the Zadvydas principles.

7  See id. Thus, Tijani was entitled to release on habeas corpus unless the government proved at a hearing before

8  an immigration judge that the petitioner was a flight risk or danger to the community. See id.[2]

9  

10  In his concurring opinion, Judge Tashima expanded on the decision in order to provide guidance to the

11  district courts. Judge Tashima saw the heart of the case to be a problematic administrative decision, In re

12  Joseph, 22 I. & N. Dec. 799 (BIA 1999), which erroneously treated 8 U.S.C. § 1226(c) as permitting indefinite

13  detention. See id. at 1243-44 (Tashima, J., concurring). Rather, Zadvydas made it clear that "[w]hen such

14  a fundamental right [as personal liberty] is at stake, the Supreme Court has insisted on heightened procedural

15  protections to guard against the erroneous deprivation of that right." Id. at 1244. The natural limitation on

16  authority to detain, in Judge Tashima's view, is "[o]nly those immigrants who could not raise a 'substantial'

17  argument against their removability should be subject to mandatory detention." Id. at 1247. Such a standard

18  "strikes the best balance between the alien's liberty interest and the government's interest in regulating

19  immigration." Id. Because Tijani had a potentially meritorious claim that his conviction was not a categorical

20  crime of moral turpitude, he made a showing of a "substantial argument" which would warrant release on

21  appeal. See id. at 1247-48.

---

26  [2]However, in so proving, it is important that the assessment be based on the *current*
27  circumstances relating to the detainee and not simply on past criminal convictions. See Lawson
   v. Gerlinski, 332 F. Supp.2d 735, 745 (M.D. Pa. 2004) (" 'To presume dangerousness to the
28  community and risk of flight based solely on [an alien's] past record does not satisfy due
   process.' ") (quoting Ngo v. INS, 192 F.3d 390, 398-99 (3d Cir. 1999)).

Judge Tashima observed the perverse, penalizing effect of detention for those who have the best reasons to stay and fight: "By subjecting immigrants who, like Tijani, raise difficult questions of law in their removal proceedings to detention while those proceedings are conducted, the Joseph standard forces those immigrants to endure precisely what Tijani has endured: detention that lasts for a prolonged period of months or years." Id. at 1246 n.3. Judge Tashima concluded that liberty is one of the most fundamental rights protected by the Constitution, and the Supreme Court has indicated time and again that the individual should not carry the burden of protecting this fundamental right. See id. at 1245-46. Moreover, he put into question the continued viability of Joseph, which was decided prior to the Supreme Court's holding in Zadvydas. See id. at 1246; see also Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (lower courts are not bound by prior precedent that has been seriously undermined by intervening Supreme Court authority).

In Nadarajah, the Ninth Circuit considered an indefinite detainee held under suspicion of terrorist affiliation. Nadarajah challenged his detention and was pursuing a claim for asylum, but the government relied on the silence of the asylum detention statute to detain Nadarajah while this litigation proceeded. See 443 F.3d at 1076-78. However, the Court held that the asylum detention statute was equally subject to the strictures of Zadvydas. See id. at 1082. Moreover, the Court held the principles of Fed. R. App. Proc. 23(b), allowing release on bail pending appeal, apply to such immigration detentions. Id. at 1083. The usual standards operate in such cases: (1) probability of success on merits and irreparable harm; or (2) serious legal question and a balance of the hardships. Id. Moreover, the showing of probable success correspondingly lessens as the length of detention increases. Id. at 1083-84. In Nadarajah, the Court found the 52 months of detention were a great hardship that accordingly reduced the required showing of likelihood of success. Id.

Petitioner's case is factually similar to Tijani and Nadarajah, and therefore he too is entitled to consideration for release. Like Tijani, petitioner can raise his argument for release through the vehicle of a § 2241 petition, and he also can point to substantial arguments regarding his deportation proceeding. His

petition for review in the Ninth Circuit argues that the immigration judge at the removal hearing erred in holding petitioner was ineligible for relief in the form of asylum and withholding under the Convention Against Torture. Petitioner presented evidence of his official maltreatment by Fijian officials and his abiding fear that if he were returned there, the persecution would re-commence. Petitioner was mistakenly detained and interrogated for involvement with the rebel movement in the recent coup in Fiji. The physical abuse and torture by police, including burning with hot iron, was so severe that petitioner fled his country to come to the United States. Petitioner also now fears that he is target for harm by the rebels, since he was interrogated and released by the police. He argues that a DUI is not a particularly serious crime warranting denial of CAT relief. His claims would counts as a "substantial question" under the Tashima analysis in Tijani. Moreover, as Judge Tashima observed, the detainee need not show certainty of outcome to gain release, just that "a closer look is surely required." Tijani, 430 F.3d at 1248 (Tashima, J., concurring).

Also, as in Nadarajah, petitioner here can demonstrate a basis for release under the factors in Fed. R. App. P. 23(b). He raises substantive legal and factual questions. His continued loss of personal liberty in itself constitutes irreparable harm. As for the balance of hardships, whereas the Court in Nadarajah found that 52 months' detention was a very burdensome hardship which correspondingly lessened the required showing of likely success on appeal, and the 32 months of detention in Tijani was deemed excessive, petitioner here has been in respondents' custody for over **36 months**. His burden of probable success, too, must be significantly lessened. Moreover, because petitioner was ordered removed solely on the basis of overstaying his visa, he is not even subject to the mandatory detention provisions of 8 U.S.C. § 1226(c), unlike Nadarajah, whom ICE suspected of affiliation, at least, with a terrorist organization, and so potentially subject to mandatory detention. See 443 F.3d at 1073-74; 8 U.S.C. §§ 1226(c)(1)(D), 1227(a)(4)(B), & 1182(a)(3)(F).

Balancing the factors identified in case law for release of detainees while legal challenges are pending, petitioner is entitled to release at least as much as the petitioners in Tijani and Nadarajah. In addition to the

1   severe harm flowing generally from a continued deprivation of personal liberty, his ability to pursue his

2   meritorious appeal and cooperate with counsel is seriously impaired by continued detention.

3

4   As Chief Judge Vanaskie observed in <u>Lawson</u>, 332 F. Supp. 2d at 745:

5   The price for securing a stay of removal should not be prolonged incarceration. "Freedom from imprisonment–from government custody, detention, or other forms of physical restraint–lies at the

6   heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." <u>Zadvydas</u>, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal*

7   proceeding with adequate procedural protections, or, in certain special and 'narrow' non-punitive

8   'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.' " <u>Id.</u> The fact that

9   the alien has procured a stay of removal does not undermine the due process bedrock principle that

10  there must be a "special justification" outweighing the alien's constitutionally-protected interest in liberty, as well as "adequate procedural protections" to continue incarceration while the alien

11  litigates his claims.

12  Consonant with these principles, this Court and other district courts have granted petitioners relief in

13  cases which have raised identical claims under <u>Tijani</u> and <u>Nadarajah</u>, recognizing that indefinite detention

14  pending substantive legal challenges violates due process. <u>See</u> <u>Malcalma v. Chertoff</u>, No. 06CV2623-WQH

15  (AJB), 2007 WL 1516744 (S.D. Cal. Sept. 26, 2007); <u>Martinez v. Gonzales</u>, ___ F. Supp.2d ___. 2007 WL

16

17  2402737 (C.D. Cal. Aug. 17, 2007); <u>Martinez-Herrera v. Crawford</u>, No. CV07-0267-PHX-NVW-DKD, 2007

18  WL 2023469 (D.Ariz. June 20, 2007); <u>Ali v. Crawford</u>, No. CV06-01149-PHX-EHC; (D.Ariz. June 8, 2007);

19  <u>Soeoth v. Gonzales</u>, No. 06CV7451-TJH (MLG) (C.D. Cal. Jan. 5, 2007).  Copies of orders granting relief

20  in these cases are attached hereto in the Appendix.

21

22                                              **V.**

23                                    **REQUESTED RELIEF**

24  The petitioner requests that this Court order the respondents to release him from custody under the

25  conditions of supervision set forth in 8 U.S.C. §1231(a)(3). Alternatively, the Court should order a release

26

27  hearing to evaluate petitioner's eligibility for supervision under appropriate conditions.

28  / / /

# VI.

# VERIFICATION

I, Eparama Mau, hereby verify that the facts contained in the instant petition are true and correct

Respectfully submitted,

Dated: _10 - 17 · 07_

**EPARAMA MAU**
Petitioner

11

# Appendix

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

PAUL GUEVARRA MACALMA,

                           Petitioner,

      vs.

MICHAEL CHERTOFF, Secretary of
Homeland Security, et.al. ,

                       Respondents.

CASE NO. 06CV2623 WQH (AJB)

ORDER

Hayes, Judge:

The matter before the Court is the Motion to Order Release of Petitioner Paul Guevarra Macalma under an Order of Supervision.  (Doc. # 35.)

## BACKGROUND

On November 20, 2003, the Department of Homeland Security took custody of Petitioner and placed him in removal proceedings.

On March 10, 2004, the Immigration Judge found that Petitioner was not a citizen and ordered him removed to the Philippines.  Petitioner filed an appeal to the Board of Immigration Appeals.

On October 22, 2004, the Board of Immigration Appeals upheld the decision of the Immigration Judge that Petitioner had not derived citizenship through his father under former section 321 of the Immigration and Naturalization Act, 8 U.S.C. § 1432(a).

On November 16, 2004, Petitioner filed a Petition for Review in the Court of Appeals for the Ninth Circuit along with a motion to stay deportation pending resolution of the appeal. *Macalma v. Gonzales*, No. 04-75821.

On June 14, 2005, Respondents filed a statement of non-opposition to the motion for stay of removal.

1      On August 5, 2005, the Court of Appeals filed an order which appears in the docket in

2   part as follows: "respondent has filed a statement of non-opp to mtn for stay of removal;

3   temporary stay of removal continues in effect until the issuance of the mdt or further order of

4   the ct." (Docket # 6, Exhibit 12 at 5.)

5      On February 27, 2006, Petitioner filed his opening brief in the Court of Appeals along

6   with a motion for appointment of counsel.

7      On March 21, 2006, the Court of Appeals denied the motion for appointment of counsel

8   and ordered Respondents to file an answering brief within 30 days.

9      On June 5, 2006, Respondents filed a motion to remand to the Board of Immigration

10  Appeals for reconsideration of the determination that Petitioner had not derived citizenship

11  through his father under former section 321 of the Immigration and Naturalization Act, 8

12  U.S.C. § 1432(a). Respondents requested that the Court of Appeals remand the case to the

13  Board "so that it can review this case in light of the Court's decision in *Minaysan [v. Gonzales*,

14  401 F.3d 1069 (9th Cir. 2005)]." (Doc. #6, Exhibit 16 at 2.)

15     On August 23, 2006, the Court of Appeals entered an order which appears on the docket

16  in part as follows: "unless an opp to the mtn [to remand] is filed within 14 days of this order,

17  the mtn will be granted." (Doc. # 6, Exhibit 14 at 7.)

18     On September 22, 2006, the Court of Appeals granted Respondents' "unopposed"

19  motion to remand and stated "the parties are deemed to have agreed that the court's remand

20  order shall stay petitioner's removal." (Doc. # 6, Exhibit 14 at 7.)

21     On November 28, 2006, Petitioner filed the Petition for Writ of Habeas Corpus. (Doc.

22  # 1.) Petitioner asserted that he is entitled to release from the custody of Respondents under

23  appropriate conditions of supervision. Petitioner argued that his prolonged detention is

24  contrary to immigration laws and the United States Constitution. Petitioner asserted that 1)

25  there is no statute which authorizes his detention of more than three years, 2) the immigration

26  statutes and due process required that a hearing should be held to determine whether his

27  continued detention is justified, and 3) the sheer length of his detention violates the Due

28  Process Clause of the United States Constitution. Petitioner asserted that his detention under

1  8 U.S.C. §1226(c)(1)(C) was not authorized at any time because he was sentenced on his 2000

2  conviction for receipt of stolen property to three years of probation and was not sentenced to

3  at least one year imprisonment as required pursuant to Section 1226(c)(1)(C). Even if Section

4  1226(c) applied, Petitioner asserted that his case is not distinguishable in any meaningful way

5  from the case of *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005) in which the Court of Appeals

6  concluded that detention of two years and eight months was not within the authority conferred

7  by Section 1226(c).

8       On March 5, 2007, Respondents filed a Return in Opposition to the Petition for Writ

9  of Habeas Corpus. (Doc. # 6.)

10      On May 22, 2007, this Court filed an order stating in part:

11      Petitioner is held under the detention provisions of 8 U.S.C. § 1226(c)(1)(C)
        which provides that "the Attorney General shall take into custody an alien who -
12      is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an
        offense for which the alien has been sentenced to a term of imprisonment of at
13      least 1 year." The documents submitted in this case do not establish that
        Petitioner has been "sentenced to a term of imprisonment of at least 1 year." 8
14      U.S.C. § 1226(c)(1)(C). Respondent has not established that 8 U.S.C. §
        1226(c)(1)(C) authorizes the mandatory detention of the Petitioner. Based upon
15      the record in this case, Petitioner is entitled to a release hearing pursuant to the
        provisions of 8 U.S.C. § 1226(a).
16      IT IS HEREBY ORDERED that the Petition for Habeas Corpus is granted as
        follows: Respondents shall provide a release hearing to Petitioner pursuant to the
17      provisions of 8 U.S.C. § 1226(a) within 10 days of the date of this order. The
        Court appoints the Federal Defender as counsel for Petitioner for the sole
18      purpose of representation in this habeas action. Respondents shall file a status
        report in this case within 20 days of the date of this order. This case will remain
19      open pending further order of this Court.

20  (Doc. #19 at 6.)

21      On May 29, 2007, the Board of Immigration Appeals granted Petitioner's motion to

22  reopen his immigration case and remanded proceedings to the immigration court. (Doc. # 22,

23  Exhibits 70-71.)

24      On May 29, 2007, the Immigration Judge held a release hearing. The Immigration

25  Judge informed counsel for the Petitioner that "the District Court appeared to be unaware that

26  the basis for the Court's mandatory custody finding of January 9, 2004 was premised upon the

27  representations . . . that [Petitioner] was convicted for possession of drug paraphernalia in

28  2003." (Doc. # 27, Exhibit at 5.) The release hearing was continued to June 6, 2007 to allow

1    briefing by the parties.

2         · At the June 6, 2007 hearing, the Immigration Judge reviewed the following facts :1)

3    that on January 9, 2004 a determination was made at a bond hearing for Petitioner that his drug

4    related conviction [January 28, 2003 in San Diego Superior Court for Possession of Drug

5    Paraphernalia in violation of California Health and Safety Code Section 11364] qualified as

6    a deportable offense relating to a controlled substance resulting in the mandatory custody

7    provisions of 8 U.S.C. § 1226(c)(1)(B); 2) that on January 23, 2004, the Immigration Judge

8    found that Petitioner qualified for "automatic citizenship" pursuant to the provisions of 8

9    U.S.C. § 1432 terminating the removal proceedings; and 3) that on February 6, 2004, the

10   Immigration Judge vacated the order terminating the removal proceedings finding that

11   Petitioner failed to qualify for citizenship resulting in the order of removal. The Immigration

12   Judge advised the parties that Petitioner's "September 29, 2000 conviction for receiving stolen

13   property was not the basis for a finding of mandatory custody pursuant to Section 236(c) of

14   the Act; 8 U.S.C. 1226(c)." The Immigration Judge explained that it was [Petitioner's] "2003

15   conviction for possession of drug paraphernalia that triggered the mandatory custody

16   provisions of Section 236(c)(1)(B) of the Act; 8 U.S.C. 1226(c)(1)(B)." (Doc. # 27, Exhibit

17   at 5.) The Immigration Judge concluded that "the mandatory custody order of January 9, 2004

18   was legally sufficient when entered and was sufficient to hold [Petitioner] during the pendency

19   of removal proceedings. . . . however, in light of [Petitioner's] prolonged period of detention

20   in excess of three years and seven months, valid issues relevant to the continuing applicability

21   of the mandatory custody provisions . . . have been raised." (*Id.* at 6.) The Immigration Judge

22   reviewed the court decisions in *Demore v. Kim*, 538 U.S. 510 ( 2003) and *Tijani v. Willis*, 430

23   F.3d 1241 (9th Cir. 2005) and entered the following findings and conclusions:

24        [Petitioner] has been incarcerated for more than 3 years and 7 months. The
          delays in [Petitioner's] case have not been caused by [Petitioner's] efforts to
25        engage in tactics that are intended to stall a determination of issues relevant to
          his removal from the United States. Without addressing this Court's assessment
26        of [Petitioner's] success in challenging his removal, [Petitioner] has raised
          substantial issues against his removal that have been adjudicated by this Court
27        and the Board of Immigration Appeals. A final determination of [Petitioner's]
          removal case has been delayed at no fault of [Petitioner]. A number of
28        jurisdictional errors were triggered when the Board failed to enter DHS's
          February 20, 2004 appeal into its electronic docketing system. It appears that

                                         - 4 -                              06cv2623WQH

1    DHS then failed to withdraw that appeal once the Court had granted DHS
      counsel's motion to reconsider on March 10, 2004.
2
      [Petitioner's] case has been returned to this Court for the entry of a new decision
3     on the merits of [Petitioner's] derivative claim.  That determination will include
      evidence [Petitioner] has produced for the first time on appeal as well as an
4     analysis of [Petitioner's] claim in light of the Ninth Circuit's holding in
      *Minasyan v. Gonzales*, 401 F.3d 1069 (9th Cir. 2005).  Assuming the Court
5     expects to complete [Petitioner's] removal proceedings within 90 days, an
      adverse decision on [Petitioner's] derivative citizenship claim preserves
6     [Petitioner's] right to administrative and judicial review of any removal order.
      Were [Petitioner] to pursue all legal remedies, his case would not be completed
7     within the next year.

8     Under these circumstances, the Court finds that [Petitioner's] continued
      detention is unjustified and unreasonable. Due Process required that [Petitioner]
9     be provided this custody review hearing where [Petitioner] is entitled to a
      determination regarding the amenability for release.  For purposes of making
10    such a determination DHS is required to provide evidence that [Petitioner] is a
      flight risk or a danger to the community.
11
      (Doc. #27 Exhibit at 8.)  The Immigration Judge concluded that Petitioner is not a flight risk
12
      and that Petitioner's crimes "are not so serious that the Court can find that [he] is a danger to
13
      the community and will continue to commit crimes if released on bond."  The Immigration
14
      Judge "ORDERED that [Petitioner] is hereby released from the custody of the Department of
15
      Homeland Security upon the posting of a $7,000 bond." (*Id.* at 9.)
16
      Respondent filed an appeal from the June 6, 2007 decision of the Immigration Judge
17
      to the Bureau of Immigration Appeals in which Respondents assert that Petitioner is subject
18
      to mandatory detention and that the Immigration Judge relied upon *Tijani* in error.  (Doc. # 24
19
      Exhibit A.)
20
      Counsel for Petitioner states as follows in her declaration:
21
      Following the immigration judge's order setting a $7,000 cash bond, Mr.
22    Macalma's father, Benjamin Macalma attempted to obtain the bond amount.  I
      am informed by Benjamin Macalma that he is currently working as a security
23    guard and has two young children. Benjamin Macalma has informed me that he
      cannot make the $7,000 cash bond.
24
      Soon after I was informed by Mr. Macalma's father than (sic) he could not make
25    the $7,000 cash bond, I contacted the immigration court to get a bond
      redetermination hearing so that the bond amount could be lowered.  The
26    immigration judge, however, indicated – both over the telephone and during a
      removal hearing for Mr. Macalma – that she does not have jurisdiction over the
27    bond issue because the issue has been taken up to the BIA by the DHS.  On Mr.
      Macalma's behalf, I subsequently filed a Motion for a Bond Redetermination
28    with the immigration court providing legal support regarding the court's
      jurisdiction over bond predeterminations. The immigration judge has not ruled

06cv2623WQH

1     on Mr. Macalma's motion.

2     Although recognizing that DHS challenges the application of *Tijani v. Willis*,
      430 F.3d 1241 (9th Cir. 2005), I previously contacted the DHS counsel, Karri
3     Harlin, to determine whether she would agree to a lower bond amount. Ms.
      Harlin indicated that the government would not agree to a lower amount because
4     of DHS's appeal to the BIA.

5     Following the August 21, 2007 status hearing before this Court, upon
      recommendation of Mr. Samuel Bettwy, the Assistant United States Attorney
6     assigned to this matter, I wrote to Mr. Macalma's deportation officer, Stephanie
      Valdez, requesting that she consider a lower bond amount. ...
7
      On September 5, 2007, Mr. Bettwy informed me that the deportation officer has
8     denied the request.

9     (Doc. # 35-3 at 2-3.)

10          On September 5, 2007, Petitioner filed the motion for release upon appropriate

11    conditions of supervision pending before this Court

12          On September 14, 2007, Respondent filed a Response to Petitioner's motion.

13          On September 17, 2007, Petitioner filed a Reply to Respondent's Response.

14                          **CONTENTIONS OF THE PARTIES**

15          Petitioner contends that his continued detention without bond redetermination amounts

16    to a denial of the habeas relief previously granted by this Court on May 22, 2007. Petitioner

17    asserts that this Court should now issue an order releasing him under appropriate conditions

18    of supervision without bond. Petitioner contends that he has filed a motion for bond

19    redetermination with the Immigration Judge and that he has specifically addressed the issue

20    of jurisdiction with the Immigration Judge. Petitioner contends that the Immigration Judge

21    does not lose jurisdiction over the redetermination of the bond amount even though there is an

22    appeal pending to challenge the granting of bond. Petitioner contends that he should not be

23    forced to wait an indefinite amount of time for the Immigration Judge to make further

24    determinations regarding his current detention. Petitioner contends that this Court has

25    continuing jurisdiction over his claim that due process requires his release under reasonable

26    conditions pending resolution of his immigration proceedings.

27          Respondent contends that this District Court does not have jurisdiction pursuant to 28

28    U.S.C. § 2241 to stand in the place of the Immigration Judge. Respondent contends that habeas

1    jurisdiction is limited to persons in custody in violation of the Constitution or laws of the

2    United States and does not extend to discretionary decisions made by the executive branch and

3    that Petitioner must exhaust his available administrative remedies by appealing to the Bureau

4    of Immigration Appeals.

5                                          **CONCLUSION**

6         The Order of this Court filed on May 22, 2007 granted Petitioner's writ of habeas

7    corpus and required Respondents to provide a release hearing to Petitioner. Pursuant to the

8    Order of this Court, a release hearing was held before an Immigration Judge. At the release

9    hearing, the Immigration Judge concluded that ". . . in light of [Petitioner's] prolonged

10   detention in excess of three years and seven months, valid issues relevant to the continuing

11   applicability of the mandatory custody provisions . . . have been raised." (Doc. #27 Exhibit

12   at 6.) The Immigration Judge relying upon *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005)[1]

13   found that Petitioner's "continued detention is unjustified and unreasonable." (Doc. #27

14   Exhibit at 8.) The Immigration Judge found that Petitioner was not a flight risk or a danger

15   to the community and ordered Petitioner's release upon the posting of $7,000 bond. Petitioner

16   cannot pay the bond and Petitioner's motion for redetermination of the bond amount remains

17   pending before the Immigration Judge.[2]

18        In *Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824 (9th Cir. 2002), the Court of Appeals

19   concluded that the Petitioner was not entitled to challenge the manner in which the BIA

20   exercised its discretion in denying Petitioner's request for a waiver of deportation under INA

21   Section 212(c) in a petition for habeas corpus under 28 U.S.C. Section 2241. The Court of

22   Appeals stated "[w]e hold that 28 U.S.C. § 2241 does not allow us, in the absence of

23   constitutional or statutory error, to second-guess the manner in which the INS chooses to

24   exercise the discretion given it by statute." *Id.* at 827. The Court explained that "§2241 does

25   _____

26        [1]After the remand in *Tijani*, this Court released Tijani without a bond under supervised release
     pursuant to the stipulation of the Respondent.
27

28        [2] According to the applicable regulations, Petitioner has administrative remedies he may
     pursue if he is dissatisfied with the "custody determination [by the DHS] . . . including the setting of
     a bond" and/or the "the terms of his release." 8 C.F.R. § 1236.1(d).

1   not say that habeas is available to challenge purely discretionary (yet arguably unwise)

2   decisions made by the executive branch that do not involve violations of the Constitution or

3   federal law." *Id.* at 828.

4       In this case, Petitioner remains in custody and continues to challenge the legality of his

5   confinement under 28 U.S.C. Section 2241. Petitioner continues to assert that his lengthy

6   detention is not authorized under any statute and violates the Due Process Clause of the United

7   States Constitution. At the release hearing, the Immigration Judge agreed with the Petitioner

8   that his continued detention is unjustified and unreasonable. Petitioner's claim that he should

9   be released in this habeas action continues to be based upon statutory and constitutional error

10  and does not challenge a discretionary decision to hold him in custody. "28 U.S.C. § 2241

11  expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens

12  are 'in custody in violation of the Constitution, or laws, or treaties of the United States.'"

13  *Magana-Pizano v. INS*, 200 F.3d 603, 609 (9th Cir. 1999) (quoting 28 U.S.C. Section 2241.)

14      The Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust

15  available . . . administrative remedies before seeking relief under § 2241." *Castro-Cortez v.*

16  *I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001) (citing *U.S. v. Pirro*, 104 F.3d 297, 299 (9th Cir.

17  1997)). However, "exhaustion is not a jurisdictional prerequisite of § 2241." *Rivera v.*

18  *Ashcroft*, 394 F.3d 1129, 1139 (9th Cir. 2005) (internal quotations omitted). In *Brown v.*

19  *Rison*, 895 F.2d 533, 535 (9th Cir. 1990)), *abrogated on other grounds by Fernandez-Vargas*

20  *v. Gonzales*, --- U.S. ----, 126 S. Ct. 2422 (2006), the Court of Appeals held that a petitioner's

21  failure to exhaust his administrative remedies before pursuing habeas review "does not divest

22  us of jurisdiction," and "[w]here exhaustion of administrative remedies is not jurisdictional,

23  the district court must determine whether to excuse the faulty exhaustion and reach the merits,

24  or require the administrative remedies before proceeding in court." *Id.* In this case,

25  Respondent has had an ample opportunity to act upon Petitioner's motion for bond

26  redetermination and Petitioner remains in custody.[3] The record before the Court shows that

27

28      [3] Petitioner's motion for redetermination of bond amount was filed with the Immigration Court
on August 22, 2007.

- 8 -

1  Petitioner has pursued his available administrative remedies to contest the bond determination

2  by the Immigration Judge. The writ of habeas corpus is intended to be a "swift and imperative

3  remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400, 83

4  S.Ct. 822, 828 (1963); *see Young v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (quoting *Jones*

5  *v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978)) ("The writ of habeas corpus, challenging

6  illegality of detention, is reduced to a sham if . . . trial courts do not act within a reasonable

7  time.").

8         After three years and ten months in custody, Petitioner's immigration case remains

9  pending before the Immigration Judge in the administrative proceedings. The resolution of

10  Petitioner's immigration proceedings is not imminent. Because Petitioner is unable to meet

11  the cash bond, Petitioner continues to face a lengthy and indefinite detention pending the

12  resolution of his immigration proceedings.

13         On June 6, 2007, the Immigration Judge correctly found that Petitioner's continued

14  detention was "unjustified and unreasonable" in light of the holding in *Tijani* that "the

15  authority of the Attorney General to detain pursuant to 1226(c) applies to the 'expedited'

16  removal of criminal aliens." Doc. 27-2 at 8. Petitioner in this case has been incarcerated for

17  three years and ten months. Four months ago, the Immigration Judge found that Petitioner was

18  not a flight risk or a danger to the community. The Court finds that under the facts of this case,

19  Petitioner's continued detention is not authorized by statute. *See Tijani v. Willis*, 430 F.3d

20  1241 (9th Cir. 2005).

21         IT IS HEREBY ORDERED that Petitioner's Motion for Release under an Order of

22  Supervision (Doc. #35) is granted. The Immigration Judge shall set appropriate conditions of

23  supervision forthwith.

24  DATED:  September 26, 2007

25                                    _William Q. Hayes_
26                                    **WILLIAM Q. HAYES**
                                     United States District Judge

27

28

Westlaw.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
**(Cite as: --- F.Supp.2d ----)**

Martinez v. Gonzales
C.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,C.D.
California,Western Division.
Victor MARTINEZ, Petitioner,
v.
Alberto GONZALES, et al., Respondent.
**No. CV 06-7609 TJH AJW.**

Aug. 17, 2007.

**Background:** Alien, a native and citizen of
Ecuador, petitioned for a writ of habeas corpus,
challenging his detention by the Bureau of
Immigration and Customs Enforcement of the
Department of Homeland Security (ICE) for over
five years pending removal proceedings.

**Holdings:** The District Court, Hatter, J., adopting
the report and recommendation of Wistrich, United
States Magistrate Judge, held that:

(1) the court had jurisdiction to adjudicate the
petition;

(2) detention of the alien was governed by a statute
which authorized the Attorney General to detain
aliens pending a determination of removability;

(3) detention for over five years was excessive and
unauthorized by that statute; and

(4) there was no significant likelihood of removal in
the reasonably foreseeable future, so as to make
continued detention reasonably necessary to bring
about the alien's removal.

Petition granted.

**[1] Habeas Corpus 197 ⟸521**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(C) Relief Affecting Particular Persons
or Proceedings
            197k521 k. Aliens. Most Cited Cases
REAL ID Act of 2005 did not divest the district
court of jurisdiction over a habeas petition brought
by an alien challenging his detention by the Bureau
of Immigration and Customs Enforcement of the
Department of Homeland Security (ICE) for over
five years pending removal proceedings. 28
U.S.C.A. § 2241.

**[2] Habeas Corpus 197 ⟸521**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(C) Relief Affecting Particular Persons
or Proceedings
            197k521 k. Aliens. Most Cited Cases
Although the REAL ID Act of 2005 eliminated
district court jurisdiction over habeas corpus
petitions challenging orders of removal, district
courts retain subject matter jurisdiction over habeas
petitions challenging the legality of an alien's
detention. 28 U.S.C.A. § 2241.

**[3] Habeas Corpus 197 ⟸282**

197 Habeas Corpus
    197I In General
        197I(C) Existence and Exhaustion of Other
Remedies
            197k275 Particular Issues and Problems
                197k282 k. Aliens. Most Cited Cases
Government's appeal from an order granting a
preliminary injunction did not deprive the district
court of jurisdiction to adjudicate the merits of an
alien's habeas petition challenging his detention by
the Bureau of Immigration and Customs
Enforcement of the Department of Homeland
Security (ICE) for over five years pending removal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                   Page 2

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

proceedings. 28 U.S.C.A. § 2241.

**[4] Federal Courts 170B ⊂⇒681.1**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(F) Effect of Transfer and
Supersedeas or Stay
         170Bk681 Effect of Transfer of Cause or
Proceedings Therefor
           170Bk681.1 k. In General. Most Cited
Cases
As a general rule, the filing of a notice of appeal is
an event of jurisdictional significance in that it
confers jurisdiction on the appellate court and
divests the district court of its control over those
aspects of the case involved in the appeal.

**[5] Federal Courts 170B ⊂⇒682**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(F) Effect of Transfer and
Supersedeas or Stay
         170Bk681 Effect of Transfer of Cause or
Proceedings Therefor
           170Bk682 k. Interlocutory or Defective
Appeal. Most Cited Cases
Appeal from an order granting or denying a
preliminary injunction does not divest the district
court of jurisdiction to proceed with the action on
the merits; the merits are not matters involved in the
appeal.

**[6] Aliens, Immigration, and Citizenship 24⊂⇒
466**

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
      24VI(D) Detention, Supervision, and Parole
         24k464 Detention Pending Removal
Proceeding
           24k466 k. Time Limitations. Most
Cited Cases
Detention of an alien for over five years pending
removal proceedings was governed by a statute
which authorized the Attorney General to detain
aliens pending a determination of removability, and
made detention mandatory if the alien committed

criminal offenses falling within its reach, rather than
a statute that authorized the Attorney General to
detain aliens during, and in certain circumstances
beyond, a "removal period," but provided that if a
court ordered a stay of removal, the removal period
did not begin until the date of the court's final order;
that date had not arrived, and thus, the removal
period referred to by the latter statute had not
begun. Immigration and Nationality Act, § 236(c), 8
U.S.C.A. § 1226(c); Illegal Immigration Reform
and Immigrant Responsibility Act of 1996, §
305(a)(1)(B)(ii), 8 U.S.C.A. § 1231(a)(1)(B)(ii).

**[7] Aliens, Immigration, and Citizenship 24⊂⇒
466**

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
      24VI(D) Detention, Supervision, and Parole
         24k464 Detention Pending Removal
Proceeding
           24k466 k. Time Limitations. Most
Cited Cases
Detention of an alien by the Bureau of Immigration
and Customs Enforcement of the Department of
Homeland Security (ICE) for over five years
pending removal proceedings was excessive and
unauthorized by the controlling statute, which
authorized the Attorney General to detain aliens
pending a determination of removability and made
detention mandatory if the alien committed criminal
offenses falling within its reach, despite a claim that
the alien had "acted to prevent his removal" by
filing two petitions for review and by obtaining a
stay of removal. Immigration and Nationality Act, §
236(c), 8 U.S.C.A. § 1226(c).

**[8] Aliens, Immigration, and Citizenship 24⊂⇒
466**

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
      24VI(D) Detention, Supervision, and Parole
         24k464 Detention Pending Removal
Proceeding
           24k466 k. Time Limitations. Most
Cited Cases
There was no significant likelihood of removal of
an alien in the reasonably foreseeable future, so as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                          Page 3

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

to make his continued detention for more than five years reasonably necessary to bring about his removal, and thus, continued detention was not statutorily authorized and he was entitled to release; even though his petition for review at some point would be adjudicated, there was no timetable or date for disposition of his petition or for effectuating his removal if he lost. Immigration and Nationality Act, § 236(c), 8 U.S.C.A. § 1226(c).

Ahilan T. Arulanantham, Peter J. Eliasberg, Ranjana Natarajan, Los Angeles, CA, Cecillia D. Wang, Monica M. Ramirez, San Francisco, CA, Jayashri Srikantiah, Stanford, CA, Judy Rabinovitz, New York City, for Petitioner.
Robert I. Lester, Los Angeles, CA, for Respondent.

HATTER, District Judge.
*1 Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the entire record in this action, the attached Report and Recommendation of Magistrate Judge ("Report"), and the objections thereto. Good cause appearing, the Court concurs with and adopts the findings of fact, conclusions of law, and recommendations contained in the Report after having made a *de novo* determination of the portions to which objections were directed.

IT IS SO ORDERED.

WISTRICH, United States Magistrate Judge.
Petitioner, a native and citizen of Ecuador, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"). Petitioner is challenging his detention by the Bureau of Immigration and Customs Enforcement of the Department of Homeland Security ("ICE") for over four years while removal proceedings have been pending against him. Respondents filed an amended answer to the petition ("Answer"), and petitioner filed a traverse ("Traverse").

Proceedings

The procedural history of this case is lengthy, and it is unnecessary to describe that history in full here. [ *See* Petition 5-9; Answer 2-10]. Briefly summarized, the procedural facts relevant to this petition are as follows.

Petitioner was admitted to the United States as a lawful permanent resident on July 19, 1970, at age 14, and he has resided in the Los Angeles area for over 36 years. [Petition 5 & Ex. 1; Answer, Ex. 1]. Petitioner has multiple criminal convictions. [Petition 5; Answer 3 & Ex. 1]. On or about September 4, 2002, petitioner was taken into custody by the Immigration and Naturalization Service ("INS").[FN1] Based on convictions for possession of a controlled substance in 1987, second-degree burglary in 1996, and petty theft in 2001, petitioner was charged with removability for convictions of crimes involving moral turpitude and an aggravated felony. [Petition 5, 7-8; Answer 4 & Ex. 4].

On November 1, 2002, shortly after petitioner was taken into custody by ICE, an immigration judge (" IJ") denied petitioner's application for release on bond. [Petition 5 & Ex. 2].

On November 5, 2002, an IJ ordered petitioner removed to Ecuador. [Petition 8; Answer 4 & Ex. 7]. The BIA summarily affirmed the IJ's removal order on July 30, 2003. [Petition 8; Answer 4 & Ex. 8].

Petitioner filed a pro se petition for review of his removal order in the Ninth Circuit on August 22, 2003. A stay of removal was issued. The Ninth Circuit dismissed the petition for lack of jurisdiction, and the United States Supreme Court denied his petition for certiorari. The stay of removal was lifted on March 31, 2005. [Petition 8 n. 5; Answer 4-5].

On October 28, 2004, after petitioner had been detained for more than two years, ICE conducted a " file custody review" without a hearing. ICE issued a decision continuing petitioner's detention on December 1, 2004. About a year later, a second file custody review was conducted. On December 8, 2005, after petitioner had spent more than three

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

years in ICE custody, ICE issued another decision continuing petitioner's detention. [Petition 6 & Exs.3-6; Answer 10 & Exs. 43, 45].

*2 Petitioner challenged his removal order in a pro se habeas petition filed in the United States District Court for the Southern District of California (where he was incarcerated) on March 7, 2005.FN2 [Petition 8; Answer 6 & Exs. 22-23]. The district court issued a stay of removal on March 23, 2005 " pending the final determination of this matter," and it denied the government's motion to vacate the stay. [Answer 6-7, Ex. 25 at 154, Ex. 26]. On June 30, 2005, the district court held that it lacked subject matter jurisdiction over the petition pursuant to the Real ID Act of 2005.FN3It ordered the petition transferred to the Ninth Circuit Court of Appeals, where it was filed and remains pending. [ See Martinez v. Gonzales, No.05-73975 (9th Cir. filed July 5, 2005); Answer, Ex. 28]. On November 21, 2005, the Ninth Circuit granted petitioner's request for a stay of removal, and the stay has not been vacated. [Answer, Ex. 28 at 164].

On June 27, 2005, petitioner filed a pro se habeas petition challenging his detention in the United States District Court for the Southern District of California (where he was still incarcerated). The district court erroneously held that it lacked jurisdiction and transferred the petition to the Ninth Circuit Court of Appeals, which remanded the petition back to the district court in an order filed January 30, 2006. [Petition 7; Answer 7 & Exs.29-31]. The district court did not reach the merits of petitioner's challenge to the legality of his detention because, after his petition was transferred back to the district court, petitioner's motion for voluntary dismissal was granted. [See Martinez v. Gonzales, No. CV05-1307 JM (AJB) (S.D. Cal. filed October 17, 2006); Answer 7 & Exs. 29, 32]. Petitioner voluntarily dismissed that petition because he had joined as a co-petitioner in a habeas petition filed in this court challenging prolonged immigrant detention. That case was dismissed without prejudice to petitioner as improperly joined. [See Petition 7 & n. 4; see also Mussa v. Gonzales, No.CV-062749 TJH (JTL) (C.D.Cal. October 17, 2006) ].

Having obtained counsel, petitioner filed this petition challenging the legality of petitioner's detention on November 30, 2006. Petitioner filed a motion for a preliminary injunction, which was granted by District Judge Hatter on January 3, 2007. He ordered that petitioner be "afforded an individual hearing before an immigration judge concerning whether his prolonged detention is justified" and that petitioner be "released on reasonable conditions unless the government shows by clear and convincing evidence that [he] presents a sufficient danger or risk of flight to justify his detention in light of how long he has been detained already and the likelihood of his case being finally resolved in favor of the government in the reasonably foreseeable future."[Order filed January 3, 2007].

Pursuant to District Judge Hatter's order, a bond hearing was conducted before IJ D.D. Sitgraves, who ordered petitioner released on $10,000 bond in a written decision dated February 8, 2007. [Petitioner's Supplemental Memorandum filed May 21, 2007 ("Petitioner's Suppl. Mem."), Ex. B]. The IJ found that the government "has failed to justify [petitioner's] prolonged detention. The government has failed to meet its burden of proof establishing by clear and convincing evidence that [petitioner] presents a sufficient danger or flight risk." [Petitioner's Suppl. Mem., Ex. B at 5]. The IJ concluded that he could not "reasonably speculate" about the likelihood of petitioner's case being finally resolved in favor of the government in the reasonably foreseeable future because he was only " provided with speculation during this hearing as to how long it would take" to finally resolve petitioner's pending petitions before the Ninth Circuit. [Petitioner's Suppl. Mem., Ex. B at 5].

*3 Petitioner posted bond and was released on February 12, 2007. [Petitioner's Suppl. Mem., Ex. B; Joint Status Report filed February 26, 2007 at 1]. The government has appealed that order to the Board of Immigration Appeals ("BIA"), where it remains pending. [Petitioner's Suppl. Mem. 1]. In addition, the government filed an appeal in the Ninth Circuit from this court's order granting petitioner's request for a preliminary injunction. That appeal is pending. [See MARTINEZ v.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
**(Cite as: — F.Supp.2d ----)**

*GONZALES,* No.07-55332, 2007 WL 1508308 (9th Cir.2007) ].

In their joint status report, the parties state that there are no factual disputes and that two legal issues remain to be resolved. [Joint Status Report filed February 26, 2007 at 1-2]. The first legal issue is whether petitioner was detained under 8 U.S.C. § 1226, as petitioner contends, or under 8 U.S.C § 1231, as respondents contend. The second legal issue is whether petitioner must be released immediately, as petitioner contends, or alternatively must be given either a hearing before an IJ or, as respondents contend, a paper "file custody review" to determine whether his detention is justified. The parties jointly requested that this court adjudicate the merits of the habeas petition. [Joint Status Report filed February 26, 2007 at 2].

### Discussion

### Subject matter jurisdiction

Before addressing the disputed issues identified by the parties, the court must consider whether it has jurisdiction to reach the merits of the petition. *See Nadarajah v. Gonzales,* 443 F.3d 1069, 1075 (9th Cir.2006)(holding that although neither party had raised the question of the court's jurisdiction to consider a § 2241 petition, the court "was obligated to consider it *sua sponte* ")(citing *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 300-302, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984)).

### (1) Applicability of REAL ID Act of 2005

[1][2] The first jurisdictional issue presented in this case is whether the REAL ID Act of 2005 divests this court of jurisdiction over the petition. Although the REAL ID Act of 2005 eliminated district court jurisdiction over habeas corpus petitions challenging orders of removal, *see Puri,* 464 F.3d at 1041, district courts retain subject matter jurisdiction over section 2241 petitions challenging the legality of an alien's detention. *See Nadarajah,* 443 F.3d at 1075 ("By its terms, the

jurisdiction-stripping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that do not involve final orders of removal. "). The Ninth Circuit so held when it granted the government's motion to remand back to the United States District Court for the Southern District of California a section 2241 petition petitioner filed in that court challenging the legality of his detention by ICE. *See Martinez-Jaramillo v. Gonzales,* No.05-75161 (9th Cir. January 20, 2006) (unpublished order); Answer, Ex. 31. In *Martinez-Jaramillo,* the Ninth Circuit held that the district court erred in transferring the petition to the court of appeals pursuant to the REAL ID Act of 2005 because the petition "challenged [petitioner's] detention, not a final order of removal."Answer, Ex. 31 (citing *Zadvydas v. Davis,* 533 U.S. 678, 687-688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (holding that " § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to" detention after the 90-day "removal period" defined in 8 U.S.C. 1231(a)(1)) and *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)(holding that habeas jurisdiction under section 2241 was not repealed by the Antiterrorism and Effective Death Penalty Act of 1996 or the Illegal Immigration Reform and Immigrant Responsibility Act of 1996)).

*\*4 Accordingly, this court has jurisdiction under section 2241 to consider petitioner's challenge to the lawfulness of his detention by ICE.

### (2) Effect of appeal from order granting preliminary injunction

[3][4][5] The second jurisdictional issue presented by this case is the effect of the government's appeal from the order granting a preliminary injunction on this court's jurisdiction to adjudicate the merits of the petition. As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance-it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal. "*Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam); *see G & M, Inc. v. Newbern,* 488 F.2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

Page 6

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

742, 746 (9th Cir.1973)("We have held that jurisdiction over a case is immediately transferred to the court of appeals upon the filing of a sufficient notice of appeal 'with respect to any matters involved in the appeal.'") (quoting 9 J. Moore, Federal Practice ¶ 203.11 (2d ed.1971)) (emphasis added). However, "an appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits-I. e., the merits are not matters 'involved in the appeal.' "*G & M, 488 F.2d at 746;see Webb v. GAF Corp., 78 F.3d 53, 55 (2d Cir.1996)(per curiam)(holding that although the filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed, the appeal of a preliminary injunction did not divest the district court of jurisdiction to enter a permanent injunction).

Accordingly, the government's appeal of the preliminary injunction order does not preclude this court from issuing a ruling on the merits of the petition, as both parties have requested.

**Controlling detention statute**

[6] Petitioner contends that his detention is governed by 8 U.S.C. § 1226. [See Petition 2-3 & n. 3; Traverse 2; Joint Status Report 1].Section 1226(a) states that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and that the Attorney General may elect to continue to detain the arrested alien or release the alien subject to certain conditions. See8 U.S.C. § 1226(a) & (c).Section 1226(c)(1)(B) provides that where an alien "is deportable by reason of having committed" two or more crimes involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii) or an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), "the Attorney General shall take" the alien into custody. Because petitioner is prima facie removable by virtue of his criminal convictions, the applicable provision is section 1226(c).

The government contends that petitioner's detention is controlled by 8 U.S.C. § 1231(a). [See Answer

10-11; Joint Status Report 1].Section 1231(a) states that except as otherwise provided in that section, " when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')....[¶] During the removal period, the Attorney General shall detain the alien."8 U.S.C. § 1231(a)(1)(A) & (C). Aliens who are removable by reason of having committed two or more crimes of moral turpitude or an aggravated felony, or who have been " determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period ...."8 U.S.C. § 1231(a)(6). If, however, "the removal order is judicially reviewed and if a court orders a stay of the removal of the alien," the removal period begins on "the date of the court's final order."8 U.S.C. § 1231(a)(1)(B)(ii).

*5 Petitioner's position is correct. It is undisputed that a petition for review of petitioner's final order of removal is pending before the Ninth Circuit, and that a stay of removal remains in effect. Section 1231 authorizes the Attorney General to detain aliens during, and in certain circumstances beyond, the "removal period," but if a court orders a stay of removal, the removal period does not begin until " the date of the court's final order."8 U.S.C. § 1231(a)(1)(B)(ii). Because that date has not arrived, the removal period has not begun, and therefore section 1231 does not govern petitioner's detention.

Section 1226, on the other hand, authorizes the Attorney General to detain aliens pending a determination of removability, and it makes detention mandatory if the alien has committed criminal offenses that fall within its reach. Where, as here, the statutory removal period has not yet begun, an alien who has been charged with removability as a criminal alien is detained under section 1226. See Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir.2005)(reversing and remanding with instructions to release the petitioner, who been detained pending appeal for two years and eight months under section 1226(c), on bail unless an IJ determined after a hearing that the government had proved that the petitioner was flight risk or a danger to the community); see also Tijani, 430 F.3d at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
**(Cite as: — F.Supp.2d —)**

1243-1250 & n. 7 (Tashima, J., concurring)(noting that the petitioner was detained under section 1226 because "this court has stayed his removal pending its review of the BIA's decision" and therefore the petitioner "has not entered his 90-day removal period under" section 1231(a)); *Kothandaraghipathy v. Department of Homeland Sec.*, 396 F.Supp.2d 1104, 1107 (D.Ariz.2005) (holding that because the Ninth Circuit had granted the petitioner a stay of removal, his current detention is pursuant to the pre-removal order detention statute, 8 U.S.C. § 1226, rather than the post-removal order detention statute, 8 U.S.C. § 1231).[FN4] Accordingly, the issue is whether petitioner is entitled to relief from his detention pursuant to section 1226, and if so, the nature of that relief.[FN5]

### Legality of petitioner's detention under section 1226(c)

[7] Relying on the principles articulated by the Ninth Circuit in *Nadarajah*, petitioner argues that he is entitled to immediate release from detention because "his prolonged and indefinite detention" is not authorized by section 1226(c). In *Nadarajah*, the Ninth Circuit ordered released from detention an alien who had been detained pursuant to "the general immigration detention statutes," 8 U.S.C. §§ 1225(b)(1)(B)(ii) and (b)(2)(A), for more than five years pending a final determination of removability. [FN6]The petitioner remained in detention "without any established time line for a decision on when he may be released from detention."*Nadarajah*, 443 F.3d at 1075-76.

"[C]onsistent with the construction given by the Supreme Court to similar statutes," the Ninth Circuit held that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period." *Nadarajah*, 443 F.3d at 1078 (citing *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491).[FN7] Rather, *6 the detention must be for a reasonable period, and only if there is a "significant likelihood of removal in the reasonably foreseeable future. After a presumptively reasonable six-month detention, once the alien provides good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."

*Nadarajah*, 443 F.3d at 1079-80 (quoting *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491).

The Ninth Circuit concluded that its statutory construction analysis in *Nadarajah* was "bolstered by considering the immigration statutes as a whole," and in particular by reference to Patriot Act provisions authorizing the detention of suspected terrorists or "other carefully defined categories" of aliens for more than six months, subject to specific limitations and procedural protections not provided for in the "general immigration detention statutes." *Nadarajah*, 443 F.3d at 1078-1080.

Characterizing "the six-month period as the touchstone of reasonableness," the Ninth Circuit observed that "the Supreme Court has given further guidance as to what it considers to be a 'reasonable' length of detention for aliens" convicted of a crime and detained under section 1226(c) pending a determination of removability. *Nadarajah*, 443 F.3d at 1080 (citing *Demore v. Kim*, 538 U.S. 510, 513, 529-531, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)). In *Demore*,"the Supreme Court held that the government could detain aliens who had been convicted of a crime for 'the brief period necessary for their removal proceedings,' " and although the alien in that case "had been detained for over six months, which was 'somewhat longer than average,' " the Supreme Court "viewed that 'temporary' confinement as permissible."*Nadarajah*, 443 F.3d at 1080 (quoting *Demore*, 538 U.S. at 530-531, 123 S.Ct. 1708);*see also Nadarajah*, 443 F.3d at 1081 & n. 4 (concluding that "[t]here is no indication anywhere in *Demore* that the Court would countenance an indefinite detention," and noting that "references to the brevity and limited nature of the confinement are found throughout"*Demore* ). The Ninth Circuit reasoned that the petitioner's detention in *Nadarajah* was "more akin to the situation in *Zadvydas*," which involved " 'indefinite' and 'potentially permanent' " detention. *Nadarajah*, 443 F.3d at 1080 (quoting *Zadvydas*, 533 U.S. at 690-691, 121 S.Ct. 2491)."Nonetheless,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                          Page 8

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

*Demore* endorses the general proposition of 'brief' detentions, with a specific holding of a six-month period as presumptively reasonable."*Nadarajah,* 443 F.3d at 1080.Thus, "[a] detention of nearly five years-ten times the amount of time the Supreme Court has considered acceptable absent a special showing-is plainly unreasonable under any measure, " including section 1226(c).*Nadarajah,* 443 F.3d at 1080.

*Nadarajah* does not cite *Tijani's* brief opinion holding unlawful an alien's prolonged detention under section 1226, but the holdings of the two cases are consistent. To avoid deciding the constitutionality of section 1226(c) as applied to the petitioner in that case, who had been detained for more than two years and eight months pending a direct appeal of his order of removal, *Tijani* construed the
**\*7** the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens. Two years and eight months of process is not expeditious; and the foreseeable process in this court, where the government's brief in Tijani's appeal of the removal was only filed last month after two extensions of time, is a year or more.

*Tijani,* 430 F.3d at 1242.*Tijani* held that the petitioner was entitled to release unless the government provided him with a bond hearing and established that he was a flight risk or a danger to the community. *Tijani,* 430 F.3d at 1242.**FN8**In a concurring opinion examining the merits of the petitioner's claims, Judge Tashima concluded, among other things, that the petitioner was entitled to be released because his detention was unreasonable under *Demore* and *Zadvydas.*See *Tijani,* 430 F.3d at 1249-1250 (Tashima, J., concurring).

The government contends that *Nadarajah* does not control because it is limited to its facts or its facts are distinguishable, and because it arose under a different detention statute. [*See* Answer 12-19; Joint Status Report 2-3].*Nadarajah* involved an alien who, like petitioner, had been detained for five years, but unlike petitioner, the petitioner in *Nadarajah* enjoyed rare success at the administrative level by winning relief from removal

from the IJ and the BIA. His case had been referred to the Attorney General for review, but his successful applications for relief made his removal unlikely, and he had not filed any court appeals which even arguably prolonged his detention. The government, however, never persuasively explains why that difference matters.

The Ninth Circuit did not limit its holding in *Nadarajah* to the facts of that case or otherwise indicate that it was crafting a rule of limited application because of the relatively unusual posture of the petitioner's application for relief from removal. Instead, it relied upon principles of statutory construction in light of existing Supreme Court authority to hold that the "general immigration detention statutes" do not authorize indefinite detention, and that an alien detained under those statutes beyond the presumptively reasonable six-month period is entitled to release with appropriate conditions when the government does not rebut the alien's showing that his removal is not reasonably foreseeable. *See Nadarajah,* 443 F.3d at 1079-1080, 1084.It concluded that because the petitioner in *Nadarajah* had shown that his removal was improbable, and because his case had been referred to the Attorney General with no timetable for a decision, he had succeeded in showing that his removal was not reasonably foreseeable, and the government had not rebutted that showing. That conclusion, coupled with "the unreasonable length" of the petitioner's detention up to that point, justified his immediate supervised release. *Nadarajah,* 443 F.3d at 1082.

Under *Nadarajah,* petitioner's continued prolonged detention is not authorized by the statute under which he is detained. Like the petitioner in *Nadarajah,* petitioner has been detained for more than five years, much longer than the six-month period described by the Ninth Circuit as presumptively reasonable under the general immigration detention statutes. *See Nadarajah,* 443 F.3d at 1080 ("A detention of nearly five years-ten times the amount of time the Supreme Court has considered acceptable absent a special showing-is plainly unreasonable under any measure."); *Tijani,* 430 F.3d at 1242 (holding that a detention of over two years and eight months was not within the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                    Page 9

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
(Cite as: — F.Supp.2d ----)

authority conferred by section 1226(c)).

*8 The government also argues that *Nadarajah* is distinguishable for other reasons. Unlike the petitioner in *Nadarajah*, who was detained under section 1225(b), petitioner's detention is governed by section 1226(c). As explained above, however, the Ninth Circuit's reading of *Demore* in *Nadarajah* indicates that section 1226(c), like section 1225(b), should be construed to prohibit indefinite detention and to contain the same reasonableness limitations on detention as section 1225(b). The Ninth Circuit interpreted *Demore* to stand for the proposition that a "brief" detention of no more than six months is presumptively reasonable for aliens detained under section 1226(c).*See Nadarajah*, 443 F.3d at 1080-1081 & n. 4. Although section 1226(c) makes the pre-removal period detention of "criminal aliens" mandatory, section 1226(c) is not one of the specialized provisions authorizing the detention for longer than six months of terrorists and other national security threats which the Ninth Circuit distinguished from the "general immigration detention statutes" subject to the reasonableness limitations described in *Nadarajah*.

The government also contends that the length of petitioner's detention should not weigh in favor of his release because he "has acted to prevent his removal" by filing two petitions for review and by obtaining a stay of removal. Respondents argues that these acts suspend or toll the removal period under 8 U.S.C. § 1231(a)(1)(C) and therefore that petitioner's continued detention is authorized. [*See* Answer 10-12].

Section 1231 governs the detention during and after the "removal period" of aliens who have been ordered removed. For the reasons explained above, petitioner's removal period has not begun, and petitioner's detention is governed not by section 1231 but by section 1226. Because the removal period has not yet begun, petitioner's direct appeals and issuance of a stay of removal cannot have suspended or tolled that period under section 1231(a)(1)(C).

Even if section 1231 applied to petitioner's case, it expressly authorizes extending the removal period

and an alien's detention beyond 90 days only "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."8 U.S.C. § 1231(a)(1)(C). Nothing in that statutory language suggests that an alien's exercise of his right to seek judicial review of an order of removal qualifies as "conspir[ing] or act[ing] to prevent" his removal within the meaning of the statute, which, which specifically applies to aliens who fail or refuse to act in "good faith" in effecting their removal. Moreover, "the word 'conspires' connotes secret, improper or unlawful action," and thus the remaining text of this section "imbue[s the phrase] 'acts to prevent' with a tincture of bad faith, dishonesty, or improper behavior," rather than contemplating additional detention for "an alien from seeking legal avenues of relief in a court of competent jurisdiction."*Arevalo v. Ashcroft*, 260 F.Supp.2d 347, 349 (D.Mass.2003)(holding that an alien who "simply exercised her statutory rights" by seeking a stay of deportation pending appeal did not "act to prevent" her removal under section 1231(a)(1)(C), and collecting cases); *see, e.g., Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir.2003) (holding that the "proscription against indefinite detention articulated in"*Zadvydas* did not apply to detention under section 1231(a)(1)(C) where the petitioner's detention was indefinite only because he refused to cooperate with efforts to effect a removal order by "steadfastly refus[ing] to fill out" a Polish passport application and providing conflicting information regarding his name and background, and concluding that a detainee "cannot argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock"); *Lema v. I.N.S.*, 341 F.3d 853, 854 (9th Cir.2003)(holding that an alien subject to a removal order who misrepresented his nationality to a consular official when applying for travel documents and refused to reapply "cannot meet [his] burden to show there is no significant likelihood of removal in the reasonably foreseeable future," and that the alien's continued detention therefore was authorized under section 1231(a)(1)(C)).

*9 In addition, it would be anomalous and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

inconsistent to conclude that seeking judicial review and obtaining a stay of removal are "acts to prevent" removal that can lead to *suspension* of the removal period under section 1231(a)(1)(C) when the preceding paragraph of the same statute· expressly provides that "if a removal order is judicially reviewed" and "if a court orders a stay of removal," the removal period *does not even begin* until that process is complete, on the date the court issues its final order. 8 U.S.C. § 1231(a)(1)(B)(ii).

When an alien petitions for judicial review of a removal order, it is virtually certain that his or her appeal will delay removal by some period of time even if it does not succeed in preventing it, but to suggest that the petitioner therefore "holds the keys" to his release from detention ignores the reality that the petitioner's conduct is merely one factor among many ·that affects the length of the judicial review process. For example, petitioner filed a pro se habeas petition challenging his detention in the Southern District of California in June 2005. [*See* Answer 7 & Exs. 29-30]. In August 2005, apparently over petitioner's objection, the district court sua sponte transferred the petition-erroneously, as it turned out-to the Ninth Circuit, which transferred it back in January 2006. [ *See* Answer 7 & Exs. 29, 31]. Any delay caused by that transfer was not petitioner's doing. *See Ly v. Hansen,* 351 F.3d 263, 272 (6th Cir.2003) (explaining, in a case involving detention of a criminal alien under section 1226(c), that "appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.").

Respondents also asserts that petitioner's habeas petitions and petitions for review were frivolous and were filed to "stall" or "stymie" efforts to remove him. [Answer 15]. A court must "be sensitive to the possibility" that a removable alien may engage in " dilatory tactics" in order to "compel a determination " that his detention was unreasonably long. *Ly,* 351 F.3d at 272 (noting that the alien's application for

relief from removal and his need for a rescheduled hearing were partly responsible for prolonging his detention, but that those filings did not justify the overall length of detention). Here, however, the government's characterization of petitioner's court filings as merely frivolous vehicles to delay removal is conclusory and unsupported by citation to specific filings or court rulings in his cases showing that ·petitioner engaged in delay tactics. For one thing, not all of petitioner's court cases challenged his removal or detention or included a stay of removal, so in those instances he cannot be said to have "stalled" his removal or caused his own detention. [*See* Petition 8 & n. 5; Travers 3, 8-9].*Cf. Tijani,* 430 F.3d at 1249 (noting that "while [the petitioner] requested continuances, those occurred early in the process, and have not contributed at all to the year-long delay since the BIA heard his appeal"). Moreover, petitioner twice was successful in obtaining a stay of removal. The issuance of stays by the district court and Ninth Circuit belies the government's contention that his petitions were frivolous. A stay of removal is not automatic; it is granted only if the petitioner shows either the probability of success on the merits and the possibility of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in the petitioner's favor. *See Andreiu v. Ashcroft,* 253 F.3d 477, 484-484 (9th Cir.2001)(en banc); *Abbassi v. I.N.S.,* 143 F.3d 513, 514 (9th Cir.1998). [*See* Answer, Ex. 25 (Order Staying Removal) ].

*10 [8] In sum, petitioner has shown that his detention for five years was excessive and unauthorized by the controlling statute, section 1226(c). The remaining question is whether petitioner has "provid[ed] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," making his continued detention "reasonably necessary to bring about" his removal. If so, the government must respond with evidence sufficient to rebut that showing. *See Zadvydas,* 533 U.S. at 689-690, 699, 121 S.Ct. 2491;*Nadarajah,* 443 F.3d at 1079-1080.

Petitioner contends that his removal is not reasonably foreseeable for two reasons. First, he argues that the Ninth Circuit may well reverse his

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                            Page 11

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

removal order or remand his case for further administrative proceedings because his petition for review advances substantial, meritorious arguments that the IJ erred in ruling that petitioner's 1996 conviction for second-degree burglary under California law was an aggravated felony and by holding that he was ineligible for relief from removal. [*See* Petition 11]. Second, petitioner argues that regardless of the likelihood of prevailing on his petition for review, his removal is not significantly likely to happen in the foreseeable future because there is no time frame for a decision by the Ninth Circuit, which relied partly on the absence of a timetable for decision in *Nadarajah* to conclude that there was no significant likelihood of removal in the reasonably foreseeable future. *See Nadarajah,* 443 F.3d at 1081.Those reasons are sufficient to show that petitioner's removal is not reasonably foreseeable.

The government has made no attempt to respond to petitioner's contentions regarding the merits of his pending petition for review. The government maintains that petitioner's "removability is not in doubt," but that assertion is based on petitioner's history of past pro se filings, rather than on any specific evaluation of, or argument regarding, the merits of his pending petition before the Ninth Circuit, where petitioner is now represented by counsel. [Answer 19]. The government points out that petitioner does not have the benefit of having " won at every administrative level" and of having " won relief denied 98% of applicants" for asylum, like the petitioner in *Nadarajah.*[*See* Answer 14]. Although the petitioner's success before the agency in *Nadarajah* was a "powerful indicator of the improbability of his foreseeable removal," he was not guaranteed relief from removal because "the ultimate decision on whether to grant asylum [was] committed to the Attorney General's discretion ...." *Nadarajah,* 443 F.3d at 1081.Furthermore, the Ninth Circuit did not suggest that the rare success enjoyed by the petitioner in *Nadarajah* was a prerequisite for demonstrating the absence of a significant likelihood of removal in the reasonably foreseeable future.

The government does not attempt to argue that there is a timetable for decision by the Ninth Circuit

regarding petitioner's petition for review, nor could it credibly do so. According to the docket sheet available on PACER for *Martinez v. Gonzales,* No. 05-73975 (9th Cir. filed July 5, 2006), the petition for review was transferred to the Ninth Circuit and filed in that court nearly two years ago. Petitioner's opening brief was filed on December 30, 2005, and his reply brief was filed on May 25, 2006. On November 28, 2006, about six months after briefing had been completed, petitioner's counsel filed a notice of appearance, and the court ordered replacement briefing rather than supplemental briefing. Both parties subsequently filed unopposed motions for extensions in the replacement briefing schedule. The government's answering brief was filed on June 11, 2007, and petitioner's reply brief is due on July 12, 2007.

*11 In *Nadarajah,* the Ninth Circuit rejected the government's argument that the petitioner was not being held indefinitely because, even though the Attorney General "will someday review [the petitioner's] case, and 'his detention will at some point end,' [n]o one can satisfactorily assure us as to when that day will arrive. Meanwhile, petitioner remains in detention."*Nadarajah,* 443 F.3d at 1081. In *Tijani,* the court ordered the petitioner to be released or provided a bail hearing where he had been detained under section 1226(c) for more than two years and eight months, his petition for review was pending, the government had filed its answering brief only a month earlier, and "the foreseeable process in this court ... is a year or more. "*Tijani,* 430 F.3d at 1242.The circumstances of this case are analogous because even though petitioner's petition for review at some point will be adjudicated, there is no timetable or date for disposition of his petition or for effectuating his removal if he loses. Petitioner's removal therefore is not reasonably foreseeable, and his continued detention is not reasonably necessary to effect his removal.

Because petitioner obtained a preliminary injunction granting him a bond hearing and was released on bond following a hearing before an IJ, the government's request that any review of his detention be limited to a file custody review is moot. The government's contention that petitioner

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                  Page 12

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

should not be released because he is a flight risk or poses a danger to the community are unpersuasive in light of the IJ's conclusion that the government failed to meet its burden of proof to establish by clear and convincing evidence that petitioner presents a sufficient danger or flight risk. Specifically, the IJ found that petitioner's dangerousness did not justify prolonging his detention because (1) he presented sufficient evidence of rehabilitation since his re-incarceration in 2002; (2) he has plans for future counseling with his sister, and (3) he has not been convicted of any violent crimes. [Petitioner's Suppl. Mem., Ex. B at 5]. The IJ found that the evidence of flight risk did not justify prolonging petitioner's detention because (1) petitioner's entire family and his daughter reside in the United States; (2) he has no family in Ecuador; (3) he appeared for all of his prior criminal proceedings and immigration proceedings; and (4) although petitioner "was clearly adverse" to the possibility of leaving the United States, bond could be set in an amount that would reasonably ensure his appearance. [Petitioner's Suppl. Mem., Ex. B at 5].

Petitioner's continued detention is not authorized by statute, and therefore he is entitled to release.


### Conclusion

It is recommended that the petition be granted, and that petitioner be released on the conditions already imposed by the IJ's order dated February 8, 2007.


FN1. The INS was abolished on March 1, 2003, and its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107-296, § 471, 116 Stat. 2135, 2205 (2002). References to ICE include the INS.

FN2.

FN3. On May 11, 2005, the REAL ID Act of 2005, Pub.L. 109-13, Div. B, 119 Stat. 231 (2005) was signed into law. Among other things, the REAL ID Act amended

section 242 of the INA, 8 U.S.C. § 1252(a)(5), so as to "eliminate[ ] district court habeas corpus jurisdiction over orders of removal and vest[ ] jurisdiction to review such orders exclusively in the courts of appeals."*Puri v. Gonzales,* 464 F.3d 1038, 1041 (9th Cir.2006)(citing *Martinez-Rosas v. Gonzales,* 424 F.3d 926, 928-929 (9th Cir.2005)).

FN4. This conclusion also is consistent with the Ninth Circuit's order affirming the dismissal of a prior habeas petition filed by petitioner alleging that the IJ denied him due process by failing properly to consider mitigating evidence at his bail hearing. *See MartinezJaramillo v. Thompson,* No. 03-56282, 2005 WL 96538, at *1 (9th Cir.2005). The Ninth Circuit declined to decide whether petitioner "was held under section 1226(c) or section 1231(a)(2). It also declined to decide whether the recall of its mandate dismissing petitioner's petition for direct review of his order of removal pending resolution of his petition for writ of certiorari "stalled" the beginning of the removal period. It held, however, that even if the Attorney General's authority to detain petitioner under section 1231(a)(2) had been " withdrawn" on account of the recall of the mandate, petitioner was still subject to mandatory detention under section 1226(c). *Martinez-Jaramillo,* 2005 WL 96538, at *2-3.

FN5. This conclusion obviates the need to consider petitioner's contention that his detention is unlawful even if section 1231 governs his detention.

FN6. In pertinent part, section 1225(b)(1)(B)(ii) states that "[i]f the [asylum] officer determines at the time of the interview [upon arrival in the United States] that an alien has a credible fear of persecution ..., the alien shall be detained for further consideration of the application for asylum," and section 1225(b)(2)(A)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under 8 U.S.C. § 1229a."

FN7. In *Zadvydas*, the Supreme Court reasoned that a statute permitting indefinite detention of an alien would raise a serious constitutional problem under the Fifth Amendment's Due Process Clause. Applying the constitutional avoidance doctrine in order to avoid this potential problem, *Zadvydas* held that § 1231(a)(6), read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal and does not permit indefinite detention. *Zadvydas* then concluded that once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6) ]....[¶ ][U]nder *Zadvydas*, a presumptively reasonable period of post-removal detention is limited to six months, and that after this period expires, an alien must be released if there is no significant likelihood of removal in the reasonably foreseeable future.
*Tuan Thai v. Ashcroft*, 366 F.3d 790, 794 (9th Cir.2004)(internal quotation marks and alteration omitted)(citing *Zadvydas*, 533 U.S. at 689-690, 699, 121 S.Ct. 2491).

FN8.*Tijani* is distinguishable from *Nadarajah* in that the latter case ordered the petitioner released on conditions set by the Attorney General, while the former ordered that petitioner be given a bond hearing (or be released if a bond hearing was not timely held). However, it is clear from *Nadarajah* that no useful purpose would have been served by conducting a bond hearing because the court also held that (1) ICE abused its discretion in denying the petitioner parole into the

United States because there was no facially plausible evidence that his detention was in the public interest or that his release posed a risk to national security; (2) humanitarian release was warranted on health grounds because the petitioner's health was deteriorating in custody; and (3) the petitioner also was entitled to release pending appeal under Fed. R.App. P. 23(b) because he had shown both a probability of success on the merits and that the balance of hardships tipped in his favor. *Nadarajah*, 443 F.3d at 1082-1084.

C.D.Cal.,2007.
Martinez v. Gonzales
--- F.Supp.2d ----, 2007 WL 2402737 (C.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                          Page 1

Slip Copy, 2007 WL 2023469 (D.Ariz.)
**(Cite as: Slip Copy)**

**C**
Martinez-Herrera v. Crawford
D.Ariz.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Arizona.
Eduardo MARTINEZ-HERRERA, Petitioner,
v.
Phillip CRAWFORD, ICE Field Office Director,
Respondent.
**No. CV07 0267PHX NVW DKD.**

June 20, 2007.

ORDER
WAKE, J.
*1 Pending before the court is the Supplemental
Report and Recommendation ("SuppR & R") of
Magistrate Judge Duncan (Doc. # 12) regarding
petitioner's Petition for Writ of Habeas Corpus filed
pursuant to 28 U.S.C. § 2241 (Doc. # 1). The
SuppR & R recommends that the Petition be
granted. The Magistrate Judge advised the parties
that they had ten days to file objections to the
SuppR & R. (SuppR & R at 5-6 (citing 28 U.S.C. §
636(b)). No objections were filed.

Because the parties did not file objections, the court
need not review any of the Magistrate Judge's
determinations on dispositive matters. See28 U.S.C.
§ 636(b)(1); Fed.R.Civ.P. 72(b); United States v.
Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir.2003);
Thomas v. Arn, 474 U.S. 140, 149 (1985) ( "[
Section 636(b)(1) ] does not ... require any review
at all ... of any issue that is not the subject of an
objection."). The absence of a timely objection also
means that error may not be assigned on appeal to
any defect in the rulings of the Magistrate Judge on
any non-dispositive matters.Fed.R.Civ.P. 72(a) ("
Within 10 days after being served with a copy of the
magistrate judge's order, a party may serve and file
objections to the order; a party may not thereafter
assign as error a defect in the magistrate judge's
order to which objection was not timely made.");

Simpson v. Lear Astronics Corp., 77 F.3d 1170,
1174 (9th Cir.1996); Philipps v. GMC, 289 F.3d
1117, 1120-21 (9th Cir.2002).

In light of the absence of an objection, and holding
the Respondent to his forfeiture, the court will
accept the Supplemental R & R and grant the
Petition. See28 U.S.C. § 636(b)(1) (stating that the
district court "may accept, reject, or modify, in
whole or in part, the findings or recommendations
made by the magistrate").

IT IS THEREFORE ORDERED that Supplemental
Report and Recommendation of the Magistrate
Judge (Doc. # 12) is accepted.

IT IS FURTHER ORDERED that petitioner's
Petition for Writ of Habeas Corpus filed pursuant to
28 U.S.C. § 2241 (Doc. # 1) is granted.

IT IS FURTHER ORDERED that the Clerk enter
judgment granting the petition and ordering that
Respondent release Petitioner Martinez-Herrera
from custody under an order of supervision, or in
the alternative that the Government, within 60 days
of the date of this order, provide a hearing to
Petitioner Martinez-Herrera before an immigration
judge with the power to grant him bail unless the
Government establishes that he is a flight risk or
will be a danger to the community.

The Clerk shall terminate this action.

DATED this 11th day of July, 2007.


SUPPLEMENTAL REPORT AND
RECOMMENDATION
DUNCAN, Magistrate J.
TO THE HONORABLE NEIL V. WAKE,
UNITED STATES DISTRICT JUDGE:

On February 6, 2007, Eduardo Martinez-Herrera
filed a petition for writ of habeas corpus pursuant to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 2023469 (D.Ariz.)
**(Cite as: Slip Copy)**

28 U.S.C. § 2241, contending that he is not subject to mandatory detention under 8 U.S.C. § 1226(c) and is entitled to a bond redetermination hearing before an immigration judge, because he was taken into custody by the Department of Homeland Security more than five years after he was released from state custody. The Government initially argued that because Martinez-Herrera is now in the 90-day immediate removal period during which his detention is mandated by statute, he is not entitled to habeas relief. On April 26, 2007, the undersigned Magistrate Judge recommended that Martinez-Herrera's petition be denied and dismissed with prejudice. *See* Doc. # 5.

**\*2** In his Objections to the Report and Recommendation and Motion for Reconsideration, Martinez-Herrera clarified that there was no final order of removal, and that his appeal was still pending before the Board of Immigration Appeals. *See* Doc. # 6. The Government admitted the error, and the District Court referred the case for a further Report and Recommendation. The Court recommends that the petition be granted.

## BACKGROUND

Martinez-Herrera is a native and citizen of Guatemala, who entered the United States in 1988 without being admitted or paroled by an immigration officer, and without the permission of the Attorney General (Doc. # 4, Exh 1). On October 25, 1999, he was convicted in Utah County, Utah of Theft by Receiving Stolen Property, Attempted Purchase/Possession of a Dangerous Weapon, and Use/Possession of Drug Paraphernalia. He was sentenced to one year in jail with credit for time served, and was released from custody in 2000.

Over five years after his release from state custody, [FN1] on September 28, 2005, the Department of Homeland Security issued a Notice to Appear, charging Martinez-Herrera with removability pursuant to § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General; § 1182(a)(2)(A)(i)(I), as an alien

convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime; and § 1182(a)(2)(A)(i)(II), as an alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a violation of any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (*Id.*, Exh 3).[FN2]

> FN1. Martinez-Herrera argues that because his "release" from custody for the crime subjecting him to mandatory detention occurred five years ago, § 1226(c) should not apply. Although this is a strong argument, *see Quezada-Bucio v. Ridge,* 317 F.Supp.2d 1221 (W.D.Wash.2004), the Court recommends relief on other grounds.

> FN2. During his removal proceedings, DHS issued a bond determination of "No Bond" (*Id.*, Exh 11). Upon Martinez-Herrera's October 6, 2005 motion for a change in the custody status brought pursuant to 8 C.F.R. § 1236.1(d)(1), the immigration judge determined that he lacked jurisdiction to redetermine custody status (*Id.*, Exh 12). Petitioner moved for bond re-determination on November 13, 2006; the immigration judge again determined that he had no jurisdiction (*Id .*, Exh 13). On appeal, the BIA agreed, citing *Matter of Rojas,* 23 I & N Dec. 117 (BIA 2001). In light of the Court's recommendation, it need not address this issue.

On November 8, 2005, Martinez-Herrera admitted the allegations, and indicated a desire to apply for adjustment of status, asylum, withholding of removal, and protection under the Convention Against Torture (*Id.*, Exh 4, 11/8/05 R.T. at 22-25). On January 26, 2006, the immigration judge determined that Martinez-Herrera was ineligible for a section 212(h) waiver of inadmissibility, or for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 2023469 (D.Ariz.)
(Cite as: Slip Copy)

Page 3

voluntary departure, and denied his applications for adjustment of status, asylum, withholding of removal, and protection under the Convention Against Torture, and ordered him removed to Guatemala (*Id.,* Exh 5 at 5, 7-14).

On appeal, Martinez-Herrera moved to remand to the immigration judge to allow him to consider the application for adjustment of status, on the basis that the state court had amended his controlled substance conviction from "Use/Possession of Drug Paraphernalia" to "Solicitation to Use or Possess Drug Paraphernalia"(*Id.,* Exh 6). On June 12, 2006, the Bureau of Immigration Appeals granted his motion (*Id.,* Exh 7). On September 13, 2006, an immigration judge found that Martinez-Herrera qualified for a section 212(h) waiver and granted his application for adjustment of status (*Id.,* Exh 8). DHS appealed, and the BIA sustained the appeal ( *Id.,* Exh 9).

*3 A review of the Ninth Circuit Docket indicates that on January 23, 2007, Martinez-Herrera filed a Petition for Review and a Motion for Stay; on February 2, 2007, the Ninth Circuit issued a stay of removal. On February 7, 2007, the immigration judge entered an order of removal (*Id.,* Exh 10).[FN3] Martinez-Herrera appealed the order of removal on March 5, 2007; briefing was due by April 12, 2007 (Doc. # 6). The appeal is still pending before the BIA.

FN3. On February 9, 2007, the BIA dismissed Martinez-Herrera's *bond* appeal (Doc. # 14). The Government erred in its initial response in characterizing this as a dismissal of the appeal of the removal order. Based upon that error, the Government contended that the removal period had begun, and that Martinez-Herrera was still within the statutorily authorized 90-day deadline under 8 U.S.C. § 1231(a)(1)(B)(i). Relying on the Government's avowal, the Court recommended dismissal of his petition.

DISCUSSION

During the removal proceedings, beginning on September 28, 2005, when Martinez-Herrera was issued the Notice to Appear, and continuing today because of his appeal pending before the BIA, 8 U.S .C. § 1226(c) governs Martinez-Herrera's detention. Of the 21 months, 80% of the time was spent in detention during administrative proceedings. In *Kim v. Demore,* 538 U.S. 510 (2003), the Supreme Court held that mandatory detention of criminal aliens pursuant to 8 U.S.C. § 1226(c) was constitutional "for the brief period necessary for their removal proceedings."538 U.S. at 512. The alien's detention in *Kim* lasted six months.

In *Tijani v. Willis,* the Ninth Circuit held that "the authority conferred by § 1226 [applies] to expedited removal of criminal aliens."430 F.3d 1241. In *Tijani,* a period of 30 months, including both administrative and court proceedings, was held to be not expeditious. In *Tijani,* two-thirds of the time the alien had been detained was due to the length of the administrative proceedings.[FN4]However, the Ninth Circuit also considered important the fact that "the vast majority of Tijani's detention-over 22 of the nearly 30 months that have so far elapsed-has occurred while the BIA *and this Court* have considered his appeals."*Tijani,* 430 F.3d at 1246 (emphasis added).

FN4."[T]he IJ took almost seven months to issue his decision; the BIA took just short of an additional 13 months."430 F.3d at 1241, n.3 (Tashima, J., concurring).

In this case, 80% of Martinez-Herrera's detention16 months of the 21 months that have so far elapsed-has also occurred during the administrative proceedings (which are still ongoing with no definite termination point). A large portion of the time elapsed occurred as the result of "an *unreasonable* delay by the INS in pursuing and completing deportation proceedings."It is not the " expedited removal" required by *Tijani.*Instead, it has reached the point where it has "become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 2023469 (D.Ariz.)
(Cite as: Slip Copy)

for other reasons."*Kim,* 538 U.S. at 532 (Kennedy, J., concurring).

Finally, this case is unlike *Kim,* where "the detention ... is of a much shorter duration," with "a definite termination point." 538 U.S. at 529. It more closely resembles the situation in *Zadvydas,* where the period of detention was "indefinite" and " potentially permanent." 533 U.S. at 690-91. The amount of time Martinez-Herrera has been detained for the administrative proceedings *is still ongoing,* given the recent remand to the BIA-longer than the proceedings in *Kim,* and even the time period in *Tijani,* with no "definite termination point." [FN5]

    FN5. It is also noteworthy that Martinez-Herrera has been granted relief by one immigration judge in the form of a section 212 waiver of inadmissibility. *See Nadajarjah v. Gonzalez,* 443 F.3d 1069 (9 th Cir.2006).

*4 IT IS THEREFORE RECOMMENDED that Eduardo Martinez-Herrera's petition for writ of habeas corpus be GRANTED (Doc. # 1).

IT IS FURTHER RECOMMENDED that the District Court order Martinez-Herrera's release from custody under an order of supervision, or in the alternative order the Government, within 60 days of the District Court's Order, to provide a hearing to Martinez-Herrera before an immigration judge with the power to grant him bail unless the Government establishes that he is a flight risk or will be a danger to the community.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) , 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file

objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

D.Ariz.,2007.
Martinez-Herrera v. Crawford
Slip Copy, 2007 WL 2023469 (D.Ariz.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 1

Slip Copy, 2007 WL 1670165 (D.Ariz.)
**(Cite as: Slip Copy)**

C
Ali v. Crawford
D.Ariz.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Arizona.
Mohammed ALI, Petitioner,
v.
Phillip CRAWFORD, Field Office Director, ICE;
Alberto Gonzales, Attorney General of the United
States, Respondents.
**No. CV 06-01149-PHX-EHC.**

June 8, 2007.

EARL H. CARROLL, United States District Judge.
**\*1** Petitioner Mohammed Ali filed a Petition for
Writ of Habeas Corpus, arguing that his detention
for four years while his removal proceedings have
been pending is unlawful. (Dkt.1). This matter was
referred to Magistrate Judge Duncan for Report and
Recommendation ("R & R"). Magistrate Judge
Duncan issued a R & R in accordance with 28
U.S.C. § 636(b)(1)(B). (Dkt.12). The R & R
recommends that the Court grant the Petition and
that the Court either order Petitioner's release from
custody under an order of supervision, or, in the
alternative, order Respondents to provide a hearing
to Petitioner within sixty (60) days of its Order
before an Immigration Judge with the power to
grant him bail unless Respondents establish that he
is a flight risk or will be a danger to the community.
(Dkt.12).

Respondents filed their Objections to the R & R.
(Dkt.15). Petitioner filed a Declaration in response
to Respondents' Objections to the Report and
Recommendation. (Dkt.17). Petitioner filed a
Response to Government's Objections together with
a Declaration. (Dkts.18-19).

*Standard of Review*

A district court judge reviews a Report and
Recommendation of a Magistrate Judge *de novo.*
*See* 28 U.S.C. § 636(b)(1)(C).

*Discussion*

The Court having reviewed the record *de novo,*
including the Objections filed by the Respondents,
adopts in full the Report and Recommendation of
the Magistrate Judge and incorporates the same as
part of this Order.

Accordingly,

**IT IS ORDERED** that the Report and
Recommendation of the Magistrate Judge is
**ADOPTED** in full. (Dkt.12).

**IT IS FURTHER ORDERED** that the
Respondents' Objections to the Report and
Recommendation of the Magistrate Judge are
**DENIED.**(Dkt.15).

**IT IS FURTHER ORDERED** that Respondents
shall have **sixty (60) days** from the date this Order
is filed to provide a hearing to Petitioner before an
Immigration Judge with the power to grant him bail
unless Respondents establish that Petitioner is a
flight risk or will be a danger to the community.

**IT IS FURTHER ORDERED** that if Respondents
fail to provide a hearing to Petitioner before an
Immigration Judge within **sixty (60) days** of the
date this Order is filed, Petitioner shall be released
from custody under an order of supervision.

DAVID K DUNCAN, United States Magistrate
Judge.
TO THE HONORABLE EARL H. CARROLL,
UNITED STATES DISTRICT JUDGE:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1670165 (D.Ariz.)
**(Cite as: Slip Copy)**

Mohammad Ali filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 24, 2006, arguing that his detention for four years while his removal proceedings have been pending is unlawful. *See Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir.2005). The Court agrees and recommends that his petition be granted.

Ali is a native and citizen of Fiji, admitted into the United States on February 9, 1989 as a lawful permanent resident (Doc. # 11, Exh 1). On September 22, 1999, Ali was convicted in California Superior Court for Possession of a Controlled Substance, methamphetamine, in violation of section 11377(A) of the California Health and Safety Code, and for Vehicle Theft/Taking a Vehicle Without the Owner's Consent, in violation of section 10851(A) of the California Vehicle Code. Following a revocation of his probation, he was sentenced to 16 months and two years respectively (*Id.*, Exh 2).

**\*2** On February 13, 2003, the Department of Homeland Security (DHS) issued a Notice to Appear, charging Ali with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii), alleging that at any time after admission he had been convicted of an aggravated felony as defined in section 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B), relating to the illicit trafficking in a controlled substance and under section 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G), relating to a theft offense for which the term of imprisonment of at least 1 year was imposed (*Id.*, Exh 3). On March 17, 2003, Ali admitted the factual allegations *but contested the charges of removability* (*Id.*, Exh 4). The Immigration Judge designated Fiji as the country of removal; Ali requested withholding of removal and benefits under the Convention against Torture (*Id.*, Exh 4).

At the April 9, 2003 hearing, the Immigration Judge found both convictions to be particularly serious crimes, making Ali ineligible for withholding of removal. Because of his aggravated felony

conviction, the Immigration Judge found that he was also not eligible for asylum. Finally, the Immigration Judge found that Ali had not established that it was more likely than not that he would be tortured if he returned to Fiji. Ali was ordered removed to Fiji; he reserved appeal (*Id.*, Exh 4, 5). On September 9, 2003, the Board of Immigration Appeals (BIA) dismissed his appeal (*Id.*, Exh 7). On October 2, 2003, Ali filed a petition for review with the Ninth Circuit; on February 24, 2004, the Ninth Circuit dismissed his petition for review for lack of jurisdiction (*Id.*, Exh 8, 9).

On April 6, 2004, Ali filed a petition for writ of habeas corpus in the District Court. *See Ali v. Gonzales*, CIV 04-0690-PHX-EHC (DKD). In his petition, Ali argued that his California felony conviction for possession of a controlled substance did not qualify as an aggravated felony, citing the Ninth Circuit's initial opinion, later withdrawn, in *Cazarez-Gutierrez v. Ashcroft*, 356 F.3d 1015 (9th Cir.2004). On July 20, 2005, the District Court ordered the case transferred to the Ninth Circuit Court of Appeals pursuant to section 106(c) of the REAL ID Act of 2005. On September 13, 2006, the Ninth Circuit granted the Government's motion to remand the petition for review to the BIA, in light of the intervening decisions in *Cazarez-Gutierrez v. Gonzales*, 382 F.3d 905 (9th Cir.2004) and *Penuliar v. Gonzales*, 435 F.3d 961 (9th Cir.2006).
FN1

> FN1. Although the Government has not provided the Court with the motion to remand, and the Ninth Circuit order filed by Ali does not reference the reason for remand, the Government noted the intervening decisions in its response. *See* Doc. # 11 at 8, fn 1.

The Court notes initially that because of the Ninth Circuit's most recent stay of removal, the removal period has not commenced, and therefore 8 U.S.C. § 1226(c), and not § 1231, governs Ali's current detention. Respondents argue that although the requirement is not jurisdictional, the Court should

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1670165 (D.Ariz.)
**(Cite as: Slip Copy)**

decline to review the habeas petition because Ali does not allege that he ever requested bond or a bond hearing. Ali does not remain in custody because he failed to request bond; he is detained pursuant to DHS's most recent custody review and denial of release. Under these circumstances, the Court declines to require proof of a request for bond or a bond hearing as a prerequisite to filing a petition pursuant to 28 U.S.C. § 2241.

**\*3** In addition, Respondents contend that Ali's detention during removal proceedings has been brief, and his current detention is lawful under *Demore v. Kim,* 538 U.S. 510 (2003), and *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005). They maintain further that the only reason Ali was detained on his first petition for review and in his first habeas proceeding (a period of almost one year) is because of his continued litigation, which has resulted in an extension of the removal period.

In *Kim,* where the alien had conceded deportability, "and hence, [was] subject to mandatory detention under § 1226(c),"538 U .S. at 523, the Supreme Court held that mandatory detention pursuant to § 1226(c) was constitutional "for the brief period necessary for [his] removal proceedings."538 U.S. at 512. Ali has never conceded deportability in this case. He makes the same argument in 2007 that he initially made four years earlier: his convictions do not constitute removable offenses or make him ineligible for withholding of removal.

The situation that Ali finds himself in is similar to the alien's situation in *Zadvydas v. Davis,* 533 U.S. 678 (2001), where "detention's goal is no longer practically attainable, [and] detention no longer bears a reasonable relation to the purpose for which the individual was committed."533 U.S. at 690. In a situation where the alien concedes deportability, " [s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."*Kim,* 538 U.S. at 527. Ali has never conceded deportability.

Finally, this case is unlike *Kim,* where "the detention ... is of a much shorter duration," with "a

definite termination point." 538 U.S. at 529. It more closely resembles the situation in *Zadvydas,* where the period of detention was "indefinite" and " potentially permanent." 533 U.S. at 690-91. The amount of time Ali has been detained for the administrative proceedings *is still ongoing,* given the recent remand to the BIA-longer than the proceedings in *Kim,* and even the time period in *Tijani,* with no "definite termination point."

The reasons for detention in this case are also similar to those in *Tijani.*In *Tijani,* the alien's detention for almost two and one half years was " not the result of a criminal conviction; nor is it because he faces imminent removal ... [but] because the government *may* be able to prove he is subject to removal."430 F.3d at 1241 (Tashima, J, concurring) (emphasis in original). As Judge Tashima explains, "*Tijani* was convicted in California of offenses that have *never been found by a court or by the BIA to trigger mandatory detention* ... Today, nearly 30 months later, Tijani remains in mandatory detention while courts continue to sort out whether his offenses actually fall within the reach of the mandatory detention statute."430 F.3d at 1241. (emphasis added). In this case, Ali, like Tijani, has never *conceded* removability. The courts *and the administrative agencies* are "continu[ing] to sort out whether his offenses actually fall within the reach of the mandatory detention statute."

**\*4** In *Tijani,* two-thirds of the time he had been detained was due to the length of the administrative proceedings.[FN2]However, the Ninth Circuit also considered important the fact that "the vast majority of Tijani's detention-over 22 of the nearly 30 months that have so far elapsed-has occurred while the BIA *and this Court* have considered his appeals. "*Tijani,* 430 F.3d at 1246 (emphasis added). In this case, the majority of Ali's detention-41 of the 48 months that have so far elapsed-has also occurred either during the administrative proceedings (which are still ongoing with no definite termination point), or due to his appeals to the Ninth Circuit. Although it did not necessarily occur as the result of "an *unreasonable* delay by the INS in pursuing and completing deportation proceedings," the Court finds that detention for a period of *four years* is by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

**Slip Copy, 2007 WL 1670165 (D.Ariz.)**
**(Cite as: Slip Copy)**

reason of the sheer length of time unreasonable and no longer justified. It is not the "expedited removal" required by *Tijani.* Instead, it has reached the point where it has "become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Kim,* 538 U.S. at 532 (Kennedy, J., concurring).

> FN2. "[T]he IJ took almost seven months to issue his decision; the BIA took just short of an additional 13 months."430 F.3d at 1241, n. 3 (Tashima, J., concurring).

**IT IS THEREFORE RECOMMENDED** that Mohammad Ali's petition for writ of habeas corpus be **GRANTED** (Doc. # 1).

**IT IS FURTHER RECOMMENDED** that the District Court order Ali's release from custody under an order of supervision, or in the alternative order Respondents, within 60 days of the District Court's Order, to provide a hearing to Ali before an immigration judge with the power to grant him bail unless Respondents establish that he is a flight risk or will be a danger to the community.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or

judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

D.Ariz.,2007.
Ali v. Crawford
Slip Copy, 2007 WL 1670165 (D.Ariz.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ORIGINAL

1   PETER J. ELIASBERG (SBN 189110)
    AHILAN T. ARULANANTHAM (SBN 237841)
2   RANJANA NATARAJAN (SBN 230149)
    ACLU FOUNDATION OF
3      SOUTHERN CALIFORNIA
    1616 Beverly Boulevard
4   Los Angeles, California 90026
    Tel: (213) 977-9500
5   Fax: (213) 250-3919

6
    Attorneys for Petitioner
7   (Additional counsel listed on following page)

8
                UNITED STATES DISTRICT COURT
9
        FOR THE CENTRAL DISTRICT OF CALIFORNIA
10
                    WESTERN DIVISION
11

12  RAYMOND GERALD                 )   Case No.: CV06-7451 TJH (MLG)
    AUGUSTINO SOEOTH,              )
13  A# 75-694-789                  )
                                   )
14         Plaintiff-Petitioner,   )
                                   )
15         vs.                     )   [PROPOSED] ORDER GRANTING
                                   )   MOTION FOR PRELIMINARY
16  ALBERTO GONZALES, United       )   INJUNCTION
    States Attorney General; MICHAEL )
17  CHERTOFF, Secretary, Department )
    of Homeland Security; JULIE L.  )
18  MYERS, Assistant Secretary, United )
    States Immigration and Customs  )
19  Enforcement; NORMA BONALES-    )
    GARIBAY, Field Office Director  )
20  U.S. Immigration and Customs    )
    Enforcement; GEORGE MOLINAR,    )
21  Chief of Detention and Removal  )
    Operations, San Pedro Detention )
22  Facility; STUART CORTEZ, Officer- )
    In-Charge, San Pedro Detention  )
23  Facility,                       )
                                    )
24         Defendant-Respondents.   )

25

26

27

28       THIS CONSTITUTES NOTICE OF ENTRY
         AS REQUIRED BY FRCP, RULE 77(d)



FILED
CLERK, U.S. DISTRICT COURT
JAN - 4 2007
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
NOV 2 1 2006
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

ENTERED
CLERK, U.S. DISTRICT COURT
JAN - 5 2007
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

16

Additional counsel:

JUDY RABINOVITZ*
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

CECILLIA D. WANG (CSB #187782)
MONICA M. RAMIREZ (CSB #234893)**
AMERICAN CIVIL LIBERTIES UNION
        FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

JAYASHRI SRIKANTIAH (CSB #189566)
STANFORD LAW SCHOOL IMMIGRANTS'
        RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426


*Application for admission *pro hac vice* forthcoming
**Pending admission to Central District of California

# [PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

The Court finds that Petitioner has demonstrated a substantial likelihood of success on the merits, that he will suffer irreparable injury in the absence of a preliminary injunction, and that the balance of hardship tips sharply in his favor. Therefore, this Court hereby ORDERS that the Defendant-Respondents and their employees, assigns, and all those acting in concert with them are preliminarily enjoined as follows:

\_\_\_\_\_ Petitioner must be immediately released on reasonable conditions of supervision, including electronic monitoring if necessary.

OR, in the alternative:

\_\_\_\_\_ Petitioner must be released within thirty days unless he is afforded an individual hearing before an immigration judge concerning whether his prolonged detention is justified. At the hearing, the immigration judge shall order Petitioner released on reasonable conditions unless the government shows by clear and convincing evidence that Petitioner presents a sufficient danger or risk of flight to justify his detention in light of how long he has been detained already and the

///

///

///

1  likelihood of his case being finally resolved in favor of the government in the

2  reasonably foreseeable future.

4  IT IS SO ORDERED.

6  Dated: November___, 2006          By: _____

7                                    United States District Judge

**ORIGINAL**

JS-44
(Rev. 07/89)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

FILED

**(a) PLAINTIFFS** EPARAMA MAU
A 97 - 840 - 332
BICE - El Centro Detention Center
1115 N. Imperial Ave.
El Centro, CA 92243

**DEFENDANTS** Michael Chertoff et al

07 OCT 19 PM 3:21

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)

BY: D DEPUTY

07 CV 2037 IEG (LSP)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Pro se

**ATTORNEYS (IF KNOWN)**

ASSISTANT UNITED STATES ATTORNEY
OFFICE OF THE UNITED STATES ATTORNEY
880 FRONT STREET, SAN DIEGO, CA 92101
(619) 557-7157

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

28 U.S.C. SECTION 2241

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:

JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE

Docket Number:

DATE 10/19/07

SIGNATURE OF ATTORNEY OF RECORD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)