**JAMES FIFE**
California State Bar No. 237620
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467
james_fife@fd.org

**Attorneys for EPARAMA MAU**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

EPARAMA MAU,
[A97-890-332],

                              Petitioner,

                v.

MICHAEL CHERTOFF, SECRETARY
OF THE DEPARTMENT OF
HOMELAND SECURITY, MICHAEL
MUKASEY, ATTORNEY GENERAL,
ROBIN BAKER, DIRECTOR OF SAN
DIEGO FIELD OFFICE, U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT, JOHN A. GARZON,
OFFICER-IN-CHARGE,

                              Respondents.

Case No. 07CV2037-IEG (LSP)

**PETITIONER'S TRAVERSE**

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I  MR. MAU IS NOT IN "VOLUNTARILY DETENTION." . . . . . . . . . . . . . . . . . . . . . . 2

II  RESPONDENTS ARE JUDICIALLY ESTOPPED FROM OBJECTING TO THE STAY OF REMOVAL AS DILATORY, AND MR. MAU'S ACTIONS ADDED NO DELAY WHATEVER TO THE REMOVAL PERIOD, WHICH RESPONDENTS AGREE HAS NOT EVEN BEGUN TO RUN YET. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III  RESPONDENTS' CLAIM LACKS MERIT THAT THIS CASE IS MATERIALLY DISTINGUISHABLE FROM THE GOVERNING CASES. . . . . . . . . . . . . . . . . . . . . . 14

  A.  Substantial Argument Against Removal. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

  B.  Judicial vs. Administrative Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

  C.  Procedural vs. Substantive Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . 19

  D.  Mandatory vs. Discretionary Detention. . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV  THE EQUITABLE FACTORS OF NADARAJAH FAVOR RELEASE . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

EXHIBIT A

EXHIBIT B

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES

Afridi v. Gonzales,
    442 F.3d 1212 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Aguilera-Ruiz v. Ashcroft,
    348 F.3d 835 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Anaya-Ortiz v. Gonzales,
    239 Fed. Appx. 391 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Brown v. Allen,
    344 U.S. 443 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cruz-Ortiz v. Gonzales,
    221 Fed. Appx. 531 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

Demore v. Kim,
    538 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,20,21

Elrod v. Burns,
    427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In re Frentescu,
    18 I. & N. Dec. 244 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lawson v. Gerlinski,
    F. Supp. 2d 735 (M.D. Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ly v. Hansen,
    351 F.3d 263 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Maharaj v. Ashcroft,
    295 F.3d 963 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Martinez v. Gonzales,
    504 F. Supp. 2d 887 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . 4,10,11,15,19,22

Nadarajah v. Gonzales,
    443 F.3d 1069 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . 1,2,3,9,10,11,17,20,21,22

Oyedeji v. Ashcroft,
    332 F. Supp. 2d 747 (M.D. Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pelich v. INS,
    329 F.3d 1057 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11,12,13

Rasul v. Bush,
    542 U.S. 466 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Rivera v. Ashcroft,
    394 F.3d 1129 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Sanders v. United States,
    373 U.S. 1 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Tijani v. Willis,
    430 F.3d 1241 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . 1,2,3,7,9,14,15,17,18,19,21

Ursu v. INS,
    20 Fed. Appx. 702, 705 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
United States v. Castillo-Basa,
    483 F.3d 890 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
United States v. Scott,
    450 F.3d 863 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Watson v. United States,
    128 S. Ct. 579 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Zadvydas v. Davis,
    533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,3,9,10,11,17,20,21,22
Zedner v. United States,
    126 S. Ct. 1976 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## DOCKETED CASES

Casas-Castrillon v. Lockyer,
    No. 07-56261 (9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Mau v. Gonzales,
    No. 05-72765 (9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Mustanich v. Gonzales,
    No. 07CV1100-WQH (LSP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,11,19

## FEDERAL RULES

Fed. R. App. P. 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,23
9th Cir. R. 36-3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## FEDERAL REGULATIONS

8 C.F.R. § 241.4(g)(1)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,13,24
8 C.F.R. § 1003.2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5
8 C.F.R. § 1003.3(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5
8 C.F.R. § 1003.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

## FEDERAL STATUTES

8 U.S.C. § 1182(d)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
8 U.S.C. § 1226(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
8 U.S.C. § 1226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,20
8 U.S.C. § 1226(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,21
8 U.S.C. § 1229a(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8 U.S.C. § 1229a(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
8 U.S.C. § 1231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,20
8 U.S.C. § 1231(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,21
8 U.S.C. § 1231(a)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12,13,16,24
28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,22,23

## MISCELLANEOUS

16A Am. Jur.2d Constitutional Law § 395 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21 C.J.S. Courts § 227 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Office of the Inspector General, Dep't of Homeland Security,
    ICE's Compliance with Detention Limits for Aliens with a Final Order of Removal
    from the United States 9 (Feb. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

U.S. Gen. Accounting Office, Immigration Enforcement: Better Data and Controls Are
    Needed to Assure Consistency with the Supreme Court Decision on Long-Term
    Alien Detention 19 (2004) (figures for fiscal year 2003) . . . . . . . . . . . . . . . . . . . . . . 2

**JAMES FIFE**
California State Bar No. 237620
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467
james_fife@fd.org

**Attorneys for EPARAMA MAU**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EPARAMA MAU,**<br>**[A97-890-332],**<br><br>                              **Petitioner,**<br><br>           v.<br><br>**MICHAEL CHERTOFF, SECRETARY**<br>**OF THE DEPARTMENT OF**<br>**HOMELAND SECURITY, MICHAEL**<br>**MUKASEY, ATTORNEY GENERAL,**<br>**ROBIN BAKER, DIRECTOR OF SAN**<br>**DIEGO FIELD OFFICE, U.S.**<br>**IMMIGRATION AND CUSTOMS**<br>**ENFORCEMENT, JOHN A. GARZON,**<br>**OFFICER-IN-CHARGE,**<br><br>                              **Respondents.** | Case No. 07CV2037-IEG (LSP)<br><br><br>**PETITIONER'S TRAVERSE** |

## STATEMENT OF THE CASE

Petitioner, Eparama Mau, filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 on October 19, 2007. Mr. Mau sought release pending the outcome of his challenges to his deportation order under the authority of Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), and Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006). Those decisions applied the due process principles of Zadvydas v. Davis, 533 U.S. 678 (2001), against unreasonable civil immigration detention to cases where the order of removal is subject to further legal challenges.

Respondents filed their Return on December 28, 2007. Respondents argue the Petition should be denied, because Mr. Mau is in "voluntary detention," as he sought and obtained a stay of his removal order. Return at 3-5. They next argue that Mr. Mau is entitled to no relief, because his removal is reasonably foreseeable but for Mr. Mau's acts to "stymie removal efforts." Return at 5-8. Respondents also argue that <u>Tijani</u> and <u>Nadarajah</u> are distinguishable from this case, and so do not provide a basis for relief here. Return at 8-13. Finally, Respondents argue the equitable principles supporting release in <u>Nadarajah</u> are inapplicable. Return at 13.

For the reasons given below, each of the Respondents' contentions should be rejected, and this Court should grant the Petition.

**ARGUMENT**

**I**

**MR. MAU IS NOT IN "VOLUNTARILY DETENTION."**

Respondents' theory of "voluntary detention" is fallacious, legally unsupported, unreasonable, immaterial, and factually absurd. It should be rejected out of hand.

First, the "voluntary detention" theory is a fallacy, because it is premised on a false dilemma between detention and removal. According to Respondents, there is no alternative between continued detention by ICE and vacating the stay of the removal order. However, Respondents agree that Petitioner is not mandatorily detained, Return at 11-12, and so overlook the manifest third option of neither removal nor detention, but a release on supervision, just like any of the other 16,000 deportees whom ICE supervises on release. <u>See</u> U.S. Gen. Accounting Office, <u>Immigration Enforcement: Better Data and Controls Are Needed to Assure Consistency with the Supreme Court Decision on Long-Term Alien Detention</u> 19 (2004) (figures for fiscal

year 2003). In fact, as Respondents observe, the statutes contain a separate body of provisions relating to pre-removal-order detention/release and post-order detention/release, 8 U.S.C. §§ 1226 & 1231, respectively. See Return at 12 & n.5. The existence of a set of statutory and regulatory provisions relating to the release of post-final-order deportees merely demonstrates that removal is *not* the only alternative to continued detention for deportable aliens with active appeals. Rather, it is precisely because Respondents' decision not to release Mr. Mau is unreasonable that habeas corpus relief is appropriate. See Zadvydas, 533 U.S. at 699 (describing review of unreasonably prolonged executive detentions as fulfilling the "historic purpose of the writ").

Second, Respondents can cite no binding authority for their "voluntary detention" theory. Instead, they rely heavily on a one-paragraph, unpublished, per curiam disposition to support their position. Return at 3-5. Respondents' legal support consists of citing Cruz-Ortiz v. Gonzales, 221 Fed. Appx. 531 (9th Cir. 2007), and arguing this three-sentence disposition is consistent with other, binding decisions. Whereas Petitioner points to support from a string of Supreme Court and Ninth Circuit authorities, Respondents, on the other hand, can muster no greater legal foundation than one memorandum disposition, itself lacking any legal analysis or citation to authority, and despite the Circuit rule that such decisions carry no precedential weight beyond the specific case. See 9th Cir. R. 36-3(a). Indeed, as Circuit Judge Milan Smith remarked at

//

//

//

the recent oral argument on Casas-Castrillon v. Lockyer, No. 07-56261 (9th Cir.), regarding the Government's use of an unpublished case to support its argument, "it may even carry negative weight."[1]

Nor does Tijani, Nadarajah, or any of the Supreme Court cases from Zadvydas on, even mention the concept of "voluntary detention" or provide a basis for holding that due process protections are suspended by seeking lawful redress for illegal removal orders. Moreover, Cruz-Ortiz is factually unlike Mr. Mau's case, because the Government there had made efforts to removal Cruz-Ortiz lawfully, and had in fact put him on a bus, which was en route to Mexico when his attorneys filed an emergency petition for stay, which stopped the bus. See Cruz-Ortiz v. Gonzales, Petitioner's Opening Brief, available at 2006 WL 2984729 (June 30, 2006). Mr. Mau's removal was not dramatically halted in mid-stream, and his stay of removal has been in place for three years. Indeed, as Respondents fail to acknowledge, the Government specifically filed a *non-opposition to the stay request* in Mr. Mau's petition for review, as in Nadarajah. See Return Exhibit N at 112 (Case No. 05-72765, docket entry for July 8, 2005). Respondents present no binding, or even persuasive,

_____

[1] Adding to the non-authoritative nature of Cruz-Ortiz is the fact that the one sentence upon which Respondents rely is *obiter dictum.* In the first sentence of the disposition, the Court holds that the district court did not even have jurisdiction to consider Cruz-Ortiz's habeas petition under the REAL ID Act. See 221 Fed. Appx. at 531. The next sentence, starting with "In any event . . .," is an alternative holding with no materiality to the outcome, given the existence of a dispositive, jurisdictional defect. See 21 C.J.S. Courts § 227 (2007) (citing as example of dictum additional discussion following finding of no jurisdiction).

Respondents' reliance on non-precedential dispositions is particularly troubling, because all the decisions they cite were cases where the petitioners were unrepresented by counsel. The difference where the Government is put to its proof by arguments developed by lawyers on both sides is seen in the Order Granting Writ of Habeas Corpus in Part, Mustanich v. Gonzales, No. 07CV1100-WQH (LSP) (S.D. Cal. Sept. 27, 2007) (rejecting arguments distinguishing Tijani identical to those raised by Respondents). See Exhibit A attached hereto (hencefORTH "Mustanich Order").

legal analysis, and this contrasts with the thorough analyses rejecting "voluntary detention" reasoning in published decisions such as <u>Martinez v. Gonzales</u>, 504 F. Supp. 2d 887 (C.D. Cal. 2007), <u>Oyedeji v. Ashcroft</u>, 332 F. Supp. 2d 747 (M.D. Pa. 2004), and <u>Lawson v. Gerlinski</u>, F. Supp. 2d 735 (M.D. Pa. 2004).[2]

Third, because Respondents' theory requires detainees to trade other rights to obtain freedom from detention, its analysis is unreasonable and fundamentally unfair.  Respondents urge conditioning detainees' liberty on agreeing to forego the right to pursue their legal challenges.  Though noting that deportees are allowed to pursue petitions for review *in the courts* from abroad,  Return at 4-5, Respondents ignore the fact that immigration appeals not infrequently result in a remand to the administrative apparatus for final determination.  Should an appellate win involve a remand to the IJ or BIA, relief will be precluded, for, as Respondents point out, "an alien may not pursue a defense from outside the United States during administrative proceedings."  Return at 4 (citing 8 U.S.C. § 1229(b)(5) [sic–recte 8 U.S.C. § 1229a(b)(5)]).  Thus, while *judicial* review can proceed while the alien is abroad, the regulations make clear that the administrative process stops when an alien departs the country before its conclusion.  <u>See</u> 8 C.F.R. §§ 1003.2(d), 1003.3(e), & 1003.4.

The statutes and regulations are clear that departure from the United States constitutes a waiver of administrative review. See 8 U.S.C. § 1229a(b)(5) (failure to appear before IJ allows removal in absentia and

---

[2] "An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him.  Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations take." <u>Oyedeji</u>, 332 F. Supp. 2d at 753.

limits appeal to adequacy of notice); § 1229a(b)(7) (failure to appear before IJ waives discretionary relief); 8 C.F.R. § 1003.2(d) (departure under order of removal withdraws motion to re-open before BIA); § 1003.3(e) (departure prior to filing appeal waives right to appeal to BIA); § 1003.4 (departure before decision by BIA withdraws appeal). Were Mr. Mau to depart as Respondents urge, and his appeal is successful, but involves a remand for findings by the IJ as to his withholding claim, he would be unable to administratively appeal any adverse finding under the clear language of 8 C.F.R. § 1003.3(e): "Departure from the United States of a person who is the subject of deportation proceedings, prior to the taking of an appeal from a decision in his or her case, shall constitute a waiver of his or her right to appeal." The statutes and regulations consistently contemplate that departure–voluntary or not–waives further administrative review. The courts have applied this departure bar very strictly. See Aguilera-Ruiz v. Ashcroft, 348 F.3d 835, 838-39 (9th Cir. 2003) (brief departure from country after deportation to buy tequila, candy, and a *piñata* for a party was a withdrawal of appeal of deportation order, stating "an alien against whom a deportation order has been issued cannot afford to become an international traveler if he hopes to maintain his status in this country") (citation and internal quotation marks omitted).

Under Respondents' analysis, a remand after a successful petition for review would be a Pyrrhic victory and shows the barrenness of their reasoning. It requires detainees to purchase their liberty at the price of abandoning the legal right to obtain administrative remedies resulting from a judicial appeal. Moreover, it smacks of urging unconstitutional conditions on seeking legal redress to a removal order. Respondents claim that the price of Mr. Mau's liberty is to forego any right of remaining in the United States to pursue his

administrative challenges.  However, the doctrine of unconstitutional conditions "limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary." United States v. Scott, 450 F.3d 863, 866 (9th Cir. 2006); see also 16A Am. Jur.2d Constitutional Law § 395 (2007).  In Scott, the doctrine prohibited the government from conditioning pretrial release on a waiver of the need for reasonableness to conduct searches under the Fourth Amendment.  Scott held that even though release prior to a criminal trial was discretionary, it could not be conditioned on foregoing the constitutional requirement that all searches be reasonable.  See id. at 868.  In terms readily adaptable to civil detainees held by ICE, Judge Kozinski observed:

> It would be highly impractical and politically impossible for a state [or ICE] to jail all criminal defendants–including those accused of traffic offenses–pending trial [or removal]. The state must thus make pragmatic decisions about releasing some while detaining others. The right to keep someone in jail does not in any way imply the right to release that person subject to unconstitutional conditions–such as chopping off a finger or giving up one's first-born [or surrendering the right to remain in the country]. Once a state decides to release a criminal defendant pending trial, the state may impose only such conditions as are constitutional . . . .

Id. at 464 n.5.  Congress has determined that, as a rule, ICE detainees can be granted release on supervision. See 8 U.S.C. §§ 1226(a) & 1231(a)(3).  Under the doctrine of unconstitutional conditions, once discretionary release is allowed to anyone, it cannot be denied on the grounds that the detainee must first abandon his right to administrative review[3]

---

[3] The observation that pursuing petitions for review from abroad is legally *permissible* is no recognition that the practical and legal hurdles entailed make such a condition highly *unreasonable*.  Cf. Rivera v. Ashcroft, 394 F.3d 1129, 1140 (9th Cir. 2005) (putative citizen's ability to apply for admission from abroad was inadequate relief compared to pre-deportation adjudication of his citizenship claim).  Respondents offer only the Hobson's choice of one type of Herculean obstacle to litigation (researching, filing, and arguing a case from abroad) for another

Fourth, even if there were any legal merit or logic to Respondents' "voluntary detention" theory, they never explain how Mr. Mau's case is any different from the situation in <u>Tijani</u> or <u>Nadarajah</u> in that regard. By their logic, Mr. Tijani "stymied" the removal efforts by willfully filing habeas corpus petitions and a petition for review with a stay, and Mr. Nadarajah "obstructed" his deportation by voluntarily filing an asylum claim and obtaining a stay. <u>See</u> <u>Tijani</u>, 430 F.3d at 1242; <u>Nadarajah</u>, 443 F.3d at 1073. Taking affirmative steps lawfully to oppose an order of removal is not a proper basis to deny release here any more than it was in <u>Tijani</u> or <u>Nadarajah</u>.

Finally, Respondents' theory that detainees who challenge the legality of their removal orders are thereby choosing to remain in prolonged civil detention accords as little with factual reality as it does with legal authority. Mr. Mau is seeking release through this instant habeas action; he in no way consented, even by implication, to being incarcerated by ICE for nearly 40 months, over six times longer than the presumptively reasonable detention period recognized in the Supreme Court cases. Respondents tumble far down the rabbit hole when they brazenly assert that Mr. Mau's forced incarceration is the result of "his decision to remain in detention pending resolution of his petition for review." Return at 5. Mr. Mau's detention is not "voluntary" in any ordinary sense of the word. To paraphrase the Supreme Court's recent observation in <u>Watson v. United States</u>, 128 S. Ct. 579, 583 (2007), "The Government may say that a person [is voluntarily detained] simply by receiving [a stay of removal], but no one else would." Only in Wonderland or Orwell's <u>1984</u> can a deleterious, forced detention be labeled "voluntary."

_____

(the limited resources and physical restraints of incarceration).

## II

## RESPONDENTS ARE JUDICIALLY ESTOPPED FROM OBJECTING TO THE STAY OF REMOVAL AS DILATORY, AND MR. MAU'S ACTIONS ADDED NO DELAY WHATEVER TO THE REMOVAL PERIOD, WHICH RESPONDENTS AGREE HAS NOT EVEN BEGUN TO RUN YET.

Respondents argue that Mr. Mau's removal is reasonably foreseeable, or would be but for obstruction on his part. Return at 5-8. Respondents claim that Mr. Mau's pursuit of lawful challenges to his removal order "stymie the removal efforts." Return at 7. Moreover, Respondents argue that Mr. Mau's failure to sign forms to obtain travel documents from Fiji has delayed his removal, and so indefinite detention is permitted under Pelich v. INS, 329 F.3d 1057 (9th Cir. 2003). Return at 7-8. Respondents' arguments are meritless.

A party that asserts a particular position on an issue in one phase of litigation cannot reverse its view at a later stage to the opposing party's detriment. See Zedner v. United States, 126 S. Ct. 1976, 1987 (2006) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (citations and internal quotation marks omitted). This is an equitable rule, "and thus cannot be reduced to a precise formula or test," id., but generally applies when three criteria are met: (1) a later position clearly conflicts with an earlier; (2) the party successfully persuades the court to adopt the earlier position; and (3) allowing the party to assert the contrary view would give an unfair advantage or impose an unfair detriment on the opposing party. See id. (citing

New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)); cf. United States v. Castillo-Basa, 483 F.3d 890, 898 n.5 (9th Cir. 2007) (finding Government's reversal of position "troubling," but declining to reach estoppel issue).

Here, Respondents' claim Mr. Mau's removal is reasonably foreseeable but for "Petitioner's own actions [which] have prevented removal . . . ," Return at 6, that his challenges and stay "stymie removal efforts," Return at 7, and that his arguments against removal lack merit. Return at 5, 7. However, these contentions are clearly contrary to Respondents' earlier position in *expressly* not opposing the request for a stay of the removal order in Mau v. Gonzales, No. 05-72765 (9th Cir.). See Return Exhibit N at 112. If Mr. Mau's appeal was merely dilatory and groundless, the Government would surely have opposed the stay, as it regularly does. The filing of a non-opposition to the stay is a concession that Respondents' legitimate interests are not prejudiced by the inability to remove Mr. Mau at this stage, and the Court of Appeals specifically relied on this non-opposition in granting the stay. See id. Docket Entry for Sept. 22, 2005. Having agreed that Mr. Mau's request for a stay was legitimate, it is unfair and detrimental for Respondents to now reverse direction and use the stay they acquiesced to as a reason to deny him release under Tijani and Nadarajah. This Court should find they are estopped from making such an argument.

Even if not precluded by estoppel, Respondents' arguments should be rejected, because they lack both a legal and factual foundation.

Respondents' understanding of what counts as "reasonably foreseeable" for Zadvydas purposes does not accord with the case law of this Circuit. They claim his detention is not "indefinite" as stated in

Zadvydas, because the review here "has a finite duration," citing a Tenth Circuit case. Return at 6. However, the Ninth Circuit does not define "indefinite detention" as do Respondents, and it specifically rejected this line of reasoning in Nadarajah. There, the Government argued that because the administrative review of the petitioner's asylum claim would eventually end, he was not indefinitely detained under Zadvydas and progeny. See 443 F.3d at 1081. To this, the Court of Appeals replied, "Nor are we persuaded by the government's argument that because the Attorney General will someday review Nadarajah's case, his detention will at some point end, and so he is not being held indefinitely. No one can satisfactorily assure us as to when that day will arrive. Meanwhile, petitioner remains in detention." Id. What is critical for qualifying as "indefinite" detention under Nadarajah is not that there is some future endpoint to the process, but that no definite timetable for reaching that terminus exists. See also Martinez, 504 F. Supp. 2d at 899 (accepting claim of indefinite detention under Nadarajah, because petition for review might result in remand and there is no timetable for when the Court of Appeals would decide the petition for review, finding "These reasons are sufficient to show that petitioner's removal is not reasonably foreseeable" under Zadvydas).

Respondents also imply that seeking lawful review of a removal order is tantamount to an act of obstruction that "stymies" the removal efforts, justifying further detention. Return at 7. However, the suggestion that pursuing legitimate avenues of relief constitutes bad faith obstruction was rejected in Martinez, 504 F. Supp. 2d at 897-98. Judge Hatter recognized that obstruction relates to acts of bad faith, dishonesty, or improper behavior. Seeking proper legal redress obviously does not fall into that category. See id. Recognizing that pursuit of legal recourse naturally takes time, Martinez notes that "to suggest that

petitioner therefore 'holds the keys' to his release from detention ignores the reality that the petitioner's conduct is merely one factor among many that affects the length of the judicial review process." Id. at 898. Thus, as the Sixth Circuit held in Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003), "An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him."  Nor can Respondents maintain here, any more than in Martinez, that Mr. Mau's arguments in the petition for review are frivolous or brought merely to delay removal. See supra; see also Martinez, 504 F. Supp. 2d at 899 (grant of stay forecloses claim that underlying appeal was frivolous or dilatory); Mustanich Order at 13-14 (adopting Ly analysis and finding removal was not reasonably foreseeable due to indefiniteness of judicial review process).

Respondents argue that Mr. Mau's past refusal to sign documents for obtaining travel permission to Fiji brings this case within the indefinite detention provisions of Pelich. Return at 7-8. Their argument fails, for several reasons.  First, the provisions sanctioning detainees for failure to cooperate patently apply *only* during the statutory removal period.  See 8 U.S.C. § 1231(a)(1)(C) ("the *removal period* shall be extended beyond a period of 90 days and the alien may remain in detention" for bad faith refusal to cooperate in removal efforts); 8 C.F.R. § 241.4(g)(1)(ii) (extension for non-cooperation applies "before the expiration of *the removal period*"); 8 C.F.R. § 241.4(g)(5)(iii) (effect of non-cooperation is "extending *the removal period* as provided by law, if the removal period has not yet expired").  However, Respondents agree that the removal period has not even *started* yet, pending issuance of the mandate and vacatur of the stay by the Court of Appeals.  See Return at 6 ("Here, Zadvydas does not apply because Petitioner's *removal period specified*

by § 1231(a)(1) cannot commence until the completion of his pending judicial review . . ."); 12 n.5 ("The 'decision' [triggering the start of the removal period] is not final until all administrative *and judicial* proceedings have been completed."). Thus, under the statute and regulations, an extension of the time to remove and any associated detention is permitted only during the removal period, which has not commenced in this case. Mr. Mau's failure to cooperate prior to the start of this period is not subject to sanction, under the clear wording of the governing law.[4]

In <u>Pelich</u>, the Ninth Circuit found that the sanctions of 8 U.S.C. § 1231(a)(1)(C) applied to one who deliberately obstructed the removal efforts during the removal period by not only refusing to sign the application forms, but by asserting he had a different name, nationality, ethnicity, and birthdate than the one originally used to obtain travel documents. <u>See</u> 329 F.3d at 1058. Thus, the conduct which led the Court of Appeals to label Pelich's acts "recalcitrant refusal to cooperate in effectuating his removal," <u>id.</u> at 1062, was not simply a failure to sign forms, but that "Pelich has provided the INS with conflicting information regarding his name, his parents' names, his parents' birthplaces and residences, his birthplace and his nationality." <u>Id.</u> at 1059. In light of such bad faith lack of cooperation, continued detention was not deemed unreasonable. <u>See id.</u> at 1061.

//

---

[4] Some ICE field offices have been found to be "using incorrect legal standards" and misapplying the non-cooperation provisions to extend the removal period. <u>See</u> Office of the Inspector General, Dep't of Homeland Security, <u>ICE's Compliance with Detention Limits for Aliens with a Final Order of Removal from the United States</u> 9 (Feb. 2007). ICE occasionally treats denials by the foreign government as the *detainee's* failure to comply. <u>See id.</u> at 17-18.

This case is nothing like <u>Pelich</u>, even if § 1231(a)(1)(C) were legally applicable prior to the statutory removal period. Mr. Mau's refusal to sign the application for travel documents is not based on bad faith efforts to obfuscate the record or impair the process of removal with false or conflicting information. Mr. Mau, acting pro se in his immigration appeal, refused to sign applications on the good faith belief that doing so would vitiate his judicial stay. He believed–based on his observation of other detainees–that agreeing to sign the documents would result in removal despite the stay. Mr. Mau never refused to provide his correct history and background, but would not sign, based on his sincere misunderstanding that it would waive the stay. He has since learned the correct effect of signing the applications, that his signing the forms is not a waiver of his claims on appeal or consenting to removal. Nevertheless, ICE has not provided Mr. Mau another opportunity to comply and has not proffered any applications for Fijian travel documents since 2005. The regulations provide that once full cooperation is obtained, there is no further disability, and ICE is allowed only "a reasonable period of time in order to effect the alien's removal." 8 C.F.R. § 241.4(g)(1)(ii). Respondents cannot rely on a failure to cooperate from nearly three years ago, with no subsequent attempts to secure Mr. Mau's compliance, as a basis for indefinite, prolonged detention. One past instance of good faith refusal does not provide a continuing basis for an obstruction finding on the level of <u>Pelich</u>. <u>See</u> Return Exhibits at 76, 90, 102 (referencing the same May 2005 refusal in the 2005, 2006, and 2007 custody reviews, with no indication of subsequent requests).

In the final analysis, Respondents' obstruction argument is immaterial, since there is no question that Mr. Mau's removal is *not imminent*, whether or not he had signed travel document applications. The failure

to remove Mr. Mau is manifestly a result of the Ninth Circuit's stay of the removal order, not because of a lack of travel documents. The ICE custody reviews acknowledge as much, stating in identical language in Mr. Mau's last three annual custody reviews that "Travel Document has not been requested, subject has a 9th Circuit Stay of Removal in effect." See Return Exhibits at 76, 90, 102. Respondents concede this as well in their Return: "Similarly, here, *the only factor* that prevents the Government from implementing Petitioner's removal is the stay of removal granted by the Ninth Circuit." Return at 10 (emphasis added). Thus, whatever frustration Mr. Mau's refusal to sign the application may have caused the ICE officials, it clearly in no way impeded his removal, which has been judicially stayed for three years. His prior, good faith refusal to sign the applications cannot now be held out as a reason to deny relief from prolonged detention.[5]

## III

## RESPONDENTS' CLAIM LACKS MERIT THAT THIS CASE IS MATERIALLY DISTINGUISHABLE FROM THE GOVERNING CASES.

Respondents do not argue that Nadarajah and Tijani were wrongly decided, but claim that somehow they just do not apply to Mr. Mau's case. Their attempts to distinguish this case from the controlling law are groundless.

Tijani involved an immigration detainee who, like Mr. Mau, was challenging his removal order and was detained for 32 months pending the outcome. See 430 F.3d at 1242. Over a third of the delay occurred

---

[5] ICE remains sanguine that it can obtain removal permission from Fiji "after his 9th Circuit case is concluded." Return Exhibits at 79, 90, 105. However, since the Fijian government requires production of an *original* birth certificate, which Mr. Mau does not possess, removal may not be so straightforward, regardless of the outcome on appeal. See Exhibit B attached hereto.

07CV2037-IEG (LSP)

1   after the removal order was administratively final, but a stay was in effect. See id. at 1247 n.7 (Tashima, J.,

2
3   concurring).  The Ninth Circuit held that the detention was unreasonable and reversed Judge Hayes's denial

4   of habeas relief. See id. at 1242.[6]  In Nadarajah, the Court of Appeals reversed Judge Burns's denial of habeas

5
6   relief for a detainee who was held for 52 months pending the decision on his asylum claim.  See 443 F.3d at

7   1071.  Moreover, the Ninth Circuit held Mr. Nadarajah was entitled to admission to parole under 8 U.S.C

8
9   § 1182(d)(5)(A) and to bail pending appeal under Fed. R. App. P. 23(b).  See id. at 1082-84.  Finding the

10  detention was indefinite and "plainly unreasonable by any measure," the Court of Appeals ordered the

11
12  petitioner released.  Id. at 1081, 1084.

13      **A.      Substantial Argument Against Removal.**

14
15      Respondents state first that Mr. Mau's case differs from Nadarajah in that, unlike Mr. Nadarajah,

16  Mr. Mau has hitherto been unsuccessful in asserting his challenge to removal.  Return at 9.  While it is true

17
18  that the facts in Nadarajah show the Government persisted in unsuccessfully challenging the petitioner's solid

19  string of administrative wins, see Nadarajah, 443 F.3d at 1081, that fact was never identified as a criterion

20  to obtain relief.  Thus, as Judge Hatter observed in rejecting the identical claim by the Government in

21
22  Martinez, 504 F. Supp. 2d at 899, "the Ninth Circuit did not suggest that the rare success enjoyed by the

23  petitioner in Nadarajah was a prerequisite for demonstrating the absence of a significant likelihood of removal

24
25

26      [6] Respondents find "the full import of Tijani is not readily discerned because it consists of
27  a three paragraph opinion," expanded on in Judge Tashima's concurrence, and critiqued in a
    dissent.  Return at 9. Curiously, Respondents had no difficulty discerning sweeping legal
28  implications countenancing prolonged deprivation of personal liberty in just one of the three
    sentences in Cruz-Ortiz.

in the reasonably foreseeable future." Likewise, the petitioner in <u>Tijani</u> had not "won at every administrative level," or at any level until then, and yet the district court's denial of his habeas petition was reversed. <u>See</u> <u>Tijani</u>, 430 F.3d at 1247 & n.7 (noting adverse IJ and BIA results in underlying case).

In addition, the fact that Mr. Mau has not yet won his petition for review does not mean it lacks merit. Respondents state Mr. Mau is unlikely to prevail on his petition for review, because he "has not presented compelling evidence that the Ninth Circuit is likely to reverse" the immigration judge's decision to deny relief under the Convention Against Torture. Return at 5, 7. That is not the standard, but only whether Mr. Mau has raised a "substantial argument." That is the standard for relief proposed by Judge Tashima in <u>Tijani</u>, and Judge Tashima expressly noted that "[t]he majority does not reject such a substantial argument standard. Rather, it simply does not reach the question . . . ." <u>Tijani</u>, 430 F.3d at 1247 n.6 (Tashima, J., concurring). To obtain relief, Mr. Mau does not need to show to a certainty that he will ultimately win; as Judge Tashima noted, "Indeed, Tijani's arguments may ultimately not be convincing. Nonetheless, a closer look is surely required. Tijani's moral turpitude argument, therefore, easily rises to the level of 'substantial'." <u>Id.</u> at 1248 (Tahsima, J., concurring).

The IJ denied withholding under CAT even though he found Mr. Mau's evidence credible that he indeed had been tortured by police and feared further persecution if returned. <u>See</u> Return Exhibit G at 56-57. The IJ denied relief, because Mr. Mau's conviction of DUI with physical injury was a "particularly serious crime" which disqualified him under 8 U.S.C. § 1231(b)(3)(B)(ii). <u>See id.</u> at 57. Mr. Mau argues on appeal that the IJ erred, and his conviction does not count as a particularly serious crime which would bar his

receiving protection against return to a country where he will be tortured or perhaps killed. And, indeed, no published decision of the BIA or Court of Appeals has held Mr. Mau's offense to be particularly serious, nor is it likely to qualify under the case-by-case analysis of that question required under In re Frentescu, 18 I. & N. Dec. 244 (1982).[7]  In Mr. Mau's case, the accident resulting from his driving while intoxicated resulted in only minor injuries to his passenger and the driver of the other car, and Mr. Mau was lucid and aware at the scene.  See Return Exhibit G at 53-54.  Contrast this with Ursu v. INS, 20 Fed. Appx. 702, 705 (9th Cir. 2001), where the panel found that DUI with manslaughter was a particularly serious crime, because on the facts of the case the drunk driving resulted in a death and the defendant was so drunk he was unaware of what had happened.  Also, Mr. Mau qualified for and was given the mitigated, low-end sentence of 16 months, which likewise lessens the seriousness of the conviction under Frentescu, 18 I. & N. Dec. at 247. See Return Exhibit E at 30.

It must be borne in mind, too, that as the length of detention increases, the required showing to obtain relief correspondingly lessens. See Zadvydas, 533 U.S. at 701; Nadarajah, 443 F.3d at 1084; Demore v. Kim, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring).  Mr. Mau, whose detention falls midway between that which Mr. Tijani and Mr. Nadarajah endured, should not be held to even the full Tijani requirement, given

---

[7] A recent unpublished decision held DUI with injury was particularly dangerous, but did so without any discussion of the specific facts of that case.  See Anaya-Ortiz v. Gonzales, 239 Fed. Appx. 391 (9th Cir. 2007).  However, that holding does not necessarily apply here, since each case must be evaluated on its own fact for whether the Frentescu factors line up in one direction or another.  See Afridi v. Gonzales, 442 F.3d 1212, 1219-21 (9th Cir. 2006) (BIA was arbitrary and capricious for not making a case-specific inquiry whether unlawful intercourse with a minor was particularly dangerous).

his greater deprivation of liberty.  He therefore, raises a "substantial argument" attacking the denial of relief,

and so his claims in this Petition come within the ambit of <u>Tijani</u> relief.[8]

### B.    Judicial vs. Administrative Review.

Respondents next argue this case differs from <u>Tijani</u> and <u>Nadarajah</u>, because those cases involved

delay occuring during administrative review, whereas Mr. Mau's appeal is currently before an Article III

court.  Return at 10-11.  Respondents argue <u>Tijani/Nadarjah</u> relief is not available to those whose removals

are administratively final, because Respondents are not to blame for the prolonged detention.  Besides the

fact that a writ of habeas corpus acts " 'upon the person who holds [the prisoner] in what is alleged to be

unlawful custody,' " <u>Rasul v. Bush</u>, 542 U.S. 466, 478 (2004) (quoting <u>Braden v. 30th Judicial Circuit Court</u>

<u>of Ky.</u>, 410 U.S. 484, 494-95 (1973)), not on the particular source of the illegal detention, Respondents'

---

[8] Respondents argue that Mr. Mau's CAT claim is weak, because "the [torture] incident arose out of the [2002] coup attempt, which has been resolved and the situation stabilized." Return at 5 (citing IJ decision).  Even if relief had actually been denied on this basis, this asserted stability is evaporated in 2006 when a new coup succeeded and placed a highly oppressive regime in power.  The introduction to the State Department's 2006 Human Rights Report on Fiji suffices to show that Mr. Mau would still be in mortal danger to return there:

> Prior to the December [2006] coup the government generally respected the human rights of its citizens, although there were serious problems in some areas. *The human rights situation deteriorated greatly following the coup.* The takeover denied citizens the right to change their government peacefully. On December 5, Bainimarama proclaimed a state of emergency, significantly restricting constitutional provisions for freedom of expression and assembly, and the right to privacy, subject to the military's interpretation and without recourse to the courts. The military government arbitrarily detained, and sometimes abused, coup opponents; conducted searches without warrants; engaged in intimidation of the media; and restricted the right to assemble peacefully.

Dep't. of State, <u>Fiji-Country Reports on Human Rights Practices</u>, http://www.state.gov/g/drl/rls/ hrrpt/2006/78773.htm (Mar. 6, 2007) (emphasis added).

argument is unsupported by any language or logic in either <u>Tijani</u> or <u>Nadarajah</u>. The facts in <u>Nadarajah</u> indeed involved delay arising from administrative processing of his asylum claim; however, there was nothing in the decision indicating that that factor had any effect on the outcome there. <u>Nadarajah</u> was expressed in broad terms, based on the interpretation of the general immigration detention statutes, as viewed through the lens of the Supreme Court's case law. A similar argument that <u>Nadarajah</u> was limited to the specific facts of a case still on administrative review was rejected in <u>Martinez</u>, 504 F. Supp. 2d at 896 ("The Ninth Circuit did not limit its holding in <u>Nadarajah</u> to the facts of that case or otherwise indicate that it was crafting a rule of limited application because of the relatively unusual posture of the petitioner's application for relief from removal.").

Moreover, <u>Nadarajah</u> and <u>Tijani</u> are fully consonant decisions. <u>See id.</u> at 895. Even if the former involved no judicial review in resolving the underlying case, <u>Tijani</u> did, where over a third of the total delay occurred after the removal order was administratively final. To the extent that the procedural posture of the underlying appeal is material to its reasoning, even if <u>Nadarajah</u> is factually distinct from this case in this regard, <u>Tijani</u> is not.[9]

## C. Procedural vs. Substantive Due Process.

Respondents also argue that because Mr. Mau, unlike Mr. Tijani or Mr. Nadarajah, has received periodic custody reviews, he has no claim for release. Return at 10. In essence, Respondents claim that

---

[9] For example, in <u>Martinez</u>, the petitioner's administrative review was completed more than four years before the writ was granted. <u>See id.</u> at 889. Judge Hayes likewise rejected this argument that <u>Tijani</u> relief applies only to cases still on administrative review. <u>See</u> Mustanich Order at 12-13.

Mr. Mau's *substantive due process* claim should fail, because he has received *procedural due process*. However, the Supreme Court specifically rejected this argument in Zavydas. Justice Kennedy argued at length in his dissent that relief should not be granted for substantive due process deprivation, because the detainees had been given adequate custody reviews under the regulations governing immigration detention. Zadvydas, 533 U.S. at 720-24 (Kennedy, J., dissenting). However, the majority expressly rejected his reasoning and instead held that following the procedural niceties did not vitiate a substantive due process claim: "And, for the reasons we have set forth, we believe that an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, *irrespective of the procedures used*, cf. post, [121 S. Ct.] at 2515-2517 (Kennedy, J., dissenting), the Constitution permits detention that is indefinite and potentially permanent." Zadvydas, 533 U.S. at 696 (emphasis added).

Even if it were a requirement for supporting a substantive due process claim to show a procedural deficiency, that would be met here by Respondents' own admission. Respondents assert that Mr. Mau's removal proceedings lasted nine months. Return at 11. However, the benchmarks applied by the Supreme Court for timely removals stated that the average time for completing such proceedings was 47 days (with a median of 30 days), and that in the 15% of cases where further review is sought, the average time of resolution was four months. See Demore v. Kim, 538 U.S. 510, 529 (2003). "In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530. Here, on the

contrary, Mr. Mau's administrative removal proceedings exceeded the "very brief" period which the Supreme Court approved in <u>Kim</u>.

### D.    <u>Mandatory vs. Discretionary Detention.</u>

Finally, Respondents attempt to distinguish Mr. Mau's case, because he is not detained under the mandatory detention provisions of 8 U.S.C. § 1226(c). Return at 11-12.[10] Respondents imply that this makes relief under the Ninth Circuit cases inapplicable.  However, the argument does not make sense, since Respondents claim that release is easier to obtain for those *mandatorily* detained than for those subject to *discretionary* detention.  That is, detainees like <u>Tijani</u> and <u>Nadarajah</u>, who are mandatorily detained (as an aggravated felon in the one case and as one with terrorist affiliations in the other) can apparently obtain release under § 2241, but those who, like Mr. Mau, are subject to discretionary detention under § 1226(a), cannot. It is mysterious why those whom Congress intended to be automatically detained should have greater opportunities to seek release than those whose detention is optional. After all, the petitioners granted relief by the Supreme Court in <u>Zadvydas</u> were likewise subject to discretionary detention, under the post-final-order provisions of § 1231(a). Indeed, the Supreme Court stated the review of executive detention is the very heart of the courts' habeas authority:

//

---

[10] Respondents' position is unclear, as they both admit and deny that Mr. Mau is not subject to mandatory detention. On the one hand, they state that "Regardless of the statutory authority granting discretionary detention, it is clear that Petitioner was no longer subject to mandatory detention under Section 1226(c) once the removal order became administratively final." Return at 12.  However, they immediately take issue with Mr. Mau's claim that he has never been subject to mandatory detention, although they do not cite any specific subdivision of § 1226(c) which applies to his case. <u>Id.</u> n.7.  Counsel can discern none.

Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority.   The basic federal habeas corpus statute grants the federal courts authority to answer that question.   See 28 U.S.C. § 2241(c)(3) (granting courts authority to determine whether detention is "in violation of the ... laws ... of the United States").   In doing so the courts carry out what this Court has described as the "historic purpose of the writ," namely, "to relieve detention by executive authorities without judicial trial." Brown v. Allen, 344 U.S. 443, 533 (1953) (Jackson, J., concurring in result).

533 U.S. at 699.  Despite Respondents' suggestion that such detentions are not subject to judicial review, Return at 12 & n.6, the courts have repeatedly held that habeas jurisdiction lies for claims of deprivation of substantive due process, regardless of any supposed jurisdiction-stripping statutes.  See Zadvydas, 533 U.S. at 687 (holding 8 U.S.C. § 1252(a)(2)(B)(ii) does not deprive Court of jurisdiction to examine claim Attorney General exceeded his authority by prolonged detention of aliens); Nadarajah, 443 F.3d at 1075-76 (sua sponte raising and rejecting contention that REAL ID Act deprived court of § 2241 jurisdiction to review length of detention); Martinez, 504 F. Supp. 2d at 892 (same).  Inasmuch as the trend in the case law has been to broaden the range of detained aliens who may bring due process claims against unreasonable detention, Petition at 5-8, Respondents' unsupported attempt to reverse that trend and narrow the applicability lacks any consistency with the logic and holdings of those cases.

## IV

## THE EQUITABLE FACTORS OF NADARAJAH FAVOR RELEASE

Respondents argue that the equitable factors cited in Nadarajah—serious legal question and balance of the hardships—do not apply here and are premature.  Return at 13.  They claim that, as Mr. Nadarajah had

sought alternative relief under Fed. R. App. P. 23(b) (release pending appeal of habeas corpus), and this case is not on appeal, the principles discussed there are impertinent. See id.

However, Nadarajah cited as its authority Maharaj v. Ashcroft, 295 F.3d 963 (9th Cir. 2002), a case not dealing with release pending appeal, but with the standards for granting a preliminary injunction. See Nadarajah, 443 F.3d at 1083-84. Thus, these principles apply to extraordinary relief in general, not to the precise statutory provisions in question. Moreover, the Supreme Court has held that "habeas corpus has traditionally been regarded as governed by equitable principles." Sanders v. United States, 373 U.S. 1, 17 (1963) citation and internal quotation marks omitted).

As indicated above in Argument III.A, Mr. Mau has raised substantial arguments that the IJ erred in failing to grant withholding of removal under the Convention Against Torture, because his conviction of DUI with physical injury is not a "particularly serious crime" on the specific facts of his case. The minor injuries caused, Mr. Mau's relative intoxication level, and the mitigated sentence he received indicate it does not disqualify an otherwise valid claim that rendition to Fiji would result in Mr. Mau's torture or death.

As regards the balance of hardships, loss of a constitutional right, like personal liberty, in itself constitutes irreparable harm. See Elrod v. Burns, 427 U.S. 347, 373 (1976) (even temporary deprivation of First Amendment rights constitutes irreparable harm). Therefore, there is no question that Mr. Mau's forty months of prolonged civil detention present a great hardship. However, Respondents make no countering argument, except to state his detention is "voluntary." Return at 13. However, the fallacy of the "voluntary detention" theory was demonstrated in Argument I supra.

1       Respondents make no case whatever to show that any legitimate interest is prejudiced by releasing

2

3   Mr. Mau on supervision. In fact, none is. Mr. Mau is a candidate for release under the usual criteria and

4   considerations routinely used by Immigration and Customs Enforcement to release immigration detainees

5

6   on orders of supervision. See 8 C.F.R. § 241.4(e) & (f).[11] Under these provisions, Mr. Mau is not presently

7   a violent person and is likely to remain so, is not likely to pose a threat to the community, violate his

8

9   conditions on release, nor pose a significant flight risk. The equitable factors clearly support Mr. Mau's

10  immediate release.

11

12                                        **CONCLUSION**

13

14      For the foregoing reasons, and those given in the Petition, Mr. Mau is entitled to release, because he

15  has been unreasonably and excessively detained during the course of pursuing his substantive legal challenges

16  to his removal. Accordingly, the Court should grant the Petition and issue a writ of habeas corpus forthwith

17  ordering Petitioner's release from custody on reasonable and appropriate conditions of supervision. 8 U.S.C.

18  § 1231(a)(3).                                 Respectfully submitted,

19

20

21  Dated: January 18, 2008                       _s/ James Fife_____
                                                  **JAMES FIFE**
22                                                **Federal Defenders of San Diego, Inc.**
                                                  Attorneys for Petitioner Mau
23                                                james_fife@fd.org

24

25

26  _____
    [11] Mr. Mau's shows no history of violence whatever and has a number of close relatives
27  living in the United States who are willing to assist him on release. He held steady work as a
    security guard for two years, so he has the prospect of obtaining employment on release.
28  Mr. Mau is also willing to participate in a heightened supervision program, such as GPS
    monitoring or frequent personal check-ins.