JAMES FIFE
California State Bar No. 237620
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467

Attorneys for EPARAMA MAU

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. IRMA E. GONZALEZ)

| | |
|---|---|
| EPARAMA MAU, <br>         Petitioner, <br> v. <br> MICHAEL CHERTOFF, et al. <br>         Respondents. | CASE NO. 07CV2037-IEG (LSP) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO AMEND THE JUDGMENT UNDER FED. R. CIV. P. 59(e)** <br><br> DATE: April 14, 2008 <br> TIME: 10:30 a.m. <br> **NO ORAL ARGUMENT REQUESTED** |

    Petitioner respectfully moves this Court to amend its Judgment and Order filed on March 11, 2008, granting the petition for writ of habeas corpus in part. The Order requires Respondents to provide a bail hearing before an immigration judge ("IJ") "with the power to grant [Mr. Mau] bail" within thirty days of the Court's Order, at which he must be released, unless Respondents show he is a flight risk or a danger to the community. Mr. Mau sought release, or alternatively, a constitutionally adequate hearing on the appropriate conditions for release, which a proceeding before an IJ is unlikely to supply.

    Mr. Mau contends that it is procedurally preferable to refer this matter to a neutral, non-party adjudicator, such as the Magistrate Judge, for determination, and this Court should reconsider its Order so as to provide relief which is fair, appropriate, and consistent with law. Accordingly, Mr. Mau respectfully requests that this Court amend its Order and refer the bail hearing to the assigned Magistrate Judge to conduct the <u>Tijani</u> hearing.

1

I

## A MOTION TO AMEND THE JUDGMENT IS AN APPROPRIATE MECHANISM FOR THE COURT TO RECONSIDER MATTERS RELATING TO THE SCOPE AND FORM OF RELIEF GRANTED.

A motion to alter or amend the judgment brought under Fed. R. Civ. P. 59(e) "covers a broad range of motions, and the only real limitation on the type of motion permitted is that it must request a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment." 11 Charles A. Wright, et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995) (footnotes omitted). The broad scope of a Rule 59(e) motion includes a motion to reconsider the judgment to alter the specific language of the final order. See United States v. Comprehensive Drug Testing, Inc., 513 F.3d 1085, 1098 (9th Cir. 2008) (motion to change language of written opinion appropriate under Rule 59(e)). Thus, a Rule 59(e) motion can be brought and granted when the scope of the relief needs to be adjusted or the nature of the remedy modified. See Cummings v. Connell, 177 F. Supp.2d 1060, 1078 (E.D. Cal. 2001) (using Rule 59(e) as vehicle to correct scope of restitution relief); Crowe v. J.P. Bolduc, 365 F.3d 86, 92-93 (1st Cir. 2004) (Rule 59(e) motion was proper procedure to alter judgment to include prejudgment interest in award).

A district court "enjoys considerable discretion in granting or denying the motion." Wright, supra, § 2810.1. A Rule 59(e) motion is properly granted "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Dixon v. Wallowa County, 336 F.3d 1013, 1022 (9th Cir. 2003). The motion "may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Wright, supra, § 2810.1 (footnotes omitted).

Here, Mr. Mau requests the Court amend its original judgment to make a substantive change in the scope and form of relief granted by ordering the bail hearing held before the U.S. Magistrate Judge, not an immigration judge. As shown below, this is a substantive change. Because Mr. Mau's Petition did not request the specific form of relief ordered here, it was not an issue that could have been raised previously. Moreover, referral to the immigration judge would create many artifactual, procedural complications that would work a manifest injustice if implemented. Accordingly, this motion is appropriate and should be granted.

///
///

## II

## THERE IS NO APPARENT, INDEPENDENT AUTHORITY TO REFER THE RELEASE HEARING TO AN IMMIGRATION COURT RATHER THAN A MAGISTRATE JUDGE.

This Court granted the Petition in part by ordering that Mr. Mau be released on bail, unless the Respondents provide a hearing at which they bear the burden to prove Mr. Mau is a flight risk or a danger to the community. Although Mr. Mau prayed for release from custody on an ordinary order of supervision, as an alternative, he requested a hearing to determine his eligibility for release on appropriate conditions. He did not request a bond hearing before an IJ.

The Court's choice of relief appears to derive from the relief given in the lead case, Tijani v. Willis. There, the Ninth Circuit indeed ordered that Mr. Tijani be released, "unless the government within 60 days of this order provides a hearing to Tijani before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community." 430 F.3d at 1242. However, Judge Tashima, in his concurring opinion, would have granted outright release, the basic relief sought by habeas corpus. See Tijani, 430 F.3d at 1250 (Tashima, J., concurring). It is not clear, however, where the majority found the authority to order a bail hearing before the IJ; the relief was created out of whole cloth.

The Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001), indicated that determination of such a fundamental right as personal liberty cannot lie ultimately in the hands of an administrative official, but required the protections and legal expertise found only in judicial proceedings.

> Moreover, the sole procedural protections available to the alien are found in administrative proceedings, where the alien bears the burden of proving he is not dangerous, without (in the Government's view) significant later judicial review. Compare 8 C.F.R. § 241.4(d)(1) (2001) (imposing burden of proving nondangerousness upon alien) with Foucha v. Louisiana, [504 U.S. 71,] 82 [(1992)] (striking down insanity-related detention for that very reason). This Court has suggested, however, that the Constitution may well preclude granting "an administrative body the unreviewable authority to make determinations implicating fundamental rights." Superintendent, Mass. Correctional Institution at Walpole v. Hill, 472 U.S. 445, 450,(1985) (O'CONNOR, J.); see also Crowell [v. Benson], 285 U.S. [22,] 87 [(1932)] (Brandeis, J., dissenting) ("[U]nder certain circumstances, the constitutional requirement of due process is a requirement of judicial process"). The Constitution demands greater procedural protection even for property. See South Carolina v. Regan, 465 U.S. 367, 393 (1984) (O'CONNOR, J., concurring in judgment); Phillips v. Commissioner, 283 U.S. 589, 595-597 (1931) (Brandeis, J.). The serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious.

Id. at 692. The Supreme Court, therefore, took a dim view of the ability of the administrative apparatus alone to provide adequate due process protections affecting personal liberty.

Tijani does not cite authority in a specific statute or rule for its choice of remedy. The reason that particular relief was granted appears to be because it is the relief the petitioner sought. See Substitute Opening Brief for Petitioner-Appellant at *45-46, Tijani v. Willis, No. 04-55285, 2004 WL 2606537 (9th Cir. Oct. 14, 2004). It is not clear, however, that authority exists for such an order.[1] Under 8 C.F.R. § 1236.1, describing the procedure for alien detainees to obtain release from ICE custody, immigration judges are granted authority to review the custody decisions of ICE officials "at any time before an order under 8 CFR part 1240 becomes final." 8 C.F.R. § 1236(d)(1). Per 8 C.F.R. § 1241.1(a), a removal order becomes administratively final "upon dismissal of an appeal by the Board of Immigration Appeals" (Mr. Mau's BIA appeal was dismissed on April 28, 2005). Respondents have argued that the Attorney General loses jurisdiction over bond determinations once the case is administratively final. See Return at 12 n.5. Counsel for Appellees in Casas-Castrillon argued similarly that the Department of Justice has no jurisdiction over custody matters once the removal order is final. Thus, it appears that there is no "Immigration Judge with the power to grant him bail," as this Court ordered, because under the regulations, DOJ lacks jurisdiction over post-final-order custody decisions.

As the IJ has no *independent* statutory or regulatory jurisdiction to carry out the Tijani hearing, the authority to refer the matter to the IJ may be argued to stem from the district court's general power to appoint special masters. See Fed. R. Civ. P. 53. However, under Rule 53, the appointment authority is limited. Subdivision (a) limits appointment of masters to specific instances allowed by statute or (1) when the parties consent; or (2) to conduct fact finding if exceptional conditions or difficulty is involved; or (3) the matter relates to pre- or post-trial issues that cannot be effectively and timely addressed by the district judge. Moreover, special masters are restricted by conflict concerns under Rule 53(a)(2) and appointment is constrained by the requirement of notice to and objection by the parties. See Rule 53(b)(1).[2] To the extent that the Tijani procedure is grounded in general referral powers, the procedural requirements of Rule 53 have

---

[1] At oral argument on the case of Casas-Castrillon v. Lockyer, No. 07-56261 (9th Cir.), now awaiting decision, the panel expressed concern about the legal basis for the relief ordered in Tijani.

[2] Significantly, use of Magistrate Judges as masters is not subject to the Rule 53 restrictions. See Rule 53(h); Civ.L.R. 72.1(f).

1 | not been satisfied in this case.

## III

### A MAGISTRATE JUDGE IS AT LEAST AS QUALIFIED, AND PERHAPS MORE SO, TO EXAMINE THE ISSUES TO BE RESOLVED IN A RELEASE HEARING.

This Court has ordered a "bail hearing," at which Respondents bear the burden to show that Mr. Mau is ineligible for release. Again, though this was the relief asked for and granted in Tijani, the relief asked for and granted by the unanimous panel in Nadarajah v. Gonzales, 443 F.3d 1069, 1084 (9th Cir. 2006), was "immediate release, subject to terms and conditions to be set by the appropriate delegate of the Attorney General." This is the relief which Mr. Mau requested in his prayer–release on supervision or a hearing to determine appropriate conditions of release in his case. Inasmuch as this Court found that Mr. Mau has been excessively detained in indefinite custody, he is entitled to the same relief granted in Nadarajah and urged by Judge Tashima in Tijani. The question does not then appear to be *whether* Mr. Mau is entitled to release, but rather, what are the appropriate conditions, if any.

To the extent, though, that a hearing in this case properly extends to eligibility as well as appropriate conditions, the factors Tijani and this Court specified for the hearing are "flight risk" and "danger to the community." This is no accident: these are the very factors which underlie the custody determinations by immigration authorities under the regulations. See 8 C.F.R. § 1236.1(c)(3) (conditions to obtain release prior to removal order); 8 C.F.R. § 241.4(d)(1) (conditions for release after removal order). These are also the factors which federal judges are to apply in granting bail in criminal cases. See 18 U.S.C. § 3142(f) (at detention hearing judicial officer looks to conditions assuring appearance and safety of community); (g) (factors relating to finding of same). Thus, the factors which are relevant to a decision to detain a deportee are the same concerns for holding a criminal defendant in jail pending trial. As a result, the central factors in a Tijani hearing are the very same ones which Magistrate Judges apply regularly in ruling at § 3142(f) detention hearings. In other words, as concerns the principal finding to be made, IJs are no more expert in making the required findings than are Magistrate Judges.

Moreover, the IJs are not better suited than magistrates to balance other factors pertinent to Tijani/Nadarajah relief. Besides the central factors of flight and danger, the fact-finder should also review the individual circumstances of the detainee to decide what conditions of release are appropriate and effective

to ameliorate any potential concerns. See Zadvydas, 533 U.S. at 700 (allowing release on conditions appropriate in the circumstances, citing 8 U.S.C. § 1231(a)(3)). This is particularly important to the decision whether to impose financial conditions on release. See further infra. Moreover, given the nature of the claim which the Tijani/Nadarajah petitioner has sought to have adjudicated, the hearing official should also consider and weigh the reasonableness of past and future detention, since, as Nadarajah noted, the criterion for release is in inverse relation to the length of detention. See 443 F.3d at 1084 ("Under this analysis, 'the greater the relative hardship to the moving party, the less probability of success must be shown.'") (citation omitted); see also Zadvydas, 533 U.S. at 701 ("And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."). Time in custody is of no moment to the administrative decision, but it is central to the proper *judicial* function under Tijani/Nadarajah. Finally, because Tijani/Nadarajah detainees should not be treated differently from any of the other 16,000 deportees on supervision by ICE, it is appropriate that the usual regulatory factors used to determine post-removal release be considered as well. See 8 C.F.R. § 241.4(e) & (f).[3]

These factors show that IJs are not necessarily better qualified to conduct Tijani hearings than magistrates. At the same time, there are several reasons that they are *less* suitable and that the fairness and thoroughness of the hearing would be improved by referral to a magistrate instead of an IJ. First, as regards the factors dealing with the reasonableness of the past and projected future detention, that factor is not one which an IJ or immigration officials ever consider as part of their custody review determinations. They are not charged by statute or regulation to factor in the overall "reasonableness" of the detention, which is what largely accounts for the excessive detention witnessed in Zadvydas and Tijani/Nadarajah cases. Whereas the executive branch decision-makers are not even charged with considering reasonableness, it is the pre-eminent function of the judicial branch to do just that in the context of prolonged deprivation of liberty. As the Supreme Court stated, "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant

---

[3] A copy of the relevant subdivisions of 8 C.F.R. § 241.4 is attached hereto. As regards the application of the regulations, these factors are used primarily by ICE officials in making custody determinations and are not regularly used by IJs to determine conditions or eligibility for release. IJs are no more expert in the application of such factors, nor are the regulations of such a specialized nature that a non-IJ would have difficulty applying them.

to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question. . . . In doing so the courts carry out what this Court has described as the 'historic purpose of the writ,' namely, 'to relieve detention by executive authorities without judicial trial.'" Zadvydas, 533 U.S. at 699. The task of determining the overall reasonableness of a detention and its effect on the conditions of release should be allotted to a judicial officer.

Similarly, the burden and standards typically applied in an immigration court bond hearing differ from those that apply in a Tijani hearing. Under 8 C.F.R. § 1236.1(c)(3), the burden to show eligibility for release under appropriate conditions lies with the detainee, who must prove his case by clear and convincing evidence. Mr. Mau argues that under Tijani and Supreme Court cases, the burden and standard here must be completely reversed: the Government must show flight and danger which cannot be ameliorated by reasonable conditions, and must do so by clear and convincing evidence. The Tijani majority cited to Cooper v. Oklahoma, 517 U.S. 348 (1996). See 430 F.3d at 1242. In Cooper, the Supreme Court stated, "we have held that due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both "particularly important" and "more substantial than mere loss of money."' Santosky v. Kramer, 455 U.S. 745, 756 (1982) (termination of parental rights)." Id. at 363. In light of Tijani's citation to the heightened burden discussion in Cooper, the standard of proof must be clear and convincing evidence. See also Tijani, 430 F.3d at 1245-46 (Tashima, J., concurring) (citing also to United States v. Salerno, 481 U.S. 739 (1987)). Moreover, since the standard of proof for *detainees* to obtain release is clear and convincing, it is only fair and logical that when the burden is reversed, the Government must be held to the same standard. See 8 C.F.R. § 1236.1(c)(3).

Likewise, even when the same standards are involved, the weight and interpretation may vary because of the differences in context. For example, the factor of community ties is generally viewed in the criminal bail context as one favoring release, since ties make flight less likely. However, in the immigration context, IJs typically look at strong ties to the community as making a deportee appear *less likely* to comply with the removal order, causing the usual logic to be inverted. As Judge Tashima noted, such reasoning would be particularly perverse in Tijani/Nadarajah cases where the detainees have good reason to stay and fight their cases to the end. See Tijani, 430 F.3d at 1246 n.3, 1247 (Tashima, J., concurring).

Not only do the analytical tools differ significantly, but the means available are very different.

Immigration judges under the regulations can impose only a single type of bond, a cash deposit. See 8 C.F.R. § 103.6. Thus, any determination that a bond is an appropriate condition for release can seriously attenuate the detainee's ability to leave custody by the IJ's limited bond options. A cash deposit is particularly inappropriate for those who have endured prolonged detention, since their financial resources will usually have evaporated from years no income, and ties to relatives who might have been able to help can be severed by the long separation. Magistrates, on the other hand, have a wider array of bonding options, which can be more rationally tailored to the circumstances of a prolonged detainee, including release on own recognizance, signature bonds, and bonds secured by property.

In Mr. Mau's case, he has been detained for over three years, during which time he has earned no income. His resources are depleted, and he could not afford even the $5.00 filing fee for this Petition. His ties to friends and family have naturally weakened over the years of detention far away from them. His ability to post a large cash deposit is nil. To avoid the imposition of financial conditions which are tantamount to ordering continued detention, robbing Mr. Mau of the benefits of the merits of his claims, assignment to a Magistrate Judge, who has greater flexibility to impose conditions on release, is fairer and more reasonable, particularly considering that Mr. Mau is not even mandatorily detained under 8 U.S.C. § 1226(c).

## IV

### *AD HOC* REFERRAL TO AN IMMIGRATION JUDGE CREATES A NUMBER OF PROCEDURAL PITFALLS WHICH ARE ENTIRELY AVOIDED BY REFERRAL TO THE MAGISTRATE.

In addition to the jurisdictional concerns discussed above, there are other procedural quandaries lurking in the use of IJ referrals. All of these are avoided by utilizing a Magistrate Judge in place of an IJ.

First, because the referral to the IJ is an *ad hoc* remedy with no clear basis in statute, regulation, or rule, the lines of review following an adverse determination are equally murky. The fact that the matter has been assigned to an IJ raises the possibility of a party's appealing to the BIA, as happened in the case of Macalma v. Chertoff, No. 06CV2623-WQH (AJB) (S.D. Cal.), collaterally undermining the district court's order. Such actions can smack of forum-shopping by a party. In any event, as there is no regulatory jurisdiction for the IJ to determine a post-final-order custody matter, there can be no appellate jurisdiction in the BIA either.

The alternative is to return to the district court for further proceedings. But because a final judgment

has been entered, there is no certain mechanism for review of deficiencies in an IJ bail hearing. In addition, in Tijani hearings conducted by IJs on orders of this Court, no recording or transcription of the proceedings has taken place, over petitioners' objections, and so there is no record for this Court to review should a challenge arise. Nor is there even continuity of representation, since Respondents are invariably represented by other counsel in the immigration courts, creating disconnects as the case moves from one forum to the other. On the other hand, if the matter is sent to a Magistrate Judge, like a normal habeas referral, there will be a report and opportunity for parties to object before a final determination by the district judge. The procedural lines are clear, established, and authorized by law, with both parties having an opportunity for review that does not require guess work or false starts.

In a similar vein, because the Tijani hearing ordered here is not made strictly within the confines of an active case, as would happen with a normal referral to a magistrate, there is a concern that the time for appeal from the district court's judgment may run before disposition of the referral hearing is known. For instance, if a district judge orders a hearing within 60 days, as was done in Tijani, and the hearing is held on the 60th day, the time for appeal on the underlying habeas may expire before the result is known. If the matter is set before a Magistrate Judge, however, the case remains open until the report is issued, objections ruled on, and a final judgment made.

Assignment of the Tijani hearing to an IJ creates these and other procedural problems, but they are entirely avoided if the matter is instead assigned to a Magistrate Judge according to the normal referral process in habeas corpus petitions. Review of the various Tijani/Nadarajah decisions in the Central District of California and in the District of Arizona reveals that even the merits of these claims, let alone inquiry into the shape of relief, are assigned to magistrates, following the usual process in habeas petitions. See, e.g., Martinez v. Gonzales, 504 F. Supp.2d 887 (C.D. Cal. 2007) (district court adopting in full recommendation of Magistrate Judge). That procedure would be clearer and more efficient for all parties.

V

**THERE IS A MANIFEST CONFLICT OF INTEREST IN EMPOWERING AN EMPLOYEE OF THE NON-PREVAILING PARTY TO DETERMINE ELIGIBILITY FOR AND CONDITIONS OF RELIEF.**

A final concern with the process of referring bail hearings to the IJ instead of the magistrate is that it entails the questionable practice of authorizing an employee of the non-prevailing party to decide the

1  availability and scope of the prevailing party's remedy. Rule 53(a)(2) disqualifies anyone from serving as a
2  special master if he has a relationship to a party which would be a ground for disqualification under 28 U.S.C.
3  § 455.  Under § 455(b)(5)(i), disqualification is required if the adjudicator is an "officer" of a party. The
4  individual IJs, as well as the BIA, are officers of the Executive Office of Immigration Review in the
5  Department of Justice, whose head, the Attorney General, is a named party in this Petition. The organizational
6  status of the IJ is a disqualification under Rule 53 to serve as an adjudicating official in this case. Accordingly,
7  like the regulatory lack of jurisdiction to hear custody reviews, there is–by definition–no IJ "with the power
8  to grant bail" in this case, and so Mr. Mau should be released or the matter assigned to a Magistrate Judge.

## CONCLUSION

The Court's assignment of the bail hearing in this case to an IJ raises a raft of legal, practical, and procedural concerns. Assignment of the matter to a Magistrate Judge, however, avoids this legal tangle, activates clear and familiar lines of procedure and review, and provides both sides with an adequate forum for arguing their position on the shape of relief, without running the risk of forfeiting appellate review.

Accordingly, Mr. Mau respectfully requests this Court amend its judgment and refer the matter to the assigned Magistrate Judge with directions to determine the legal and factual issues relating to the scope of relief and to report back to this Court for final judgment.

Respectfully submitted,

Dated: March 17, 2008

s/ James Fife
**JAMES FIFE**
**Federal Defenders of San Diego, Inc.**
e-mail: James_fife@fd.org

Attorneys for EPARAMA MAU

# ATTACHMENT

C

**Effective: [See Text Amendments]**

Code of Federal Regulations <u>Currentness</u>
  Title 8. Aliens and Nationality
    Chapter I. Department of Homeland Security (Immigration and Naturalization) <u>(Refs & Annos)</u>
      Subchapter B. Immigration Regulations
        <u>Part 241.</u> Apprehension and Detention of Aliens Ordered Removed <u>(Refs & Annos)</u>
          <u>Subpart A.</u> Post-Hearing Detention and Removal

→ **§ 241.4 Continued detention of inadmissible, criminal, and other aliens beyond the removal period.**

\* \* \*

(e) Criteria for release. Before making any recommendation or decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that:

(1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;

(2) The detainee is presently a non-violent person;

(3) The detainee is likely to remain nonviolent if released;

(4) The detainee is not likely to pose a threat to the community following release;

(5) The detainee is not likely to violate the conditions of release; and

(6) The detainee does not pose a significant flight risk if released.

(f) Factors for consideration. The following factors should be weighed in considering whether to recommend further detention or release of a detainee:

(1) The nature and number of disciplinary infractions or incident reports received when incarcerated or while in Service custody;

(2) The detainee's criminal conduct and criminal convictions, including consideration of the nature and severity of the alien's convictions, sentences imposed and time actually served, probation and criminal parole history, evidence of recidivism, and other criminal history;

(3) Any available psychiatric and psychological reports pertaining to the detainee's mental health;

(4) Evidence of rehabilitation including institutional progress relating to participation in work, educational, and vocational programs, where available;

(5) Favorable factors, including ties to the United States such as the number of close relatives residing here lawfully;

(6) Prior immigration violations and history;

(7) The likelihood that the alien is a significant flight risk or may abscond to avoid removal, including history of escapes, failures to appear for immigration or other proceedings, absence without leave from any halfway house or sponsorship program, and other defaults; and

(8) Any other information that is probative of whether the alien is likely to--

(i) Adjust to life in a community,

(ii) Engage in future acts of violence,

(iii) Engage in future criminal activity,

(iv) Pose a danger to the safety of himself or herself or to other persons or to property, or

(v) Violate the conditions of his or her release from immigration custody pending removal from the United States.

\* \* \*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.