1 | **JAMES FIFE**
California State Bar No. 237620
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
. | Telephone: (619) 234-8467
4 |

5 | Attorneys for EPARAMA MAU

6 |

7 |

8 | UNITED STATES DISTRICT COURT
9 |
SOUTHERN DISTRICT OF CALIFORNIA
10 |
**(HON. IRMA E. GONZALEZ)**
11 |

EPARAMA MAU,                                    )    CASE NO. 07CV2037-IEG (LSP)
12 |                                             )
                    Petitioner,                 )    **SUPPLEMENT TO MOTION**
13 |                                             )    **TO AMEND THE JUDGMENT UNDER**
v.                                              )    **FED. R. CIV. P. 59(e)**
14 |                                             )
MICHAEL CHERTOFF, et al.                        )    DATE: April 14, 2008
15 |                                             )    TIME: 10:30 a.m.
                    Respondents.                )    **ORAL ARGUMENT REQUESTED**
16 | _____    )

17 |
TO:        CAROL C. LAM, UNITED STATES ATTORNEY,
18 |            RAVEN NORRIS, ASSISTANT UNITED STATES ATTORNEY:

19 |        Petitioner, Eparama Mau, hereby files this Supplement to his previous Motion to Amend the

20 | Judgment filed on March 17, 2008.  This Supplement is necessary to update the Court on subsequent

21 | developments regarding the Court's order of a bail hearing before the immigration court which are relevant

22 | to the claims raised in the Motion to Amend.

23 |        Mr. Mau has been found by an immigration judge to be suitable for release on bond.  He remains

24 | unlawfully detained, however, because of the excessive amount of the bond, imposed in a proceeding that

25 | failed to conform to due process requirements or this Court's Order.

26 |        Accordingly, Mr. Mau should be ordered released from Respondents' custody forthwith under

27 | appropriate conditions of supervision, if necessary, referring the question of release conditions to a U.S.

28 | Magistrate Judge.

1    Because of these recent developments, Mr. Mau now requests that <u>oral argument be scheduled</u> on

2 this matter.

3    **STATEMENT OF FACTS**

4    The details of the procedural history following this Court's Order of March 11, 2008, are presented

5 in the Declaration of Counsel in Appendix A attached hereto.

6    In summary, after this Court entered its Order granting relief in part, on March 13, 2008, counsel for

7 Respondents left a voice mail message that a hearing had been scheduled for Mr. Mau before the immigration

8 court on March 24, 2008. No official, formal notice was given by the immigration court.

9    Mr. Mau filed a late memorandum of law with the immigration court, objecting to the hearing on

10 grounds similar to those raised in the Motion to Amend and explaining the parameters of a <u>Tijani</u> hearing.

11 <u>See</u> Appendix B.

12    The hearing was held on March 24, 2008, but the IJ denied the request to record the proceedings.

13 The DHS counsel argued Mr. Mau was ineligible to receive *any bond* on the basis that he had exhausted all

14 his administrative avenues of relief.

15    Mr. Mau responded that the procedural posture cannot be a reason to deny release. Mr. Mau also

16 noted that in its latest custody review, ICE had not alleged that Mr. Mau was a risk of flight, only that he was

17 a threat to the community.[1] Mr. Mau then presented argument and evidence that he was neither a danger nor

18 a flight risk. <u>See</u> Appendix C. In particular, Mr. Mau pointed to his lack of any history of violence, his

19 unbroken compliance while in state and federal custody, and the mitigated nature of his criminal convictions.

20 Two of his three convictions are misdemeanors; the felony is not an aggravated felony subjecting Mr. Mau

21 to mandatory detention under 8 U.S.C. § 1226(c); the convictions are not crimes of violence; and in fact, none

22 of them is even a removable offense under 8 U.S.C. § 1227. Moreover, Mr. Mau stressed that consideration

23 of past criminal offenses should be tempered by the need to avoid rubberstamping past misconduct as proof

24 of *current* dangerousness. <u>See, e.g.</u>, <u>Ngo v. INS</u>, 192 F.3d 390, 398-99 (3d Cir. 1999) (simple presumption

25

26

27

28

[1] Counsel for DHS responded, citing no basis for this claim, that failure to mention flight risk was only because the ICE officer had found Mr. Mau to be a threat, and that was sufficient to deny release. In counsel's experience, ICE release denials do not regularly cite only one basis for denial, if the officer feels justified that both are present. Indeed, they not uncommonly cite reasons that are not legitimate regulatory factors (<u>e.g.</u>, lack of respect for the American legal system).

07CV2037-IEG (LSP)

1   of current dangerousness based on past convictions does not comport with due process); <u>Phan v. Reno</u>, 56 F.

2   Supp.2d 1149, 1157 (W.D. Wash. 1999) (five-judge panel) (noting institutional bias in ICE against release

3   of deportees with criminal past).

4       Mr. Mau next argued that he was not a flight risk, as acknowledged by ICE's latest custody review.

5   Mr. Mau noted the presence of family and friends in northern California, his past work history, offers of

6   residence and employment, his spotless record of institutional compliance, his lack of absconding, escapes,

7   or defaults, and the evidence of rehabilitation while in custody.

8       Finally, as to the matter of a bond, Mr. Mau argued that no bond was necessary, since any concerns

9   could be addressed by reasonable conditions of release, such as in ICE's standard Order of Supervision. <u>See</u>

10   Appendix D. Mr. Mau urged the IJ to consider the special facts of <u>Tijani</u> detainees, who by definition have

11   endured prolonged detention, typically with no income whatever during that time. On that basis, Mr. Mau

12   argued that if a bond were imposed, it be the lowest possible amount.

13       The IJ ruled that Mr. Mau was eligible for a bond, but that he had no authority to release Mr. Mau

14   without one.[2] The IJ instead imposed a cash bond of $100,000, with a condition that Mr. Mau not drive if

15   released and surrender any driver's license he possesses.

16                             **ARGUMENT**

17       The subsequent developments outlined above are pertinent to the consideration of the Motion to

18   Amend, because they support the arguments Mr. Mau raised there. Together, these facts show that a bail

19   hearing before an IJ is not only inappropriate, but results in a deprivation of due process which negates the

20   principles of <u>Tijani v. Willis</u>, 430 F.3d 1231 (9th Cir. 2005), and <u>Nadarajah v. Gonzales</u>, 443 F.3d 1069 (9th

21   Cir. 2006).

22       Mr. Mau argued in his Motion to Amend and in the Memorandum filed in the immigration court that

23   IJs do not have authority under the regulations and rules to review post-removal ICE custody decisions and

24   that, furthermore, a full and fair hearing would not result from a referral to an IJ. Although Mr. Mau raised

25   the authority issue in his Memorandum and at the hearing, the IJ did not expressly rule on it. The legal

26   question whether the IJ indeed had "the power to grant [Mr. Mau] bail" as the Court ordered remains open.

27

28

---

    [2] Contrary to the IJ's oral assertion, his order shows an option for release on the deportee's own recognizance. See Appendix E.

1    In any event, the hearing did not comply with this Court's order of a proper <u>Tijani</u> hearing comporting

2  with due process.  The deficiencies stem from the lack of proper notice, applying the incorrect burden and

3  standard of proof, the lack of an adequate record to permit meaningful review, the lack of comparable

4  remedies available to similarly situated detainees, the reversal of presumptions established in case law,

5  perfunctory analysis of prior criminal convictions, and imposition of excessive bond.

6    (1) <u>Lack of Notice</u>.  Mr. Mau was not provided with any formal, official notification of the hearing.

7  It was only incidentally that word was passed on to counsel.  The time set for the hearing was less than the

8  15 days which immigration court procedure normally dictates for filing briefs and motions.  <u>See EOIR,</u>

9  <u>Immigration Court Practice Manual</u> § 3.1 (Apr. 2008); U.S. Immigration Court, San Diego, California, <u>Local</u>

10  <u>Operating Procedures</u> Procedure 2.5.  Counsel's actual notice was less than 10 days, which impeded the filing

11  of legal briefs and contacting potential witnesses, and automatically required counsel to beg excuse for a late

12  filing.  <u>See</u> Appendix B.  The alternative of requesting a continuance would require Mr. Mau to trade

13  additional, excessive custody for an adequate opportunity to present his case to the IJ.

14    (2) <u>Lack of an Adequate Record for Review</u>.

15    Mr. Mau requested and was denied tape recording of the hearing.  "Bond hearings are generally not

16  recorded," <u>Immigration Court Practice Manual</u> § 9.3(e)(iii), and Judge Ipema stated he saw no reason to

17  depart from his normal procedure of not recording the hearing.  As regards Mr. Mau's argument that recording

18  was necessary to provide this Court with an adequate basis for review, the IJ stated only that a written finding

19  would be prepared, but only if an appeal *to the BIA* were taken.  <u>See also</u> <u>Immigration Court Practice Manual</u>

20  § 9.3(e)(vii) (IJ reduces notes to a written decision only on appeal to BIA).

21    Due process generally requires a "record of sufficient completeness" be furnished to permit "proper

22  consideration of [the defendant's] claims."  <u>See</u> <u>Mayer v. City of Chicago</u>, 404 U.S. 189, 194 (1971).  Either

23  a transcript or some alternative method such as a stipulated statement of facts, full narrative statement, or

24  bystander's bill of exceptions is required.  <u>Id.</u> at 194.  None of those were present here; not even written

25  findings.  "Where a defendant makes allegations of error which, if true, would be prejudicial, the

26  unavailability of a transcript may make it impossible for the appellate court to determine whether the

27  defendant's substantive rights were affected."  <u>Bergerco, U.S.A. v. Shipping Corp. of India, Ltd.</u>, 896 F.2d

28  1210, 1215 (9th Cir. 1990).  "In such a situation, the unavailability of a transcript itself becomes the problem

1 because it deprives the defendant of the opportunity to make a fair showing on appeal of the gravity of the

2 claimed error." Id. (reversal and remand for new trial is sometimes warranted where a transcript is unavailable

3 on appeal).

4       The expedient of filing a *pro forma* appeal simply to obtain a written finding is not a satisfactory

5 substitute for a proper record. A judge's post-hoc reconstruction is suspect, because "once the court has

6 entered judgment, it may become subject to the very natural weight of its conviction, tending to focus on that

7 which supports its holding." Bergerco, 896 F. 2d at 1214. The lack of recordings or transcripts can deprive

8 individuals of due process, because the reviewing body has "no complete or meaningful basis upon which to

9 review application determinations." McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 496 (1991)

10 (affirming injunctive relief granted to alien applicants for Special Agricultural Worker status whose due

11 process rights were violated by the manner in which the INS administered the SAW program). Although

12 counsel reported the gist of the proceedings as accurately as possible, this Court's ability to probe the true

13 contours of the challenged hearing is critically impaired by the lack of a transcript.

14       (3) Burden of Proof. It is clear from Tijani and this Court's Order that the burden of proof lay with

15 the *Respondents* to show Mr. Mau is a flight risk or danger. Mr. Mau pointed this out to the IJ in his

16 Memorandum and orally at the hearing. There was no express ruling by the IJ on burden, and the procedure

17 of asking Mr. Mau to address the court first suggests he viewed the burden to remain with the detainee, as is

18 the usual case in immigration custody hearings. See 8 C.F.R. § 1236.1(c)(3). The IJ gave slight regard to

19 Mr. Mau's extensive argument for release, particularly evidence of subsequent rehabilitation, and showed no

20 indication that he weighed the length and reasonableness of the prolonged detention as factors. Mr. Mau

21 maintains that the proceedings showed the IJ failed to comply with Tijani and this Court's Order by placing

22 the burden to prove eligibility for release and the appropriate conditions (if any) on the wrong party.

23       (4) Standard of Proof. The IJ never stated he found by clear and convincing evidence that a bond

24 of $100,000 was necessary to ensure Mr. Mau's compliance with conditions of release. If the IJ was

25 noncommital about allocation of the burden, he seemed even more dubious of the claim that the standard on

26 the Government was clear and convincing evidence. However, that is precisely the standard applied to

27 detainees who seek release under 8 C.F.R. § 1236, so when the burden is reversed in a Tijani hearing, it stands

28 to reason that the same standard must apply. The IJ did not expressly rule on this issue, and Mr. Mau

1  maintains that not only was the burden not shifted as required, but that he was required to make a clear and

2  convincing showing to obtain his release, even though, legally, he did not even have a burden of production

3  at the hearing.

4      (5) <u>Lack of Release Without Bond</u>. Mr. Mau argued in his Motion to Amend that IJs are restricted

5  by regulations on available bail options. As a consequence, those who show they are eligible for relief under

6  <u>Tijani</u> would be in a *worse* situation than those released by ICE on Orders of Supervision, if their conditions

7  of release are set by an IJ. Judge Ipema pointed out that he has no authority to release Mr. Mau without a

8  bond and that the minimum bond he can impose is a $1,500 cash deposit. In fact, Judge Ipema went quite past

9  the minimum bond amount in imposing one **nearly 67 times the minimum**. Thus, as Mr. Mau argued, a

10  hearing before an IJ is not adequate relief, since the IJ's release options are extremely limited. Even when–as

11  he showed at the March 24 hearing–he is a good candidate for supervision under the usual regulations

12  governing release, he should not be penalized by requiring more onerous conditions than those imposed on

13  comparable supervisees.[3] This is particularly so, because Mr. Mau has demonstrated his entitlement to relief

14  under <u>Tijani/Nadarajah</u> before an Article III judge.

15      (6) <u>Misapplication of *Tijani*</u>. Mr. Mau was concerned that the IJ might misapply the unfamiliar

16  parameters of relief laid down by this Court in compliance with <u>Tijani</u>. Not only did the IJ apparently ignore

17  the shifting burden and heightened standard called for by that case, but he followed the DHS attorney's

18  argument that the mere fact that Mr. Mau was eligible for <u>Tijani</u> relief was *a negative factor against release*.

19  Because it will typically be the case that <u>Tijani</u> petitioners will have completed their administrative review

20  by the time relief is granted, the procedural posture alone cannot be a reason to then deny release without

21  bond. However, the immigration court procedures of requiring a bond for release after a final order unfairly

22  penalize those who have qualified for <u>Tijani</u> relief, treating a prerequisite for *judicial relief* as an aggravating

23  factor in obtaining *administrative relief*. Because <u>Tijani</u> detainees should not be penalized by more stringent

24  release conditions than ordinary ICE supervisees, those like Mr. Mau should be eligible for release on normal

25  conditions of supervision and not *automatically* required to post bond. As Mr. Mau has argued, that is

26  _____

27      [3] Mr. Mau argued the IJ should consider the usual regulatory factors in weighing the proper
   conditions for release. District courts have applied these same factors in their own evaluation of
28  release. <u>See</u> <u>Phan</u>, 56 F. Supp.2d at 1157; <u>Oyedeji v. Ashcroft</u>, 332 F. Supp.2d 747, 754 (M.D. Pa.
   2004). <u>See</u> Appendix C (chart comparing regulatory factors with facts of this case).

1    particularly inappropriate and perverse for those who have endured prolonged detention. To avoid the

2    misapplication of the Tijani holding, any referral on conditions of release should be made to a neutral

3    adjudicator with "the power to grant . . . bail" *in all its forms*, as ordered by the Court.

4        (7) Overweighing of Past Misconduct. The IJ imposed a $100,000 bond requirement on the basis

5    that Mr. Mau's two misdemeanor DUIs and one felony DUI from between four and six years ago showed he

6    was a "proven danger." Despite Mr. Mau's argument that bond should be imposed only if no other

7    combination of conditions would protect the public, the IJ believed that the nature of Mr. Mau's convictions

8    alone overode any showing of subsequent rehabilitation or the efficacy of any non-financial conditions.

9        It is clear that the IJ focused on his own subjective reaction to Mr. Mau's convictions in the abstract,

10    rather than any objective evidence of the level of danger inherent in those offenses or on the particular facts

11    of Mr. Mau's case. Counsel explained to the IJ that the injuries resulting from the felony incident were minor

12    and neither injured person required hospital treatment. As a result, Mr. Mau qualified for the mitigated, low

13    term. An objective sign that his convictions are not inherently dangerous is the fact that his other two

14    convictions are classified by the State of California as misdemeanors. Even Mr. Mau's one felony does not

15    qualify as an aggravated felony subjecting him to mandatory detention. Moreover, none of his convictions

16    is a crime of violence. See Leocal v. Ashcroft, 543 U.S. 1, 12 (2004). And most significantly, DUI–even in

17    combination with other DUIs–is *not a deportable offense*. See In re Torres-Varela, 23 I. & N. Dec. 78 (BIA

18    2001) (en banc); Murillo-Salmeron v. INS, 327 F.3d 898, 902 (9th Cir. 2003). Whatever one's personal view

19    of the potential harm flowing from a past DUI conviction, Congress has determined it is not even serious

20    enough to serve as a basis to deport an alien from the United States. The *objective* measures of Mr. Mau's

21    offenses show they are not so dangerous as to warrant an astronomic bond amount.[4]

22        Mr. Mau pointed out to the IJ that use of prior convictions should be leavened by the realization that

23    past misconduct is not an inevitable predictor of future dangerousness. As the Third Circuit noted in

24    Ngo,"The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that

25

26

_____

27    [4] For sake of comparison, counsel can represent that he has had clients released on supervision with such violent prior convictions as attempted murder, assault with a deadly weapon, aggravated assault, armed robbery, domestic violence, and solicitation of murder. Most of these

28    were released without bond; even the deportee with an attempted murder conviction was required to post a bond of only $7,000.

1  category. Similarly, presenting danger to the community at one point by committing crime does not place them

2  forever beyond redemption.  Measures must be taken to assess the risk of flight and danger to the community

3  on a current basis. The stakes are high and we emphasize that grudging and perfunctory review is not enough

4  to satisfy the due process right to liberty, even for aliens" 192 F.3d at 398.  Likewise, as the five-judge panel

5  in Phan observed, "These courts found that instead of individually assessing dangerousness and flight risk,

6  Directors simply relied on the aliens' past criminal history and the fact that they were facing removal from the

7  United States, summarily concluding that the aliens posed such risks and denying them release.  This does

8  not meet the requirements of procedural due process." 56 F. Supp.2d at 1157.

9          Here, the IJ placed excessive weight on the nature of Mr. Mau's priors and discounted completely

10  the evidence of subsequent rehabilitation (completion of treatment, disciplinary compliance, and productive

11  employment in custody).  See 8 C.F.R. § 241.4(f)(1) & (4); Appendix C.  The political pressure which Phan

12  noted affects the administrative custody determinations can be best dealt with in the judicial branch, which

13  has greater ability to withstand such extraneous pressures and reach a more objective assessment of danger.

14          (8) Excessive Bond. Mr. Mau alerted the IJ to the need to tailor a bond to the specific circumstances

15  of prolonged detainees under Tijani, as well as the specific facts of this case showing Mr. Mau lacked the

16  resources to post a substantial bond.  Given the proportional coercive effect of a low bond on one with limited

17  resources, even if other conditions cannot satisfy the legitimate concerns for safety and flight, an elevated

18  bond amount would be nothing more than a covert order of further detention.  Cf. 18 U.S.C. § 3142(c)(2)

19  (prohibition on imposing financial condition which is tantamount to order of detention in criminal case).

20  Inasmuch as the Due Process Clause forbids use of the civil detention statutes for punitive purposes, see

21  Zadvydas v. Davis, 533 U.S. 678, 699 (2001), it stands to reason that release from civil detention cannot be

22  more stringent than in criminal cases.  Moreover, Zadvydas cautions that immigration custody cannot

23  constitutionally serve as preventive detention without much greater procedural protections. See id. at 690-91.

24          In light of these considerations, a bond in the amount of $100,000 in this case is manifestly excessive

25  and unreasonable.  As Mr. Mau cannot afford even the minimal filing fee for his habeas petition, it is patent

26  that the IJ's order was a de facto order of indefinite detention in violation of Zadvydas, Tijani, and Nadarajah.

27  That is all the more so, since immigration bonds must be cash deposits; it was clear to the IJ that Mr. Mau

28  could never place $100,000 in cash with ICE to secure his release.  Although the IJ nominally ruled that

1  Mr. Mau was eligible for a bond, his actual decision means only the opposite: Mr. Mau must remain in

2  custody. Inasmuch as Mr. Mau has already served a longer period in ICE custody than the highest possible

3  statutory sentence for his felony conviction, the IJ's decision conflicts with the judgment of the California

4  Legislature of what is necessary to protect the public. The State of California has determined that three years

5  of custody is the absolute maximum sentence necessary to punish, deter, and incapacitate one in Mr. Mau's

6  circumstances. Nothing presented at the hearing, including the mitigated level of the sentence, the facts of

7  the case, and subsequent conduct and history, rationally showed that California was wrong in its assessment

8  that one convicted of DUI with injury can be safely released back into society after at most three years.

9         The bond level set by the IJ is not only disproportionate to the objective indicia of danger attending

10  Mr. Mau's circumstances, but it virtually ignores the use of non-financial conditions to achieve the same goal.[5]

11  After all, continued detention of deportees by ICE is not a goal in itself, but only one means of effecting the

12  primary goal of removal. See Zadvydas, 533 U.S. at 697 (identifying protection of the public as only a

13  secondary purpose of the immigration detention statutes). The IJ imposed a release condition of not driving

14  and surrendering any license, a condition Mr. Mau suggested, saying that his ICE supervisor could set

15  reasonable limits on driving to protect the public from any residual danger. For example, requiring use of an

16  ignition interlock device is an appropriately tailored condition on such facts. However, the IJ went further,

17  banning Mr. Mau completely from driving—indefinitely—a condition which even California does not attach

18  to a conviction for DUI with injury. See Cal. Veh. Code § 13352(a)(2) (one-year suspension of license). But

19  even assuming *arguendo* the IJ's condition was reasonable, the $100,000 bond adds no greater protection to

20  the public than a total ban on driving. The only legitimate concern for danger presented on the record was

21  Mr. Mau's past conduct of drinking and driving.[6] The total driving ban properly addresses that issue. Mr.

22  Mau offered to accept an alcohol abuse treatment requirement as part of the conditions of release; such a

23

24         [5] A study by the Vera Institute of Justice indicated that both high- and low-priority criminal

25  aliens released from custody had a better than 90% average compliance rate in appearing at their next
   immigration hearing. See Vera Institute of Justice, Testing Community Supervision for the INS: An

26  Evaluation of the Appearance Assistance Program 36 (Aug. 1, 2000).

27         [6] The IJ did mention one entirely *illegitimate* basis for its threat to the public finding: its
   statement that anyone would feel threatened seeing Mr. Mau driving at them on the highway. The

28  IJ's reliance on Mr. Mau's personal appearance as a reason to deny release except on a highly inflated
   bond is arbitrary, capricious, discriminatory, and irrational in its own right.

1  condition is a normal feature in an ICE Order of Supervision. See Appendix D. The combination of treatment

2  and driving restrictions would reasonably address the only legitimate concerns for danger. However, the IJ's

3  preposterously high bond amount shows that the IJ was not thinking of reasonable conditions of release.

4  Instead, he held, in effect, that *no combination of conditions* it could order *would ever ameliorate the*

5  *potential future danger* suggested by Mr. Mau's past convictions. In light of how California sanctions

6  identical offenders, this is an irrational hyperbole of the first order.

7  The issues of authority, proper burden and standard, available release options, application of

8  controlling law, proper weighing of prior convictions, and proportional use of financial conditions in a forum

9  that is inherently bond-focused (indeed, the IJ referred to the proceedings as a "bond hearing," not a "bail

10  hearing") are highlighted by the proceeding before the IJ. The concerns raised in Mr. Mau's Motion to Amend

11  were illustrated in exacerbated form by the IJ hearing here. Accordingly, fair and appropriate relief in this

12  case requires that any determination of conditions of release be heard by a Magistrate Judge through the

13  normal referral procedure, assuming this Court finds such additional inquiry is needed to set proper

14  conditions.

15  In light of these new developments, Mr. Mau now respectfully requests oral argument on the Motion

16  scheduled for April 14, 2008.

17                                    Respectfully submitted,

18

19  Dated: March 27, 2008            *s/ James Fife*
                                     **JAMES FIFE**
20                                   **Federal Defenders of San Diego, Inc.**
                                     e-mail: james_fife@fd.org
21
                                     Attorneys for EPARAMA MAU
22

23

24

25

26

27

28

1                    UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF CALIFORNIA

3   EPARAMA MAU,                )

                             )    Crim No. 07CV2037-IEG (LSP)

4                         )

              Petitioner,        )

5                         )

  v.                          )

6                         )    CERTIFICATE OF SERVICE

  MICHAEL CHERTOFF, et al.,     )

7                         )

              Defendant.        )

8 _____ )

9          Counsel for Petitioner certifies that the foregoing pleading, is true and accurate to the best

10 of his information and belief, and that a copy of the foregoing has been electronically served this day upon:

11        **Raven M Norris**

       raven.norris@usdoj.gov,Ana.Strutton@usdoj.gov,efile.dkt.civ@usdoj.gov,pamela.bradle

12        y@usdoj.gov

13 mailed to:      Mr. Esparma Mau

14                Petitioner

15

16 Dated: March 27, 2008                _/s/ James Fife_

                                  JAMES FIFE

17                               Federal Defenders

18                               225 Broadway, Suite 900

                               San Diego, CA 92101-5030

19                               (619) 234-8467  (tel)

                               (619) 687-2666  (fax)

20                               james_fife@fd.org

21

22

23

24

25

26

27

28

# APPENDIX A

1 | **JAMES FIFE**
California State Bar No. 237620
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
Telephone: (619) 234-8467

4

5 | Attorneys for EPARAMA MAU

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | (HON. IRMA E. GONZALEZ)

11 | **EPARAMA MAU,**                  )    **CASE NO. 07CV2037-IEG (LSP)**
                                        )
12 |                  **Petitioner,**   )    **DECLARATION OF COUNSEL**
                                        )    **IN SUPPORT OF SUPPLEMENT TO MOTION**
13 |                                    )    **TO AMEND THE JUDGMENT**
                                        )
14 | **v.**                             )
                                        )
15 | **MICHAEL CHERTOFF, et al.**       )
                                        )
16 |                  **Respondents.**  )
                                        )
17

18 | I, James Fife, declare:

19 | 1.        I am an attorney duly licensed to practice law in the State of California, in the United States District

20 | Court for the Southern District of California, and in the United States Court of Appeals for the Ninth

21 | Circuit.  If called as a witness, I can competently testify to the matters asserted below in this

22 | Declaration.

23 | 2.        I am an employee of Federal Defenders of San Diego, Inc.  As such, I am currently appointed to

24 | represent the Petitioner, Eparama Mau, in the above-captioned matter.

25 | 3.        This Court entered its Order granting relief in part on the Petition in this case on March 11, 2008.

26 | The Court ordered Respondents to "provide petitioner with a hearing within thirty days of this order

27 | before an Immigration Judge with power to grant him bail . . . ."

28

1

4.    On or about March 13, 2008, I informed counsel for Respondents, Raven Norris, AUSA, of my intention to file the Motion to Amend the Judgment. On the afternoon of March 14, 2008, AUSA Norris left me a voice mail message that she had been notified that a hearing had been scheduled for Mr. Mau before the immigration court at 8:00 a.m. on March 24, 2008. I received no formal notification of the hearing from the immigration court itself.

5.    On March 17, 2008, Mr. Mau filed his Motion to Amend the Judgment, arguing that a hearing before the Immigration Judge ("IJ") was neither authorized nor appropriate, and requesting a hearing before a U.S. Magistrate Judge if any matters concerning conditions of release required resolution.

6.    Although the rules of procedure in immigration court require 15 days' advance service of all briefs, due to the shortness of the time in which I became aware of the hearing, I filed a late memorandum of law with the immigration court on March 19, 2008. Mr. Mau first objected to the hearing on grounds similar to those raised in the Motion to Amend. In the second part of the Memorandum, Mr. Mau explained the parameters of a Tijani hearing and this Court's Order. A copy of that Memorandum is Appendix B to the attached Supplement.

7.    The hearing was held on March 24, 2008 at the East Mesa immigration court, Hon. Henry Ipema, Jr. presiding. Mr. Mau was present and represented by counsel. The IJ denied Mr. Mau's request to record the proceedings so that this Court could conduct a proper review should either party challenge the result. Accordingly, the following details are my best representation of the proceedings as reflected in my contemporaneous notes at the hearing.

8.    Although Judge Ipema acknowledged receipt of the memorandum in Appendix B, he did not appear to accept its premises that the burden lay with the Government and that the standard was clear and convincing evidence. After gathering some basic admissions regarding Mr. Mau's procedural history, the IJ turned to me to begin the presentation. I stated I was happy to speak first, but Mr. Mau maintained that the burden lay with the Government. The IJ then turned to the DHS counsel, who argued Mr. Mau was ineligible to receive *any bond*, on the basis that he had exhausted all his administrative avenues of relief and had been denied asylum for filing his claim late, and that he was not eligible for withholding or deferral of removal under the Convention Against Torture. Counsel for DHS also argued that Mr. Mau was a flight risk and a danger, because he had lost his

administrative appeals, and his conviction for DUI with injury was found by the IJ to be a particularly serious crime. DHS also argued that Mr. Mau had failed to comply with ICE's request to sign applications for travel documents, a claim raised by Respondents and rejected by this Court as not precluding Tijani relief.

9.  Mr. Mau responded that a frequent basis for relief in a Tijani case is that the petitioner has completed his administrative proceedings, but has been detained excessively while his petition for review is pending; accordingly, the procedural posture cannot be a reason to deny release. Mr. Mau also noted that in its latest custody review, ICE had not indicated that Mr. Mau was a risk of flight, only that he was a threat to the community.

10. Mr. Mau then presented argument and evidence that he was neither a danger nor a flight risk. Mr. Mau urged Judge Ipema to use the standard regulatory criteria and factors for release in 8 C.F.R. § 241.4(e) & (f) as an analytical tool to reach his decision, thus treating Mr. Mau no differently from any other deportee subject to ICE supervision. In particular, Mr. Mau prepared a chart showing the regulatory criteria paired with the specific facts of this case. A copy of that chart is reproduced in Appendix C attached to the Supplement. Noting that the regulations give particular stress to *violent* tendencies, as opposed to generalized misconduct, Mr. Mau pointed to his lack of any history of violence, his unbroken compliance while in state and federal custody, and the mitigated seriousness of his criminal convictions. Two of his three convictions are misdemeanors; the felony is not an aggravated felony subjecting Mr. Mau to mandatory detention under 8 U.S.C. § 1226(c); the convictions are not crimes of violence; and in fact, none of them is even a removable offense under 8 U.S.C. § 1227. At most, Mr. Mau's DUIs are regulatory/public safety offenses, and the potential for harm could be readily addressed by special conditions of release, such as attending alcohol abuse treatment or placing restrictions on permission to drive. Mr. Mau proffered a redacted copy of another deportee's recent Order of Supervision from ICE to show what alternative conditions on supervision were available for the IJ in place of a bond, but the IJ refused to consider it. A copy is attached to the Supplement in Appendix D. Moreover, Mr. Mau stressed that consideration of past criminal offenses should be tempered by the need to avoid rubberstamping past misconduct as proof of *current* dangerousness. Mr. Mau next argued that he was not a flight risk, as acknowledged by

ICE's latest custody review. Mr. Mau noted the presence of family and friends in northern California, his past work history, offers of residence and employment, his spotless record of institutional compliance, his lack of escapes or defaults, and the evidence of rehabilitation while in custody. Finally, as to the matter of a bond, Mr. Mau argued that no bond was necessary, since any concerns could be addressed by reasonable conditions of release, such as in the standard Order of Supervision. Mr. Mau urged the IJ to consider the special facts of Tijani detainees, who by definition have endured prolonged detention, typically with no income whatever during that time. Mr. Mau had been held for over three years and his resources are so limited, he could not afford the filing fee for the habeas petition. Bond should be imposed only if other conditions cannot reasonably ensure compliance, and a lower bond holds proportionally the same coercive effect to one with limited resources. On that basis, Mr. Mau argued that if a bond were imposed, it be the lowest possible amount.

11. The IJ ruled that Mr. Mau was eligible for a bond. See Order of IJ attached to the Supplement as Appendix E. However, the IJ had no authority to release Mr. Mau without a bond under the regulations, particularly since his case was administratively final, and he had been denied relief. The IJ stated that he had no authority to release Mr. Mau "on OR." Holding that Mr. Mau's convictions showed he was "a proven danger," the IJ refused to impose a low bond. In fact, the IJ stated that anyone who saw Mr. Mau driving at him or her on the highway would feel threatened. The IJ stated that whether the harm flowing from the DUIs was intentional was irrelevant. Also, Mr. Mau's completing an AA program while in prison did not show he was not a danger. The IJ imposed a bond of $100,000, with a condition that Mr. Mau not drive if released and surrender any driver's license he possesses. The IJ stated that a written opinion will be issued only if an appeal is filed with the BIA.

///
///
///
///
///

4

12.     Mr. Mau reserved his right to appeal, while noting that he maintains that the IJ, and so the BIA, lacks authority to determine the conditions of release in this case.

I declare under penalty of perjury that the foregoing is true and correct, except for those matters which are stated to be on information and belief, and as to those matters, I believe them to be true.

    Executed on March 27, 2008, in San Diego, California.

JAMES FIFE
Declarant

# APPENDIX B

JAMES FIFE CBN #237620
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway Suite 900
San Diego, CA 92101
(619) 234-8467

Attorneys for Respondent

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT, SAN DIEGO
HONORABLE HENRY IPEMA, JR.

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | No. A97-890-332 |
| EPARAMA MAU, | ) | Hearing: March 24, 2008 |
| Respondent | ) | |
| | ) | |

**RESPONDENT'S OBJECTION TO THIS COURT'S AUTHORITY TO DETERMINE RELEASE CONDITIONS AND LEGAL MEMORANDUM ON PROCEDURE UNDER _TIJANI v. WILLIS_.**

**I.**
**OBJECTION TO AUTHORITY TO HEAR THIS MATTER**

Respondent, through undersigned counsel, submits this Objection to this Court's authority to determine release conditions. This Objection is based on the lack of statutory or regulatory authority for this Court to determine custody matters after entry of a final order of removal, and on the failure of the referral of this matter from the District Court to comply with the requirements of Federal Rules of Civil Procedure 53 (Masters).

**Statement of the Case**

This matter comes before this Court on Order of U.S. District Court for the Southern District of California, Chief Judge Irma E. Gonzalez presiding, as a final judgment in Respondent's petition for writ of _habeas corpus_ in case number 07CV2037-IEG (LSP). That final order was entered on March 11, 2008; a copy is attached hereto as Appendix A. Judge Gonzalez

granted the petition in part, stating "Respondents [Government] are ORDERED to provide petitioner [Mr. Mau] a hearing within thirty days of this order before an Immigration Judge with the power to grant him bail unless the government established that he is a flight risk or will be a danger to the community." The legal authority for this order derives from the relief granted by the Ninth Circuit Court of Appeals in *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005); a copy of that decision is attached hereto as Appendix B.

Respondent has moved the District Court to amend its judgment in the *habeas* case on the grounds that the Immigration Court lacks authority to determine custody matters following the entry of a final removal order and because the referral to the Immigration Court fails to comply with the requirements of the Federal Rules of Civil Procedure 53. That motion is now pending before the District Court.

### No Statutory or Regulatory Authority Exists to Determine Release Conditions

The District Court's order to have Respondent's release conditions determined by this Court derives from the Ninth Circuit decision in *Tijani*. The Ninth Circuit ordered that Mr. Tijani be released, "unless the government within 60 days of this order provides a hearing to Tijani before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community." 430 F.3d at 1242. However, Judge Tashima, in his concurring opinion, would have granted outright release, the basic relief sought by habeas corpus. See Tijani, 430 F.3d at 1250 (Tashima, J., concurring). It is not clear, however, where the majority found the authority to order a bail hearing before the IJ; the relief was created out of whole cloth.

Tijani does not cite authority in a specific statute or rule for its choice of remedy. The reason that particular relief was granted appears to be because it is the relief the petitioner sought. See Substitute Opening Brief for Petitioner-Appellant at *45-46, Tijani v. Willis, No. 04-55285,

2004 WL 2606537 (9th Cir. Oct. 14, 2004).

It is not clear, however, that authority exists for such an order. Under 8 C.F.R. § 1236.1, describing the procedure for alien detainees to obtain release from ICE custody, immigration judges are granted authority to review the custody decisions of ICE officials "at any time before an order under 8 CFR part 1240 becomes final." 8 C.F.R. § 1236(d)(1). Per 8 C.F.R. § 1241.1(a), a removal order becomes administratively final "upon dismissal of an appeal by the Board of Immigration Appeals." Respondent's BIA appeal was dismissed on April 28, 2005. Consequently, under the regulations, this Court lacks authority to review DHS's custody determinations for Respondent.

As there is no clear authority in law for assigning the determination of the proper scope of relief on a federal *habeas corpus* petition to the Immigration Court, this Court lacks authority to proceed with this hearing.

### Referral of the Question of Relief to This Court Violates the Rules on Special Masters

As there is no independent statutory or regulatory authority for this Court to carry out the post-removal custody hearing, it is possible that the District Court has referred the matter to this Court under the District Court's general power to appoint special masters. See Fed. R. Civ. P. 53. However, under Rule 53, the appointment authority is limited. Subdivision (a) limits appointment of masters to specific instances allowed by statute or (1) when the parties consent; or (2) to conduct fact finding if exceptional conditions or difficulty is involved; or (3) the matter relates to pre- or post-trial issues that cannot be effectively and timely addressed by the district judge. Moreover, special masters are restricted by conflict concerns under Rule 53(a)(2) and appointment is constrained by the requirement of notice to and objection by the parties. See Rule 53(b)(1). The requirements of a referral under Rule 53 have not been met in this case: there was no notice or consent to the referral, nor does a specific statute apply, nor any finding that the matter cannot be

effectively heard in the District Court.

To the extent that the *Tijani* procedure is grounded in general referral powers, the procedural requirements of Rule 53 have not been satisfied in this case.

## II.

## SCOPE AND PROCEDURE IN *TIJANI* HEARINGS

The District Court referred this matter to this Court following the relief granted in *Tijani v. Willis*. It is important, then, that the parameters of a *Tijani* hearing be adhered to in order to fulfill the District Court's order.

In *Tijani*, the Ninth Circuit ordered a bail hearing before an Immigration Judge, but in doing so, and in light of the prolonged detention endured by the petitioner, the burden to show ineligibility for release was expressly placed **on the Government**. See *Tijani*, 430 F.3d at 1242. Contrary to the usual burden of proof applied in custody reviews before this Court, see 8 C.F.R. § 1236.1(c)(3), the burden to show significant flight risk or danger to the community in a *Tijani* hearing must lie with the Government. This fact is explicitly recognized in Judge Gonzalez's order in this case, stating that Respondent is to be released on bail "unless *the government establishes* that he is a flight risk or will be a danger to the community." (emphasis added). Therefore, the Government must come forward with a showing that there is no combination of reasonable conditions on release which will ameliorate any risk of flight or danger. See 8 U.S.C. §§ 1226(a) & 1231(a)(3); see also 8 C.F.R. §241.5.

Moreover, in a *Tijani* hearing, the standard of proof is **clear and convincing evidence**. This derives from two facts. First, *Tijani* cited to *Cooper v. Oklahoma*, 517 U.S. 348 (1996). See 430 F.3d at 1242. In *Cooper*, the Supreme Court stated, "we have held that due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both "particularly important" and "more substantial than mere loss of money." '

*Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (termination of parental rights)." *Id.* at 363. In light of *Tijani's* citation to the heightened burden discussion in *Cooper*, the standard of proof must be clear and convincing evidence. See also *Tijani*, 430 F.3d at 1245-46 (Tashima, J., concurring). Second, since the standard of proof for *detainees* to obtain release is clear and convincing, it is only fair and logical that when the burden is reversed, the Government must be held to the same standard. See 8 C.F.R. § 1236.1(c)(3).

In keeping with this allotment of proof and the standard required to deny release, a showing that Respondent meets the usual criteria for release on supervision from ICE should suffice to controvert and rebut a showing by the Government. To that end, Respondent urges that this Court use as an analytical tool in conducting the hearing the standard regulatory criteria and factors used to admit a deportee to supervision. See 8 C.F.R. § 241.4(e) & (f).

Moreover, he urges this Court to bear in mind the particular circumstances of prolonged detainees who qualify for relief under *Tijani*: A high cash deposit is particularly inappropriate for those who have endured prolonged detention, since their financial resources will usually have evaporated from years of no income, and ties to relatives who might have been able to help can be severed by the long separation.

As Judge Tashima recognized in *Tijani*, deportees who qualify for relief under that case–that is, those who have substantial arguments that their removal orders are invalid–have a strong incentive to remain available and not to flee beyond ICE control, since an appellate win could result in their deportation being nullified. See *Tijani*, 430 F.3d at 1246 n.3 (Tashima, J., concurring). Here, Respondent's petition for review in the Ninth Circuit, if successful, can result in his being granted withholding of removal under the Convention Against Torture. Therefore, the risk of flight in this case should be gauged by the special circumstances attending detainees who have shown their qualification for *Tijani* relief.

Should this Court agree to continue with the hearing and determine the appropriate conditions for Respondent's release, the Court is respectfully urged to follow the procedure and standards outlined in this memorandum in order to comply with the parameters laid down by the Ninth Circuit and the District Court's order.

Respectfully submitted,

3/19/08

James Fife, Esq.
Federal Defenders of San Diego, Inc.
Attorneys for Respondent

A97-890-332

# INDEX

Appendix A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-8
Appendix B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-20

# Appendix A

1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                         SOUTHERN DISTRICT OF CALIFORNIA
10
11   EPARMA MAU,                                    CASE NO. 07CV2037
12                              Petitioner,         **ORDER GRANTING IN PART
                                                    PETITION FOR WRIT OF
13            vs.                                    HABEAS CORPUS**
     MICHAEL CHERTOFF, SECRETARY OF
14   THE DEPARTMENT OF HOMELAND
     SECURITY, MICHAEL MUKASEY,
15   ATTORNEY GENERAL ROBIN BAKER,
     DIRECTOR OF SAN DIEGO FIELD
16   OFFICE, U.S. IMMIGRATION AND
     CUSTOMS ENFORCEMENT, JOHN A.
17   GARZON, OFFICER-IN-CHARGE,
18                              Respondents.
19
20          Presently before the Court is Petitioner Eparama Mau's Petition for Writ of Habeas Corpus
21   under 28 U.S.C. § 2241.  Petitioner seeks release pending the outcome of his challenge to his
22   deportation order which is currently under review in the Ninth Circuit Court of Appeals.  For the
23   following reasons, the Court GRANTS IN PART the Petition and orders Respondents to provide
24   Petitioner with a bail hearing.

                                      **BACKGROUND**
25   **Factual Background**
26          Petitioner is a native and citizen of Fiji.  He entered the United States in March 2001 as a non-
27   immigrant B-2 visitor for pleasure with authorization to remain in the United States until September
28   14, 2001.  He subsequently remained in the United States beyond this date without authorization.

                                            - 1 -

1    On March 16, 2004, while on probation for a previous conviction for driving under the

2    influence, Petitioner was convicted of violating California Vehicle Code § 23153(b) for Driving Under

3    the Influence with Bodily Injury and was sentenced to 16 months' imprisonment.  On September 16,

4    2004, Immigration and Customs Enforcement initiated removal proceedings against Petitioner,

5    charging him with deportability pursuant to 8 U.S.C. § 1227(a)(1)(B), which provides for the

6    deportation of an alien who violates his non-immigrant status.

7    Petitioner was transferred to the custody of the Respondents on October 5, 2004 and held in

8    custody pending removal proceedings before the Immigration Judge ("IJ") and the Board of

9    Immigration Appeals ("BIA").  On December 15, 2004, a removal hearing was held.  Petitioner

10   admitted each of the allegations filed against him.  The IJ found Petitioner removable based on the

11   admissions.  The IJ heard testimony from the Petitioner regarding his fear of being returned to Fiji

12   based on past instances of abuse at the hands of Fijian officials which the IJ concluded was credible.

13   However, the IJ denied Petitioner's applications for asylum and withholding under the Immigration

14   Act and the Convention Against Torture based on Petitioner's DUI conviction.  The IJ further denied

15   deferral of removal under the Convention Against Torture based on a finding that Petitioner had not

16   established it more likely than not that he would be tortured by a public official if returned to Fiji.

17   Petitioner timely appealed the decision of the IJ to the BIA.  The BIA affirmed the IJ's ruling on April

18   28, 2005.

19   Petitioner then filed a timely petition for review pro se with the Ninth Circuit on May 12, 2005.

20   The same day, Petitioner moved for a stay of deportation pending appeal; Respondents filed a notice

21   of non-opposition to the stay on July 8, 2005. Following two extensions of time, Petitioner's opening

22   brief was filed late on November 17, 2005, but was accepted by the Court.  Respondents were ordered

23   to file their brief by January 26, 2006.  On January 20, 2006, the Respondents sought a two-week

24   extension of time to file their brief.  Petitioner filed an opposition to the extension on February 7,

25   2006.  Respondent's brief was filed on February 9, 2006.  After a 14-day extension, Petitioner filed

26   his reply brief on March 9, 2006.  No action has since taken place in the case.

27   //

28   //

- 2 -

2

1  **Procedural Background**

2       Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 18 U.S.C. 2241 on October

3  19, 2007. (Doc. No. 1.)  The Court granted Petitioner's accompanying motions to proceed in forma

4  pauperis and for appointment of counsel.  (Doc. No. 6, 9.)  Respondents filed their return to the

5  Petition on December 28, 2007. (Doc. No. 15.) Petitioner filed a traverse on January 18, 2008. (Doc.

6  No. 16).

7  <center>**JURISDICTION**</center>

8       Pursuant to 28 U.S.C. § 2241, alien detainees can properly challenge the extent of the Attorney

9  General's authority to detain a removable alien under the statutes authorizing detention. Zadvydas

10  v. Davis, 533 U.S. 678, 687-89 (2001); see also Denmore v. Kim, 538 U.S. 510, 516-17 (2003).

11  Where, as here, an administrative order of removal is not final, "habeas corpus jurisdiction remains

12  in the district court." Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006); see also 8

13  U.S.C. § 1231(a)(1) (describing how a removal order becomes final).

14  <center>**DISCUSSION**</center>

15  **1.**    **Respondents' Authority to Detain Petitioner**

16       The parties do not dispute that Petitioner's detention is pursuant to 8 U.S.C. § 1226(a). Under

17  8 U.S.C. § 1226(a), aliens may be "detained pending a decision on whether the alien is to be removed

18  from the United States."  Unlike section 1226(c) of the same statute, which makes detention

19  mandatory where the alien is inadmissible or deportable based on the commission of certain offenses,

20  detention under section 1226(a) is discretionary; the Attorney General may release the alien on bond

21  or conditional parol.  8 U.S.C. § 1226(a)(2).

22      i.    **Whether 8 U.S.C. § 1226(a) Authorizes Petitioner's Continued Detention**

23       Petitioner argues the length of his detention under 8 U.S.C. § 1226(a) has surpassed the length

24  authorized by the statute.  In support, Petitioner relies on the Ninth Circuit's recent decisions in Tijani

25  v. Willis, 430 F.3d 1241 (9th Cir. 2005) and Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006)..

26       In Tijani, the Court of Appeals reviewed the by then 32 month detention of an alien subject

27  to detention under the mandatory detention provision of 8 U.S.C. § 1226(c). Like Petitioner, the alien

28  in that case was awaiting the outcome of his appeal pending before the Ninth Circuit. The Ninth

<center>- 3 -</center>

<center>**3**</center>

1    Circuit observed it was "constitutionally doubtful that Congress may authorize imprisonment of this

2    duration for lawfully admitted resident aliens who are subject to removal." 430 F.3d at 1242.

3    However, instead of deciding the constitutional issue, the court interpreted the authority conferred by

4    § 1226(c) as applying only to "expedited" removal of criminal aliens. Id. That authority, the court

5    held, had been exceeded by the two years and eight months of process which had already passed while

6    Tijani remained confined.  The court ordered release of Tijani unless he was provided with a bail

7    hearing and found unsuitable for release under factors associated with flight risk or danger to the

8    community. Id.

9        Petitioner also draws support from the Ninth Circuit's post-Tijani decision in Nadarajah v.

10   Gonzales, 443 F.3d 1069 (9th Cir. 2006).  In that case, the Ninth Circuit observed that the general

11   immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an

12   indefinite period.  The Court held detention pursuant to general detention statutes must be "for a

13   reasonable period, and only if there is a significant likelihood of removal in the reasonably foreseeable

14   future." Id. at 1079 (emphasis added).  Once the alien provides good reason to believe that there is

15   no significant likelihood of removal in the reasonably foreseeable future, the Government must

16   respond with evidence sufficient to rebut that showing. Id. at 1079-80 (citing Zadvydas, 533 U.S. at

17   701).

18       Applying the law to the facts, the court concluded the writ of habeas corpus should issue

19   because the length of the detention in the case, over 60 months, was unreasonable when compared to

20   the six-month period identified as presumptively reasonable by the Supreme Court in Zadvydas v.

21   Davis, a case in which the Supreme Court interpreted a different detention statute. Further, the court

22   observed that Nadarajah had established that there was no significant likelihood of removal in the

23   reasonably foreseeable future based in part on his past success in proceedings before both the IJ and

24   the BIA.  In both venues, he received a determination that he was entitled to relief from removal.

25       Respondents argue Petitioner is not entitled to habeas relief based on these cases because: (1)

26   Tijani and Nadarajah only apply to mandatory detention pending prolonged administrative removal;

27   (2) Petitioner's detention is voluntary; or because (3) Petitioner's removal is reasonably foreseeable.

28   //

- 4 -

4

a.    **Are the <u>Tijani</u> and <u>Nadarajah</u> Precedents Applicable?**

As an initial matter, Respondents argue the Ninth Circuit's decisions in <u>Tijani</u> and <u>Nadarajah</u> do not apply to the case at hand because those decisions apply only to mandatory detention under section 1226(c) pending prolonged administrative removal proceedings whereas Petitioner is held pursuant to section 1226(a), under which detention is discretionary.

The Court disagrees and finds Ninth Circuit precedent interpreting the authorization contained in the related mandatory detention provision, 8 U.S.C. § 1226(c), is applicable to the current controversy. Respondents cite no evidence based on either the text or the legislative history of these provisions which would lead to the conclusion that section 1226(a) authorizes detention beyond that authorized by section 1226(c). The <u>Tijani</u> court characterized the authority conferred by section 1226(c) as the period of time necessary for the "expedited removal" of aliens. <u>See</u> <u>Tijani</u>, 430 F.3d at 1242. This Court finds detention authority under section 1226(a) is similarly limited. Further, the Court finds the <u>Nadarajah</u> court's conclusion that "the general immigration detention statutes do not authorize . . . indefinite [incarceration]" equally applicable in characterizing both sections 1226(a) and 1226(c). Like section 1226(c), the Court finds detention under section 1226(a) is only authorized for a "reasonable period" and only if there is a "significant likelihood of removal in the reasonably foreseeable future" <u>Nadarajah</u>, 443 F.3d at 1079-80.

b.    **Is Petitioner's Detention Voluntary?**

Respondents next argue Petitioner may not seek habeas relief because his detention is voluntary since he sought and was granted a stay of the removal order. In support, they cite a recent unpublished opinion in which the Ninth Circuit rejected an alien's habeas petition by reasoning that the appellant's requested stay of removal pending appeal of his final removal order amounted to voluntary detention. <u>See</u> <u>Cruz-Ortiz v. Gonzales</u>, 221 F.App'x 531 (9th Cir. 2007) (unpublished). Respondents note a stay of the removal order is not essential to preserve Petitioner's ability to challenge the decision of the BIA. <u>See</u> <u>Zazueta-Carrillo v. Ashcroft</u>, 322 F.3d 1166, 1171 (9th Cir. 2003) ("IIRIRA . . . allows aliens to continue their cases from abroad.").

Petitioner calls Respondents' theory of voluntary detention absurd, arguing it is based on a false choice between detention and removal when release on supervision is a readily available option.

- 5 -

5

1   Petitioner further notes that aside from the unpublished opinion in Cruz-Ortiz, there is no legal
2   authority in support of Respondents' theory.

### 1.    Analysis

4        As this Court has recently observed, the Ninth Circuit's decision in Tijani to grant habeas relief
5   to the petitioning alien—as that alien was concurrently seeking Ninth Circuit review of his removal
6   order—conveys an implicit rejection of the argument advanced by Respondents that an alien's
7   detention becomes "voluntary" by virtue of that alien's filing of a petition for review. See Judulang
8   v. Chertoff, -- F.Supp.2d ----, 2008 WL 410684, *3 (S.D. Cal. February 12, 2008) (Gonzalez, CJ.).
9   The Court reiterates its agreement with those other district courts which have included time detained
10  pending judicial review in assessing the reasonableness of a prolonged detention. See, e.g., Mustanich
11  v. Gonzales, 2007 WL 2819732, *8 (S.D. Cal. Sept. 26, 2007) ("After reviewing the relevant case law,
12  and particularly Tijani, the Court concludes that it can and must consider periods of detention which
13  accrue pending judicial review in determining whether removal proceedings and detention pursuant
14  to 8 U.S.C. § 1226(c) are expeditious and reasonable."); Martinez v. Gonzalez, 504 F.Supp.2d 887,
15  897 (C.D.Cal.2007) (rejecting argument time detained during judicial appeals does not count toward
16  the reasonableness of a lengthy detention).

17       While the Court is sensitive to the possibility that a removable alien may engage in dilatory
18  tactics in order to compel a determination that his detention was unreasonably long, Respondents have
19  set forth no argument that Petitioner's appeal is frivolous.[1]  Respondents acknowledge that, as part of
20  Petitioner's application for relief under the Convention against Torture, Petitioner presented credible
21  evidence that his treatment by the police in Fiji constituted torture.  (See Respondent's Return, pg. 5.;
22  see also Ex. G, Order of the IJ.)  In addition, the substantial period for which Petitioner's petition for
23  review has been pending is some evidence that the claims therein are not frivolous.
24  //
25  //
26
27       [1]Respondents contend Petitioner has engaged in a bad faith refusal to complete necessary travel
28  documents.  The Court finds this issue to be a red herring.  It is Petitioner's pending petition for
    review of his removal order and the related stay that prevents his immediate removal—not the lack
    of travel documents.

- 6 -

6

### c.    Is Petitioner's Removal Reasonably Foreseeable?

While raising no argument that the length of Petitioner's detention thus far is "reasonable" under Nadarajah, Respondents argue that because judicial review of Petitioner's petition for review has a finite duration, Petitioner cannot establish that there is no significant likelihood of removal in the reasonably foreseeable future.

### 1.    Analysis

Respondents have detained Petitioner for nearly 40 months. The majority of this time, the past 24 months, has accrued during proceedings before the Court of Appeals for the Ninth Circuit. This Court cannot determine when the Court of Appeals might adjudicate Petitioner's petition for review and even if the Court of Appeals were to adjudicate the Petition, it is not clear that the order of the BIA would be affirmed as opposed to reversed and remanded. As the Supreme Court has observed, a court should consider that "as the period of . . . confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701. Here, Petitioner has been in Respondents' custody for over 3 years. Under the circumstances, the Court concludes Petitioner has demonstrated no significant likelihood of removal in the reasonably foreseeable future. Cf. Mustanich v. Gonzales, 2007 WL 2819732 (S.D. Cal. Sep. 26, 2007). Respondents have failed to adequately rebut this showing.

### d.    Conclusion

The Court concludes Petitioner's removal proceedings have not been "expeditious"and further finds that Petitioner's detention exceeds the "reasonable period" authorized by the statute. See Tijani, 430 F.3d at 1242 (authority conferred by § 1226(c) applies to expedited removal); Nadarajah, 443 F.3d at 1079-80 ("[D]etention must be for a reasonable period . . . ."). Because Respondents have not rebutted Petitioner's contention that his release is not reasonably foreseeable, Petitioner is entitled to habeas relief. See Nadarajah, 443 F.3d at 1079-80 (detention authorized under general detention statutes only if there is a "significant likelihood of removal in the reasonably foreseeable future.").

//

//

//

**2.**    **Remedy**

Petitioner requests he be released from custody under the conditions of supervision set forth in 8 U.S.C. § 1231(a)(3), or, in the alternative, given a release hearing to evaluate his eligibility for supervision under appropriate conditions.

The Ninth Circuit in <u>Tijani</u> remanded the case to the district court:

> with directions to grant the writ unless the government within 60 days of this order provides a hearing to Tijani before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community.

430 F.3d at 1242. In <u>Mustanich</u>, Judge Hayes also found it appropriate to grant the petitioner a bail hearing before an Immigration Judge within ten days. 2007 WL 2819732 at *8. A bail hearing will give respondents an opportunity to assess whether petitioner's continued detention is justified.

<div align="center">CONCLUSION</div>

The Court hereby **GRANTS IN PART** the petition for writ of habeas corpus. Respondents are **ORDERED** to provide petitioner a hearing within thirty days of this order before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community.

**IT IS SO ORDERED.**

DATED:  March 11, 2008

_Irma E. Gonzalez_
**IRMA E. GONZÁLEZ, Chief Judge**
**United States District Court**

# Appendix B

Westlaw.

430 F.3d 1241                                                                    Page 1
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
**(Cite as: 430 F.3d 1241)**

Briefs and Other Related Documents

United States Court of Appeals,Ninth Circuit.
Monsuru O. **TIJANI**, Petitioner-Appellant,
v.
Wayne K. **WILLIS**, Interim Director, Interior
Immigration Enforcement, United States Department
of Homeland Security;  Caryl Thompson, OIC,
Respondents-Appellees.
**No. 04-55285.**

Argued and Submitted Jan. 10, 2005.
Filed Dec. 13, 2005.

**Background:**  Alien subjected to mandatory detention
during removal proceedings sought habeas corpus
relief. The United States District Court for the Southern
District of California, William Q. Hayes, J., denied
petition. Alien appealed.

**Holding:**  The Court of Appeals, Noonan, Circuit
Judge, held that alien was entitled to release on bail
after being imprisoned for two years and eight months
during removal proceedings, either because detention
for such period did not conform to Immigration and
Nationality Act's (INA) mandatory detention provision,
or because detention for such period violated alien's due
process rights.

Reversed and remanded.

Tashima, Circuit Judge, filed concurring opinion.

Callahan, Circuit Judge, filed dissenting opinion.

West Headnotes

**Aliens, Immigration, and Citizenship 24 ⚷466**

24 Aliens, Immigration, and Citizenship
    24VI Arrest, Detention, Supervision, and Parole

24VI(D) Detention, Supervision, and Parole
                24k464 Detention Pending Removal
Proceeding
                24k466 k. Time Limitations. Most Cited
Cases
     (Formerly 24k53.9)

**Constitutional Law 92 ⚷274.3**

92 Constitutional Law
    92XII Due Process of Law
        92k274.3 k. Regulations Affecting Aliens. Most
Cited Cases
Alien was entitled to release on bail after being
imprisoned for two years and eight months during
removal proceedings, either because detention for such
period was not expeditious, and thus did not conform to
Immigration and Nationality Act's (INA) mandatory
detention provision, or because detention for such
period violated alien's due process rights. (Per opinion
of Noonan, Circuit Judge, and opinion of Tashima,
Circuit Judge, concurring in judgment.) U.S.C.A.
Const.Amend. 5; Immigration and Nationality Act, §
236(c), 8 U.S.C.A. § 1226(c).


**\*1242** Steven A. Hirsch, Keker & Van Nest, LLP, San
Francisco, CA, Lucas Guttentag, ACLU Immigrants'
Rights Project, Oakland, CA, and Judy Rabinovitz,
ACLU Immigrants' Rights Project, New York, NY, for
petitioner-appellant.
Carol C. Lam, United States Attorney, Tom Stahl,
Assistant U.S. Attorney, and Ernest Cordero, Jr.,
Assistant U.S. Attorney, United States Attorney's
Office, San Diego, CA, for respondents-appellees.

Appeal from the United States District Court for the
Southern District of California;  William Q. Hayes,
District Judge, Presiding.    D.C. No.
CV-03-01624-WQH/JFS.

Before: NOONAN, TASHIMA, and CALLAHAN,
Circuit Judges.
NOONAN, Circuit Judge:

430 F.3d 1241                                                                                                            Page 2
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
**(Cite as: 430 F.3d 1241)**

As of today's date, Tijani has been deprived of his liberty by the government for a period of over two years and eight months. This deprivation has been inflicted not as the result of any adjudication of crime but as a bureaucratic application of the authority conferred on the Attorney General by 8 U.S.C. § 1226(c). Despite the substantial powers that Congress may exercise in regard to aliens, it is constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal. *See Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). The case is distinct from *Demore v. Kim*, 538 U.S. 510, 513-514, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), where the alien conceded deportability.

To avoid deciding the constitutional issue, we interpret the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens. Two years and eight months of process is not expeditious; and the foreseeable process in this court, where the government's brief in Tijani's appeal of the removal was only filed last month after two extensions of time, is a year or more.

We remand to the district court with directions to grant the writ unless the government within 60 days of this order provides a hearing to Tijani before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community. *See Cooper v. Oklahoma*, 517 U.S. 348, 363, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).

REVERSED and REMANDED.
TASHIMA, Circuit Judge, concurring:
I concur in Judge Noonan's opinion reversing the denial of habeas relief and *1243 requiring the Immigration Court to grant Tijani a bail hearing. His opinion, however, barely alludes to the standards that should govern the conduct of such a hearing, or what facts must be established in order to warrant the grant or denial of release, or who has the burden of proving those facts, and by what standard of proof. I write separately because I believe that we have a duty to give more guidance to the agency and to the court below so that they can carry out their respective mandates.

Monsuru Tijani has now been imprisoned by the federal government for almost two and one-half years. His detention is not the result of a criminal conviction; nor is it because he faces imminent removal. The only reason that Tijani is being detained is because the government *may* be able to prove he is subject to removal. Tijani contends that his indefinite detention for such a reason is not constitutionally permissible. Now, instead of deciding the issues squarely presented by this appeal, the majority opinion grants habeas relief, but without deciding the issues raised on the merits. I join Judge Noonan's majority opinion because, as I explain below, I do not believe that Tijani's indefinite detention is constitutionally permissible; therefore, that he is entitled to release.

I.

A.

At the heart of this case lies the Board of Immigration Appeals' ("BIA's") decision in *In re Joseph*, 22 I. & N. Dec. 799 (BIA 1999), a decision that is both contrary to the Constitution and shortsighted as a matter of policy. *Joseph* concerned the proper scope of § 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), commonly known as the INA's "mandatory detention" provision. Section 236(c) directs the Attorney General to take into custody certain aliens who are facing deportation and prohibits their release under all but the narrowest of circumstances.

As with most statutes, the relatively simple mandate of § 236(c) leaves many questions unanswered, the most important of which is who, exactly, falls under the statute's provisions. The statute states only that mandatory detention applies to an alien who "is deportable by reason of having committed" a number of specified criminal offenses, but does not define those offenses with precision, nor does it define what "is deportable" means. The implementing regulations also do little to help; they provide an alien with the opportunity to establish that he is "not properly included" in the statute's reach, but they say nothing about what, precisely, that alien must show. *See* 8

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

10

430 F.3d 1241                                                                                    Page 3
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
(Cite as: 430 F.3d 1241)

C.F.R. § 1003.19 (2005).

In *Joseph,* the BIA finally gave a meaningful answer to this question. The BIA concluded that the initial determination by the Bureau of Immigration and Customs Enforcement ("BICE") [FN1] that an alien fell within the reach of § 236(c) was entitled to a great deal of deference. *Joseph,* 22 I. & N. Dec. at 800. Thus, the BIA held that an alien who wishes to avoid the reach of *1244 § 236(c) was required to show that BICE was "substantially unlikely to establish" the charges that rendered the alien subject to mandatory detention. *Id.* at 806.

> FN1. When *Joseph* was decided the Immigration and Naturalization Service ("INS") was the primary agency in charge of regulating immigration. INS ceased to exist on March 1, 2003, and most of its functions were transferred to either the Bureau of Border Security or BICE, both units of the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135. As is illustrated by this case, although the *Joseph* decision refers to the INS, the BIA has continued to apply it when reviewing detention by BICE.

Tijani was convicted in California of offenses that have never been found by a court or by the BIA to trigger mandatory detention. Nonetheless, BICE determined that his offenses fell within the reach of § 236(c) and held him in mandatory detention. Based upon the *Joseph* standard, both the Immigration Judge ("IJ") and the BIA affirmed BICE's determination. Today, nearly 30 months later, Tijani remains in mandatory detention while courts continue to sort out whether his offenses actually fall within the reach of the mandatory detention statute.

## B.

The BIA's *Joseph* decision was, plainly put, wrong. There can be no doubt that individual liberty is one of the most fundamental rights protected by the Constitution.[FN2] *See Zadvydas v. Davis,* 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) ("Freedom from imprisonment-from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty [the Due Process] Clause protects."). *Joseph,* which was decided prior to *Zadvydas,* gives that right little or no weight. Instead, it establishes a system of "detention by default" by placing the burden fully on the alien to prove that he should not be detained. When such a fundamental right is at stake, however, the Supreme Court has insisted on heightened procedural protections to guard against the erroneous deprivation of that right. In particular, the Supreme Court has time and again rejected laws that place on the individual the burden of protecting his or her fundamental rights.

> FN2. There can also be no doubt that the Due Process Clause protects immigrants as well as citizens. *See Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) ("The Fifth Amendment, as well as the Fourteenth Amendment, protects every [alien] from deprivation of life, liberty or property without due process of law.").

The first of these decisions is *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), in which the Court vacated the Texas Supreme Court's ruling that a person could be civilly committed based upon a finding of mental illness by a preponderance of the evidence. *Id.* at 432-33, 99 S.Ct. 1804. In reaching its conclusion, the Court elaborated upon the "function of a standard of proof, as that concept is embodied in the Due Process Clause." *Id.* at 423, 99 S.Ct. 1804. According to the Court, its primary function was to allocate the risk of an erroneous decision among litigants based upon the competing rights and interests involved. *Id.* Thus, in a civil case, because the interests involved are minor and because "society has a minimal concern with the outcome," the litigants share the risk of error roughly equally under the preponderance of the evidence standard. *Id.* In a criminal case, on the other hand, "the interests of the defendant are of such magnitude" that "our society imposes almost the entire risk of error upon itself" by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

430 F.3d 1241
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
**(Cite as: 430 F.3d 1241)**

insisting on the beyond a reasonable doubt standard. *Id.* at 423-24, 99 S.Ct. 1804.

Based on these principles, the Court held that the Constitution required a showing of mental illness by at least clear and convincing evidence before an individual's liberty could be constrained. *Id.* at 432-33, 99 S.Ct. 1804. Noting that it "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," *id.* at 425, 99 S.Ct. 1804, the Court found it improper to ask "[t]he individual ... to share equally with *1245 society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state," *id.* at 427, 99 S.Ct. 1804. Thus, the Court concluded that "due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Id.* at 427, 99 S.Ct. 1804.

Since *Addington,* the Supreme Court has repeatedly reaffirmed the principle that "due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake ... are both particularly important and more substantial than mere loss of money.' " *Cooper v. Oklahoma,* 517 U.S. 348, 363, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (quoting *Santosky v. Kramer,* 455 U.S. 745, 756, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)) (internal quotation marks omitted). In *Santosky,* for example, the Court considered a New York law that allowed the state to terminate parental rights upon proof of "permanent neglect" by a preponderance of the evidence. 455 U.S. at 747, 102 S.Ct. 1388. Because the statute directly affected the "fundamental liberty interest of natural parents in the care, custody, and management of their child," *id.* at 753, 102 S.Ct. 1388, the Court held that it needed to include greater procedural protection than the preponderance of the evidence standard. *Id.* at 769-70, 102 S.Ct. 1388.

Again, in *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), the Court found a statute unconstitutional that placed on civilly committed individuals the burden of proving that they were not a danger to the public before allowing their release. *Id.*

at 73, 83, 112 S.Ct. 1780. Noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception," the court held that such a system failed adequately to protect the individual's liberty interest. *Id.* at 83, 112 S.Ct. 1780 (quoting *United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Once again, because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause," clear and convincing evidence was needed to civilly commit the individual. *Id.* at 80, 112 S.Ct. 1780.

Finally, in *Cooper,* the Court unanimously rejected a state-law presumption that a defendant was competent to stand trial unless that defendant established his incompetence by clear and convincing evidence. 517 U.S. at 350, 355-56, 116 S.Ct. 1373. Stating that "we perceive no sound basis for allocating to the criminal defendant the large share of the risk which accompanies a clear and convincing evidence standard," the Court held that the Oklahoma law violated due process. *Id.* at 366, 116 S.Ct. 1373.

As the above cases illustrate, the Supreme Court has consistently adhered to the principle that the risk of erroneous deprivation of a fundamental right may not be placed on the individual. Rather, when a fundamental right, such as individual liberty, is at stake, the government must bear the lion's share of the burden. Indeed, those cases in which the Court has found detention schemes to be permissible have emphasized the procedures available to protect the individual's rights. For example, in *Salerno,* the Supreme Court upheld the Bail Reform Act, which allowed the government to detain an arrestee pending trial upon a showing by the government that "no release conditions 'will reasonably assure ... the safety of any other person and the community.' " 481 U.S. at 741, 107 S.Ct. 2095 (quoting Bail Reform Act of 1984, 18 U.S.C. § 3142). In upholding the Act, the Court emphasized how narrowly crafted it was, citing the "stringent time limitations" placed on pretrial detention, *id.* at 747, 107 S.Ct. 2095, *1246 its applicability only to the "most serious of crimes," *id.,* its requirement of proof of dangerousness by clear and convincing evidence, *id.* at 750, 107 S.Ct. 2095, and its judicial safeguards, *id.* at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

430 F.3d 1241
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
(Cite as: 430 F.3d 1241)

Page 5

751-52, 107 S.Ct. 2095.

Both the blanket application of the *Joseph* standard and the breadth of its reach stand in stark contrast to the narrowly tailored design of the Bail Reform Act. *Cf. Foucha,* 504 U.S. at 81, 112 S.Ct. 1780 ("Unlike the sharply focused scheme at issue in *Salerno,* the Louisiana scheme of confinement is not carefully limited."); *Zadvydas,* 533 U.S. at 692, 121 S.Ct. 2491 (expressing scepticism about detention where the "sole procedural protections available to the alien are found in administrative proceedings, where the alien bears the burden of proving he is not dangerous").

In light of the above cases, the *Joseph* standard is not just unconstitutional, it is egregiously so. The standard not only places the burden on the defendant to prove that he should not be physically detained, it makes that burden all but insurmountable. Unlike *Addington* and it's progeny, the *Joseph* standard places little to no risk on the broad shoulders of the government.[FN3]

> FN3. The *Joseph* standard's allocation of risk also creates an entirely separate problem. By subjecting immigrants who, like Tijani, raise difficult questions of law in their removal proceedings to detention while those proceedings are being conducted, the *Joseph* standard forces those immigrants to endure precisely what Tijani has endured: detention that lasts for a prolonged period of months or years. Indeed, the vast majority of Tijani's detention-over 22 of the nearly 30 months that have so far elapsed-has occurred while the BIA and this court have considered his appeals. As I explain below, such detention violates the Constitution of its own right. Narrowing the *Joseph* standard so that mandatory detention is applied only to those who are more certain to fall under its provisions would be a sensible means of guarding against such collateral constitutional violations.

One need look no further than Tijani's parallel petition for review to find a perfect illustration of the *Joseph*

standard's unconstitutional allocation of the burden of proof.[FN4] Tijani now has a petition for review of the merits of the IJ's removal order pending before this court. The questions his case raises are by no means easy; the IJ took almost seven months to issue his decision; the BIA took just short of an additional 13 months; and, in his petition for review before this court, the government has not contested his motion for a stay of removal pending review. Yet, based on the blanket application of the all-but-insurmountable *Joseph* standard, Tijani has remained in detention the entire time his case has been pending. Under these circumstances, his detention for nearly 30 months is simply inconsistent with due process of law.

> FN4. Mandatory detention lasts for a relatively brief period in the vast majority of cases in which it is applied. *Demore v. Kim,* 538 U.S. 510, 529, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) ("[I]n 85% of the cases in which aliens are detained pursuant to [§ 236(c) ], removal proceedings are completed in an average time of 47 days and a median of 30 days."). But Tijani's situation is by no means unique; other federal courts have also considered habeas challenges brought by immigrants who have been detained under § 236(c) for lengthy periods of time. *See, e.g., Ly v. Hansen,* 351 F.3d 263, 265 (6th Cir.2003) (500 days of detention before release); *Fuller v. Gonzales,* 2005 WL 818614 at *1 (D.Conn.2005) (two years of detention before release).

C.

1.

In light of the due process concerns described above, this court should reject *1247 the *Joseph* standard. Instead, it should interpret § 236(c) to apply mandatory detention in a more narrow fashion. Only those immigrants who could not raise a "substantial" argument against their removability should be subject to mandatory detention. *See Demore,* 538 U.S. at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

13

430 F.3d 1241                                                                                    Page 6
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
**(Cite as: 430 F.3d 1241)**

578-79, 123 S.Ct. 1708 (Breyer, J., dissenting). This interpretation is not only more respectful of the Constitution, it is also more consistent with Congress' chosen language. *Id.* at 578, 123 S.Ct. 1708 ("Title 8 U.S.C. § 1226(c) tells the Attorney General to 'take into custody any alien who ... *is* deportable' (emphasis added), not one who may, or may not, fall into that category.").

The "substantial argument" standard strikes the best balance between an alien's liberty interest and the government's interest in regulating immigration.[FN5] *See Demore*, 538 U.S. at 578, 123 S.Ct. 1708 (Breyer, J., dissenting) (the "substantial question of law or fact" standard "gives considerable weight to any special governmental interest in detention," is "more protective of a detained alien's liberty interest than those currently administered in the INS' *Joseph* hearings," and has "proved workable in practice in the criminal justice system"). It gives the alien's liberty rights adequate respect and ensures that the alien's detention will be relatively brief. At the same time, it provides the government leeway to detain those aliens who lack any incentive to press their legal claims, and are therefore the most likely to abandon those claims and flee.[FN6]

FN5. Clearly the government's interest here is substantial. Congress has "broad power over naturalization and immigration" that allows it to "make[ ] rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521, 123 S.Ct. 1708 (quoting *Diaz*, 426 U.S. at 79-80, 96 S.Ct. 1883). Pursuant to this power, Congress created mandatory detention to address its concern that too many immigrants were fleeing from their immigration proceedings. *See generally id.* at 518-21, 123 S.Ct. 1708. While it is clear that immigrants may be detained under this provision during a relatively brief period for processing and removal, I do not believe that Congress intended, or that it has the power, to impose prolonged detention on an alien simply because the alien may be ultimately deportable. *Cf. Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491 ("We do have reason to

believe, however, that Congress previously doubted the constitutionality of detention for more than six months.").

FN6. The majority opinion does not reject such a substantial argument standard. Rather, it simply does not reach the question other than tersely to state Tijani should be granted bail "unless the government establishes that he is a flight risk or will be a danger to the community." Slip op. at 16266 (citing *Cooper*, 517 U.S. at 363, 116 S.Ct. 1373).

2.

I believe that Tijani easily meets the substantial argument standard, despite the BIA's intervening decision finding him removable.[FN7] Tijani almost certainly has a winning argument that he is not removable for having committed an aggravated felony.[FN8] The only evidence the IJ relied upon *1248 for reaching a contrary conclusion was the abstract of judgment from Tijani's 1999 conviction, showing that Tijani was ordered to pay restitution of almost $28,000. The abstract of judgment does not show, however, that a jury found that Tijani caused this amount of loss, as this circuit's case law requires. *See Taylor*, 495 U.S. at 602, 110 S.Ct. 2143; *Tokatly v. Ashcroft*, 371 F.3d at 620. Further, there appears to be no California law requiring that a jury determine the amount of restitution. *Cf.* Cal.Penal Code § 1202.4(f) ("In every case in which a victim has suffered economic loss as a result of the defendant's conduct, *the court* shall require that the defendant make restitution to the victim ....") (emphasis added). This easily constitutes a substantial argument that Tijani's conviction under Cal.Penal Code § 532a(1) does not amount to an aggravated felony.

FN7. The BIA's December 29, 2004, decision finding Tijani removable did not change Tijani's position in this appeal. Tijani continues to remain in BICE custody, detained without the possibility of release under § 236(c) of the INA. Specifically, he has not yet entered his 90-day removal period under 8 U.S.C. § 1231(a) because this court has stayed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

430 F.3d 1241
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
**(Cite as: 430 F.3d 1241)**

his removal pending its review of the BIA's decision. *See* 8 U.S.C. § 1231(a)(1)(B) ("The removal period begins on the latest of the following: ... (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the removal of the court's final order").

FN8. This circuit applies the test announced in *Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)*, to determine whether a conviction constitutes a predicate offense for removal under the INA. *See Tokatly v. Ashcroft, 371 F.3d 613, 620 (9th Cir.2004)*. Under *Taylor*, a court first applies a "categorical" analysis, looking to only the fact of conviction and the statutory definition of the offense to determine if the offense amounts to a predicate offense. *Taylor, 495 U.S. at 602, 110 S.Ct. 2143*. If the statutory definition is broader than the predicate offense, a court employs a "modified categorical approach," asking whether the documentation or judicially noticeable facts that the jury was "actually required to find" show that the defendant was convicted of all the elements of the predicate offense. *Id.; Tokatly, 371 F.3d at 620*.

As to the argument that a violation of Cal.Penal Code § 532a(1) constitutes a crime of moral turpitude, Tijani has also raised a substantial argument. For Tijani's conviction to involve moral turpitude, it must involve fraud. *See Carty v. Ashcroft, 395 F.3d 1081, 1083 (9th Cir.2005)* ("Crimes of moral turpitude are of basically two types, those involving fraud and those involving grave acts of baseness or depravity."); *Rodriguez-Herrera v. INS, 52 F.3d 238, 240 (9th Cir.1995)*; *Goldeshtein v. INS, 8 F.3d 645, 647 (9th Cir.1993)*. Yet nothing in Cal.Penal Code § 532a(1) requires intent to defraud. Rather, it is perfectly plausible that a person could be convicted under § 532a(1) without any intent to defraud whatsoever. Indeed, the BIA's only precedent on point, which involved a Connecticut statute identical in all material respects to the California statute at issue, reached this conclusion. *See Matter of Kinney, 10 I. & N. Dec.*

548, 549 (BIA 1964) ("The intent that the false statement be relied upon is not necessarily an intent to do evil or work fraud because ... one who intends that there be reliance upon his false statement may nevertheless also intend to pay for the goods his is attempting to obtain").

This case stands in stark contrast to our recent case of *Carty*, in which we found that willful failure to file California state income taxes was a crime involving moral turpitude. 395 F.3d at 1082, 1085. Unlike Cal.Penal Code § 532a(1), the statute in *Carty* explicitly required a finding of "intent to evade," which the court found to be synonymous with "intent to defraud." *Id.* at 1083, 1085; *see also id.* at 1085 ("[I]ntent to evade has generally been held to require proof of fraud."). In contrast, Cal.Penal Code § 532a(1) contains no such requirement.

Without further briefing, it is difficult to determine conclusively whether a violation of Cal.Penal Code § 532a(1) constitutes a crime of moral turpitude. Indeed, Tijani's arguments may ultimately not be convincing. Nonetheless, a closer look is surely required. Tijani's moral turpitude argument, therefore, easily rises to the level of "substantial."

D.

Tijani has been detained for the last 30 months in spite of the fact that he can raise substantial arguments against his removal that necessitate a hard look. Such **\*1249** detention without the possibility of release, based on nothing more than the fact that he may someday be removable, is clearly a violation of his due process rights.

II.

There is also another reason why we should reach the merits of Tijani's contentions. As the Supreme Court has recently held on two occasions, detention incidental to removal must bear a reasonable relation to its purpose. *See Demore, 538 U.S. at 527, 123 S.Ct. 1708; Zadvydas, 533 U.S. at 690, 121 S.Ct. 2491*. In

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

430 F.3d 1241
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
**(Cite as: 430 F.3d 1241)**

Page 8

*Zadvydas,* the Court held that detention raised serious constitutional questions when its goal-preventing flight-was "no longer practically attainable" due to the unlikelihood of the aliens' ultimate removal. *Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491.FN9 In *Demore,* on the other hand, the detention was "reasonably related" to the goal of preventing flight both because the alien was unquestionably removable, and thus presented a high flight risk, and the time period was limited, lasting on average for a mere 47 days. *Demore,* 538 U.S. at 527-29, 123 S.Ct. 1708.

> FN9. The government in *Zadvydas* offered another justification for the continued detention-"protecting the community." *Zadvydas,* 533 U.S. at 691, 121 S.Ct. 2491. The Court squarely rejected this as a justification for continued detention, finding that "preventative detention based on dangerousness" is only permissible "when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691-92, 121 S.Ct. 2491. If the justification of "protecting the community" was offered in *Demore,* the Court did not discuss it. The detention in that case was justified solely on the basis of preventing flight.

As noted by Justice Kennedy in concurrence, however, there exists a point at which the length of detention becomes so egregious that it can no longer be said to be "reasonably related" to an alien's removal. *Id.* at 532, 123 S.Ct. 1708 (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."). The Sixth Circuit has since agreed with this position in *Ly v. Hansen,* 351 F.3d 263 (6th Cir.2003).

Given the record, this court is in a position to address Tijani's argument that the sheer length of his detention violates the Constitution now. The nearly 30 months that Tijani has so far been detained have reached the

point of unreasonableness. In absolute terms the length of time is unreasonable-it is more than eighteen times the average length of detention (five times the average when the alien chooses to appeal), and is five times as long as the six months the Supreme Court suggested would be unreasonable in *Zadvydas. See Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491.

Even considering the individual factors of Tijani's case, the amount of time he has been detained remains unreasonable. While it is true that Tijani requested continuances, those occurred early in the process, and have not contributed at all to the year-long delay since the BIA heard his appeal. *See Ly,* 351 F.3d at 272 (delay attributable to immigrant can help justify continued detention); *cf. Demore,* 538 U.S. at 530-31, 123 S.Ct. 1708 (immigrant's request for a continuance helped justify the "somewhat longer than average" length of his detention). In addition, the government had every opportunity to avoid Tijani's additional detention by beginning his removal proceedings while he was incarcerated in California. *See* \*1250*Demore,* 538 U.S. at 529-30 & n. 13, 123 S.Ct. 1708. Thus, there no longer can be any question that Tijani's continued detention is no longer reasonably related to his deportation.

III.

For the foregoing reasons, it is clear that Tijani is entitled to be released forthwith pending the completion of his removal proceedings.

CALLAHAN, Circuit Judge, dissenting:
As I find that the district court properly denied Monsuro Tijani's habeas petition, I dissent from the remand of this case to the district court. I further disagree with the opinion's suggestion that the result of a hearing must be Tijani's release on bail, and with the concurring opinion's argument that Tijani's extended detention is necessarily unconstitutional.

A. Background

An appreciation of this case requires a brief review of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

430 F.3d 1241                                                                    Page 9
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
(Cite as: 430 F.3d 1241)

how Tijani got himself into his present predicament. A native and citizen of Nigeria, Tijani arrived in the United States in 1980 and adjusted his status to legal permanent resident in 1985. Shortly thereafter, Tijani started having trouble with the law. Most recently on June 9, 1999, Tijani was convicted on twelve counts of providing false information on financial documents in violation of California Penal Code § 532a(1).

On April 9, 2003, when Tijani was scheduled to be paroled from state prison, he was charged with being deportable, served with a notice to appear before an Immigration Judge ("IJ"), and transferred into the custody of the U.S. Bureau of Immigration and Customs Enforcement ("BICE"). He was specifically charged with being removable under 8 U.S.C. § 1227(a)(2)(A)(ii), based on his status as an alien convicted of two crimes involving moral turpitude, and under 8 U.S.C. § 1227(a)(2)(A)(iii), based on his status as an alien convicted of an aggravated felony.

The BICE determined that Tijani was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c), and should be held without bond during the removal proceedings. Tijani contested the detention and requested a bond-determination hearing. A hearing was held before an IJ, in accordance with the Board of Immigration Appeals' ("BIA") decision of In re Joseph ("Joseph"), 22 I. & N. Dec. 799 (BIA 1999) (en banc). The IJ affirmed the BICE's determination, finding both that Tijani was "subject to mandatory custody" and that he "pose[d] a danger to the property of others due to his lengthy criminal record." On June 26, 2003, the BIA affirmed the IJ's decision that Tijani was subject to mandatory detention.

Tijani then filed his habeas petition in the United States District Court for the Southern District of California, arguing, inter alia, that he did not pose a danger to the community and that mandatory detention violated the Due Process Clause of the Fifth Amendment. On January 21, 2004, the district court denied Tijani's petition. It found that mandatory detention was constitutional, citing Demore v. Kim, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), and that Tijani was subject to mandatory detention because his particular conviction under California Penal Code §

532a(1) constituted a crime of moral turpitude. Tijani filed a timely notice of appeal to this court.[FN1]

> FN1. Meanwhile, Tijani's removal proceedings continued. On November 5, 2003, an IJ ordered Tijani removed from the United States. Tijani appealed to the BIA, which, on Dec ember 30, 2004, summarily affirmed the IJ's decision of removal. Tijani has filed a petition for review with this court, which is not before this panel.

*1251 B. The Standard for Mandatory Detention

I agree with the district court that, under Demore, mandatory detention pursuant to 8 U.S.C. § 1226(c) is not per se unconstitutional. In Demore, the Supreme Court held:

Detention during removal proceedings is a constitutionally permissible part of that process. See, e.g., Wong Wing [v. United States,] 163 U.S. [228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896) ] ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid"); Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); Reno v. Flores, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). The INS detention of respondent, a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings, is governed by these cases.

538 U.S. at 531, 123 S.Ct. 1708.

Tijani, of course, is concerned with the application of the statute to him rather than its abstract constitutionality. In particular, Tijani raises constitutional challenges to the scope of mandatory detention under § 236(a) as interpreted in Joseph.[FN2] He argues that mandatory detention should not extend to lawful permanent residents held beyond a brief period of time because there is little likelihood that they will flee or endanger the community. He also contends that principles of procedural due process prohibit the mandatory detention of lawful permanent residents who raise substantial arguments.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

430 F.3d 1241
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
**(Cite as: 430 F.3d 1241)**

Page 10

FN2. In *Joseph,* the BIA held that "a lawful permanent resident will not be considered 'properly included' in a mandatory detention category when an Immigration Judge or the Board is convinced that the [government] is substantially unlikely to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention." 22 I. & N. Dec. at 806.

Even assuming that the scope of § 236(c) as interpreted by *Joseph* is problematic,<u>FN3</u> it is by no means certain that Tijani is entitled to release. In addition to having been denied relief by an IJ, the BIA, and the district court, Tijani has also been found removable by both an IJ and the BIA. Moreover, contrary to the position taken by Judge Tashima in his concurring opinion, I am not persuaded by Tijani's contentions that he did not commit an aggravated felony and that his conviction was not for a crime involving moral turpitude. Thus, even were Tijani to prevail on his claim that § 236(a) is unconstitutional because it requires a showing that the government is unlikely to prevail in the removal proceedings, it is by no means *1252 clear that he would be entitled to release under any alternate standard for bail.

FN3. The Supreme Court's reference to *Joseph* in *Demore* suggests that the BIA's opinion is not clearly unconstitutional. The Court noted:
This "*Joseph* hearing" is immediately provided to a detainee who claims that he is not covered by § 1226(c). Tr. of Oral Arg. 22.
At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention. See 8 CFR § 3.19(h)(2)(ii) (2002); *Matter of Joseph,* 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999). Because respondent conceded that he was deportable because of a conviction that triggers § 1226(c) and thus

sought no *Joseph* hearing, we have no occasion to review the adequacy of *Joseph* hearings generally in screening out those who are improperly detained pursuant to § 1226(c). *Demore,* 538 U.S. at 515, 123 S.Ct. 1708 n. 3.

**C. Duration of Detention**

Tijani further argues that the duration of his detention under 8 U.S.C. § 1226(c) is unconstitutional. The constitutional limit, if any, to the duration of an alien's detention under § 1226, however, was left open by the Supreme Court in *Demore.* In discussing its prior opinion in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the Court noted first that in *Zadvydas,* the aliens challenging their detention following final orders of deportation were ones for whom removal was "no longer practically attainable" and therefore detention did not serve the purported immigration purpose. *Demore,* 538 U.S. at 526, 123 S.Ct. 1708. The Court further stated:
*Zadvydas* is materially different from the present case in a second respect as well. While the period of detention at issue in *Zadvydas* was "indefinite" and "potentially permanent," 533 U.S., at 690-691, 121 S.Ct. 2491, 150 L.Ed.2d 653, the detention here is of a much shorter duration. *Zadvydas* distinguished the statutory provision it was there considering from § 1226 on these very grounds, noting that "post-removal-period detention, *unlike detention pending a determination of removability* ..., has no obvious termination point." *Id.,* at 697, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (emphasis added). Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas.*

*Id.* at 528-29, 123 S.Ct. 1708. This statement may be read as implying a limit to the duration of detention pending a determination of removability, <u>FN4</u> or as holding that because the removal proceedings are by definition finite, there is no constitutional limit to the duration of detention under 1226(c)<u>FN5</u>

FN4. Justice Kennedy, in his concurring opinion, wrote:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

430 F.3d 1241
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
(Cite as: 430 F.3d 1241)

since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified. *Zadvydas, 533 U.S., at 684-686, 121 S.Ct. 2491, 150 L.Ed.2d 653; id., at 721, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653* (KENNEDY, J., dissenting) ("[A]liens are entitled to be free from detention that is arbitrary or capricious"). Were there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons. 538 U.S. at 532-33, 123 S.Ct. 1708. It should be noted that there is little before us to suggest that Tijani's continued detention is not to protect against dangerousness. I note that the IJ in his November 5, 2003 order of removal (affirmed by the BIA on December 30, 2004) stressed that he found Tijani to be a danger to the community.

FN5. The reasons for detaining criminal aliens pending removal do not diminish over the duration of their detention. This is reflected in the following comments by the Supreme Court in *Demore:* "Congress also had before it evidence that one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings[;]" (538 U.S. at 519, 123 S.Ct. 1708) "[t]he Vera Institute study strongly supports Congress' concern that, even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight[;]" (*id.* at 520, 123 S.Ct. 1708) and "[s]ome studies presented to Congress suggested that detention of criminal aliens during their removal proceedings might be the

best way to ensure their successful removal from this country.... It was following those Reports that Congress enacted 8 U.S.C. § 1226, requiring the Attorney General to detain a subset of deportable criminal aliens pending a determination of their removability." *Id.* at 521, 123 S.Ct. 1708.

**\*1253** I agree with Judge Noonan that we need not and should not resolve this issue at this time. I would simply hold that when the district court on January 21, 2004, denied Tijani's habeas petition, he had not shown that the duration of his detention under § 1226 was unconstitutional. Accordingly, I would not remand this matter.

Rather, Tijani would be better advised to seek relief anew before the agency or in the district court where the effects of intervening events and the passage of time could be fully presented and briefed. Among other potentially relevant concerns that might be considered are (a) the impact of the intervening decisions by the IJ and the BIA that Tijani is removable; FN6 (b) whether the passage of time or the above decisions give rise to any alternate administrative remedies for Tijani; (c) whether any delays were attributable to Tijani; and (d) whether the delays give rise to an implication that detention no longer serves the purported immigration purposes.

FN6. For example, although Judge Tashima disagrees (see footnote 7 of his concurrence), the government in its letter of January 5, 2005 suggested that Tijani's detention may now fall under 8 U.S.C. § 1231(a) in light of the final order of removal.

### D. Conclusion

The troubling nature of this case is underscored by the fact that each member of our panel has written separately. I agree with the district court's denial of Tijani's habeas petition and, accordingly, would not remand the case to the district court. As the panel has remanded this matter, however, I have explained that it is not clear (1) that the detention of an alien pending

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

430 F.3d 1241                                                          Page 12
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461
**(Cite as: 430 F.3d 1241)**

removal proceedings is necessarily unconstitutional regardless of how long those proceedings take,[FN7] and (2) that a new hearing pursuant to the panel's decision must result in Tijani's release pending the completion of his removal proceedings.

> FN7. Different considerations would come into play if there were any evidence that the government was unreasonably prolonging the removal proceedings.

C.A.9 (Cal.),2005.
Tijani v. Willis
430 F.3d 1241, 2005 Daily Journal D.A.R. 14,335, 05 Cal. Daily Op. Serv. 10,461

Briefs and Other Related Documents (Back to top)

• 2004 WL 2606537 (Appellate Brief) Substitute Opening Brief of Habeas Petitioner and Appellant Monsuru Olasumbo Tijani (Oct. 14, 2004) Original Image of this Document (PDF)
• 2004 WL 1762993 (Appellate Brief) Brief for Appellees Wayne K. Willis, INS District Director, and Caryl Thompson, Officer in Charge (Jul. 06, 2004) Original Image of this Document (PDF)
• 04-55285 (Docket) (Feb. 19, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CERTIFICATE OF SERVICE

I, James Fife, do hereby certify that I delivered in person a copy of the attached Objection to Authority to Determine Release Conditions and Legal memorandum on Procedure on March 19, 2008 to:

DHS District Counsel
880 Front Street, Room 2246
San Diego, CA 92101

A97-890-332

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT, SAN DIEGO, CA
HONORABLE HENRY IPEMA

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | No. A97-890-332 |
| EPARAMA MAU, | ) | |
| | ) | Hearing: March 24, 2008 |
| Respondent | ) | |
| | ) | DECLARATION OF COUNSEL |

I, James Fife, state as follows:

1.  I am an attorney admitted to practice in the State of California.  I have personal and first-hand knowledge of the facts set forth herein and could and would testify competently hereto if called upon to do so.

2.  I currently represent Respondent in this case.  I submit this declaration as a supplement to the attached objection to the this Court's authority to determine release conditions and legal memorandum on the scope of hearing under *Tijani v. Willis*.

3.  The Court set the Hearing for March 24, 2008.  However, I was not notified of the hearing date, and was informed only through informal notice from the U.S. Attorney assigned to the underlying *habeas corpus* case.  The hearing was set with less than fifteen days notice.

4.   Because of the lack of notice and the short period in which the hearing was scheduled, I am unable to comply with the usual rule of filing this brief fifteen days in advance of the hearing.


I so declare under penalty of perjury this 19th day of March, 2008, in San Diego, California.

JAMES FIFE

Declarant

# APPENDIX C

CRITERIA AND CONSIDERATIONS FOR RELEASE ON SUPERVISION
[8 C.F.R. § 241.4(E) & (F)]

| **Standard for Release**: Detainee is not a danger to the community nor a significant risk of flight [8 C.F.R. § 241.4(d)(1)] |
|---|

| **Burden of Proof**: On the government to show not eligible for release [Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005)] |
|---|

**Regulatory Factors**                              **Facts in This Case**

| Regulatory Factors | Facts in This Case |
|---|---|
| Travel documents not available or removal not practicable [(e)(1)] | • Although documents may be obtainable, a stay of removal from 9th Circuit is in effect |
| Presently non-violent [(e)(2)] | • No allegations or claims of violent conduct<br>• No history of past violence<br>• Convictions for non-violent offenses (two misdemeanor DUIs within weeks of each other in 2002, felony DUI two years later)<br>• No disciplinary violations while in state and ICE custody |
| Likely to remain so [(e)(3); f(8)(ii)] | • No history of violent conduct toward others<br>• No disciplinary infractions in state prison or in ICE custody<br>• Participated in improvement programs while in custody – obtained GED in prison and attended AA program<br>• Engaged in productive work while in ICE custody– kitchen worker at El Centro |
| Not likely to pose threat to public [(e)(4); (f)(1), (2), (3), (4), (5), (8)(iii) & (iv)] | • Non-violent offenses only: public safety concerns readily addressable by conditions<br>• No disciplinary infractions<br>• Evidence of rehabilitation–GED and alcohol abuse programs, prison work<br>• Established life in U.S.<br>• Supportive network of family/friends on release |
| Not likely to violate conditions on release [(e)(5); (f)(1), (2), (3), (4), (5), (6), (8)(i) & v] | • Spotless record of compliance in custody<br>• Stable life and work history<br>• Place to stay<br>• Ready ability to obtain employment<br>• Well adjusted to life in U.S.<br>• No record of any absconding, escape, FTA, or walk-away |
| Not pose significant flight risk [(e)(6); (f)(1), (2), (4), (5), (7), (8)(i) & (v)] | • Good record of compliance<br>• Stable life and work history<br>• Residence and offer of employment<br>• No record of absconding, escape, FTA, or walk-away<br>• Family ties<br>• Likelihood of ultimate success with substantial argument for withholding or deferral of removal |

# APPENDIX D

U.S. Department of Homeland Security
Immigration and Customs Enforcement

**Order of Supervision**

File No: ▮▮▮▮▮▮▮
Date: March 11, 2008

Name: ▮▮▮▮▮▮▮▮▮▮

on  **April 2, 2001,**  you were ordered: **Removed by the Immigration Judge**
    (Date of final order)

[] Excluded or deported pursuant to proceedings commenced prior to April 1, 1997.
[] Removed pursuant to proceedings commenced on or after April 1, 1997.

Because Immigration and Customs Enforcement (ICE) has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions:

[X]  That you appear in person at the time and place specified, upon each and every request by ICE, for identification and for deportation or removal.

[X]  That upon request by ICE, you appear for medical or psychiatric examination at the expense of the United States Government.

[X]  That you provide information under oath about  your nationality, circumstances, habits, associations, and activities and such other information as ICE considers appropriate.

[X]  That you do not travel outside _____ **the State of California** _____ for more than 48 hours without first
                                   (Specify geographic limits, if any)
having notified this ICE office of the dates and places of such proposed travel.

[X]  That you furnish written notice to this ICE office of any change of residence or employment within 48 hours of such change.

[X]  That you report in person until further notice  on Tuesday, March 18, 2008, to the ICE office at:
Non Detain Unit, 300 N. Los Angles, CA. RM= 621-213-830-7983 unless you are granted written permission to report on another date.

[X]  That you assist the Immigration and Naturalization Service in obtaining any necessary travel documents.

[] Other:

[ ]  See attached sheet containing other specified conditions (Continue on separate sheet if required)

_____ Robin F. Baker
                         (Signature of ICE official)

Robin F. Baker, Field Director, Detention and Removal, San Diego Field Office
(Print name and title of ICE official)

---

## Alien's Acknowledgment of Conditions of Release under an Order of Supervision

I hereby acknowledge that I have (read) (had interpreted and explained to me in the        language) the contents of this order, a copy of which has been given to me.  I understand that failure to comply with the terms of this order may subject me to a fine, detention, or prosecution.

_____          _____          _____
(Signature of ICE official serving order)          (Signature of alien)                    Date

Form I-220B(Rev. 4/1/97)N

U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
**Addendum**

**Order of Supervision-**

File No: ▮▮▮▮

Date: _March 11, 2008_

Name: ▮▮▮▮▮▮▮▮ _____

**[X]** That you do not associate with criminals or members of a gang that is known to be involved in criminal activity.

**[]** That you register in a substance abuse program within 14 days and provide Immigration and Customs Enforcement (ICE) with written proof of such within 30 days. The proof must include the name, address, duration, and objectives of the program as well as the name of a program counselor.

**[]**That you register in a sexual deviancy counseling program within 14 days and provide ICE with written proof of such within 30 days. You must provide ICE with the name of the program, the address of the program, the duration and objectives of the program, and the name of a program counselor.

**[]** That you register as a sex offender, if applicable, within 7 days of being released, with the appropriate agency/agencies and provide ICE with written proof of such registration within 10 days.

**[X]** That you do not commit any crimes or be associated with any criminal activity while on this Order of Supervision.

**[X]** That you report to a parole or probation officer as required within 5 business days and provide ICE with written verification of the officer's name, address, telephone number, and reporting requirements.

**[X]** You must follow all reporting and supervision requirements as mandated by the parole or probation officer.

**[X]** That you continue to follow any prescribed doctor's orders whether medical or psychological, including taking prescribed medications.

**[X]** That you make good faith and timely efforts to obtain a travel document and assist ICE in obtaining a travel document.

**[X]** That you submit a complete application for a travel document to all appropriate Embassies or Consulates, including those representing the countries of ___Cuba _____. You must present ICE with evidence that each Embassy or Consulate to which you apply has received your request and all required documents. This may be done, for example, by mailing your application(s) with a request for return receipt and providing the signed return receipt to ICE, by obtaining a tracking number when you mail your application(s) and providing the number to ICE, or by submitting written confirmation of receipt issued by the Embassy or Consulate.

**[X]** That you submit your application(s) for a travel document to all appropriate Embassies or Consulates and provide proof of receipt to ICE on or before _____.

that you provide ICE a copy of your application(s) for a travel document that you submit to any Embassy or Consulate, including all supporting documents, photos, and other items provided to the Embassy or Consulate to support your application(s).

[X] That you provide ICE a copy of all correspondence related to your travel document application(s) that you send to, or receive from, an Embassy or Consulate.

[X] That you contact the Embassy or Consulate within 21 calendar days of making your application(s) to confirm that the information you provided is sufficient.

[X] That you comply with any requests from an Embassy or Consulate for an interview and make good faith efforts to submit further documentation if required by the Embassy or Consulate.

[X] Every time you report in person under this order of supervision, you must inform the local ICE office of any actions you have taken to obtain a travel document. You must provide any available written documentation to ICE regarding these actions and the status of your travel document application(s).

[X] That you provide ICE, upon request, with any and all information relevant to application(s) for a travel document. This may include, but is not limited to, information regarding your family history, including dates of birth, nationalities, addresses, and phone numbers as requested for such persons, whether in your country of nationality and/or citizenship or elsewhere, and your past residences, schools attended, etc.

[X] You will participate in a supervised release program, as described in the attached document. You will comply with the rules and requirements of this program, and cooperate with its administrators.

I agree to comply with the rules, requirements, and administrators in the supervised release program described in the attached document.

Alien's signature _____    Date _____

[ ] Other. _____

_____

_____

Any violation of any of the above conditions may result in a fine, more restrictive release conditions, return to detention, criminal prosecution, and/or revocation of your employment authorization document.

### Alien's Acknowledgement of Conditions of Release under an Order of Supervision

I hereby acknowledge that I have (read) (had interpreted and explained to me in the _____ language) the contents of this order and addendum, a copy of which has been given to me. I understand that failure to comply with the terms of this order and addendum may subject me to a fine, more restrictive release conditions, detention, criminal prosecution, and/or revocation of my employment authorization document.

_____    _____    _____
(Signature of ICE official serving order)              (Signature of alien)                                    (date)

Please note that all references in this order addendum to "INS" or "Service" should now be considered to refer to U.S. Immigration and Customs Enforcement (ICE).

Updated 4/25/2005

# APPENDIX E

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
SAN DIEGO, CA

FILE: A97-890-332

IN THE MATTER OF:

*S-MAU, EPARAMA TUITOGALEVU

RESPONDENT

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE
WITH RESPECT TO CUSTODY

Request having been made for a change in the custody status of
respondent pursuant to 8 CFR 236.1(c), and full consideration
having been given to the representations of the Department of
Homeland Security and the respondent, it is hereby

_____ ORDERED that the request for a change in custody status be
denied.

___✔___ ORDERED that the request be granted and that respondent be:

_____ released from custody on his own recognizance

___✔___ released from custody under bond of $ _100,000.00_

___✔___ OTHER _If released, R is to not drive and surrender any_
_drivers lic. in return for ID._

Copy of this decision has been served on the respondent and the
Department of Homeland Security.

APPEAL: waived -- ~~reserved~~  By Respondent only *

SAN DIEGO -- CORRECTIONS CORPORATIONS OF AMERICA-SAN DIEGO, CA.

Date:  March 24, 2008

_____
HENRY P. XIPEMA
Immigration Judge

XS

* A written memorendum will follow the filing of any
appeal with the BIA.