KAREN P. HEWITT
United States Attorney
RAVEN M. NORRIS
Assistant U.S. Attorney
California State Bar No. 232868
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7157

Attorneys for the Respondents

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EPARAMA MAU, | ) | Case No. 07cv2037 IEG (LSP) |
| | ) | |
| Petitioner, | ) | GOVERNMENT'S OPPOSITION TO |
| | ) | PETITIONER'S MOTION TO |
| v. | ) | AMEND/ALTER JUDGMENT AND |
| | ) | SUPPLEMENTAL MOTION |
| MICHAEL CHERTOFF, Secretary of the | ) | Date: January 25, 2007 |
| Department of Homeland Security et al., | ) | Time: 10:30 a.m. |
| | ) | Crtrm: 6 |
| | ) | The Honorable Irma E. Gonzalez |
| Respondents. | ) | |
| _____ | ) | |

1

TOPICAL INDEX

2

Page

3   TABLE OF AUTHORITIES        ii

4   I     INTRODUCTION        1

5   II     FACTUAL UPDATE        1

6   III     ARGUMENT        2

7       A.     PETITIONER HAS FAILED TO EXHAUST ADMINISTRATIVE

8               REMEDIES        2

9       B.     PETITIONER'S MOTION TO AMEND/ALTER SHOULD BE DENIED
BECAUSE HE HAS FAILED TO PROVIDE ANY EVIDENCE THAT

10               JUSTIFIES GRANTING THE MOTION        3

      C.     THIS COURT PROPERLY ORDERED A BAIL HEARING BEFORE

11               THE IMMIGRATION COURT        5

12            1.     Referring a Release hearing to the Immigration Court is an Appropriate

13                   Remedy in Habeas Proceedings involving Civil Immigration Detainees   5

           2.     Courts Have Broad Discretionary Power to Fashion Equitable Relief

14                   Including Referring Bond Hearings to the Immigration Court     9

15            3.     Judicial Economy and Efficiency Does Not Support Requiring Magistrate

16                   Judges to Conduct Bail Hearings for Civil Immigration Detainees   11

      D.     THE IMMIGRATION JUDGE PROPERLY SET BOND AND OTHER

17               CONDITIONS OF RELEASE FOR PETITIONER        13

18            1.     Petitioner has Failed to Articulate a Due Process Violation and

19                   Discretionary Bond Decisions are Beyond the Scope of Habeas Review   13

           2.     Petitioner Received a Constitutionally Adequate Hearing and The IJ

20                   Properly Ordered Release Upon Payment of Reasonable Bond     16

21   IV     CONCLUSION        20

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

Cases                                                                                      Page

Acevedo-Carranza v. Ashcroft,
    371 F.3d 539 (9th Cir. 2004)                                      3

Altagracia Almonte-Vargas v. Elwood, Number,
    CIV.A. 02-CV-2666, 2002 WL 1471555 (E.D. Pa. 2002)                10

Bowrin v. U.S. INS,
    194 F.3d 483 (4th Cir. 1999)                                      15

Brown v. Board of Education,
    349 U.S. 294 (1955)                                               9

Carroll v. Nakatani,
    342 F.3d 934 (9th Cir. 2003)                                      4

Castro-Cortez v. INS,
    239 F.3d 1037, 1047 (9th Cir. 2001)                               2

Defenders of Wildlife v. U.S. Environment Protection Agency,
    420 F.3d 946 (9th Cir. 2005)                                      9

Del-Toro-Chacon v. Chertoff,
    431 F. Supp. 2d 1135 (W.D. Wash. 2006)                            6, 12

Del Toro-Chacon v. Chertoff,
    No. C05-1861RSL, 2008 WL 687445 (W.D. Wash. Mar. 10, 2008)        16

Demore v. Kim,
    538 U.S. 510 (2003)                                               6, 7

Dixon v. Wallowa County,
    336 F.3d 1013 (9th Cir. 2003)                                     4

Doan v. INS,
    311 F.3d 1160 (9th Cir. 2002)                                     18, 19

Ekiu v. United States,
    142 U.S. 651 (1892)                                               15

Ford Motor Co. v. NLRB,
    305 U.S. 364 (1939)                                               9

Friedlander v. Cimino,
    520 F.2d 318 (2d Cir. 1975)                                       14

Gutierrez-Chavez v. I.N.S.,
    298 F.3d 824 (9th Cir. 2002)                                      11, 15

389 Orange St. Partners v. Arnold,
    179 F.3d 656 (9th Cir.1999)                                       3, 4

<u>TABLE OF AUTHORITIES</u> (Continued)

<u>Cases</u>                                                                                                 <u>Page</u>

Harvest v. Castro,
    2008 WL 795360 (9th Cir. March 27, 2008)                                                    10

Hass v. INS,
    No. 90 C 5513, 1991 WL 38258 (N.D. Ill. March 15, 1991)                                      17

Hoye v. Sullivan,
    985 F.2d 990 (9th Cir. 1992)                                                                 14

Hunsaker v. Contra Costa County,
    149 F.3d 1041 (9th Cir.  1998)                                                               18

In re Ghalamsiah,
    806 F.3d 68 (3d Cir. 1986)                                                                    6

INS. v. St. Cyr,
    533 U.S. 289 (2001)                                                                          15

INS v. Ventura,
    537 U.S. 12 (2002)                                                                   10, 11, 12

King v. Gonzales,
    2006 WL 2051697 (W.D. La May 12, 2006)                                                       19

Kona Enterprises, Inc. v. Estate of Bishop,
    229 F.3d 877 (9th Cir. 2000)                                                                  4

Kotliar v. Moinar,
    No. CV07-00851 (C.D. Cal. June 25, 2007)                                                   6, 12

Laing v. Ashcroft,
    370 F.3d 994 (9th Cir. 2004)                                                                  3

Lemon v. Kurtzman,
    411 U.S. 192 (1973) noted: In                                                                 9

Lewis v. Casey,
    518 U.S. 343, 349 (1996)                                                                     13

Liu v. Waters,
    55 F.3d 421 (9th Cir. 1995)                                                                   3

Macalma v. Chertoff,
    No. 06cv2623-WQH (S.D. Cal March 25, 2008)                                                    3

Mapp v. Reno,
    241 F.3d 221 (2d Cir. 2001)                                                                   6

Matter of Castellon,
    17 I. & N. Dec. 616 (1981)                                                                   18

TABLE OF AUTHORITIES (Continued)

Cases                                                                          Page

Matter of Chirinos,
      16 I. & N. Dec. 276 (BIA 1977)                                          16, 17

Matter of Guerra,
      24 I. & N. Dec. 37 (BIA 2006)
                                                                                  17

Matter of Khalifah,
      21 I. & N. Dec. 107 (BIA 1995)                                              18

Matter of Matelot,
      18 I. & N. Dec. 334 (BIA 1982)                                              18

Matter of Oseiwusu,
      22 I. & N. Dec. 19 (BIA 1998)                                               18

Matter of R-S-H-,
      23 I. & N. Dec. 629 (BIA 2003)                                              17

Mustanich v. Gonzales,
      No. 07cv1100, 2007 WL 2819732 (S.D. Cal. Sept. 26, 2007)                     5

Nadarajah v. Gonzales,
      443 F.3d 1069 (9th Cir. 2006)                                             7, 8

Orantes-Hernadez v. Thornburgh,
      919 F.32d 549, 558 (9th Cir. 1990)                                           9

Pension Benefit Guaranty Corp. v. LTV Corp.,
      496 U.S. 633 (1990)                                                         10

Pereira v. U.S. Attorney General,
      146 Fed. Appx. 408, 412 (11th Cir. 2005)                                     2

Prado v. Ilchert,
      No. C-95-1497 MHP, 1997 WL 383239 (N.D. Cal. 1997)                          10

Public Lands Council v. Babbitt,
      529 U.S. 728 (2000)                                                          7

Quezada-Bucio v. Ridge,
      317 F. Supp. 2d 1221 (W.D. Wash. 2004)                                       6

Romero-Torres v. Ashcroft,
      327 F.3d 887 (9th Cir. 2003)                                                15

Roque-Carranza v. INS,
      778 F.2d 1373 (9th Cir. 1985)                                                3

Sch. District Number 1J, Multnomah County, Or. v.  AC and S, Inc.,
      5 F.3d 1255 (9th Cir. 1993)                                                  4

TABLE OF AUTHORITIES (Continued)

<u>Cases</u>                                                                                                    <u>Page</u>

Singh v. Ashcroft,
    351 F.3d 435 (9th Cir. 2003)                                                                    15

Swann-Charlotte v. Mecklenburg Board of Education,
    402 U.S. 1 (1971)                                                                                9

Tijani v. Willis,
    430 F.3d 1241 (9th Cir. 2005)                                                        1, 5, 6, 7, 13

Tyson v. Jeffers,
    115 F. App'x. 34 (10th Cir. 2004)                                                          11, 15

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,
    435 U.S. 519 (1978)                                                                              7

Wang v. Ashcroft,
    320 F.3d 130 (2nd Cir. 2003)                                                                     6

Yang v. INS,
109 F.3d 1185 (7th Cir. 1997)                                                                         15

Zadvydas v. Davis,
    533 U.S. 678 (2001)                                                                    7, 8, 10, 18

Zhang v. Gonzales, Number,
    CV06-0892-PHX-ROS, 2007 WL 2925192 (D. Ariz. May 21, 2007)                            6, 12

Zimmerman v. City of Oakland,
    255 F.3d 734 (9th Cir. 2001)                                                                     4

    <u>Statutes</u>                                                                                <u>Page</u>

8 U.S.C. §1103(a)(2)                                                                                   5

8 U.S.C. § 1103(a)(3)                                                                                  7

8 U.S.C. § 1103(g)(2)                                                                               5, 7

8 U.S.C. §§ 1226                                                                                 6, 7, 11

8 U.S.C. §1226(a)                                                                                 14, 18

8 U.S.C. § 1226(c)                                                                                    11

8 U.S.C. § 1226(e)                                                                                    14

28 U.S.C. § 2241                                                                          3, 11, 14, 15

REAL ID Act, Pub. L. No. 109-13, Division B,119 Stat. 231                                               6

TABLE OF AUTHORITIES (Continued)

Rules and Regulations                                                   Page

8 C.F.R. § 1003.19                                              11, 17, 19

8 C.F.R. § 1003.19(f)                                                   2, 3

8 C.F.R. §1003.1(b)                                                        3

8 C.F.R. § 1003.38                                                  2, 3, 17

8 C.F.R. § 1003.38(b)                                                 2, 17

8 C.F.R. § 1240.8(a)                                                      13

8 C.F.R. § 1236.1                                                 2, 11, 18

8 C.F.R. § 241.4(f)                                                   16, 20

8 C.F.R. § 242.2(d)                                                       17

Fed. R. Civ. P. 53(a)                                                     9

Fed. R. Civ. P. 59(e)                                                1, 4, 5

H.R. Rep. No. 104 469                                                    13

Procedure and Practice Guides                                          Page

Immigration Judge Court Practice Manual,
      Chapter 9, p    17                                                  17

11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE
      §  2810.1 (2d ed. 1995)                                             1

1                                    I.

2                           INTRODUCTION

3          Eparama Mau ("Petitioner") requests this Court amend its March 11, 2008 Order and order a bail

4   hearing before a magistrate judge or alternatively order Petitioner's release pursuant to Fed. R. Civ. P.

5   59(e).   While the district court enjoys considerable discretion in granting or denying the motion,

6   reconsideration of a judgment is an extraordinary remedy.   See 11 CHARLES ALAN WRIGHT ET AL., FEDERAL

7   PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995).   Here, Petitioner's motion to alter judgment should be

8   denied because he failed to exhaust his administrative remedies and failed to provide any evidence or

9   articulate any basis that justifies granting such an extraordinary remedy.   Alternatively, Petitioner's

10  motion and request for relief should be denied because this Court properly held that Petitioner is not

11  entitled to release under Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), without first allowing the

12  Government to establish whether Petitioner presents a significant flight risk or danger to the community.

13  Moreover, referral to an Immigration Judge ("IJ") is a constitutionally permissible and appropriate

14  mechanism for determining whether Petitioner should be released on bail.   Significantly, contrary to

15  Petitioner's assertions, there does not appear to be a single court that refers bail hearings to Magistrate

16  Judges rather than Immigration Judges for civil immigration detainees.   Finally, to the extent Petitioner

17  challenges the IJ's determination, such bond decisions are beyond the scope of habeas review, but even

18  if this Court may review the determination, the IJ provided Petitioner with a constitutionally adequate

19  hearing consistent with this Court's Order and properly ordered Petitioner's release on bond.

20                                   II.

21                          FACTUAL UPDATE

22         On March 24, 2008, IJ Henry Ipema conducted a bail hearing pursuant to this Court's order on

23  March 11, 2008, to determine whether Petitioner, who is subject to a final order of removal, should be

24  released pending a decision on his petition for review at the Ninth Circuit.   The Government argued that

25  Petitioner presented a danger to the community based on multiple  convictions for driving under the

26  influence ("DUI"), including a conviction for DUI with Death or Serious Bodily Injury.   The

27  Government also argued that Petitioner presented a significant flight risk because he has no community

28  ties, has continuously refused to cooperate with the Government's attempts to obtain travel documents,

1  and is unlikely to succeed on his petition for review.  In rebuttal, Petitioner argued to the IJ that he

2  lacked jurisdiction to conduct the bail hearing as ordered by the District Court.  Alternatively, Petitioner

3  argued that the IJ should release Petitioner under an order of supervision because he did not present a

4  danger to community.  After full consideration of the merits, IJ Ipema ordered Petitioner released under

5  a bond of $100,000.   As a further condition of release, IJ Ipema prohibited Petitioner from driving if

6  released and ordered Petitioner to turn over any driver's license.  The IJ based these conditions of

7  release on the finding that Petitioner is a continuing danger to the community as a result of his multiple

8  DUI convictions and because he has no strong community ties.  Petitioner preserved his right to appeal

9  the order, but has not filed an appeal to date.  See 8 C.F.R. § 1003.19(f); 1003.38 (b)(petitioner has 30

10  days from date of IJ order to appeal).

11                                              III.

12                                         ARGUMENT

13      A.     PETITIONER HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

14      Petitioner must exhaust his administrative remedies before seeking relief from this Court.

15  Pursuant to this Court's March 11, 2008 Order, Petitioner received a bond hearing at which the IJ

16  ordered release on bond.  Petitioner has not appealed the decision or requested bond redetermination.

17  See 8 C.F.R. §§ 1003.19(f), 1003.38(b), 1236.1(d).  Instead, he is now seeking relief from this Court.

18  Petitioner should be required to exhaust his administrative remedy, which is to request a bond

19  redetermination or an appeal to the Board of Immigration Appeals ("BIA").

20      Moreover, where Petitioner has failed to complete the administrative process of challenging the

21  determination, it cannot be held that his administrative remedies have been exhausted.  See e.g.,

22  Pereira v. U.S. Attorney General, 146 Fed. Appx. 408, 412 (11th Cir. 2005) (refusing to review an IJ's

23  decision to deny a motion to reopen where petitioner failed to appeal the decision to the BIA).  The

24  Ninth Circuit has declared:

25          District courts are authorized by 28 U.S.C. § 2241 to consider petitions for habeas
            corpus.  That section does not specifically require petitioners to exhaust direct
26          appeals before filing petition for habeas corpus.  However, we require, as a
            prudential matter, that petitioners exhaust available judicial and administrative
27          remedies before seeking relief under section 2241.

28  Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by* Fernandez-

Vargas v. Gonzales, 548 U.S. 30 (2006); see also Acevedo-Carranza v. Ashcroft, 371 F.3d 539, 541 (9th Cir. 2004). The Ninth Circuit has explained that "[t]he exhaustion requirement avoids 'premature interference with the agency's processes' and helps compile a full judicial record." Liu v. Waters, 55 F.3d 421, 424 (9th Cir. 1995), quoting Roque-Carranza v. INS, 778 F.2d 1373, 1374 (9th Cir. 1985). Thus, "lower courts are . . . not free to address the underlying merits without first determining the exhaustion requirement has been satisfied or properly waived." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004).

This reasoning also applies here in the context of a district court-ordered bail hearing. Because this Court's order intended administrative adjudication pursuant to the regulatory scheme, it is the Government's position that the Petitioner retains the same administrative appellate rights in a district court-ordered bail hearing before an IJ as a standard administrative bond hearing. The BIA retains jurisdiction to hear appeals of IJ orders and bond decisions, regardless of whether the bail hearing was held pursuant to a district court order. See 8 C.F.R. § 1003.38 ("Decisions of Immigration Judges may be appealed to the Board of Immigration Appeals as authorized by 8 C.F.R. §1003.1(b)."); 8 C.F.R. § 1003.19(f). Significantly, there is nothing in the regulations that removes jurisdiction for review by the BIA for district court-ordered bail hearings before an IJ. See generally 8 C.F.R. §1003.38. Accordingly, Petitioner should also be required to exhaust his administrative remedies before pursuing relief from this Court. Petitioner may seek to reopen habeas proceedings if the BIA affirms the IJ's decision. See, e.g., Macalma v. Chertoff, No. 06cv2623-WQH (S.D. Cal March 25, 2008) (order stating that if BIA orders that Petitioner must be detained, then Petitioner shall have 30 days from the date of the order to reopen habeas proceedings), copy attached as Ex. D. Because Petitioner has failed to exhaust his administrative remedies, his motion to alter or amend judgment and request for release should be denied.

     **B.**     **PETITIONER'S MOTION TO AMEND/ALTER SHOULD BE DENIED BECAUSE HE HAS FAILED TO PROVIDE ANY EVIDENCE THAT JUSTIFIES GRANTING THE MOTION**

A motion to alter or amend under Rule 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error,* or if there is an intervening change in the controlling law." 389 Orange St. Partners v. Arnold,

179 F.3d 656, 665 (9th Cir. 1999) (emphasis added) (citing School Dist. No. 1J v. AC and S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993)); see also Dixon v. Wallowa County, 336 F.3d 1013, 1022 (9th Cir. 2003). Reconsideration pursuant to a Rule 59(e) motion to alter or amend is appropriate if: (1) the court is presented with newly discovered evidence; (2) the court committed clear error or the initial decision was manifestly unjust; (3) there is an intervening change in controlling law; or (4) other highly unusual circumstances warrant reconsideration. See Sch. Dist. No. 1J, Multnomah County, Or., 5 F.3d at 1263. A rule 59(e) motion is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 JAMES WM. MOORE ET AL., MOORES FEDERAL PRACTICE § 59.03[4] (3d ed. 2000)). It is well settled that a Rule 59(e) motion cannot be used to re-litigate issues already addressed by the court or to present facts otherwise available to the parties when the issues were originally briefed. See 389 Orange St. Partners, 179 F.3d at 665; see also Carroll, 342 F.3d at 945 (citation omitted); Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001) (citations omitted); Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).

Petitioner asserts that this motion should be granted in order to make a substantive change in the scope and form of relief granted by the Court. Petitioner asserts that this is a substantive change and is made so as to prevent manifest injustice. See Petitioner's Motion to Amend, p. 2. In seeking to change the outcome of the Court's March 11, 2008 Order, Petitioner presents facts that were available to him prior to this Court's March 11 Order. Petitioner claims that "because Mr. Mau did not request the specific form of relief ordered here, it was not an issue that could have been raised previously." Petitioner's Motion to Amend, p. 2. However, in his original petition, Petitioner requested that the "Court order Respondents to Release Petitioner...[or] Alternatively, order a release hearing to evaluate petitioner's eligibility for supervision under appropriate conditions." Petition, p. 10. Accordingly, Petitioner had the opportunity in his original Petition to specify his request for a hearing in front of a magistrate judge but he chose to request a general release hearing. Additionally, Petitioner did not present this specific request for relief in his traverse. Now, Petitioner seeks to modify the relief granted because, after obtaining relief from the IJ, he believes a magistrate judge will provide a better forum to award relief.

Petitioner makes several arguments in support of his motion but fails to give any explanation as to why he did not raise this request for relief and accompanying arguments in the original petition or in his traverse. Petitioner simply alleges that a hearing before an IJ is inherently manifestly unjust and therefore the Court should amend its order. As discussed below, this allegation is unsupported by statutory authority and legal precedent. Further, Petitioner's claim that the IJ improperly set bond rather than order release on an order of supervision does not entitle Petitioner to amend the judgment. This Court's order did not require the IJ to release Petitioner. Rather the Order required the Government to supply Petitioner with a hearing before an IJ with authority to grant bail unless the Government established that Petitioner was a flight risk or danger to community. See Order at 8. The IJ properly ordered release on a $100,000 bond on the basis that Petitioner poses a danger to the community. Petitioner is unsatisfied with this determination and therefore seeks new relief. Petitioner is not entitled to amend judgment on the basis that he was not satisfied with the relief he requested. Because Petitioner has presented no new evidence, no intervening change in the law, nor a showing that the Court's order was manifestly unjust, Petitioner has not met his burden under Rule 59(e).

C.    THIS COURT PROPERLY ORDERED A BAIL HEARING BEFORE THE IMMIGRATION COURT

1.    Referring a Release Hearing to the Immigration Court is an Appropriate Remedy in Habeas Proceedings involving Civil Immigration Detainees

Petitioner alleges that there is no statutory authority supporting this Court's order directing the Government to hold a release hearing before an IJ and argues that referring the release hearing to an IJ creates manifest injustice. Petitioner's assertions are patently without merit and disregard clear statutory and legal support for referring release hearings to the Immigration Court. Ninth Circuit precedent clearly provides that a release hearing before an IJ is the proper remedy where a Court determines that an alien's detention during removal proceedings is no longer reasonable. See Tijani, 430 F.3d at 1241. Moreover, there is clear statutory authority establishing the IJ's authority to set bond for immigration detainees. See 8 U.S.C. §§1103(a)(2); (g)(2). Accordingly, this Court properly held that Petitioner is not entitled to release without first giving the Government the opportunity to establish that Petitioner's continued detention is justified. See Court Order at 8; see also, Mustanich v. Gonzales, No. 07cv1100,

2007 WL 2819732, at * 10 (S.D. Cal. Sept. 26, 2007) (noting that <u>Tijani</u> does not entitle Petitioner to release without allowing Government to establish whether petition is a danger or flight risk).

While no court has directly addressed the issue of whether a district court may refer a release hearing to an IJ when the alien is subject to a final order of removal,[1] many Courts have recognized that where an alien successfully challenges continued detention by immigration authorities pending removal proceedings or judicial review, the proper remedy is to require a bond hearing before an Immigration Judge. <u>See, e.g.</u>, <u>Wang v. Ashcroft</u>, 320 F.3d 130, 147 (2nd Cir. 2003); <u>Quezada-Bucio v. Ridge</u>, 317 F. Supp. 2d 1221, 1223-24 (W.D. Wash. 2004); <u>Del-Toro-Chacon v. Chertoff</u>, 431 F. Supp.2d 1135, 1142 (W.D. Wash. 2006); <u>Kotliar v. Molinar</u>, No. CV 07-00851, order conditionally who granting Petition for Habeas Corpus, attached as Ex. E, (C.D. Cal June 25, 2007) (Adopting Report and Recommendation of Magistrate Judge to provide petitioner with a bond hearing within 30 days before an Immigration Judge); <u>Zhang v. Gonzales</u>, No. CV06-0892-PHX-ROS, 2007 WL 2925192 (D.Ariz. May 21, 2007)(same) .  These courts have found that due process requires a bond hearing before an IJ, regardless of whether regulations provide for IJ jurisdiction once a removal order is final. As explained below, IJs continue to retain statutory authority to hold bond hearings.

This reasoning is consistent with congressional policy considerations behind the enactment of 8 U.S.C. §§ 1226 and 1231.  As discussed by Judge Callahan's dissenting opinion in <u>Tijani</u>, the reasons for detaining criminal aliens prior to removal "do not diminish over the duration of their detention."

---

[1]    It should be noted that the issue of referring a release hearing to an IJ is distinct from the issue involving a federal court's authority to admit to bail habeas petitioners who challenge civil immigration detention pending disposition of the merits of the habeas petitions.  Notably, the Second Circuit in <u>Mapp v. Reno</u>, 241 F.3d 221, 231 (2d Cir. 2001), determined that federal courts have the same inherent authority to grant bail to habeas petitioners challenging INS/DHS detention but noted that this finding did not address the question of "whether, when INS [DHS] fails to exercise its discretion in detaining an alien, it is necessary for a federal court to remand the case to the INS before it may release the alien.." <u>Id.</u> at 231; <u>cf. In re Ghalamsiah</u>, 806 F.3d 68 (3d Cir. 1986) (holding that the district court must first remand petitioner's application for bail to the Attorney General because under former §1252(c) the Attorney General has "exclusive discretionary authority to release on bail alien, not illegally detained," pending deportation proceedings).  Unlike the case at hand, <u>Mapp</u> involved an alien seeking bail pending completion of the habeas proceeding.  <u>Mapp</u>, 241 F.3d 221.  Further, <u>Mapp</u> was determined prior to the enactment of the REAL ID Act, which stripped district courts of jurisdiction to hear challenges to final orders of removal through habeas corpus. <u>See id.</u>; REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, Division B.  Here, Petitioner challenges the district court's order following the final determination of the habeas petition and seeks new relief in the form of a bail hearing before a magistrate judge or release without bail. Therefore, <u>Mapp</u> is not instructive on the issue of whether a court may refer a release hearing to an IJ.

430 F.3d at 1252, n. 5 (Callahan, J., dissenting).  Further, the Supreme Court's decision in <u>Demore v.</u> <u>Kim</u>, 538 U.S. 510, 513 (2003), noted that Congress relied on extensive evidence indicating that INS's failure to remove deportable criminal aliens was a result of the failure to detain the aliens and that the best way to ensure removal was detention during removal proceedings.  <u>Tijani</u>, 430 F.3d at 1252, n. 5 (Callahan, J., dissenting). As discussed in <u>Demore</u>, these reports were the basis for enacting 8 U.S.C. §1226 and requiring the Attorney General to "detain deportable criminal aliens pending a determination of their removability." <u>Id.</u> (quoting <u>Demore</u>, 538 U.S. at 521).  Given Congress' understandable concern regarding the agency's failure to remove deportable criminal aliens, this Court, and the <u>Tijani</u> decision, rightfully allowed the Government an opportunity to first establish whether Petitioner is a flight risk or danger to the community.

Petitioner's allegations that IJs lack "statutory or regulatory jurisdiction" over bond matters fail to recognize that both the Secretary of the Department of Homeland Security and the U.S. Attorney General have broad statutory bond authority, which is not limited by the stage of removal proceedings. <u>See</u> 8 U.S.C. § 1103(a)(3), (g)(2).  Indeed, Congress has exclusively entrusted the Secretary of the Department of Homeland Security and the Attorney General with enforcing and administering the immigration laws of the United States.  <u>See</u> 8 U.S.C. §§ 1103(a)(1), (3) (powers and duties of DHS to enforce the immigration laws and create applicable regulations to that effect); 8 U.S.C. § 1103(g)(2) (powers and duties of the Attorney General).  In that vein, absent constitutional constraints or extremely compelling circumstances, administrative agencies are "free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." <u>See</u> <u>Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.</u>, 435 U.S. 519, 543 (1978) (internal citations omitted).  Because the IJ's narrower jurisdiction is defined by regulation, not by statute, a court-ordered post-final-order bond hearing does not offend the statutory authority of the Attorney General.    <u>See</u> <u>Public Lands Council v. Babbitt</u>, 529 U.S. 728, 745 (2000) (a "regulation cannot change the statute").

Requiring a bond hearing before an IJ rather than a magistrate judge is also consistent with both the Ninth Circuit's and the Supreme Court's decisions involving cases where detention is potentially indefinite because removal cannot be accomplished. <u>See</u> <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001);

Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006). In Nadarajah, the petitioner had been detained for five years, had never been ordered removed, and had indeed "won relief at every administrative level . . ." Nadarajah, 443 F.3d at 1081. The Ninth Circuit held that it was unlikely that Nadarajah would be removed in the reasonably foreseeable future because he had "won at every administrative level" and because winning "relief denied 98% of applicants is a powerful indication of the improbability of his foreseeable removal, by any objective measure." Id. Further, Nadarajah received withholding of removal, which the Government did not contest. Unlike the case at hand, the Government had an opportunity at a bail hearing before an IJ to demonstrate whether Nadarajah presented a flight risk or danger to the community. Similarly in Zadvydas, the aliens challenging their detention following final deportation orders were ones for whom removal was "no longer practically attainable," such that their detention did not serve its purported immigration purpose. See Zadvydas, 533 U.S. at 690.

Here, in contrast, Petitioner was charged with a crime, was not successful at any level of review, and the Government, in conducting post-order custody reviews, consistently determined that Petitioner posed a significant flight risk and danger to the community. See Government's Return, p. 10; Exs. L-M. Further, unlike Nadarajah and Zadvydas, Petitioner will either be released or removed following a decision from the Ninth Circuit. See id. This is evidence that Petitioner's release or removal is not indefinite, as defined by Nadarajah and Zadvydas. Moreover, Zadvydas explicitly recognized that the decision in no way denied Congress the right "to subject them [aliens] to supervision with conditions when released from detention." Zadvydas, 533 U.S. at 695. The Court also noted that where detention is determined to be unreasonable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." Id. at 699 (emphasis added). Similarly, Nadarajah implicitly recognized the authority of ICE to set conditions of release by granting the motion for release but subjecting the release to conditions set by ICE. Nadarajah, 443 F.3d at 1084.

Accordingly, referring a release hearing to an IJ with the power to grant bail and other conditions of release is consistent with both Zadvydas and Nadarajah. Therefore, in light of clear statutory authority and well-established legal precedent, this Court properly allowed the Government an opportunity to initially establish before an Immigration Judge that continued detention necessarily serves

1   the purpose of preventing the aliens from fleeing prior to or during such judicial proceedings.

2              2.     Courts Have Broad Discretionary Power to Fashion Equitable Relief
                      Including Referring Bond Hearings to the Immigration Court
3

4          Petitioner argues that this Court is prohibited from referring a case to the Immigration Court to

5   conduct a bond hearing because it does not comply with the requirements of the Court's right to appoint

6   special masters under Fed. R. Civ. P. 53(a).  Specifically, Petitioner alleges that asking the Immigration

7   Court to conduct a release hearing for Petitioner presents an inherent conflict of interest and therefore

8   the Court cannot appoint the Immigration Court to act as a special master.  Rule 53(a) in no way limits

9   the Court's authority to fashion equitable relief.  Petitioner's argument ignores the broader discretionary

10  authority of the Court to fashion equitable relief regardless of its authority to appoint special masters

11  under Rule 53(a).  See Orantes-Hernadez v. Thornburgh, 919 F.32d 549, 558 (9th Cir. 1990); Swann-

12  Charlotte v. Mecklenburg Board of Education, 402 U.S. 1 (1971).  As the Supreme Court in Lemon v.

13  Kurtzman, 411 U.S. 192 (1973) noted:

14              In shaping equity decrees, the trial court is vested with broad discretionary
                power...Moreover, in constitutional adjudication as elsewhere, equitable
15              remedies are a special blend of what is necessary, what is fair, and what is
                workable.  'Traditionally, equity has been characterized by a practical flexibility
16              in shaping its remedies and by a facility for adjusting and reconciling public and
                private needs.'"
17

18  Lemon, 411 U.S. at 200 (quoting Brown v. Bd. of Education, 349 U.S. 294, 300 (1955)).

19         Cases involving violations of  the Administrative Procedures Act ("APA") by agencies are

20  instructive to the case at hand.  Typically when an agency violates the APA, the appropriate remedy is

21  to "vacate the agency's action and remand to the agency to act in compliance with its statutory

22  obligations."  Defenders of Wildlife v. U.S. Env't Protection Agency, 420 F.3d 946, 978 (9th Cir.

23  2005).  The district court's authority to fashion equitable relief under the APA rests on the principle that

24  "while the court must act within the bounds of the statute and without intruding upon the administrative

25  province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles

26  governing judicial action."  Ford Motor Co. v. NLRB, 305 U.S. 364, 373 (1939).  Similarly, here the

27  Court referred a bond hearing to the Immigration Court to ensure that DHS complies with its statutory

28  and constitutional obligations with regard to detention of civil immigration detainees. Like cases

involving violations of the APA, the Court may use its discretionary power to fashion equitable relief that best satisfies the exigencies of the case.  As recognized by the Supreme Court in <u>Zadvydas</u>, "ordinary principles of judicial review in this area [immigration] recognize primary Executive Branch responsibility.  They counsel judges to give expert agencies decisionmaking leeway in matters that invoke their expertise." <u>Zadvydas</u>, 533 U.S. at 700 (citing <u>Pension Benefit Guaranty Corp. v. LTV Corp.</u>, 496 U.S. 633, 651-52 (1990)).  Moreover, the Supreme Court has held that federal courts should not conduct initial inquiries into areas that statutes place primarily in agency hands.  See <u>INS v. Ventura</u>, 537 U.S. 12, 16-17 (2002). In such cases, the agencies act as initial factfinders and federal courts should only involve themselves after the agencies have first considered the underlying merits of the claim. <u>Id.</u> Accordingly, in exercising its equitable powers and referring a bond hearing for petitioner to an IJ, this Court fashioned a remedy that takes into consideration the "greater immigration-related expertise of the Executive Branch." <u>Zadvydas</u>, 533 U.S. at 700.  While the power of a court to shape equitable relief is generally very broad, the court is required to shape any such relief "within the confines of the statutory procedure." <u>Harvest v. Castro</u>, __F.3d __, 2008 WL 795360 (9th Cir. March 27, 2008) (holding that habeas courts have equitable authority to shape the relief granted as long as the relief complies with statutory procedure).  Here, as discussed above, the Attorney General and the IJ have broad statutory authority to grant bond.  Therefore, this Court's order was within its power to order equitable relief and the order complied with statutory procedure.

Finally, Petitioner's claim that bond hearings before IJs present a conflict of interest must fail because it is well established that an IJ is an independent adjudicator.  Since 2003, IJs and DHS employees have belonged to entirely separate cabinet-level departments.  Even before the creation of DHS in 2003, the independence of IJs was recognized because IJ's and INS employees belonged to separate sub-agencies, namely the Executive Office for Immigration Review ("EOIR") and Immigration and Naturalization Service ("INS"), respectively. <u>Altagracia Almonte-Vargas v. Elwood</u>, No. CIV.A. 02-CV-2666, 2002 WL 1471555 at *4 n. 8 (E.D. Pa. 2002) ("Immigration Judges act as independent adjudicators and are expressly authorized to review INS custody and bond determinations"); <u>Prado v. Ilchert</u>, No. C-95-1497 MHP, 1997 WL 383239 at *3 (N.D. Cal. 1997) ("Though the INS and EOIR are closely related in the organization of the DOJ, they are clearly distinct agencies...The INS Commissioner

1    does not have authority over EOIR Director or the EOIR's Board of Immigration Appeals").

2           As applied here, Petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c) on the

3    basis of DHS's initial custody determination and DHS's discretionary detention decisions following his

4    final removal order.  See Government's Return, pp.2-3.  Petitioner never received a bond hearing before

5    an IJ or any determination with regard to his detention status from EOIR.  Therefore, it is appropriate

6    and within the Court's equitable powers to order a release hearing before an IJ with the power to grant

7    bail.

8                    3.      Judicial Economy and Efficiency Does Not Support Requiring Magistrate Judges
                             to Conduct Bail Hearings for Civil Immigration Detainees.
9

10          Even if this Court determines that a Magistrate Court is a possible venue for a bail hearing in a

11   civil immigration matter, judicial economy and efficiency counsels against its use.  The role of the

12   district court in a civil immigration habeas proceeding is akin to the role of a court of appeals in that the

13   district court is reviewing the actions of the agency for constitutional or statutory error.  See Gutierrez-

14   Chavez v. INS, 298 F.3d 824, 829-830 (9th Cir. 2002) (the scope of jurisdiction under 28 U.S.C. § 2241,

15   is limited to allegations of constitutional or statutory error in the removal process); Tyson v. Jeffers, 115

16   F. App'x. 34 (10th Cir. 2004) (finding that habeas jurisdiction is generally limited to reviewing the

17   agency's  legal  determinations  whereas  its  underlying  factual  determinations  are  generally

18   unreviewable).

19          Generally, the law entrusts the DHS and EOIR to assess and set civil immigration bonds.  See

20   8 U.S.C. § 1226 (apprehension and detention of aliens); 8 C.F.R. § 236.1 (apprehension custody and

21   detention of aliens prior to order of removal); 8 C.F.R. § 1003.19 (rules of procedure for custody and

22   bond determinations in Immigration Court).  Further, as noted above and especially in the immigration

23   context, a federal court should generally remand a case to the agency for decision of a matter that

24   statutes place primarily in the agency hands.  See Ventura, 537 U.S. at 16 ( ("within broad limits the law

25   entrusts the agency to make the basic asylum eligibility decision...[and] 'a judicial judgment cannot be

26   made to do service for an administrative judgment.'") (internal citations omitted).  The Immigration

27   Court can "bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial

28   determination; and in doing so, it can, through informed discussion and analysis, help a court later

1   determine whether its decision exceeds the leeway that the law provides." Id. at 17.  Thus, it was

2   appropriate for the immigration court to have an opportunity to assess whether Petitioner is a danger to

3   the community or flight risk "in light of its own experience" as this Court ordered.  Id.

4           In addition there are logistical considerations regarding Petitioner's desire to have a civil

5   immigration bond hearing before a magistrate judge.  Unlike criminal defendants who have bail hearings

6   before magistrate judges, civil immigration detainees are not in the custody of the U.S. Marshal's

7   Service.  There is no indication that civil immigration detainees may be held in the same population as

8   criminal defendants.  Further, if civil immigration detainees were permitted to go before the magistrate

9   court for a bond hearing, procedures and resources would have to be developed either to utilize the

10  already strained resources and detention space of a Bureau of Prisons facility, or for the transportation

11  and custody of detainees from DHS's Otay Mesa and El Centro detention facilities.

12          By contrast, immigration courts and judges are currently located within both of the DHS

13  managed facilities in Otay Mesa and El Centro.  Therefore there are no logistical considerations with

14  an immigration judge conducting an bond hearing for a detainee within this District.  Judicial economy

15  is best served by utilizing the congressionally contemplated expertise of the immigration court as well

16  as the federal resources and facilities allocated and developed for this exact purpose.

17          Not only has Petitioner failed to address these pressing issues, but he has also failed to cite a

18  single case where a district court or appellate court has found it appropriate to refer a release hearing

19  to a magistrate judge.  Petitioner appears to indicate that the Central District of California and the

20  District of Arizona refer not only the merits of habeas petitions but the form of relief, including a release

21  hearing, to magistrate judges.  However, neither district appears to have ordered a bail hearing for a civil

22  immigration detainee to a magistrate judge.  See Petitioner's Motion to Amend, p. 9; Declaration of

23  Raven M. Norris, copy attached as Ex. B, at ¶¶ 4-5.  Significantly, the magistrate judges in these districts

24  and others also recommend relief in the form of referring a bail hearing to an IJ if the petitioner

25  successfully challenges continued detention by immigration authorities.  See Declaration of Raven M.

26  Norris at ¶¶ 4-5;  See also, Kotliar, No. CV 07-00851, Ex. E., (Adopting Report and Recommendation

27  of Magistrate Judge to provide petitioner with a bond hearing within 30 days before an Immigration

28  Judge); Zhang, 2007 WL 2925192 (same); Del-Toro-Chacon, 431 F. Supp.2d at1142 (finding by

1    Magistrate that the Court ordered the remedy to which petitioner was entitled, a bail hearing before an

2    IJ, and the hearing provided all the process to which petitioner was entitled).  As this Court has already

3    determined, the Immigration Court is the most appropriate venue for Petitioner's bond hearing.[2/]

4        Accordingly, as desired by Congress and reaffirmed by the Supreme Court, this Court should

5    not accept Petitioner's invitation to step into a legislative role by ordering magistrate judges to conduct

6    bail hearings for civil immigration detainees.  See H.R. Rep. No. 104 469, pt. 1, at 161 (1996) ("[C]ourts

7    may issue injunctive relief pertaining to the case of an individual alien, and thus protect against

8    immediate violation of [individual] rights.  However, a single district court or court of appeals does not

9    have authority to enjoin procedures established by Congress to reform the process of removing illegal

10   aliens from the United States."); see also Lewis v. Casey, 518 U.S. 343, 349 (1996) ("It is the role of

11   courts to provide relief to claimants, in individual or class actions, who have suffered, or will

12   imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the

13   institutions of government in such fashion as to comply with the laws and the Constitution.").

14         D.     THE IMMIGRATION JUDGE PROPERLY SET BOND AND OTHER CONDITIONS
                  OF RELEASE FOR PETITIONER
15
16             1.     Petitioner has Failed to Articulate a Due Process Violation and
                      Discretionary Bond Decisions are Beyond the Scope of Habeas Review

17       Even if Petitioner is not required to exhaust his administrative remedies, Petitioner has failed to

18   articulate a due process violation. Petitioner claims that  the IJ's decision to order release on bond and

19   other conditions of release is a due process violation.  See Petitioner's Supplemental Motion, pp. 1-10.

20    Petitioner seeks review of the decision by this Court and requests relief by way of a bond hearing before

21   a magistrate judge or release.  See Petitioner's Motion to Amend, pp. 1-8; Supplemental Motion, pp.

22   1-10.  However, the only review available to Petitioner is through habeas corpus for constitutional or

23   _____

24       [2/]      Petitioner argues that Tijani release hearings (federal court ordered bail hearings before
         an Immigration Judge) involve substantively different burdens and standards of proof and therefore the
25       Immigration Court is not qualified to handle such hearings.  Specifically, a Tijani release hearing shifts
         the burden of proof from the detainee to the Government to prove by clear and convincing evidence that
26       the detainee is a danger to the community or flight risk.  Petitioner alleges that the Immigration Court
         is incapable of properly applying the new burden.  This claim is disingenuous because the Immigration
27       Court, as an impartial arbiter and as part of its general docket, is required to apply burdens and standards
         of proof when determining issues presented in the court. For example, the burden of proof in removal
28       proceedings for deportable aliens requires the Government to prove by clear and convincing evidence
         that the alien is deportable as charged.  8 C.F.R. § 1240.8(a).  Moreover, this Court's order clearly
         instructs the IJ that the burden is on the Government.  See Court Order at 8.

1    statutory violations.  Here, the majority of Petitioner's arguments are in fact challenges to the IJ's

2    discretionary and factual bond determination on March 24, 2008.  See id.  As discussed below, review

3    of discretionary and factual determinations by the IJ are beyond the scope of habeas review.

4    The only claim that potentially raises a due process concern is Petitioner's allegation that the IJ

5    failed to supply Petitioner with a constitutionally adequate hearing and set an unreasonable bond.

6    However, as discussed below, the record clearly indicates that the IJ properly set reasonable bond and

7    other conditions of release after considering evidence put forth by both the Government and Petitioner

8    during the  hearing.  Petitioner claims that the IJ's decision "violated the intent" of this Court's

9    March 11 order because the Government did not present sufficient evidence to show that he is a flight

10   risk or danger to the community.  Id. at 5. This is not a due process allegation.  Rather, Petitioner simply

11   disputes the IJ's findings that Petitioner was ineligible for release on his own recognizance and asks this

12   Court to overturn the IJ's ruling.  Because Petitioner has not alleged facts beyond arguments challenging

13   a discretionary bond decision,  the bare contention that the IJ's ruling violates his due process rights

14   should be rejected.  See, e.g., Hoye v. Sullivan, 985 F.2d 990, 992 (9th Cir. 1992) (the plaintiff must

15   allege "facts  sufficient  to  state  a  violation  of  substantive  or  procedural  due  process");

16   Friedlander v. Cimino, 520 F.2d 318, 320 (2d Cir. 1975).

17   Additionally, to the extent Petitioner challenges the weighing process in the custody

18   determinations, these challenges are beyond the scope of habeas review.  The continuing authority of

19   DHS to detain Petitioner pending judicial review is set forth in 8 U.S.C. §1226(a).  Bond decisions are

20   discretionary.  See 8 U.S.C. § 1226(a)(2)(A) (DHS or the Attorney General "may release the alien on

21   . . . bond") (emphasis added); 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment

22   regarding the application of this section shall not be subject to review") (emphasis added).[3/]

23   Discretionary decisions and factual determinations are not reviewable in habeas proceedings.

24   This Court's habeas jurisdiction under 28 U.S.C. § 2241 is limited to review for persons who are "in

25   custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241.

26

27       [3/]       Although the language of 8 U.S.C. § 1226(e) appears to be unambiguous on this question, in Kim the Supreme Court held that Section 1226(e) does not preclude habeas review.  Demore v. Kim,

28   538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review"). However, as explained below, the scope of habeas review is already limited to constitutional and other legal questions, so the question of whether 8 U.S.C. § 1226(e) applies is superfluous.

1   Habeas jurisdiction does not authorize review of "discretionary . . . decisions made by the executive

2   branch that do not involve violations of the Constitution." Gutierrez-Chavez, 298 F.3d at 827.  Habeas

3   review is available to claim that DHS somehow failed to exercise discretion in accordance with federal

4   law or did so in an unconstitutional manner.  But habeas review is not available to claim that the INS

5   simply came to an unwise, yet lawful, conclusion when it did exercise its discretion.  Id. at 827, 830

6   (noting that habeas petitions that attempt to change the discretionary result reached by INS are not

7   within the scope of §2241 and should be denied); see also Singh v. Ashcroft, 351 F.3d 435, 439 (9th Cir.

8   2003) ("The scope of habeas jurisdiction under 28 U.S.C. § 2241 is limited to claims that allege

9   constitutional or statutory error in the removal process").

10          In INS. v. St. Cyr, 533 U.S. 289 (2001), the Supreme Court noted a "distinction between

11   eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other

12   hand." Id.  The Court specified that courts generally do "not review factual determinations made by the

13   Executive" in habeas proceedings.  Id. at 306 (citing Ekiu v. United States, 142 U.S. 651, 659 (1892);

14   see also Tyson v. Jeffers, 115 F. App'x. 34 (10th Cir. 2004) ("habeas jurisdiction is generally limited

15   to reviewing the INS' 'legal determinations,' and its underlying 'factual determinations' are generally

16   unreviewable") (citing St. Cyr, 533 U.S. at 306).  Indeed, courts have consistently ruled that only

17   "questions of pure law" and not questions implicating factual or discretionary issues may be addressed

18   in habeas proceedings.  See Romero-Torres v. Ashcroft, 327 F.3d 887, 888 (9th Cir. 2003) ("an

19   'exceptional and extremely unusual hardship' determination is a subjective, discretionary judgment that

20   has been carved out of our [direct] appellate jurisdiction"); Yang v. INS, 109 F.3d 1185, 1195 (7th Cir.

21   1997) ("this writ does not offer what our petitioners desire: review of discretionary decisions by the

22   political branches of government); Bowrin v. U.S. INS, 194 F.3d 483, 490 (4th Cir. 1999) (holding that

23   review of factual or discretionary issues in habeas review is prohibited). Because Petitioner takes issue

24   only with DHS's process in reaching its determinations this Court should not order a second bond

25   hearing or release and should deny the motion to amend judgment.

26   ///

27   ///

28   ///

1

2

          2.      Petitioner Received a Constitutionally Adequate Hearing and The
                  IJ Properly Ordered Release Upon Payment of Reasonable Bond

3        Even if the Court determines that Petitioner has articulated a due process violation, his claim

4 must fail because the IJ properly set conditions of release on the basis that Petitioner is a danger to the

5 community.  Petitioner alleges that the IJ did not provide a constitutionally adequate hearing, which

6 violated Petitioner's right to due process. Specifically, Petitioner claims that he did not receive proper

7 notice, the hearing lacked an adequate record, the IJ improperly imposed a high bond, and the IJ failed

8 to consider the proper legal standards.  See Petitioner's Supplement Motion pp. 1-10.  Petitioner's due

9 process claim must fail because the Petitioner received all the due process to which he was entitled.  See

10 e.g., Del Toro-Chacon v. Chertoff, No. C05-1861RSL, 2008 WL 687445, at *1 (W.D. Wash. Mar. 10,

11 2008). Moreover, like ICE's original custody determinations, the IJ's determinations are well-reasoned

12 and clearly supported by the record and by the evidence put forth by the Government at the hearing.

13        The Government has presented sufficient evidence to show Petitioner should not be released

14 under an order of supervision or without bond.  ICE has already conducted custody reviews that

15 evaluated whether Petitioner poses a danger to the community.  In accordance with the standards set

16 forth by 8 C.F.R. § 241.4(f) and based on evidence submitted by Petitioner, ICE determined that he is

17 a danger to the community.  [Government's Return, Exs. L-M]  ICE's determination that Petitioner is

18 a danger to community was based on sufficient evidence in the record that shows that Petitioner is a

19 continuing threat to the community and that his strong resistence to removal indicates that he is unlikely

20 to comply with conditions of release.  See id.  Similarly, as discussed below, in accordance with this

21 Court's order on March 11, 2008, and after full consideration of the arguments made at the hearing,

22 evidence already in the record, and additional evidence submitted by both parties, the IJ determined that

23 Petitioner constituted a danger to the community. See  Declaration of Kerri A. Harlin, copy attached at

24 Ex. A, at ¶ 8.  The IJ's determination that Petitioner should be released under a set bond amount was

25 based on his previous convictions and his lack of strong community ties.  Id.

26        Petitioner's allegation that he received improper notice of the hearing is patently without merit

27 because the regulations and law firmly establish that bond hearings before IJ are required to be heard

28 as expeditiously as possible to prevent any continued deprivation of liberty. See Matter of Chirinos, 16

I&N Dec. 276, 277 (BIA 1977) ("Our primary consideration in a bail determination is that the parties be able to place the facts *as promptly as possible* before an impartial arbiter.") (emphasis in original).[4/] Here, upon entry of this Court's order, undersigned counsel notified ICE that a bond hearing for Petitioner must be scheduled as soon as possible and in compliance with this Court's order. See Declaration of Raven M. Norris, at ¶ 2; Norris Correspondence, copy attached as Ex. C. The hearing was scheduled for March 24, 2008, the first available date. Id. Petitioner received notice of the hearing on the same day as the hearing was scheduled.[5/] Accordingly, Petitioner's claim that he was not afforded sufficient notice must fail and does not amount to a due process violation.

Similarly, Petitioner's claim regarding lack of adequate record fails to amount to a due process violation. As discussed above, Petitioner failed to exhaust his administrative remedies by failing to appeal the bond determination. Petitioner has until April 24, 2008 to appeal the IJ decision. See 8 C.F.R. § 1003.38(b). If and when Petitioner appeals, a written bond decision will issue and there will be a full record before this Court. See Immigration Judge Court Practice Manual, Chapter 9, p. 127, available at www.usdoj.gov/eoir/ vll/OCIJPracManual/ocij_page1.htm. Further, a bond hearing before the Immigration Court is an informal hearing, and no hearing transcript is usually made. Matter of Chirinos, 16 I&N Dec. 276, 277 (BIA 1977) ("[T]here is no right to a transcript of a bond redetermination hearing. Indeed there is no requirement of a formal 'hearing.'"); Hass v. INS, No. 90 C 5513, 1991 WL 38258 at *4 (N.D. Ill. March 15, 1991) ("The regulations do not provide for a transcript of bond redetermination proceedings. 8 C.F.R. § 242.2(d) [recodified at 8 C.F.R. § 1003.19].

---

[4/]     The 15-day notice requirement cited by Petitioner does not apply to bond hearings and applies only in the context of removal proceedings. A bond hearing is "separate and apart from, and shall form no part of, any deportation or removal hearing." 8 C.F.R. § 1003.19(d); accord Matter of Guerra, 24 I&N Dec. 37, 40 n. 2 (BIA 2006) ("Bond proceedings are separate and apart from the removal hearing."); Matter of R-S-H-, 23 I&N Dec. 629, 630 n. 7 (BIA 2003) ("We note that bond and removal are distinctly separate proceedings."). Moreover, Petitioner's argument that he did not request a continuance of the original hearing date because Petitioner should not be required to trade "additional, excessive custody for an adequate opportunity to present his case to the IJ" is a direct contradiction to his argument that he should have had an additional fifteen days to prepare for the hearing. Imposing a 15 day requirement rather than allowing the Immigration Court to schedule the first available bond hearing necessarily prolongs Petitioner's detention.

[5/]     As Petitioner's Counsel acknowledges in his declaration, undersigned counsel contacted him immediately to inform him of the scheduled hearing date. See Petitioner's Supplement Motion, Appx. B. Petitioner's counsel did not receive formal notice of the hearing from the Immigration Court because he was not attorney of record with the Immigration Court.

1    Bond redetermination proceedings are informal and not of record [i.e., not recorded verbatim].  If

2    plaintiff was concerned about the lack of a transcript, he could have requested the Court to provide a

3    court reporter….").  "It is well settled that there is no requirement in bond proceedings for a formal

4    hearing and that informal procedures may be used so long as no prejudice results.  As there is no right

5    to discovery in deportation proceedings, no such right exists in the less formal bond hearing procedure."

6    Matter of Khalifah, 21 I&N Dec. 107, 112 (BIA 1995) (citation omitted).

7           Petitioner's claim that the IJ improperly imposed a high bond does not amount to a due process

8    violation because the IJ properly ordered release on a $100,000 bond and under other conditions of

9    release based on his proven danger to the community.  It is well recognized that it is constitutionally

10   permissible for the Immigration Court to set conditions of release, including bond, on an alien under order

11   of removal.  See Zadvydas, 533 U.S. at 699; Doan v. INS, 311 F.3d 1160, 1161 (9th Cir. 2002)(finding

12   that a bond is a permissible condition of release).  Moreover, the Immigration and Nationality Act

13   ("INA") does not provide for the release of an alien in removal proceedings on his or her own

14   recognizance.[6/]  The language of 8 U.S.C. § 1226(a) makes plain that ordering release on conditions of

15   supervision is no longer an option.  See 8 U.S.C. § 1226(a) (requiring a bond of at least $1,500 with

16   security approved by, and containing conditions prescribed by the Attorney General).  Federal

17   regulations provide that an alien may petition the Immigration Judge for "amelioration of the conditions

18   under which he or she may be released ... [and] the Immigration Judge is authorized to exercise the

19   authority in section 236 of the Act [8 U.S.C. § 1226(a)] to detain the alien in custody, release the alien,

20   and determine the amount of bond, if any, under which the respondent may released, as provided in

21   § 1003.19 of this chapter."  8 C.F.R. § 236.1(d).  This does not change the statutory minimum bond:

22   "While regulations may impose additional or more specific requirements, they cannot eliminate statutory

23   requirements."  Hunsaker v. Contra Costa County, 149 F.3d 1041, 1043 (9th Cir. 1998).

24   _____

25         [6/]     Parole is available only to arriving aliens applying for admission or aliens who are
     present without admission.  See INA § 212(d)(5); "Legal Opinion Discusses Parole for Persons who are
26   not Arriving Aliens," 76 Interpreter Releases 1050 (July 12, 1999) (describing August 21, 1998,
     memorandum of INS General Counsel who concluded that the agency had the authority to parole
27   applicants for admission who were not arriving aliens (e.g., aliens removable under
     INA § 212(a)(6)(A)(i)).  Neither an Immigration Judge nor the BIA has authority to grant parole or to
28   review DHS parole decisions.  See Matter of Oseiwusu, 22 I&N Dec. 19, 20 (BIA 1998);
     Matter of Matelot, 18 I&N Dec. 334, 336 (BIA 1982); Matter of Castellon, 17 I&N Dec. 616 (1981).

1    While it is clearly permissible to set bond, the bond imposed must be reasonable under the

2    circumstances and not prevent the alien's release. See Doan, 311 F.3d at 1162; King v. Gonzales, 2006

3    WL 2051697 (W.D. La May 12, 2006). Here, the imposition of bond in the amount of $100,000 is

4    reasonable based on the IJ's determination that Petitioner was not a well-adjusted member of this

5    community as a result of his three convictions for Driving Under the Influence ("DUI"), including DUI

6    involving death/bodily injury and that the bond was necessary in order to ensure Petitioner meets

7    conditions of his supervised release. See Declaration of Kerri A. Harlin, at ¶ 8.

8    Finally, the IJ applied the proper legal standards and considered all the information presented

9    by both the Government and the Petitioner.

10   "The determination of the Immigration Judge as to custody status or bond
     may be based upon any information that is available to the Immigration
11   Judge or that is presented to him or her by the alien or the Service."

12   8 C.F.R. § 1003.19(d). Here the record shows that the IJ properly considered all of the information

13   provided by both parties. Specifically, the IJ considered the evidence of Petitioner's criminal history

14   put forth by the Government. The Government showed that while on probation and within months of

15   two prior convictions for DUI, Petitioner was again convicted of DUI involving Death or Serious Bodily

16   Injury. For this last conviction, Petitioner was sentenced to 16 months. The IJ determined that this

17   evidence demonstrated that Petitioner continued to present a danger to the community and showed a lack

18   of rehabilitation. See Declaration of Kerri A. Harlin, at ¶¶4-6. The Government also argued that

19   Petitioner posed a significant flight risk because he had been denied all relief from removal and was

20   unlikely to appear for removal should the Ninth Circuit deny his petition for review. Moreover, the

21   Government noted that Petitioner did not have any relative who could apply to adjust his immigration

22   status and thus had no basis to obtain lawful immigration status. The Government argued that

23   Petitioner's inability to obtain lawful status supported further indication of flight risk. See

24   Declaration of Kerri A. Harlin, at ¶¶ 4-5. This evidence, coupled with Petitioner's demonstrated

25   repeated criminal history, shows that the IJ accurately reasoned that the Government met its burden of

26   proving that Petitioner is a danger to the community. Accordingly, the IJ refused to impose a low bond

27   and would not release Petitioner on an order of recognizance.

28   Petitioner asserts that the IJ failed to apply 8 C.F.R. § 241.4(f), which provides the general

factors to be considered when the District Director of ICE Headquarters is determining whether or not to release an alien on bond.  However, after hearing a thorough presentation of evidence by both the Government and the Petitioner, the IJ articulated several factors for his decision, including petitioner's multiple convictions.[7/]  See Declaration of Kerri A. Harlin, at ¶¶4-9; Cf. Del Toro-Chacon, 2008 WL 687445, at *9 (upholding a bond determination of the IJ on the basis that the IJ discussed several factors for his decision, including the petitioner's expunged criminal conviction).  Moreover, as discussed in the Return and in compliance with 8 C.F.R. §241.4(f), the IJ properly considered evidence submitted by the petitioner in support of release as well as the petitioner's criminal history, community support, and prior immigration violations.  See Government's Return, Exs L-M.

Given the thorough consideration of the evidence in the record by the IJ, the findings are well-reasoned and supported by the record.  Moreover, Petitioner was given a fair and adequate hearing.  Further, Petitioner still has administrative remedies available as he has until April 23, 2008 to appeal the decision to the BIA.  Accordingly, Petitioner is not entitled to release or an order for a bond hearing before a Magistrate because the Government properly determined that he may be released on a $100,000 bond as a result of  his criminal history.  Thus, this Court should deny Petitioner's motion to alter or amend judgment.

IV.

CONCLUSION

For the reasons set forth above, the motion to alter or amend judgment should be denied.

Dated: April 14, 2008                         Respectfully submitted,

                                              KAREN P. HEWITT
                                              United States Attorney

                                              s/ Raven M. Norris
                                              RAVEN M. NORRIS
                                              Assistant U.S. Attorney
                                              Attorneys for Respondents
                                              Email: raven.norris@usdoj.gov

---

[7/]        It is unclear from the current record whether the IJ ruled on the issue of whether Petitioner is a flight risk.