1 | **JAMES FIFE**
California State Bar No. 237620
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
Telephone: (619) 234-8467
4 |
5 | Attorneys for EPARAMA MAU
6 |
7 |
8 | UNITED STATES DISTRICT COURT
9 | SOUTHERN DISTRICT OF CALIFORNIA
10 |
**(HON. IRMA E. GONZALEZ)**
11 | EPARAMA MAU,                          )   CASE NO. 07CV2037-IEG (LSP)
12 |                                       )
            Petitioner,                   )   **REPLY TO OPPOSITION TO MOTION**
13 |                                       )   **TO AMEND THE JUDGMENT UNDER**
    v.                                    )   **FED. R. CIV. P. 59(e)**
14 |                                       )
    MICHAEL CHERTOFF, et al.              )   DATE: April 28, 2008
15 |                                       )   TIME: 10:30 a.m.
            Respondents.                  )   **ORAL ARGUMENT REQUESTED**
16 |                                       )
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II    ADEQUACY OF THE IJ HEARING IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . 2

III   GENERAL DEFICIENCIES WITH REFERRAL TO AN IJ . . . . . . . . . . . . . . . . . . . . 5

      A. Lack of Authority to Delegate to IJ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B. Deficiencies in IJ Referrals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      C. Desirability of IJ Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

APPENDIX A

CERTIFICATE OF SERVICE

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3  Armentero v. INS,
       412 F.3d 1088 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
4  Begay v. United States,
       553 U.S. ___, 2008 WL 1733270 (Apr. 16, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
5  Chicot County v. Sherwood,
       148 U.S. 529, 13 S. Ct. 695, 37 L. Ed. 546 (1893) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
6  Cohens v. Virginia,
       19 U.S. (6 Wheat.) 264 (1821) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
7  Cohens v. Virginia,
       6 Wheat. 264, 5 L. Ed. 257 (1821) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
8  Crowell v. Benson,
       285 U.S. 87 (1932). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
9  Foucha v. Louisiana,
       504 U.S. 71 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
10 Guzman-Andrade v. Gonzales,
       407 F.3d 1073 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
11 Harris v. Nelson,
       395 U.S. 286 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
12 Harvest v. Castro,
       ___ F.3d ___, 2008 WL 795360 (9th Cir. Mar. 27, 2008) . . . . . . . . . . . . . . . . . . . . 6,8,9
13 Hayward v. Marshall,
       512 F.3d 536 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
14 Lemon v. Kurtzman,
       411 U.S. 192 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
15 Lonchnar v. Thomas,
       517 U.S. 314 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
16 Maier v. Orr,
       758 F.2d 1578 (9th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
17 Martinez v. Gonzales,
       504 F. Supp.2d 887, 900-01 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
18 Matter of Hernandez-Puente,
       20 I. & N. Dec. 335 (BIA 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
19 Nadarajah v. Gonzales,
       443 F.3d 1069 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,9,10,13
20 New Orleans Public Service, Inc. v. Council of City of New Orleans,
       491 U.S. 350 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
21 Phillips v. Commissioner,
       283 U.S. 589 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
22 Pierson v. Ray,
       386 U.S. 547 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
23 South Carolina v. Regan,
       465 U.S. 367 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
24 Superintendent, Mass. Correctional Institution at Walpole v. Hill,
       472 U.S. 445 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
25 Tijani v. Willis,
       430 F.3d 1231 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,6,9,10,11,13
26 United States v. Comprehensive Drug Testing, Inc.,
       513 F.3d 1085 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
27 United States v. Holland,
       ___ F.3d ___, 2008 WL 696903 (9th Cir. Mar. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . 7

28 //

United States v. Snyder,
     235 F.3d 42 (1st Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Whaley v. Belleque,
     ___ F.3d ___, 2008 WL 763774 (9th Cir. Mar. 24, 2008) . . . . . . . . . . . . . . . . 7
Zadvydas v. Davis,
     533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,10,13,14

**DOCKETED CASES**

Tijani v. Willis,
     No. 04-55285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL STATUTES**

18 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
28 U.S.C. § 453 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
28 U.S.C. § 455(a) & (b)(5)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
28 U.S.C. § 2243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,12

**FEDERAL RULES**

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,6

**FEDERAL REGULATIONS**

8 C.F.R. § 241.4(g)(5)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,10,13
8 C.F.R. § 241.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
8 C.F.R. § 241.14(g)-(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
8 C.F.R. § 1003.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
8 C.F.R. §1236.1(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATE STATUTES**

Cal. Veh. Code § 23153 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**UNITED STATES CONSTITUTION**

U.S. CONST. art. III, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,11

**MISCELLANEOUS**

C.J.S. Habeas Corpus § 269 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Immigration Court Practice Manual § 9.3(b)(ii) (Apr. 2008) . . . . . . . . . . . . . . . . 9

1 | **JAMES FIFE**
California State Bar No. 237620
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
Telephone: (619) 234-8467
4

5 | Attorneys for EPARAMA MAU

6

7

8                       UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10                         **(HON. IRMA E. GONZALEZ)**

11 | EPARAMA MAU,                    )    CASE NO. 07CV2037-IEG (LSP)
                                      )
12 |           Petitioner,           )    **REPLY TO OPPOSITION TO MOTION**
                                      )    **TO AMEND THE JUDGMENT UNDER**
13 | v.                              )    **FED. R. CIV. P. 59(e)**
                                      )
14 | MICHAEL CHERTOFF, et al.         )    DATE: April 28, 2008
                                      )    TIME: 10:30 a.m.
15 |           Respondents.          )    **ORAL ARGUMENT REQUESTED**
                                      )
16

17                                   **I**

18                            **INTRODUCTION**

19
        Mr. Mau argued that a bond hearing before an IJ is not only inappropriate, but results in a deprivation
20
of due process which negates the principles of Tijani v. Willis, 430 F.3d 1231 (9th Cir. 2005), and Nadarajah
21
v. Gonzales, 443 F.3d 1069 (9th Cir. 2006). Respondents insist that an IJ bond hearing is authorized by
22
statute and the preferable means for deciding the scope of relief in this federal habeas corpus petition.
23
        Both sides acknowledge that release can be subjected to reasonable and appropriate conditions.
24
Motion to Amend Judgment ("Motion") at 5; Opposition to Motion ("Opposition") at 8-9 (citing Zadvydas
25
v. Davis, 533 U.S. 678, 695 (2001)). What the parties disagree over is who should make that determination
26
of conditions.
27
        Mr. Mau–consistent with this Court's general duty to hear and decide cases in its jurisdiction, as well
28
as the specific duties imposed by the habeas corpus statutes and rules–maintains that it must be the district

1  judge presiding over the case, or, under the proper circumstances, the assigned magistrate.  This course

2  follows an established set of case decisions, statutes, and rules for referrals; affords both parties a fair and full

3  opportunity to argue their case according to recognized procedures and standards; and provides clear lines of

4  review for both sides.

5        Respondents, however, insist on a process which lacks clear authorization in statute and, in fact,

6  contradicts the governing regulations on jurisdiction; teems with procedural deficiencies and the appearance

7  of partiality; confers no unique expertise on the subject matter involved; assigns the decision to an official

8  admittedly lacking authority to provide full relief; and requires this Court to abdicate its power to protect the

9  execution of its own judgments, an act of the sort the Supreme Court described as "treason to the

10  Constitution." Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404 (1821).

11        Given the manifest normalcy of the one course urged by Mr. Mau versus the thorny and dubious path

12  argued by Respondents, for no corresponding practical gain, the Government's persistent insistence on the

13  latter smacks of rank forum shopping, seeking to retain what they claim is unreviewable control over custody

14  determinations.  Because this is no more than a reprise of Respondents' argument already rejected in granting

15  the Petition, the Court should amend its judgment to fulfil its constitutional and statutory duty to determine

16  the merits and disposition of this case, including the precise conditions of release, if any.

17                                                    **II**

18                        **ADEQUACY OF THE IJ HEARING IN THIS CASE**

19        Mr. Mau's argument that an IJ bond hearing would not result in a fair determination of the

20  reasonable and appropriate conditions for his release was borne out by the actual conduct of the hearing

21  before Judge Ipema.[1]  Mr. Mau has already made an extensive critique of the deficiencies of the IJ hearing

22  —————————————————————————————

23        [1] The Declaration of Kerri A. Harlin attached to the Opposition provides a description of the hearing that largely accords with counsel's recollection.  Mr. Mau does dispute Ms. Harlin's claim

24  he did not serve DHS with a copy of his legal memorandum.  See Declaration of Kerri A. Harlin, ¶ 3.  Counsel personally filed and served the memorandum five days before the hearing.  See

25  Appendix A attached hereto.  The fact that the service copy was not transmitted in time merely demonstrates the shortness of notice and opportunity to prepare before the hearing.  Ms. Harlin also

26  argues, as she did at the hearing, that it is agency policy to cite flight risk as a reason for detention only if the officer determines the detainee is not a danger to the community.  Id., ¶ 7.  However, the

27  actual custody decisions in Mr. Mau's case contradict this and accord with counsel's experience that

28  ICE uses any, all, or none of the regulatory reasons to justify further detention.  Looking at Mr. Mau's three custody reviews in the record here, the first, on October 31, 2005, cites his non-cooperation as

1   and its findings. See Supplement to Motion to Amend ("Supplement") at 4-10. Here, he addresses two

2   related claims of Respondents: that the IJ properly weighed Mr. Mau's criminal history against his positive

3   equities and that the $100,000 cash deposit bond is a reasonable and necessary condition on release.

4   Opposition at 16-20.

5        In addition to arguing that the IJ could properly rubberstamp the ICE custody findings with little

6   or no independent inquiry, treat positive regulatory factors as negatives, conduct a hearing when the detainee

7   received no actual notice prior to the hearing, produce no independent record of proceedings (even when

8   specifically requested to), and disclaim any ability to provide Mr. Mau with release conditions equivalent to

9   the thousands of other deportees on ICE supervision, Respondents claim the IJ hearing was full and fair,

10  because the IJ reasonably weighed the seriousness of Mr. Mau's two misdemeanor and one felony DUI

11  convictions to warrant a cash deposit bond of $100,000, which they claim is a reasonable condition under

12  the circumstances. The arguments are baseless.

13       Mr. Mau's conviction of two misdemeanor DUIs followed by a felony DUI with injury two years

14  later hardly counts as a crime wave making it necessary to impose a bond in an amount impossible for anyone

15  but a millionaire to afford. However, these convictions exhibit no heightened threats of danger to the public

16  as to justify such a bond amount, whether considered categorically or on the individual facts of the case. As

17  Mr. Mau argued, Supplement at 7, driving under the influence, though involving potential danger to innocent

18

19  the reason for detention , even though no Notice of Non-Compliance required by 8 C.F.R.

20  § 241.4(g)(5)(ii) was ever served on him (Return Exhibits at 71); the second, on October 30, 2006,
    gave flight risk as the only reason to continue detention (id. at 84); the latest, on October 18, 2007,

21  does not mention flight risk, and continues detention, because "you are deemed a threat to the

22  community pursuant to 8CFR 241.14." (Id. at 97). It is telling that the officer cites § 241.14, which
    permits continued detention of "specially dangerous" aliens who (1) committed a crime of violence,

23  (2) have a mental condition or disorder that makes them likely to commit future acts of violence, and

24  (3) no conditions of release can be fashioned to assure public safety. Such a determination is subject
    to the extensive hearing and appeal procedures set forth in § 241.14(g)-(k). Despite the clear

25  requirements of the regulations, ICE's detention decision nowhere suggests that any of these
    procedural mandates have been met. Indeed, the section of the associated custody review worksheet

26  asking "Does the detainee appear to meet any of the criteria of 8 CFR 241.14 for continued
    detention?" answers "No." Return Exhibits at 104; see also id. at 78, 92 (both previous reviews also

27  answering "No"). Thus, ICE is perfectly willing to cite a completely inapplicable justification for
    detention, whose criteria were expressly denied by the officer conducting the custody review, and

28  despite the fact none of the required procedural protections have been implemented. In counsel's
    experience, this thin-air citation of § 241.14 to justify continued detention is far from unusual.

1  bystanders, does not qualify as an aggravated felony, is not a crime of violence, and is not even a deportable

2  offense. Indeed, the Supreme Court in Begay v. United States, 553 U.S ___, 2008 WL 1733270, at *6 (Apr.

3  16, 2008), likened typical DUI offenses to strict liability crimes, because they do not require malicious intent

4  to harm, and cited approvingly discussion describing DUI as " 'a crime of negligence and recklessness, rather

5  than violence or aggression.' ") (citation omitted). Mr. Mau's misdemeanor convictions cannot, therefore,

6  be deemed so serious or inherently dangerous as to warrant an unprecedented, high bond.

7  Nor do the facts of the one felony conviction make up the deficiency.[2] As Mr. Mau represented to

8  the IJ, the resulting injuries were minor, none of them requiring medical attention. The facts of his case

9  qualified Mr. Mau for the mitigated, low-term sentence for his conviction. There is nothing in the inherent

10  nature nor individual facts of Mr. Mau's criminal history to justify viewing him as so irredeemably dangerous

11  to the public to support a bond which is a manifest order of continued detention. In the end, Respondents

12  can only argue that a bond over 60 times the minimum was required to protect the public, because Mr. Mau

13  "was not a well-adjusted member of the community." Opposition at 19. Maladjustment and a palpable

14  danger of inflicting physical harm requiring the equivalent of preventive, civil detention are two very different

15  things.

16  Respondents' unanchored assertion that a $100,000 cash deposit bond is a reasonable condition on

17  release from civil custody deserves no consideration. Respondents must know that a $100,000 bond is

18  exceptional to unprecedented in an immigration proceeding, apart, perhaps, from the most heinous and

19  serious crimes. As it is tantamount to an order of indefinite detention, it is fitting to compare that bond

20  amount to other bonds granted by ICE to determine whether past convictions of comparable seriousness are

21  treated the same.[3]  Counsel represents that recent Federal Defenders clients include four immigration

22  _____

23  [2] Respondents twice describe Mr. Mau's felony conviction as "DUI with Death or Serious

24  Bodily Injury" and "DUI involving death/bodily injury." Opposition at 1, 19. In none of the six
subsections of Cal. Veh. Code § 23153 is the word "death" mentioned and that offense simply does

25  not encompass homicides resulting from DUIs, nor even "serious bodily injury." Respondents'
mischaracterizing Petitioner's prior conviction is a blatant attempt to ratchet up the prejudice to lend

26  some credence to the IJ's irrational bond decision. DHS counsel makes the same false assertions
under penalty of perjury in her Declaration, ¶¶ 4 & 8.

27

28  [3] That is, assuming past convictions provide an accurate gauge of *present* dangerousness.
See Hayward v. Marshall, 512 F.3d 536, 546 (9th Cir. 2008) (reversing denial of parole to murder
convict, because the state's decision, premised on "continued reliance on [the] unchanging

1   detainees who were granted bond by ICE. One detainee (Amanjeet Gill A37-877-981) had a 2002 attempted

2   murder conviction and was released on a $7,000 bond; a second detainee (Robert Awwad A19-929-455) had

3   been convicted in 2006 of voluntary manslaughter and was released on $5,000 bond; a third (Alekesandr

4   Turik A71-188-730) had a residential burglary from 2003, four DUIs, a battery, and an evading a police

5   officer conviction and was released this month on $2,000 bond; the fourth (Hernan Delgado A78-461-266)

6   had three DUI convictions between 2000 and 2003, all felonies (including the same felony as Mr. Mau's), but

7   remains in custody, because he cannot provide collateral to post the $10,000 bond he was granted. A simple

8   comparison with recent grants of bonds shows that even *three* felony DUIs draws a bond amount one-tenth

9   that imposed on Mr. Mau for his *one* felony DUI, and multiple, violent felony convictions can still qualify

10  for a bond one-fiftieth of Mr. Mau's. Nothing can better demonstrate the unreasoned excess of the bond

11  imposed here or the essential capriciousness of the administrative bond determination. It confirms concretely

12  Mr. Mau's assertion that for a proper and balanced determination of release conditions for petitioners

13  obtaining habeas relief, the matter must be retained within the judiciary.

14  **III**

15  **GENERAL DEFICIENCIES WITH REFERRAL TO AN IJ**

16       Contrary to Respondents' contentions, referral of release conditions to the IJ is not authorized, not

17  appropriate, and not desirable.

18  **A. Lack of Authority to Delegate to IJ**

19       Respondents mischaracterize Mr. Mau's Petition as requesting a bond hearing before the IJ, or, at

20  least, not having objected beforehand to one. Opposition at 4-5. Mr. Mau also did not object to a hearing

21  before a committee of Congress, because it was normal and understood that Mr. Mau petitioned for *judicial*

22  relief, not executive or legislative action. When the Petition and Traverse here asked for a release hearing

23  *as an alternative form of relief,* that can only be understood as a hearing before the assigned judge, not some

24

25  circumstances" of the crime committed twenty years ago "violates due process because petitioner's
26  commitment offense has become such an unreliable predictor of his present and future
    dangerousness," holding the state's decision "does not satisfy the 'some evidence' standard"). Like
27  the parole board in <u>Haywood</u>, the IJ here ignored the proffered evidence of rehabilitation and the
    possibility of imposing reasonable, non-financial conditions to address any residual danger to the
28  community.

1 extraneous adjudicator.  Mr. Mau was not required to pre-address all possible forms of relief he would find

2 objectionable in order to bring a motion to amend under Fed. R. Civ. P. 59(e).  It is enough if the petitioner

3 seeks amendment once the precise form of ordered relief is known.  See United States v. Comprehensive

4 Drug Testing, Inc., 513 F.3d 1085, 1098 (9th Cir. 2008) (Rule 59(e) appropriate to amend language appearing

5 in written judgment).  Mr. Mau did not in any form acquiesce in the IJ referral, but, in fact, objected to the

6 Court's Order in his Motion to Amend and argued to the IJ that he lacked authority to proceed with the

7 referral hearing.  See Supplement to the Motion to Amend ("Supplement'), Appendix B.   In contrast, a bond

8 hearing before an IJ was the precise relief prayed for in Tijani.

9        It does not matter whether either party sought a referral to an IJ, since parties cannot confer

10 jurisdiction which the court does not already possess.  See Guzman-Andrade v. Gonzales, 407 F.3d 1073,

11 1077 (9th Cir. 2005) ("The parties' agreement, however, cannot create subject matter jurisdiction nor waive

12 its absence.").  Mr. Mau argued here and in immigration court that no authority existed for the referral or for

13 the IJ to conduct fact finding for habeas corpus relief.  Instead, it is this Court's mandate to decide such issues.

14        Since this Court entered its judgment and Mr. Mau moved to amend, the Ninth Circuit has issued

15 a decision clarifying the principles governing the granting of relief in habeas cases and the process of how

16 the district courts police their own judgments.  In Harvest v. Castro, ___ F.3d ___, 2008 WL 795360 (9th Cir.

17 Mar. 27, 2008), the Court of Appeals discussed the power of a habeas court to amend its own conditional

18 order of relief.  In reviewing the history of the Great Writ, Harvest notes that the law "originally confined

19 habeas relief to orders requiring the petitioner's unconditional release from custody." Id. at *2.  Although,

20 at the end of the nineteenth century, the Supreme Court approved of conditional grants of release, Harvest

21 holds that the habeas court still retains the power to review the execution of its judgment, that is, whether the

22 circumstances on which the condition depended are fulfilled.  Harvest has now reaffirmed that matters of

23 relief, not just the merits, are firmly within the continuing purview of the habeas court's determination of the

24 petition.

25        "It is a judge's duty to decide all cases within his jurisdiction that are brought before him . . . ."

26 Pierson v. Ray,  386 U.S. 547, 554 (1967).

27
        Our cases have long supported the proposition that federal courts lack the
        authority to abstain from the exercise of jurisdiction that has been conferred.
28      For example: "We have no more right to decline the exercise of jurisdiction
        which is given, than to usurp that which is not given. The one or the other

1        would be treason to the Constitution." <u>Cohens v. Virginia</u>, 6 Wheat. 264,
         404, 5 L.Ed. 257 (1821). " '[T]he courts of the United States are bound to
2        proceed to judgment and to afford redress to suitors before them in every
         case to which their jurisdiction extends. They cannot abdicate their authority
3        or duty in any case in favor of another jurisdiction.' " <u>Chicot County v.
         Sherwood</u>, 148 U.S. 529, 534, 13 S.Ct. 695, 697, 37 L.Ed. 546 (1893)
4        (citations omitted).

5   <u>New Orleans Public Service, Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 358 (1989). Absent a

6   basis for recusal, a federal judge must decide a case properly brought before her for decision.

7        We begin with the general proposition that, in the absence of a legitimate
         reason to recuse himself, "a judge should participate in cases assigned."
8        <u>Maier v. Orr</u>, 758 F.2d 1578, 1583 (9th Cir.1985); <u>United States v. Snyder</u>,
         235 F.3d 42, 46 (1st Cir.2000). This proposition is derived from the
9        "judicial Power" with which we are vested. <u>See</u> U.S. CONST. art. III, § 1.
         It is reflecte d in our oath, by which we have obligated ourselves to
10       "faithfully and impartially discharge and perform [our] duties" and to
         "administer justice without respect to persons, and do equal right to the poor
11       and to the rich." 28 U.S.C. § 453. Without this proposition, we could recuse
         ourselves for any reason or no reason at all; we could pick and choose our
12       cases, abandoning those that we find difficult, distasteful, inconvenient or
         just plain boring.

13
    <u>United States v. Holland</u>, ___ F.3d ___, 2008 WL 696903 at * 2 (9th Cir. Mar. 17, 2008).
14

15       This duty extends to a specific mandate to conduct any evidentiary hearing required in the course

16  of deciding a habeas corpus petition. Under 28 U.S.C. § 2243, when a factual dispute appears, the district

17  court is not only empowered to hold an evidentiary hearing, it is obliged to do so. <u>See</u> <u>Harris v. Nelson</u>, 395

18  U.S. 286, 291 (1969). Indeed, "[t]here is no higher duty of a court, under our constitutional system, than the

19  careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that

20  a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and

21  that he is deprived of his freedom contrary to law." <u>Id.</u> at 292.

22       Respondents do not claim regulatory authority exists permitting post-final-order custody reviews

23  by IJs. Indeed, they would be estopped from doing so, having made the opposite argument in their Return.

24  <u>See</u> Return at 12; <u>cf.</u> <u>Whaley v. Belleque</u>, ___ F.3d___, 2008 WL 763774, at *4 (9th Cir. Mar. 24, 2008)

25  (applying judicial estoppel to preclude state from arguing inconsistent positions in course of habeas

26  proceedings). Instead, Respondents now argue that general grants of authority to DHS and the Attorney

27  General to administer the immigration laws permit them to ignore their own promulgated regulations. While

28  agencies are free to implement rules and rules to govern their statutory grant of authority, they are not

    free to *ignore them* or engage in *ad hoc* determinations that the very regulations they have formulated are

void as contrary to statute. See Opposition at 6-7. Respondents border on the disingenuous to argue that the Attorney General's own regulations governing jurisdiction over custody matters can be ignored whenever inconvenient to achieve the desired result. Shape-shifting jurisdictional grants would be the height of arbitrariness, violating due process.

Nor does Respondents' reference to "broad discretionary power" in equity provide authority for a fact-finding reference to an IJ. Opposition at 9-10. While courts of equity may possess latitude to shape the relief appropriate in the circumstances, that is not a *carte blanche* to by-pass procedural mandates. In Harvest, the Court of Appeals discussed the power of a habeas court to amend its own conditional order of relief and held that the power does exist. However, they must do so within the confines of the statutory procedure. See id. at *5. In so finding, Harvest acknowledged that a habeas court has equitable authority to shape the relief granted, but is still subject to the requirements of procedural mandates: "However, 'the fact that the writ has been called an "equitable" remedy does not authorize a court to ignore . . . statutes, rules, and precedents . . . . Rather courts of equity must be governed by rules and precedents no less than courts of law.' Lonchnar v. Thomas, 517 U.S. 314, 323 (1995)." Id. at *4. Shaping of relief does not authorize re-writing statutes, and Respondents have never shown that only a referral to an IJ will provide "a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 (1973). Given the fact that statute and rule provide standard procedures for fact finding by a judicial officer within the ambit of a habeas petition, Respondents have the impossible task of showing that using a district judge or magistrate to determine the proper scope of relief is inadequate, unfair, or unfeasible.

Because Mr. Mau disputes that there is authority to refer post-final-order custody matters to an executive official to define relief on a habeas petition, there is no requirement of administrative exhaustion. Opposition at 2-3. Respondents admit that there is no jurisdictional exhaustion rule in § 2241 petitions, see id., but ironically maintain that Mr. Mau should be required to exhaust to " 'compile a full judicial record.' " Id. at 3 (quoting Liu v. Waters, 55 F.3d 421, 424 (9th Cir. 1995) (relating to an order of exclusion)). Given Mr. Mau's complaint that *there is no record* below to review, Motion at 9, Supplement at 4-5, and Respondents' insistence that no record is required in immigration court, it is amazing Respondents insist on a dilatory exhaustion to perfect the non-existent record. But then, Respondents seem blind to irony, since they extol the procedural virtues of an IJ hearing at length, but then have to admit that the "record" here does

1  not show whether the risk of flight criterion–one of the two possible bases for imposing the $100,000

2  bond–was ever decided by the IJ.  Opposition at 20 n.7.

3        Respondents' claim that Mr. Mau must first seek review in the BIA before returning to this Court

4  is not only contradicted by their argument later in the Opposition, see infra III.B, but is likewise contradicted

5  by the agency's own regulations.  The BIA has limited appellate jurisdiction under 8 C.F.R. § 1003.1.  See

6  Matter of Hernandez-Puente, 20 I. & N. Dec. 335, 339 (BIA 1991) ("Our jurisdiction is defined by

7  regulations and we have no jurisdiction unless it is affirmatively granted by the regulations.").  Custody

8  matters are within the jurisdiction of BIA in precisely two instances: (1) review of IJ determinations under

9  8 C.F.R. Part 1236A; and (2) detention decisions based on a finding of danger due to mental disorder.  See

10 8 C.F.R. § 1003.1(b)(7) & (14).  The latter does not apply here, and the custody reviews allowed under Part

11 1236 are those which are expressly barred by the entering of a final removal order.  See 8 C.F.R. §

12 1236.1(d)(1); see also EOIR, Immigration Court Practice Manual § 9.3(b)(ii) (Apr. 2008).  Thus, as neither

13 the IJ nor the BIA has regulatory authority to consider Mr. Mau's custody status, there is no basis to require

14 exhaustion of legally unavailable remedies.

15     **B. Deficiencies in IJ Referrals**

16       Mr. Mau outlined a number of the procedural flaws in a bond hearing before the IJ, both in his

17 original Motion and in his Supplement.  Motion at 5-10; Supplement at 4-8.  Those points are not repeated

18 here, nor will Mr. Mau address Respondents' attempts to go back and re-litigate the merits of the Petition.

19 See Opposition at 6-8.  No one disputes that conditions on release can be set, but since this Court has found

20 that Mr. Mau is entitled to relief under the principles established in Tijani and Nadarajah, the only remaining

21 questions is what–if any–conditions of release are appropriate.  See Harvest, 2008 WL 795360, at *2

22 (traditional exclusive relief on habeas is release from custody).  On account of procedural deficiencies such

23 as lack of notice, lack of record, burden of proof errors, and limitation on release options, there is no reason

24 to prefer an IJ hearing over one in a federal court.

25       Respondents argue the IJ hearing comported with due process.  Opposition at 16-20.  Their

26 argument lacks merit.  Their own description of the process proves Mr. Mau's point.  What Respondents

27 approve of involves: (1) a virtual rubberstamping of the administrative determinations denying release

28 (Opposition at 16); (2) misapplication of the regulatory criteria, turning positives into negatives (id., citing

1  "lack of *strong* community ties" (emphasis added) as supporting detention, even though 8 C.F.R.

2  § 241.4(f)(5) describes community ties *of any degree* as a "favorable factor"); (3) misapplication of the case

3  law standards (id., citing Mr. Mau's "strong resistance to removal" as supporting detention, though such a

4  factor would characterize every Tijani/Nadarajah petitioner);[4] (4) **no prior notice whatever to Mr. Mau** of

5  the scheduled bond hearing and notification to counsel only through indirect, informal means requiring any

6  pleadings by Mr. Mau to be filed late and subject to the discretion of being rejected as untimely (id. at 16-

7  17);[5] (5) lack of any requirement to record the hearing, despite counsel's specific request of a tape-recording

8  to enable review by this Court, with Respondents noting that even a *hearing* is discretionary (id. at 17); (6)

9  assigning the decision to shape individual relief to an official who admittedly lacks authority to impose the

10 full range of release conditions–however appropriate on the facts of the case–and who *must* impose a

11 minimum $1,500 cash deposit, but apparently with no upper limit on the amount of an ordered bond, no

12 matter how astronomic, but who cannot impose supervision comparable to thousands of other similarly

13 situated deportees (id. at 18). Respondents' insistence is ludicrous that such a truncated "bail hearing" (in

14 fact and law, a *bond hearing* only, contrary to this Court's order) is comparable to a hearing before a federal

15 judge, where none of these deficiencies exist.

16     The most serious flaw in Respondents' argument is their resurrected claim that discretionary

17 administrative custody decisions cannot be reviewed by the Court on habeas corpus. See Opposition at 13-

18 15. In the first place, this argument is *res judicata*, since it was raised by Respondents in their Return as a

19 reason to deny relief, Return at 11-13, and this Court plainly rejected that reasoning. See Order at 3-5.

20

---

21     [4] A similar example is Respondents' argument at the IJ hearing that detention is justified
22 because Mr. Mau "has no relative in this country who can apply to adjust his status from a B-2 visitor
   non-immigrant visa." Declaration of Kerri A. Harlin, ¶ 5; Opposition at 19. No case suggests that
23 having a legal basis to adjust status is a prerequisite to obtaining release under Zadvydas, Tijani, or
   Nadarajah. In fact, ICE releases thousands of aliens on supervision who lack any legal status in this
24 country.

25     [5] Similarly, the short schedule impeded Mr. Mau's ability to secure evidence from or
26 attendance by family members to express support. Inasmuch as Respondents point to lack of
   community ties as a justification for the high bond, Opposition at 1, 20, the inadequate procedures
27 contributed to Mr. Mau's not having a fair opportunity to make his case. At the hearing, counsel
   offered to provide the IJ with a ready list of supportive relatives and friends and their telephone
28 numbers to allow him to confirm that Mr. Mau would have a place to stay and a job offer on release,
   but the IJ never showed any interest in hearing those details.

07CV2037-IEG (LSP)

1   Moreover, if Respondents were correct, this Court would be barred from reviewing the discretionary custody

2   determination of its own special master, making referral to an IJ in essence an abdication of this Court's

3   inherent authority to police the execution of its own judgments. As indicated above, federal courts may no

4   more abandon jurisdiction conferred than usurp that which is not. Respondents propose a radical change to

5   the judicial process of habeas corpus whereby–in immigration detainee cases alone–a court may not act to

6   enforce its judgment, as reference to the IJ is an automatic divestiture of jurisdiction over the result.[6] By

7   Respondents' reasoning, petitioners' only recourse would be to file new Tijani/Nadarajah petitions

8   challenging the IJ/BIA custody decision. Not only does this fly in the face of Respondents' judicial economy

9   argument, Opposition at 12, but also forces petitioners to run the gauntlet of the Government's inevitable

10  abuse of the writ arguments on the subsequent petition.

11       **C. Desirability of IJ Hearing**

12       Respondents' argument that IJ hearings are somehow superior to hearings conducted by federal

13  judges is equally groundless. IJs are no more suitable for the task of setting release conditions, are

14  disqualified, and provide no practical or procedural benefits over a judge.

15       Respondents claim that IJs are preferable for referrals on release conditions because of their

16  expertise on immigration matters. Opposition at 9-10, 11-12. This ignores the fact that there is nothing

17  about the determination of release conditions which a specialized knowledge of immigration procedures

18  would assist. Indeed, setting appropriate conditions of release in civil cases is no different from and involves

19  identical criteria to a decision on criminal bail. See Tijani, 430 F.3d at 1245 (Tashima, J., concurring)

20  (analogizing civil requirements to criminal procedures approved in United States v. Salerno, 481 U.S. 739

21  (1987)). District judges and magistrates are manifestly well versed in making such determinations.

22  Respondents can point to nothing about a release decision in a case like Mr. Mau's which requires specialized

23  knowledge of immigration laws beyond the ability of federal jurists to comprehend and apply.

24  _____

25       [6] Thus, Respondents' argument that a return to the district court would be the procedural next step after a denial in the BIA, Opposition at 3, is flatly contradicted by their claim a few pages later

26  that no district court may review the administrative custody decision. Respondents appear ready to force petitioners to seek administrative determinations and then to claim a waiver of any Article III

27  relief. This is not unlike Respondents' previous urging that Tijani/Nadarajah detainees submit to removal, thereby losing all right to pursue administrative remedies ordered by the courts. See Return

28  at 5; Traverse at 4-6. Respondents consistently argue detainees must surrender other constitutional rights if they wish to obtain their freedom.

1        Respondents are also incorrect that IJs are not inherently conflicted adjudicators in such matters,

2    because they are employees of a named party. Opposition at 10-11. As Mr. Mau indicated, officers of a

3    party are generally disqualified from adjudicating a case, *as a matter of policy*, because such a relationship

4    to a party constitutes a situation "in which his impartiality might reasonably be questioned." See 28 U.S.C.

5    § 455(a) & (b)(5)(i). Respondents misunderstand; the relevant conflict of interest is not between DHS and

6    DOJ, but between Mr. Mau and Respondents. Mr. Mau is not concerned that an IJ will favor one agency

7    over another, but will favor the Government's interests over his.

8        Respondents grasp at straws when they claim that a Tijani/Nadarajah petitioner's right to substantive

9    and procedural due process should yield to the supposed burden on the entire system attending mere

10   transportation to federal court. Respondents claim concern for mixing civil and criminal detainees, lack of

11   detention space, and the inconvenience of transporting detainees. Opposition at 12. Respondents' arguments

12   are fatuous. Immigration detainees are commonly held in facilities, such as county jails, housing criminal

13   prisoners in areas where no ICE facilities are available. Reports indicate that the *majority* of immigration

14   detainees are held in local jails. See Detention Watch Network, About the U.S. Detention and Deportation

15   System, http://www.detentionwatchnetwork.org/aboutdetention (last visited Apr. 15, 2008) (DHS buys

16   bedspace in 312 jails in which the civil and criminal populations are intermingled). Since attendance at a

17   hearing in nearly all cases will involve only one day at court, short-term holding cells can suffice.

18   Respondents suprisingly argue that petitioners should be afforded diminished due process rights in their

19   habeas proceedings because of the expense of transporting detainees. It is important to bear in mind that

20   habeas prisoners have no absolute right of attendance at hearings under 28 U.S.C. § 2243, particularly if only

21   legal matters are considered. "[P]etitioner's presence is not necessary in all circumstances. It is not essential

22   that petitioner be physically present at the preliminary inquiry as to the propriety of issuing the writ, or where

23   the petitioner's testimony is not essential." 39A C.J.S. Habeas Corpus § 269 (2008) (footnotes omitted).

24   Whether a petitioner should be transported at all lies in the sound discretion of the court.

25       Respondents' reference to cases ordering referrals to immigration judges does not alter the fact that

26   such a procedure is neither authorized nor appropriate. Opposition at 6, 12. The case law shows as well that

27   magistrates have made the ultimate determination of relief by recommending outright release. See, e.g.,

28   Martinez v. Gonzales, 504 F. Supp.2d 887, 900-01 (C.D. Cal. 2007) (adopting magistrate's recommendation

of immediate release on previously imposed conditions). And, of course, immediate release, not a bond hearing, was the relief granted by the Ninth Circuit in Nadarajah, see 443 F.3d at 1084, and was the relief given Mr. Tijani, when the Government did not fulfill the condition of conducting the ordered hearing within 60 days. See Tijani v. Willis, No. 04-55285, docket entry 67 (9th Cir. Mar. 8, 2006) (granting motion for order compelling release on conditions set by district court).

It is Respondents who ask this Court to re-write the statutes and regulations which (1) place the duty to determine habeas cases with the courts and (2) withdraw jurisdiction over post-order custody matters from the IJ. See Opposition at 13. Respondents can cite no positive law supporting their claim that Congress and the Supreme Court have *required* that relief determinations in habeas immigration cases be devolved to the immigration courts, and even admit that no case law addresses the quandary of no regulatory jurisdiction. See Opposition at 6. In contrast, Mr. Mau argues only for the mandated, established procedure of a *judicial* determination of all matters relating to his federal habeas corpus petition. It is Respondents who argue for a radical re-shaping of those statutes and rules by demanding an exception for one class of petitioners.

## IV

## CONCLUSION

The positions of the parties present a clear choice. Mr. Mau argues that the law requires decisions and fact finding relating to the merits or disposition of a federal habeas corpus properly lie with the judicial officers charged by the Constitution and statute to hear and determine those cases, not with an executive adjudicator with no authority or unique expertise over the determination of conditions of release. Despite a lack of any law requiring that IJs be injected *ad hoc* into the habeas process, Respondents argue that the executive should retain unreviewable control over the length of detainees' civil custody. In short, Respondents advocate eviscerating the relief established in Zadvydas, Tijani, and Nadarajah, rendering the practical effect of granting a habeas corpus petition entirely vacuous.

Respondents' argument to leave it all up to the executive to decide length of detention, with no interference from the courts, is the precise opposite of the view taken by the Supreme Court in Zadvydas. There, the Court emphasized:

> Moreover, the sole procedural protections available to the alien are found in administrative proceedings, where the alien bears the burden of proving he is not dangerous, without (in the Government's view) significant later judicial review. Compare 8 C.F.R. § 241.4(d)(1) (2001) (imposing burden of proving nondangerousness upon alien) with Foucha v. Louisiana, [504

U.S. 71,] 82 [(1992)] (striking down insanity-related detention for that very reason).  This Court has suggested, however, that the Constitution may well preclude granting "an administrative body the unreviewable authority to make determinations implicating fundamental rights."  <u>Superintendent, Mass. Correctional Institution at Walpole v. Hill</u>, 472 U.S. 445, 450,(1985) (O'CONNOR, J.);  <u>see also Crowell [v. Benson]</u>, 285 U.S. [22,] 87 [(1932)] (Brandeis, J., dissenting) ("[U]nder certain circumstances, the constitutional requirement of due process is a requirement of judicial process").  The Constitution demands greater procedural protection even for property.  <u>See South Carolina v. Regan</u>, 465 U.S. 367, 393 (1984) (O'CONNOR, J., concurring in judgment); <u>Phillips v. Commissioner</u>, 283 U.S. 589, 595-597 (1931) (Brandeis, J.).   The serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious.

533 U.S. at 692; <u>accord</u> <u>Armentero v. INS</u>, 412 F.3d 1088, 1088  (9th Cir. 2005) (Ferguson, J., concurring specially) ("Administrative agents cannot be vested with the authority to render decisions concerning the length of detention.  Such decision-making power rests in the hands of a judicial officer.").

This Court should fulfil its mandate to decide *all the issues* in this habeas petition, including the proper scope of relief.  The Motion to Amend should be granted, so that this Court or the assigned magistrate can conduct a procedurally adequate inquiry into the appropriate and reasonable conditions of release.

Respectfully submitted,

Dated: April 18, 2008

*s/ James Fife*_____
**JAMES FIFE**
**Federal Defenders of San Diego, Inc.**
e-mail: james_fife@fd.org
Attorneys for EPARAMA MAU

14

# APPENDIX A

JAMES FIFE CBN #237620
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway Suite 900
San Diego, CA 92101
(619) 234-8467

Attorneys for Respondent

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT, SAN DIEGO
## HONORABLE HENRY IPEMA, JR.

In the Matter of:                    )
                                     )   No. A97-890-332
EPARAMA MAU,                         )   Hearing: March 24, 2008
          Respondent                 )
                                     )
_____      )

DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

MAR 19 2008

IMMIGRATION COURT
SAN DIEGO, CA

## RESPONDENT'S OBJECTION TO THIS COURT'S AUTHORITY TO DETERMINE RELEASE CONDITIONS AND LEGAL MEMORANDUM ON PROCEDURE UNDER *TIJANI v. WILLIS*.

### I.
### OBJECTION TO AUTHORITY TO HEAR THIS MATTER

Respondent, through undersigned counsel, submits this Objection to this Court's authority to determine release conditions. This Objection is based on the lack of statutory or regulatory authority for this Court to determine custody matters after entry of a final order of removal, and on the failure of the referral of this matter from the District Court to comply with the requirements of Federal Rules of Civil Procedure 53 (Masters).

### Statement of the Case

This matter comes before this Court on Order of U.S. District Court for the Southern District of California, Chief Judge Irma E. Gonzalez presiding, as a final judgment in Respondent's petition for writ of *habeas corpus* in case number 07CV2037-IEG (LSP). That final order was entered on March 11, 2008; a copy is attached hereto as Appendix A. Judge Gonzalez

## CERTIFICATE OF SERVICE

I, James Fife, do hereby certify that I delivered in person a copy of the attached Objection to Authority to Determine Release Conditions and Legal memorandum on Procedure on March 19, 2008 to:

DHS District Counsel
880 Front Street, Room 2246
San Diego, CA 92101

A97-890-332

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF CALIFORNIA

3  EPARAMA MAU,                          )
                                         )    Civil No. 07CV2037-IEG (LSP)
4                                        )
            Petitioner,                  )
5                                        )
   v.                                    )
6                                        )    CERTIFICATE OF SERVICE
   MICHAEL CHERTOFF, et al.,             )
7                                        )
            Defendant.                   )
8                                        )

9           Counsel for Petitioner certifies that the foregoing pleading, is true and accurate to the best of

10  his information and belief, and that a copy of the foregoing Petitioner's Reply to Opposition to Motion to

11  Amend the Judgment Under Fed. R. Civ. P. 59(e) has been electronically served this day upon:

12

13          **Raven M Norris**
            raven.norris@usdoj.gov,Ana.Strutton@usdoj.gov,efile.dkt.civ@usdoj.gov,pamela.bradley
14          @usdoj.gov

15

16

17  Dated: April 18, 2008                        ___/s/ James Fife_____

18                                               JAMES FIFE

                                                 Federal Defenders of San Diego, Inc.
19                                               225 Broadway, Suite 900

20                                               San Diego, CA 92101-5030

                                                 (619) 234-8467 tel)
21                                               (619) 687-2666  (fax)

22                                               james_fife@fd.org

23

24

25

26

27

28