# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPARAMA MAU<br><br>                              Petitioner,<br>vs.<br><br>MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, MICHAEL MUKASEY, ATTORNEY GENERAL, ROBIN BAKER, DIRECTOR OF SAN DIEGO FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, JOHN A. GARZON, OFFICER-IN-CHARGE,<br><br>                              Respondents. | CASE NO. 07CV2037 IEG (LSP)<br><br>**ORDER DIRECTING PETITIONER'S RELEASE UNDER APPROPRIATE CONDITIONS OF SUPERVISION** |

## INTRODUCTION

Presently before the Court is Petitioner Eparama Mau's Motion to Amend and a Supplement to the Motion to Amend Judgment. While finding insufficient grounds to amend the prior judgment, the Court, interpreting the Supplement as a Motion for the Court to Enforce its Prior Order, GRANTS the Motion and ORDERS that Petitioner, Eparama Mau, be released under appropriate conditions of supervision.

//
//
//

- 1 -

**BACKGROUND**

**I.      Factual Background**

     **i.      Prior Proceedings**

Petitioner is a native and citizen of Fiji. He entered the United States in March 2001 as a non-immigrant B-2 visitor for pleasure with authorization to remain in the United States until September 14, 2001. He subsequently remained in the United States beyond this date without authorization.

On March 16, 2004, while on probation for a previous conviction for driving under the influence, Petitioner was convicted of violating California Vehicle Code § 23153(b) for Driving Under the Influence with Bodily Injury and was sentenced to 16 months' imprisonment. On September 16, 2004, Immigration and Customs Enforcement initiated removal proceedings against Petitioner, charging him with deportability pursuant to 8 U.S.C. § 1227(a)(1)(B), which provides for the deportation of an alien who violates his non-immigrant status.

Petitioner was transferred to the custody of the Respondents on October 5, 2004 and held in custody pending removal proceedings. On December 15, 2004, a removal hearing was held. Petitioner admitted each of the allegations filed against him. The immigration judge ("IJ") found Petitioner removable based on the admissions.

The IJ heard testimony from the Petitioner regarding his fear of being returned to Fiji based on past instances of abuse at the hands of Fijian officials which the IJ concluded was credible. However, the IJ denied Petitioner's applications for asylum and withholding under the Immigration Act and the Convention Against Torture based on Petitioner's DUI conviction. The IJ further denied deferral of removal under the Convention Against Torture based on a finding that Petitioner had not established it more likely than not that he would be tortured by a public official if returned to Fiji. Petitioner timely appealed the decision of the IJ to the Board of Immigration Appeals ("BIA"). The BIA affirmed the IJ's ruling on April 28, 2005.

Petitioner then filed a timely petition for review pro se with the Ninth Circuit on May 12, 2005, in Case No. 05-72765. Petitioner's opening brief was filed late on November 17, 2005, but was accepted by the Court. Respondents' brief was filed on February 9, 2006. Petitioner filed his reply brief on March 9, 2006. On April 23, 2008, Respondents filed a motion to expedite appeal of the

petition for review. As of the date of this order, however, no action has since taken place in the case.

### ii.     Petitioner's Habeas Petition

On October 19, 2007, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 18 U.S.C. 2241, arguing that his by then 36 month detention at the hands of Respondents was unlawful under the Ninth Circuit's decisions in Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005) and Nadarajah v. Gonzalez, 443 F.3d 1069 (9th Cir. 2006).

On March 11, 2008, this Court granted in part Petitioner's Petition and, relying on the Ninth Circuit's remedy Tijani, ordered Respondents to provide Petitioner with a bail hearing before an immigration judge with the power to grant him bail unless the government were to establish Petitioner is a flight risk or a danger to the community.

On March 13, 2008, Petitioner's counsel was informed that a hearing had been scheduled for Petitioner before the immigration court for March 24, 2008. No official formal notice was given by the immigration court to Petitioner's counsel.

On March 17, 2008, Petitioner filed a Motion to Amend the Judgment requesting this Court amend its order and refer the bail hearing to the assigned magistrate judge in this case as opposed to an immigration judge. Petitioner argued there is no immigration judge with the power to grant Petitioner bail as the Court ordered because immigration judges lack jurisdiction over post-final-order custody decisions. Further, Petitioner argued that a bail hearing before an immigration judge would not be constitutionally adequate since it would entail various procedural defects. Specifically, Petitioner argued that because referral to the IJ has no basis in statute, the lines of review following an adverse determination were murky. Petitioner also noted that in other Tijani hearings conducted by IJs on orders of this Court, no recording or transcription of the proceedings had taken place; if the same were to occur in his case, argued Petitioner, it would hamper any efforts at review.

Petitioner suggested that a procedurally preferable remedy would be to refer the bail hearing to the magistrate judge assigned to the case. Petitioner argued that the magistrate judge would be at least as qualified, if not more so, to examine the issues to be resolved in a release hearing and had the additional benefit of independence since the magistrate judge, unlike an IJ, is not affiliated with a

named party in this litigation (i.e., the Attorney General).[1]

### iii. Tijani Bail Hearing

The IJ held a bail hearing on March 24, 2008. According to the accounts of Petitioner's counsel and Government counsel, the following transpired:

> Immigration Judge Henry Ipema conducted the hearing. The IJ denied Petitioner's request to record proceedings.
>
> At the hearing, Government counsel argued Petitioner was a flight risk and a danger because he had lost his administrative appeals and his conviction for DUI with injury was found by a previous immigration judge to be a particularly serious crime. Petitioner responded that in his latest custody review, ICE had not alleged he was a flight risk, only that he was a threat the community. Petitioner presented argument and evidence that he was neither a danger nor a flight risk. Specifically, Petitioner pointed to his lack of any history of violence, his unbroken compliance while in state and federal custody, and the mitigated nature of his criminal convictions. Petitioner argued that these prior convictions, two of which were misdemeanors, and one non-aggravated felony were not particularly serious and should not be used as proof of current dangerousness. Petitioner argued that any potential harm that he presented to public safety could be addressed by special conditions of release, such as attending alcohol abuse treatment or placing restrictions on permission to drive.
>
> Petitioner next argued he was not a flight risk as noted by the presence of family and friends in northern California, his past work history, offers of residence and employment, and his evidence of rehabilitation while in custody.
>
> Petitioner argued no bond was necessary, since any concerns could be addressed by reasonable conditions of release, such as an ICE standard Order of Supervision. Petitioner urged the IJ to consider the fact that Petitioner had been detained for an extensive period of time with no income in setting an appropriate bail amount.
>
> The IJ ruled Petitioner was eligible for bond. Holding that Petitioner's convictions showed he was "a proven danger," the IJ refused to impose a low bond. The IJ stated that anyone who saw Petitioner driving at him or her on the highway would feel threatened. The IJ imposed a cash bond of $100,000 with a condition that Petitioner not drive if released and surrender any driver's license he possesses.
>
> The IJ stated that a written opinion would be issued only if an appeal is filed with the BIA.
>
> Petitioner preserved his right to appeal and has 30 days from date of IJ order to appeal, however, Petitioner maintains the IJ and the BIA lacks authority to determine the conditions of release.

### iv. Supplement to the Motion to Amend

On March 27, 2008, Petitioner filed a Supplement to Motion to Amend. In that document, Petitioner described the proceedings before the IJ set forth above. Petitioner argues the conduct of the

---

[1] IJs, as well as the BIA, are officers of the Executive Office of Immigration Review in the Department of Justice, whose head is the Attorney General.

1 bail hearing demonstrates the procedural deficiencies Petitioner had warned of in his Motion to
2 Amend. Specifically, Petitioner notes the proceedings were deficient in that they had the following
3 problems: (1) lack of notice to counsel; (2) lack of adequate record for review; (3) improper
4 application of the burden of proof; (4) improper application of the standard of proof; (5) lack of release
5 without bond option; (6) misapplication of Tijani; (7) overweighing of past conduct; and (8) excessive
6 bond.

### v. Respondents' Opposition

On April 14, 2008, Respondents filed an opposition asserting various grounds why Petitioner's motion should be rejected. Respondents argue Petitioner has failed to exhaust administrative remedies because he has failed to appeal the bond determination to the BIA or request bond redetermination. It is Respondents' position that this case should follow the same administrative procedures as a standard administrative bond hearing, i.e., Petitioner should appeal the IJ's decision to the BIA before bringing a habeas claim. Respondents also argue Petitioner has not met his burden under Rule 59(e) for a Motion to Amend because he has set forth no new evidence, no intervening change in the law, nor a showing that the Court's order was manifestly unjust. Respondents argue the court properly ordered the bail hearing and that the immigration judge properly and adequately complied with the Court's order.

## II.    Procedural Background

Petitioner filed a Motion to Amend this Court's March 11, 2008 judgment on March 17, 2008. The Supplement to the Motion to Amend was filed on March 27, 2008. (Doc. No. 20.) Respondents filed their opposition on April 14, 2008. (Doc. No. 23.) Petitioner's reply was filed on April 18, 2008. The Court heard argument on this case, as well as in a case raising similar issues, Judulang v. Chertoff, et. al., 07cv1414-IEG (CAB), on April 28, 2008.

### DISCUSSION

## I.    Rule 59(e)

A Rule 59(e) motion is properly granted "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if

there is an intervening change in controlling law." Dixon v. Wallowa County, 336 F.3d 1013, 1022 (9th Cir. 2003).

### a. Parties' Arguments

#### 1. Petitioner's Argument

Petitioner contends that rule 59(e) relief is appropriate in this case because vesting authority over the bail determination in this case with the immigration judge would result in a manifest injustice due to the procedural complications such an arrangement entails.

For one, Petitioner asserts that, aside from the Ninth Circuit's decision in Tijani, there is no independent authority to refer post removal bail determinations to an immigration court rather than a magistrate judge. Petitioner notes that the Code of Federal Regulations only explicitly authorizes custody appeals to an immigration judge "at any time before an order under 8 C.F.R. part 1240 becomes final." 8 C.F.R. § 1236.1(d)(1). In this case, that time has passed. Petitioner argues that since the IJ has no independent statutory or regulatory jurisdiction to carry out the bail hearing, the authority to refer the matter to the IJ may be argued to stem from the district court's general power to appoint special masters under Fed. R. Civ. P. 53. Petitioner argues, however, that the limited appointment authority under Rule 53 does not support the appointment of the IJ as special master in this case because none of the various conditions under subdivision (a) have been fulfilled. See Fed. R. Civ. P. § 53(a) (limiting special master appointment to cases where (1) the parties consent; (2) exceptional conditions exist; or (3) the district judge or magistrate cannot effectively address pretrial and posttrial matters). Further, Petitioner asserts the IJ should be disqualified from serving as a special master because he has a relationship with a party in this case, the Attorney General. See Fed. R. Civ. P. § 53(a)(2) ("a master must not have a relationship to the parties . . . .").

Even beyond the authority problems, Petitioner argues the determination of a fundamental liberty right cannot lie ultimately in the hands of an executive official, but requires the protection and legal expertise found only in judicial proceedings. See Zadvydas v. Davis, 533 U.S. 678, 692 (2001) ("This Court has suggested . . . that the Constitution may well preclude granting an administrative body the unreviewable authority to make determinations implicating fundamental rights.") (internal citations and quotations omitted).

1    Finally, Petitioner asserts that several procedural pitfalls would be avoided by utilizing a
2 magistrate judge in place of an IJ.  For one, Petitioner notes that a referral to the IJ makes the lines of
3 review following an adverse determination murky since it is unclear whether the BIA should review
4 the IJ's findings or whether the parties should return to this Court.  Further, Petitioner notes that in IJ
5 bail hearings, no recording or transcription of proceedings typically takes place and so there is no
6 record for this Court to review should a challenge arise.

7    2.    Respondents' Argument

8    As an initial matter, Respondents assert the BIA retains jurisdiction to hear appeals of IJ orders
9 and bond decisions even where the bond hearing is the result of a successful Tijani claim.  As such,
10 Respondents assert Petitioner should be required to exhaust his administrative remedies by appealing
11 the bond determination with the BIA or filing a motion for bond redetermination with the IJ before
12 pursing relief from this Court.

13    As to the issue of the authority for immigration judges to conduct Tijani hearings, Respondents
14 contend that there is statutory authority for immigration judges to conduct such hearings. Respondents
15 argue such power derives from the general and plenary power over bond procedures which Congress
16 has delegated exclusively to the Secretary of the Department of Homeland Security and the Attorney
17 General.  See 8 U.S.C. § § 1103(a)(3); (g)(2) (explaining that the Secretary of Homeland Security shall
18 proscribe such forms of bond as he deems necessary for carrying out his authority and also that the
19 AG shall prescribe forms of bond in immigration proceedings).

20    In the alternative, Respondents argue the power to appoint the immigration judge is derived
21 from the district courts broad discretionary powers in shaping equity decrees.  See Lemon v.
22 Kurtzman, 411 U.S. 192 (1973).  According to Respondents, it is this broader discretionary authority
23 and not Rule 53 which is the proper source for the Court's power.  Thus, Respondents contend the
24 requirements and limitations of Rule 53 are inapposite.

25    Respondents point out that several courts have followed the Tijani court's lead and awarded
26 successful habeas petitioners with a bond hearing before an IJ.  See Malcalma v. Chertoff, 06cv2623,
27 2007 WL 1516744 (S.D. Cal. Sept. 26, 2007) (Hayes, J.); Martinez v. Gonzalez, 2007 WL 2402737
28 (C.D. Cal. Aug. 17, 2007); Martinez-Herrera v. Crawford, 2007 WL 2023469 (D.Ariz. June 20, 2007);

1  Ali v. Crawford, No.06cv1149 (D. Ariz. June 8, 2007); Soeoth v. Gonzalez, 06cv7451 (C.D. Cal.
2  January 5. 2007).

3  **b.     Analysis**

4        i.     Exhaustion of Administrative Remedies

5  As an initial matter, the Court disagrees with Respondents' argument that Petitioner should
6  be required to pursue an appeal with the BIA before returning to this Court and requesting
7  enforcement of its judgment. This request for relief relates directly to this Court's prior order and, as
8  such, there are no administrative remedies to exhaust. It should not fall to the BIA to review
9  Respondents' compliance with this Court's judgment.

10  To the extent the Petitioner's Supplement to the Motion to Amend the Judgment is interpreted
11  as a motion requesting this Court enforce its judgment and correct any errors on the part of the IJ,
12  again, the requested relief would concern this Court's prior order which instructed Respondents to
13  give Petitioner an adequate and appropriate hearing. As the Ninth Circuit has recently explained in
14  Harvest v. Castro, 520 F.3d 1055 (9th Cir. 2008), the habeas court retains the power to review the
15  execution of its judgment, that is, whether the circumstances on which the condition depended are
16  fulfilled. Id. at 1064 ("A conditional order's framework contemplates that a district court will
17  eventually make an assessment concerning compliance with its mandate.") (internal citation omitted).

18

19        ii.     Assignment to the Immigration Judge

20  While finding Petitioner has properly brought his Motion to Amend, the Court finds no error
21  in assignment of Tijani bail hearings to an immigration judge and therefore declines Petitioner's
22  request to amend or alter the judgment.

23  The power to order a bail hearing before an immigration judge is the type of practice and
24  workable remedy within the district court's broad equitable powers. See Lemon, 411 U.S. at 200
25  ("[i]n constitutional adjudication as elsewhere, equitable remedies are a special blend of what is
26  necessary, what is fair, and what is workable."). Notably, a bail hearing before an immigration judge
27  was the precise relief rewarded by the Ninth Circuit in the Tijani case and that court saw no conflict
28  between that relief and existing statutes or regulations. While the regulations do not explicitly extend

power over bail hearings to immigration judges where an order of removal is final, the regulations do not forbid it either.

Further, Petitioner's suggestion that the Court is vesting "unreviewable" authority with the IJ is without merit. While the proper scope and standard of review of the IJ's bond determination in a Tijani hearing is a novel issue raised by this case, as discussed below, the Court concludes it is within its habeas power to ensure the hearing ordered by this Court complied with the Court's order and due process. Accordingly, the IJ's exercise of authority is not only reviewable, but will be reviewed.

Finally, while Petitioner argues the magistrate judge is in a better position to examine the issues to be resolved, the Court finds, on the whole, that neither magistrate judges nor immigration judges would seem to have an inherent advantage in the analytical skills or experience each group would bring to conducting a bail hearing under Tijani. Immigration judges have sufficient experience with the bail factors to apply them correctly.

**c.    Petitioner's Supplement to the Motion to Amend**

Based on the foregoing, the Court finds no grounds exist under Rule 59 (e) to amend its prior order directing Respondents to provide Petitioner with a bail hearing before an IJ.

However, Petitioner's supplemental filing of March 27, 2008, and Respondents' response of April 14, 2008, raise additional issues related to the actual conduct of the Tijani bail hearing in this case. Specifically, Petitioner contends the hearing resulted in a deprivation of due process stemming from a lack of notice, application of the incorrect burden and standard of proof, the lack of an adequate record to permit meaningful review, the lack of comparable remedies available to similarly situated detainees, the reversal of presumptions established in case law, improper analysis of the effect of prior criminal convictions, and the imposition of excess bond.

Nearly identical issues were raised and discussed in the case argued alongside Petitioner's, Judulang v. Chertoff, 07cv1414-IEG (CAB). In that case, after being denied bond at the conclusion of a Tijani hearing ordered by this Court, Petitioner Judulang filed a Motion for Enforcement of this Court's Order. Citing procedural and substantive errors by the IJ, Petitioner Judulang's motion seeks an order from this Court directing that he be released under appropriate conditions of supervision.

While not making an explicit motion as Petitioner Judulang, the Court interprets Petitioner

1  Mau's Motion to Amend and Supplement to the Motion to Amend—which inter alia, asserts the IJ's
2  decision "violated the intent" of this Court's March 11 Order because the Government did not present
3  sufficient evidence to show that he is a flight risk or a danger—as a Motion for Enforcement of this
4  Court's Prior Order.  Accordingly, the Court considers below whether Petitioner is entitled to an order
5  of release to effectuate this Court's prior order.

**II.    Did the Bail Hearing in this Case Satisfy this Court's Order?**

   **a.    Parties' Arguments**

        1.    Petitioner's Argument

Petitioner identifies numerous deficiencies with the hearing provided by the IJ.

(1) Lack of Notice - Petitioner complains he was not provided with any formal official notification of the hearing and that the time set for the hearing was less than the 15 days which immigration court procedure normally dictates for filing briefs.

(2) Lack of an Adequate Record for Review - Petitioner requested and was denied tape recording of the hearing.  Petitioner argues that due process generally requires a "record of sufficient completeness" be furnished to permit "proper consideration of the defendant's claims."  See Mayer v. City of Chicago, 404 U.S. 189, 194 (1971).

Even though the IJ stated that a written decision would issue if an appeal to the BIA was taken, the Petitioner objects to filing a pro forma appeal simply to obtain a written finding which may be simply a post-hoc rationalization of a decision which was already made.

(3) Burden of Proof - Petitioner asserts the IJ improper put the burden with Petitioner to show he was not a flight risk or danger.  Petitioner says the fact that the IJ asked Petitioner to address the court first suggests he viewed the burden to remain with Defendant as is usual in immigration custody hearings.  Petitioner also alleges the IJ gave slight regard to his extensive argument for release.

(4) Standard of Proof - Petitioner asserts the IJ never stated he found by clear and convincing evidence that a bond of $100,000 was necessary to ensure petitioner's compliance with conditions of release.

(5) Petitioner argues that the IJ imposed a bond amount nearly 67 times the minimum.

(6) Misapplication of Tijani - Petitioner argues that those who qualify for Tijani relief (and

thus who's removal orders are final) are treated worse than other detainees because court procedures require a bond for release after a final order of removal. Petitioner argues that the adjudicator who conducts the Tijani bail hearing should have the power to grant bail in all its forms.

(7) Overweighing of Past Misconduct - Petitioner's past record includes two misdemeanor DUIs and one felony DUI from between four and six years ago. Petitioner argues the IJ erred by finding that these convictions alone overrode any showing of subsequent rehabilitation or the efficacy of any non-financial conditions of release. Petitioner explained to the IJ that the injuries resulting from the felony were minor and neither injured person required hospital treatment. Petitioner notes that the felony DUI is not a deportable offense and thus Congress has determined it is not serious enough to warrant such an astronomical bond amount. Petitioner argues that measures must be taken to assess the risk of flight and danger to the community on a current basis. See Hayward v. Marshall, 512 F.3d 536, 544, 546 (9th Cir. 2008) (old convictions are "no evidence" that release "would unreasonably endanger public safety."); Ngo v. INS, 192 F.3d 390, 398 (3d Cir. 1999) ("The assessment of flight risk and danger to the community must be made on a current basis").

(8) Excessive Bond - Petitioner asserts he lacked the resources to post a substantial bond thus the elevated bond in this case was nothing more than a covert order of further detention. Petitioner argues that, in as much as Petitioner has already served a longer period in ICE custody than the highest possible statutory sentence for his felony conviction, the IJ's decision conflicts with the judgment of the California legislature of what is necessary to protect the public. Petitioner maintains the bond level set ignores the use of non-financial conditions to achieve the same goals.

2.   Respondents' Argument

Respondents argue Petitioner's fact challenges to the IJ's discretionary and factual bond determination are beyond the scope of habeas review. Respondents rely on numerous cases which have stated that generally courts do not review factual determinations made by the executive in habeas proceedings. See e.g., Gutierrez-Chavez v. INS, 298 F.3d 824, 827 (9th Cir. 2002) (attempts to change the discretionary result reached by INS are not within the scope of 2241 and should be denied); Sing v. Ashcroft, 351 F.3d 435, 439 (9th Cir. 2003) ("The scope of habeas jurisdiction under 28 U.S.C. § 224 is limited to claims that allege constitutional or statutory error in the removal process.").

1    The only claim Respondents assert would potentially raise a due process concern is Petitioner's
2 allegation that the IJ failed to supply Petitioner with a constitutionally adequate hearing and set an
3 unreasonable bond. However, Respondents argue that the record of events below indicates the IJ
4 properly set a reasonable bond after conducting a constitutionally adequate hearing.

5    Respondents dismiss the lack of notice complaint by arguing that bond determinations are
6 required to be held expeditiously. Respondents similarly dismiss the lack of an adequate record falls
7 on Petitioner because he failed to appeal the bond determination.

8    Respondents go on to argue the Government presented sufficient evidence to show Petitioner
9 should not be released under an order of supervision and the IJ determined Petitioner constituted a
10 danger to the community after a full consideration of the evidence regarding Petitioner's
11 circumstances. Further, Respondents assert the bond amount was reasonable in light of the IJ's
12 determination that Petitioner was not a well-adjusted member of this community as a result of his DUI
13 convictions.

14    Respondents also note that the Government argued at the IJ hearing that Petitioner posed a
15 significant flight risk because he had been denied all relief from removal and was thus unlikely to
16 appear for removal. Moreover, the Government noted Petitioner did not have any relative who could
17 apply to adjust his immigration status. However, Respondents concede that a determination on
18 Petitioner's flight risk was apparently not made by the IJ.

19    **b.    Analysis**
20         1.    Jurisdiction

21    No published decision has discussed what jurisdiction, if any, a habeas court retains over a
22 Tijani bail hearing which it has ordered. As discussed above, Respondents assert any challenge to
23 custody determinations, aside from challenges related to the procedural adequacy of the hearing, are
24 beyond the scope of habeas review since bond decisions, Respondents argue, are discretionary.
25 Petitioner disagrees, insisting this position is significantly flawed since it would prevent this Court
26 from ensuring that its judgment was enforced.

27    To the extent the Respondents argue this Court lacks jurisdiction to review the IJ's bond
28 determination, the Court disagrees. The Court finds Respondents view inconsistent with the Ninth

Circuit's observation that habeas courts are empowered to make an assessment concerning compliance with their mandates. See Castro, 520 F.3d at 1064. The cases cited by Respondent are unpersuasive, since those cases did not involve a court ordered bail hearing following a finding of indefinite detention. Where, as here, the habeas petitioner has successfully secured a conditional release, that petitioner is entitled to the habeas court's continuing supervision to ensure the government's compliance with the court's order. That is, he is entitled to a judicial determination as to whether the government has established flight risk or dangerousness at the required Tijani bail hearing. Otherwise, the habeas court's grant of relief is meaningless. See Zadvydas, 533 U.S. at 692 (recognizing the serious constitutional problem arising out of a statute that permits an indefinite deprivation of human liberty without the protection of significant later judicial review); see also United States v. Salerno, 481 U.S. 739 (1987) (upholding pretrial detention under Bail Reform Act of 1984, stressing stringent time limitations, the fact that detention is reserved for the most serious of crimes, the requirement of proof of dangerousness by clear and convincing evidence, and the presence of judicial safeguards).

By Respondents' reasoning, Petitioner's only recourse in the case of government non-compliance would be to file a new Tijani petition challenging his detention anew. Imposing such a requirement would be burdensome and inefficient. Accordingly, the Court concludes it possesses authority to review the IJ's hearing for compliance with this Court's order.

    2.   The Tijani Bail Hearing

Although the IJ ruled that Petitioner was eligible for bond, his actual decision and $100,000 bond determination has the practical effect of ensuring that Petitioner, who could not afford the minimal filing fee for his habeas petition, would remain in custody. It is clear from the declarations of both counsel that the IJ relied heavily upon the Petitioner's prior DUI convictions in concluding Petitioner was presently dangerous. It was this dangerousness determination which the IJ indicated would justify the 100,000 bond determination.[2]

However, based on the undisputed description of the evidence and argument put before the IJ, the Court finds the Government did not meet the burden imposed by this Court of proving Petitioner's

---

[2] As noted above, Respondents concede the IJ did not make a finding regarding Petitioner's risk of flight.

1  present and future dangerousness. Aside from Petitioner's past convictions for alcohol related driving
2  offenses, the Government presented no evidence tending to show that, even with appropriate
3  conditions of release, Petitioner would pose a threat to the community if released. The Court finds
4  Petitioner's past DUI convictions, while serious, cannot independently justify his continued indefinite
5  detention, especially in light of the fact that the detention period (which has surpassed three years) has
6  nearly doubled the 16 month penalty Petitioner received for that crime. (See Gov. Opp'n to Pet., pg
7  17 "Abstract of Judgment" assessing Petitioner 16 months for  violation of Cal. Vehicle Code §
8  23153(b)). Further, Petitioner has no history of violent conduct and has maintained a consistent record
9  of institutional compliance. (See Supp. Motion to Amend, Decl of James Fife, ¶ 10, pg. 3.) Such
10 circumstances lend additional support against a finding of dangerousness. See Zadvydas, 533 U.S.
11 at 691 ("When preventive detention is potentially indefinite, th[e] dangerousness rationale must also
12 be accompanied by some other special circumstance, such as mental illness, that helps to create the
13 danger.").

14        Respondents have failed to cite any persuasive authority which would support a present
15 dangerousness finding under such circumstances. Respondents reliance on Del Toro-Chacon v.
16 Chertoff, 2008 WL 687445 (W.D. Wash, March 10, 2008) is misplaced.  While discussing the
17 appropriateness of considering an alien's past convictions in bond determinations, the decision is
18 inapposite because the IJ considered a number of factors, including the alien's past criminal
19 convictions, in arriving at its bail determination. Id. at *9.  The decision does not endorse
20 Respondents' position in this case, which is that past drunk driving arrests alone may establish present
21 dangerousness.

22        Under the circumstances, the IJ's reliance on two misdemeanor convictions for DUI and one
23 felony conviction for DUI as the basis for the finding of present dangerousness was an error of law
24 and the resulting assessment of $100,00 bond was unreasonable. See Hayward, 512 F.3d at 544, 546
25 (old convictions are "no evidence" that release "would unreasonably endanger public safety."); Ngo,
26 192 F.3d at 398 ("The assessment of flight risk and danger to the community must be made on a
27 current basis").

28        Petitioner's continued detention is no less of a problem where it is caused by Petitioner's

1 inability to pay a bond. The Supreme Court has emphasized the need for conditions of release to be
2 "appropriate" under the circumstances. See Zadvydas, 533 U.S. at 700 ("the alien's release [post-
3 removal-order] may and should be conditioned on any of the various forms of supervised release that
4 are appropriate in the circumstances . . ."). In addition, the Ninth Circuit has acknowledged the need
5 for bond amounts in alien detention cases to be reasonable in light of the specific circumstances. In
6 that case, Doan v. I.N.S., 311 F.3d 1160 (9th Cir. 2002), the Court noted that, in certain circumstances,
7 the imposition of a bond may be unreasonable where it had the effect of preventing an alien's release.
8 Id. at 1162 ("[S]erious questions may arise concerning the reasonableness of the amount of the bond
9 if it has the effect of preventing an lien's release."). In this case, in light of Petitioner's inability to
10 pay the $5 habeas corpus petition filing fee, a bail of $100,000 is plainly inappropriate and
11 unreasonable as contemplated by Doan. See also Williams v. Illinois, 399 U.S. 235, 243 (1970)
12 (holding, in a case where the maximum time of imprisonment was extended because an indigent
13 defendant was unable to pay a fine and court costs, "that a State may not constitutionally imprison
14 beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine.").

16 Finally, the Court rejects Respondents' claim that 8 U.S.C. § 1226(a) discretionary detention
17 provision mandates bond in this case be at least $1,500. Such cash bond has not been required for
18 other Tijani petitioners who's cases arose under 8 U.S.C. § 1226(c)'s mandatory detention provision.
19 See e.g., Tijani, NO. 03cv1624 WQH (RJB) (S.D. Cal. March 13, 2006) (Doc. No. 29.). As this Court
20 has previously observed, there is no basis in either the text or the legislative history to apply Tijani
21 inconsistently as to these two sections. See Court's March 11, 2008 Order, at 5. Accordingly, the
22 Court finds it inappropriate to apply a $1,500 minimum bond to a successful habeas petitioner
23 detained under section 1226's discretionary detention provision where no such minimum bond would
24 apply to a successful petitioner detained under the mandatory detention provision.

25 Because the Court finds Respondents' failure to meet their burden of establishing Petitioner
26 was a flight risk or a danger to the community mandates his release under appropriate conditions of
27 supervision, the Court need not consider whether other alleged deficiencies in the IJ proceeding,

including those related to notice and/or the lack of a written record, violated due process.[3]

## CONCLUSION

The evidence before the IJ failed, as a matter of law, to prove flight risk or danger pursuant to the Court's order. Accordingly, under the facts of this case, Petitioner's continued detention is not authorized by statute. The Court therefore orders Respondents to release Petitioner under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5.

**IT IS SO ORDERED.**

**DATED: June 10, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[3] The Court notes that in future proceedings, review of IJ bail determinations would be aided significantly by a transcript of the proceedings and a written decision.

- 16 -